RACHEL M. CROCKETT
California State Bar No. 266447
**LLOYD & MOUSILLI, PLLC**
11807 Westheimer Road
Suite 550 PMB 944
Houston, TX 77077
Tel: (512) 609-0059
Fax: (281) 783-8565
*litigation@lloydmousilli.com*

**ATTORNEYS FOR DEFENDANTS**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DAVID HOUGH;** <br> **MOULOUD HOCINE;** <br> **JENNIFER LEHMKUHL HILL;** <br> **AMUND THOMPSON;** <br> **PAUL PANICO** <br><br> *Plaintiffs,* <br><br> v. <br><br> **RYAN CARROLL; MAX K. DAY;** <br> **MAX O. DAY; MICHAEL DAY;** <br> **YAX ECOMMERCE LLC; PRECISION** <br> **TRADING GROUP, LLC;** <br> **WA DISTRIBUTION LLC;** <br> **PROVIDENCE OAK PROPERTIES, LLC;** <br> **WA AMAZON SELLER LLC;** <br> **MKD INVESTMENT ADVISOR, LLC;** <br> **MKD FAMILY BENEFICIARY, LLC;** <br> **MKD FAMILY PRIVATE MANAGEMENT** <br> **COMPANY, LLC;** <br> **MAX DAY CONSULTING, LLC;** <br> **HOUTEX FARM EQUITY PARTNERS** <br> **LLC; BUSINESS FINANCIAL SOLUTIONS** <br> **ADVISORY LLC; EVO MAXX LLC;** <br> **YAX IP AND MANAGEMENT INC. (D.B.A.** <br> **"FULFILLABLE"); WWKB LLC;** <br> **DREAMS TO REALITY LLC;** <br><br> *Defendants.* | Case No.: 2:24-cv-02886 <br><br> **DEFENDANTS RYAN CARROLL; MAX K. DAY; MAX O. DAY; MICHAEL DAY; YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC; WA DISTRIBUTION LLC; PROVIDENCE OAK PROPERTIES, LLC; WA AMAZON SELLER LLC; MKD INVESTMENT ADVISOR, LLC; MKD FAMILY BENEFICIARY, LLC; MKD FAMILY PRIVATE MANAGEMENT COMPANY, LLC; MAX DAY CONSULTING, LLC; HOUTEX FARM EQUITY PARTNERS LLC; BUSINESS FINANCIAL SOLUTIONS ADVISORY LLC; EVO MAXX LLC; YAX IP AND MANAGEMENT INC. (D.B.A. "FULFILLABLE"); WWKB LLC; DREAMS TO REALITY LLC OPPOSITION TO PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER** <br><br><br> Action Filed: April 9, 2024 <br> Trial Date: N/A |

- 1 -

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ - 2 -

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... - 5 -

   I.   SUMMARY OF THE ARGUMENT ................................................- 5 -

   II.  THIS CASE SHOULD BE COMPELLED TO BINDING ARBITRATION.................. - 6 -

   III. LEGAL STANDARD FOR A TEMPORARY RESTRAINING ORDER ...................... - 7 -

   IV. PLAINTIFFS HAVE FAILED TO MEET THE APPLICABLE LEGAL STANDARDS- 9 -

     A. Plaintiffs' Motion for a TRO to Freeze Assets in an Improper Attempt at Attachment- 9 -

     B. Plaintiff Have Cited No Legal Authority for the Proposition that Private Individuals Can Freeze All of the Assets of Other Private Parties through a TRO ............................... - 10 -

     C. Plaintiffs Have Not Established a Likelihood of Success on the Merits and Plaintiffs Cannot Show a Likelihood of Success on their Fraud Claim.................................... - 12 -

     D. Plaintiffs' Evidence as to Alleged Representations Outside of the Written Contract Is Prohibited by the Parol Evidence Rule...................................................................... - 16 -

     E. Plaintiffs Cannot Show a Likelihood of Success on their Fraudulent Transfer Claim- 18 -

     F. Plaintiffs Cannot Show a Likelihood of Success on their Claim for Conspiracy to Violate California's Unfair Competition Law .................................................................. - 18 -

     G. Plaintiffs Have Not Shown Irreparable Harm or that the Equities Tip in His Favor. .- 21 -

   V.  LACK OF PERSONAL JURISDICTION ........................................................ - 22 -

   VI. LACK OF ALLEGATIONS OF WRONGDOING BY THE OTHER DEFENDANTS - 24 -

   VII.    CONCLUSION ................................................................................ - 26 -

# **TABLE OF AUTHORITIES**

**Cases**

*Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d (Tex. 2011)....- 16 -, - 17 -

*Barakat v. Broward Cnty. Hous. Auth.*, 771 So. 2d (Fla. Dist. Ct. App. 2000)........................ - 16 -

*Bennett v. Superior Court in & for Los Angeles City.*, 218 Cal. 153 (1933) ............................... - 10 -

*Brennan v. Opus Bank,* (9th Cir. 2015) 796 F.3d 1125 .................................................. - 7 -

*Burger King*, 471 U.S. ............................................................................................................. - 22 -

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d(9th Cir. 2011) ......................... - 13 -

*Calder v. Jones*, (1984) 465 U.S. 783.................................................................................... - 22 -

*Citing Lowell Staats Mining Co., Inc. v. Pioneer Uravan Inc.*, (10th Cir.1989) 878 F.2d 1259.. - 24 -

*City of Indus. v. City of Fillmore*, 198 Cal. App. 4th 191 (2011), as modified (Aug. 24, 2011).. - 15 -

*Committee of Central American Refugees v. I.N.S.*, 795 F.2d (9th Cir.1986) ............................. - 8 -

*Committee on Children's Television, Inc. v. General Foods Corp.*, (1983) 35 Cal. 3d 197......... - 20 -

*Cornelison v. Chaney*, (1976) 16 Cal. 3d 143........................................................................... - 22 -

*DISH Network Corp. v. F.C.C.*, 653 F.3d 771 ....................................................................... - 7 -

*Doe v. Unocal Corp.*, (9th Cir.2001) 248 F.3d 915 ................................................................ - 23 -

*Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377 (1992) ................................................. - 18 -

*Fed. Trade Comm'n v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 4318466 (D. Ariz. Sept. 23, 2021) .................................................................................................................. - 11 -

DEFENDANTS' OPPOSITION TO PLAINTIFFS' TEMPORARY RESTRAINING ORDER

*Federal Trade Commission v. Automators*, 23-cv-1444 (S. D. Cal. 2023), Dkt. No. 8 (Quoting 15 U.S.C. § 53(b)(l)) ........................................................................................................ - 11 -

*First Bank v. Brumitt*, 519 S.W.3d (Tex. 2017) .............................................................. - 16 -

*Goehring v. Superior Court*, (1998) 62 Cal. App. 4th 894 ............................................. - 23 -

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d ................................................................. - 8 -

*HealthMarkets*, 171 Cal. App. 4th .................................................................................. - 23 -

*HealthMarkets, Inc. v. Superior Court*, 171 Cal. App. 4th 1160 (2009) ............ - 22 -, - 23 -

*Helicopteros Nacionales de Colombia v. Hall*, (1984) 466 U.S. 408 ............................ - 22 -

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ........................................... - 7 -

*In re Automobile Antitrust Cases I & II*, (2005) 135 Cal. App.4th 100 ......................... - 24 -

*In re Automobile Antitrust*, 135 Cal. App.4th ................................................................ - 24 -

*In re Tobacco Cases II*, 240 Cal. App. 4th 779 (2015) .................................................. - 19 -

*International Shoe Co. v. Washington*, (1945) 326 U.S. 310 .......................................... - 22 -

*Johnson v. Driver*, 198 S.W.3d (Tex. App.--Dallas 2006) ............................................. - 17 -

*Kearns v. Ford Motor Co.*, 567 F.3d (9th Cir. 2009) ..................................................... - 12 -

*Lavie v. Procter & Gamble Co.,* (2003) 105 Cal. App. 4th 496 .................................... - 20 -

*Lloyd v. Junkin* 75 S.W.2d(Tex.Civ.App.—Dallas 1934, no writ) .................................. - 15 -

*Lopez v. Brewer*, 680 F.3d 1068 ............................................................................ - 7 -, - 8 -

*M.R. v. Dreyfus*, 697 F.3d (9th Cir. 2012) ..................................................................... - 21 -

*McGlinchy v. Shell Chemical Co.,* (9th Cir.1988) 845 F.2d 802 ................................... - 23 -

*Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d (Tex. 2019) ........................... - 15 -

*Pavlovich v. Superior Court*, (2002) 29 Cal. 4th 262 ................................................... - 23 -

*Pavone & Fonner, LLP v. Willis*, 2018 WL 1476694, (Cal. Ct. App. Mar. 27, 2018) ...... - 9 -

*Perkins v. Benguet Mining Co.*, (1952) 342 U.S. 437 ................................................... - 22 -

*Posse Energy, Ltd. v. Parsley Energy*, LP. S.W.3d (Tex. App. 2021) ............................ - 16 -

*Potlongo v. Herff Jones, LCC* ......................................................................................... - 8 -

*Ramos v. Wolf*, 975 F.3d 872 .......................................................................................... - 8 -

*Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d (9th Cir.1991) .. - 20 -

*Rivelli v. Hemm*, 67 Cal. App. 5th 380 (2021) ............................................................... - 24 -

*Sampson v. Murray*, 415 U.S. (1974) ............................................................................. - 9 -

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F. 3d (9th Cir. 2004) (citation omitted) ........... - 22 -

*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (2000) ...................... - 24 -

*Sonora Diamond*, 83 Cal.App.4th .................................................................................. - 24 -

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d (5th Cir. 2004) ................... - 13 -

*Spring Lake NC, LLC v. Figueroa*, 104 So. 3d  (Fla. Dist. Ct. App. 2012) ......... - 16 -, - 17 -

*Stanley v. University of Southern California*, 13 F.3d ..................................................... - 8 -

*Tex. & Pac. Ry. Co. v. Poe*, 115 S.W.2d (1938) ........................................................... - 15 -

*Thayer Plymouth Center, Inc. v. Chrysler Motors Corp.* (1967) 255 Cal. App. 2d 300 .............. - 8 -

*The Florida Bar v. Frederick*, 756 So.2d n. 2 (Fla.2000) .............................................. - 17 -

*Thigpen v. Locke,* 363 S.W.2d (Tex. 1962) ............................................................. - 15 -, - 16 -

*United States v. Greenlaw*, 84 F.4th (5th Cir. 2023) ..................................................... - 14 -

*Willis*, 2018 WL 1476694, (Cal. Ct. App. Mar. 27, 2018) ............................................ - 10 -

*Zar v. Omni Indus., Inc.*, 813 F.2d (5th Cir. 1987) ........................................................ - 14 -

*Zhang v. Superior Court*, 57 Cal. 4th 364 (2013) ......................................................... - 19 -

**Statutes**

15 U.S.C. § 57b ................................................................................................................ 11

CAL. BUS. & PROF. CODE §§ 17200 et seq .................................................................... 17

DEFENDANTS' OPPOSITION TO PLAINTIFFS' TEMPORARY RESTRAINING ORDER

CAL. CIV. CODE § 3439.04(A) .................................................................................16
CAL. CIV. CODE § 3439.08(A) .................................................................................16
California Code of Civil Procedures § 415.10 .........................................................24
CRC 3.1204 ...............................................................................................................24
CODE CIV. PROC. § 418.11 ........................................................................................6
CODE CIV. PROC. § 483.010 ......................................................................................10
CODE CIV. PROC., § 410.10 .......................................................................................20
CODE CIV. PROC., § 484.090(a)(2) ...........................................................................10
CODE CIV. PROC., § 527(a) ...................................................................................8, 25

**Rules**
AAA Commercial Rule 7(a) .......................................................................................6

DEFENDANTS' OPPOSITION TO PLAINTIFFS' TEMPORARY RESTRAINING ORDER

COME NOW **SPECIALLY APPEARING DEFENDANTS RYAN CARROLL; MAX K. DAY; MAX O. DAY; MICHAEL DAY; YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC; WA DISTRIBUTION LLC; PROVIDENCE OAK PROPERTIES, LLC; WA AMAZON SELLER LLC; MKD INVESTMENT ADVISOR, LLC; MKD FAMILY BENEFICIARY, LLC; MKD FAMILY PRIVATE MANAGEMENT COMPANY, LLC; MAX DAY CONSULTING, LLC; HOUTEX FARM EQUITY PARTNERS LLC; BUSINESS FINANCIAL  SOLUTIONS ADVISORY LLC; EVO MAXX LLC; YAX IP AND MANAGEMENT INC. (D.B.A. "FULFILLABLE"); WWKB LLC; DREAMS TO REALITY LLC ("Defendants")** and hereby files this, *Defendants' Opposition to Plaintiffs' Application for a Temporary Restraining Order* and respectfully shows the Court as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    SUMMARY OF THE ARGUMENT

1.    Plaintiffs have filed this baseless Complaint and Motion for Temporary Restraining Order ("**Motion**") to evade the arbitration clauses and limitations on liability in their written contracts. Plaintiffs cannot establish personal jurisdiction over Defendants and this matter should be compelled to arbitration. Plaintiffs have also sought the extreme remedy of a freeze of all the Defendants' assets without any statutory authority or other legal precedent based upon conclusory allegations of fraud that will not even survive the motion to dismiss stage. Plaintiff have also sued a numerosity of unrelated entities to burden and harass Defendants and unnecessarily increase the costs of this litigation. Further, the vast majority of Plaintiffs' evidence is inadmissible parol evidence and unauthenticated photographs. What Plaintiffs are lacking in substance, they have

tried to make up for in breadth, by burdening the Court and Defendants with hundreds of pages of documents that are devoid of any legal substance.

2.      This is not the first time Plaintiffs' counsel has pulled this stunt. Plaintiffs' counsel initially brought an identical action against Defendants in California state court in January of 2024. When the state court summarily rejected Plaintiffs' counsel's arguments and denied his requests for a temporary restraining order (**"TRO"**) and later a preliminary injunction, Plaintiffs' counsel voluntarily dismissed that action, stating he would refile the action in another forum.[1] Plaintiffs' counsel has now brought this action in federal court in a classic example of forum shopping in hopes of obtaining a more favorable result with a different judge. However, none of the deficiencies in his filings have been resolved, and this Court should also deny his unreasonable and unsubstantiated requests.

## II.    THIS CASE SHOULD BE COMPELLED TO BINDING ARBITRATION

3.      Plaintiffs have improperly brought this action, bringing unsupported allegations of fraud, to avoid the clear arbitration clause and limitation of liability clause in their written contracts with WA Distributions, LLC. Pursuant to the arbitration clauses in their written contracts, Plaintiffs must submit all disputes related to or arising out of the contracts to binding arbitration, in some instances to be administered by the American Arbitration Association (**"AAA"**) in Houston, Texas, and in other instances in Miami-Dade, Florida.[2] Defendants fully intend to move to compel arbitration in this case if they are properly served and Defendants do not waive their right to compel arbitration, contest personal jurisdiction, or contest venue by virtue of this limited appearance.

---

[1] *See* **Exhibit A**, Order of February 22, 2024, Denying Plaintiffs' Request for a Preliminary Injunction in *Stoops et al. v. Carroll et al.*, Superior Court of California, County of San Bernadino, Case No. CIVSB2400076.

[2] *See e.g.,* Ex. A. to Pls.' Motion at p. 6, Clause 14, p. 11, "Exhibit B, Binding Arbitration Provision"; Ex. B to Pl's Motion at p. 7, Clause 9C.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' TEMPORARY RESTRAINING ORDER

4.      The arbitration agreements are valid and enforceable. Plaintiffs' contracts state that the arbitration is to be governed by the highly respected and well-known AAA rules, which have been widely accepted as reasonable by California and federal courts. Furthermore, "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

5.      The arbitration agreements mandate arbitration in accordance with the AAA rules. Rule 7 of those rules states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" and "the existence or validity of a contract of which an arbitration clause forms a part." *See* AAA Commercial Rule 7(a). "'[V]irtually every circuit to have considered the issue has determined that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank,* (9th Cir. 2015) 796 F.3d 1125, 1130; (*Quoting Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases)). Furthermore, "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." *Id.* (collecting cases). Thus, the parties here clearly and unmistakably agreed to have an arbitrator determine questions of arbitrability

6.      Therefore, all issues concerning the validity of the arbitration clauses in Plaintiffs' contracts and the arbitrability of Plaintiffs' claims must be determined by the Arbitrator, not the trial court.

### III.    LEGAL STANDARD FOR A TEMPORARY RESTRAINING ORDER

7.      A TRO, like a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."

- 7 -

*Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). As the party seeking a TRO, it is Plaintiffs' burden to show that this extraordinary remedy is warranted at this time. *See DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011).

8.    "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Potlongo v. Herff Jones, LCC*, No. 817CV01624JLSDFM, 2017 WL 10647710, at *1 (C.D. Cal. Sept. 26, 2017). To obtain a TRO, Plaintiffs must demonstrate that: "1) [they are] likely to succeed on the merits of such a claim; 2) [they are] likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in [their] favor; and 4) that an injunction is in the public interest." *Lopez*, 680 F.3d at 1072.

9.    Federal Rule of Civil Procedure 65 authorizes a trial judge to grant a TRO under certain circumstances "to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020). A TRO "is not a preliminary adjudication on the merits, but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Id.* (citations omitted). The status quo refers to "the last uncontested status which preceded the pending controversy." *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000).

10.    Where a mandatory injunction is sought that goes beyond maintaining the status quo, "courts should be extremely cautious." *Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir.1994). In those circumstances, an injunction should not issue "unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir.1986).

11.    Here, Plaintiffs seek a TRO, which indisputably alter the status quo, as they seek to freeze all assets of numerous individual and entity defendants; regardless of whether they have any claim to those assets or whether those defendants have any relationship to the claims in this case.

12.     The generally applicable rule is that "if monetary damages afford adequate relief and are not extremely difficult to ascertain, an injunction cannot be granted." *Thayer Plymouth Center, Inc. v. Chrysler Motors Corp.* (1967) 255 Cal. App. 2d 300, 306. Here, Plaintiffs indisputably seek monetary damages, which are easily calculated based upon the amount of money they paid to Yax Ecommerce, LLC d/b/a Wealth Assistants (**"Wealth Assistants"**) per their contracts.

## IV.    PLAINTIFFS HAVE FAILED TO MEET THE APPLICABLE LEGAL STANDARDS

**A.    Plaintiffs' Motion for a TRO to Freeze Assets in an Improper Attempt at Attachment**

13.     Plaintiffs seek to freeze all of Defendants' assets as well as identification by name and account number of all of Defendants' assets via a TRO, which is virtually unheard of. California and federal courts have specific procedures that must be strictly adhered to for pre-judgment asset discovery and attachment, and Plaintiffs have intentionally not followed those procedures because attachment is not authorized in California for fraud cases and is only authorized under federal law in actions by the "United States" (as defined therein). *See* 28 U.S.C. §1302(b).

14.     "Traditionally, courts do not issue injunctive orders to protect the collectability of a monetary claim." *Pavone & Fonner, LLP v. Willis*, No. D072986, 2018 WL 1476694, at *6 (Cal. Ct. App. Mar. 27, 2018). "[P]rotection for typical damage claims are available through other methods, such as prejudgment writs of attachment or other provisional remedies." *Id.* Injunctive relief should be reserved for "genuinely extraordinary situation[s]," not awarded in routine cases. " *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). This is because "[m]ere injuries, however substantial, in terms of money, time and energy ... are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.*

15.    "An attachment is an extraordinary and summary proceeding in rem." *Stowe v. Matson*, 94 Cal. App. 2d 678, 683 (1949). "It is purely statutory … [n]o right or title in the property may be acquired except in strict compliance with the statutes." *Id.*

16.    For nearly a hundred years, the California Supreme Court has held that "where the gravamen of the complaint is fraud the plaintiff is not entitled to a writ of attachment, and the action is not changed where a second count is framed … if said count is based upon the same facts." *Bennett v. Superior Court in & for Los Angeles City.*, 218 Cal. 153, 159–60 (1933).

17.    To allow an attachment to issue, without following the statutory procedures set forth in Code of Civil Procedure 484.090 in action based on fraud would be reversible error. As stated by the California Supreme Court in *Stowe v. Matson*:

> If the attachment is not authorized by statute, the court is without jurisdiction to issue it. An attachment which is issued without jurisdiction or authority of statute is void ab initio. … An attachment may not issue in an action founded on tort.

94 Cal. App. 2d at 683.

18.    Here, all of Plaintiffs claim sound in tort. Plaintiffs' first two causes of action are for fraud and fraudulent transfers, and their third cause of action is for conspiracy to commit fraudulent business practices. Thus, attachment of Defendants' assets pre-judgment is not an option available to Plaintiffs. Furthermore, even under attachment principles, Plaintiffs are limited to the amount they are likely to recover, and here Plaintiffs have not even established the amount of monetary damages they are allegedly likely to recover. Freezing all Defendants' assets would be clear error.

**B.    Plaintiff Have Cited No Legal Authority for the Proposition that Private Individuals Can Freeze All of the Assets of Other Private Parties through a TRO**

19.    Allowing one to seize all the assets of another individual before a trial on the merits is an extraordinary remedy, far beyond the already extraordinary remedy of a TRO in general. *Willis*, 2018 WL 1476694, at *6 (Cal. Ct. App. Mar. 27, 2018). Plaintiffs' only legal support for their position is an non-binding unpublished case, wherein a federal district court granted a TRO for an

- 10 -

asset freeze sought by the Federal Trade Commission (**"FTC"**). The district court specifically based their decision on the FTC's congressionally designated statutory authority under Sections 13(b) and 19 of the FTC Act.

20.    "Section 13(b) authorizes the FTC to seek, and a district court to grant, a temporary restraining order … whenever there is reason to believe that a defendant 'is violating, or is about to violate, any provision of law enforced by the [FTC]'." *Federal Trade Commission v. Automators*, 23-cv-1444 (S. D. Cal. 2023), Dkt. No. 8 (Quoting 15 U.S.C. § 53(b)(l)). The district court held that "although the Supreme Court in *AMG Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341, 1349-52 (2021) (**"AMG"**), constrained the FTC from seeking asset freezes and/or receiverships under Section 13(b ), such relief still [wa]s available under Section 19 of the FTC Act. *Id.* (*Citing* 15 U.S.C. § 57b; *Fed. Trade Comm'n v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 4318466, at *5 (D. Ariz. Sept. 23, 2021)) [construing Ninth Circuit precedent to find that FTC asset freezes are appropriate in connection with Section 19 claims post-*AMG*]). In *Noland*, the district court in Arizona allowed an asset freeze via a preliminary injunction because the defendants' liability under Section 19 of the FTC Act had already been established on summary judgment and a motion for summary judgment on the amount of monetary damages of over $1 million had also been fully briefed by the parties. *Fed. Trade Comm'n v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 4318466, at *5 (D. Ariz. Sept. 23, 2021). This is a far cry from the facts and procedural posture of this case.

21.    Here, the Plaintiffs are merely a handful of individuals, not the FTC. Section 19 of the FTC Act does not apply to them, and they have not established any other authority allowing them to freeze a private parties' assets. This case is also in its infancy and has not been fully briefed. The vast majority of cases wherein a court has allowed a freeze a party's assets involve a governmental agency, such as the FTC, SEC, or criminal prosecution agencies (such as U.S. attorneys), who

operate under specific congressionally designated authority. The cases that the undersigned counsel found regarding private individuals all involved restraining the sale or disposition of a specific identifiable asset in legitimate dispute, such as the unauthorized sale of specific real property or funds held in a trust alleged for trust beneficiaries. There is simply no authority for the extreme position taken by Plaintiffs that they are permitted to freeze all \assets held by numerous individual Defendants and entity Defendants, many of whom are completely unrelated to the claims herein. Such a notion would quite literally leave individuals without shelter and shutter the doors of business, all via *ex parte* relief. California and federal attachment provisions specifically provide for statutory exemptions of property to avoid such a drastic result. Plaintiffs cannot evade a hundred years of judicial precedent by attempting to circumvent the statutory requirements of attachment.

22.     While Plaintiffs provide an arbitrary "exemption" of their own with respect to the individual Defendants, purportedly allowing them to spend up to $9,000 per month on "ordinary personal and household expenditures," this is insufficient and unworkable for the Court. In the limited circumstances under which asset freezes are permitted, Defendants are entitled to statutory exemptions based upon actual expenses, not an arbitrary limitation imposed by Plaintiffs' counsel. Many individuals spend in excess of $9,000 a month on ordinary household expenses. Furthermore, such a TRO would create an enormous burden on the Court in monitoring and enforcing the injunction, as the Court would have to constantly make determinations of what is considered an" ordinary" household expense. Thus, Plaintiffs' request for a TRO should be denied due to the complete dearth of legal authority for such an injunction.

**C.     Plaintiffs Have Not Established a Likelihood of Success on the Merits and Plaintiffs Cannot Show a Likelihood of Success on their Fraud Claim**

23.     Plaintiffs' primary cause of action against Defendants is fraud, yet they fail to identify a single misrepresentation of material fact.

24.     "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). To satisfy Rule 9(b), a pleading must identify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)

25.     Such details are glaringly absent from Plaintiffs' Motion and Complaint. Plaintiffs did not plead their fraud claim with specificity, including what statements were made, when they were made, by whom they were made, to whom they were made, and by what means they were made, such that the Complaint will be easily dismissed at the appropriate time.

26.     Plaintiffs' allegations boil down to the fact that their businesses were unsuccessful, which is a known inherent risk of any entrepreneurial enterprise. The only alleged "misrepresentations" are that representatives of one Defendant, Wealth Assistants, told people that Wealth Assistant's businesses were profitable. *See* Pls.' Motion at p. 10. Not only are such conversations inadmissible and unreliable hearsay, the alleged representations also are not fraud. The profit projections in Wealth Assistant's advertising were mere puffery, not actionable fraud. *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353 (5th Cir. 2004) (predictions of future earnings and revenues were puffery, not actionable)[3]. The slide deck and other advertising contained express warnings that the income projections were just that, projections, not guarantees of success. *See* Croney Decl. at ¶3; *See* Ex. 1 to Harrinarine Decl. at 11-13, 19.

---

[3] Many of Plaintiffs' contracts have choice of law provisions, which hold that Texas law applies; hence the discussion of Texas law, however California law also holds that mere puffery is not actionable fraud. *See e.g. In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' TEMPORARY RESTRAINING ORDER

27.    An assertion that a store may achieve $10,000 in profits within 12-18 months of operations, is not an unconditional guarantee of an exact dollar amount of income. In fact, Claimant's own evidence conclusively establishes that these projections were not assurances to be relied upon. The screenshot of income projections from Wealth Assistants in the Croney Declaration inconspicuously states:

> "Projections such as those related to projected revenue and profitability levels are only predictions. No assurances can be given that the future results indicated, whether express or implied, will be achieved. While sometimes, with numerical specificity, any Projections are based upon a variety of assumptions that may not be realized, and which are highly variable.

*See* Croney Decl. at ¶3.

28.    The slide deck attached to the Harriane declaration also contains explicit warnings that any income projections are theoretical and not to be relied upon. *See* Ex. 1 to Harrinarine Decl. Specifically, it states multiple times on multiple pages that:

> The images and sales summary are not actual and are used for illustrative purposes only … No client's success, earnings, or production results should be viewed as typical, average, or expected. Not all clients achieve the same or similar results due to many factors, including, but not limited to, the amount of inventory purchase per month to be sold on your store, margins of products to be sold, and your results may be higher, or lower than stated.
> an stated.

*Id.* at p. 11-13, 19. "The essence of fraud is that its perpetrator has persuaded his victim to believe, ***beyond the dictates of reason or prudence***, what is not so." *United States v. Greenlaw*, 84 F.4th 325, 339 (5th Cir. 2023) (emphasis added).

29.    "It is well settled that representations as to future earnings or profits are mere opinion, and cannot be treated as fraud." *Sommer v. Martinaire, Inc.*, 1993 WL 385443 at *5 (Tex.App.-Dallas); *See also Zar v. Omni Indus., Inc.*, 813 F.2d 689, 693 (5th Cir. 1987)( "[t]he generally accepted rule in Texas jurisprudence is that future predictions and opinions, especially those

DEFENDANTS' OPPOSITION TO PLAINTIFFS' TEMPORARY RESTRAINING ORDER

regarding the future profitability of a business, cannot form a basis for fraud as a matter of law."). As stated in *Lloyd v. Junkin*:

> In order to effect a sale, induce the making of a contract, or place a proposed investment in a favorable light, it is quite common to make representations as to future value, productiveness, efficiency, or economy, or as to expected earnings or profits. But since that which lies in the future cannot be a matter of certain knowledge, it is held that all such representations must be taken and understood as mere expressions of opinion, and therefore their nonfulfillment cannot be treated as fraud.

75 S.W.2d 712, 714 (Tex.Civ.App.—Dallas 1934, no writ). Thus, the alleged representations regarding the potential profitability of an Amazon storefront cannot constitute actionable fraud.

30.    Plaintiffs fail to even discuss the other required elements of fraud, let alone their likelihood of succeeding on the merits of such elements (namely (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage). *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Plaintiffs have put forth no evidence that Defendants knew these statements regarding Wealth Assistant's businesses being profitable were false at the time they were made. Plaintiffs allege in their own Complaint that Wealth Assistants did not honor its alleged promises because it was going out of business and planned to "cease all operations before December 1, 2023." *See* Pls.' Compl. at ¶79. If Wealth Assistants faced unanticipated financial conditions and had to shut down its business as Plaintiffs allege, that would indicate that Defendants in fact did not know that the prior alleged representations about Wealth Assistants being profitable were false at the time they were made years prior.

31.    Furthermore, Plaintiffs cannot establish justifiable reliance. If the parties' written agreement directly contradicts a party's alleged belief, that party cannot show actual and justifiable reliance as a matter of law. *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 559 (Tex. 2019). As the Texas Supreme Court explained, "a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." *Id.*; *See also Thigpen v.*

- 15 -

*Locke,* 363 S.W.2d 247, 251 (Tex. 1962) ("In an arm's-length transaction the defrauded party must exercise ordinary care for the protection of his own interests.... [A] failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party."). This is particularly true when the party had a reasonable opportunity to review the written agreement but failed to do so. *See Tex. & Pac. Ry. Co. v. Poe,* 115 S.W.2d 591, 592 (1938).

Here, Plaintiffs are limited to the terms of his written contracts. "There is no evidence of active trickery or deceit in this record." *Thigpen,* 363 S.W.2d at 251.

32.    Even if Plaintiffs' parol evidence were admissible, which it is not as discussed *infra,* the express written terms of such evidence also contradict Plaintiffs' position as they contained explicit warnings that they were merely indications of potential future profits, not guarantees of the performance of any particular store. *See* Croney Decl. at ¶3; *See* Ex. 1 to Harrinarine Decl. at 11-13, 19. Thus, Plaintiffs cannot prove the element of justifiable reliance.

**D.    Plaintiffs' Evidence as to Alleged Representations Outside of the Written Contract Is Prohibited by the Parol Evidence Rule.**

33.    As the majority of Plaintiffs' contracts mandate the application of Texas substantive law, but some mandate the application of Florida substantive law, Defendants will discuss both Florida and Texas law, although the law is substantially identical in both venues. "[I]t is a well settled principle of contract law that where the terms of a contract are unambiguous, the parties' intent must be determined from within the four corners of the document." *Barakat v. Broward Cnty. Hous. Auth*., 771 So. 2d 1193, 1194 (Fla. Dist. Ct. App. 2000); *See also Posse Energy, Ltd. v. Parsley Energy*, LP, 632 S.W.3d 677, 687 (Tex. App. 2021). "[A] court may not consider extrinsic or parol evidence to change the plain meaning set forth in the contract." *Spring Lake NC, LLC v. Figueroa*, 104 So. 3d 1211, 1214 (Fla. Dist. Ct. App. 2012); *See also Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011).

34.    "It is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain." *Barakat*, 771 So. 2d at 1194. In the absence of ambiguity, "the language itself is the best evidence of the parties' intent and its plain meaning controls." *Id.*; *See also First Bank v. Brumitt*, 519 S.W.3d 95 (Tex. 2017).

35.    It is noteworthy that the parol evidence rule is not a rule of evidence, but a "fundamental rule of substantive law." *The Florida Bar v. Frederick*, 756 So.2d 79, 85 n. 2 (Fla.2000); *See also Johnson v. Driver*, 198 S.W.3d 359, 364 (Tex. App.--Dallas 2006).

36.    All of Plaintiffs' evidence, apart from the written contracts, is inadmissible parol evidence. The written contracts are not alleged to be ambiguous. Thus, in interpreting and enforcing the written contracts, the Court is limited to the four-corners of the agreement. *Spring Lake NC*, 104 So. 3d at 1214; *Anglo-Dutch*, 352 S.W.3d at 451. Thus, Plaintiffs' numerous declarations, and all attached documentary exhibits must be excluded.[4] Each of Plaintiffs' declarations seek to bring forth evidence of representations allegedly made by Defendants outside the four corners of the written contracts, mostly related to alleged projections of income. *See e.g.,* David Decl. at ¶¶2-3; Hough Decl. at ¶1, Hill Decl. at ¶1; Houcine Decl. at ¶¶1-2; Thompson at ¶1; Pacino at ¶1. Many of the declarations even expressly proffer the parties' purported interpretations of the terms of their written contracts with Wealth Assistants, when the contracts themselves are the best evidence of their terms. *See e.g.,* Hough Decl. at ¶2, Hill Decl. at ¶2; Houcine Decl. at ¶3; Thompson at ¶2; Pacino at ¶3. Such alleged representations and documents are expressly prohibited by the parol evidence rule and must be excluded.

---

[4] Specifically, Defendants requests that the Declarations of Nico Banks, David Hough, Jennifer Lehmkuhl Hill, Mouloud Houcine, Amund Thompson, Phillip Harrinarine, Jameson Croney, Shannon McAlister, John Cundiff, Benjamin David, Phillip C. Stoops, Dominic Camany, Paul Pacino, and Justin Chambers; and all accompanying exhibits thereto be excluded from the Court's consideration as they are inadmissible parol evidence.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' TEMPORARY RESTRAINING ORDER

**E.    Plaintiffs Cannot Show a Likelihood of Success on their Fraudulent Transfer Claim**

37.    Once again, Plaintiffs do not even discuss the elements of a fraudulent transfer, let alone establish that they have a likelihood of succeeding on each of them.

38.    Both California and Texas have adopted the Uniform Fraudulent Transfer Act (**"UFTA"**). The elements of a fraudulent transfer are: (1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors; (5) without receiving a reasonably equivalent value in exchange. Cal. Civ. Code § 3439.04(A); *See also* Tex. Bus. & Com. Code § 24.005.

39.    Plaintiffs cannot meet the elements of their claim. The only evidence Plaintiffs have of a fraudulent transfer consist of (1) an unauthenticated photograph allegedly taken from social media of someone driving an expensive car; (2) unsubstantiated allegations of their counsel (based on hearsay) that Wealth Assistants used credit card processors, a complete standard business practice. *See* Declaration of Nico Banks at ¶¶12, 21-22. That is hardly evidence of any fraudulent transfer amongst any of the Defendants, let alone all of them.

40.    Furthermore, there is no evidence that any of the Defendants had an actual intent to hinder, delay, or defraud any alleged creditor. Nor is there evidence that Wealth Assistants did not receive reasonably equivalent value for any purported transfer. For example, the vehicle could have easily been purchased with assets from other income streams or through ordinary payroll salary earnings.

41.    Thus, Plaintiffs have not proven a likelihood of success on their fraudulent transfer claim.

**F.    Plaintiffs Cannot Show a Likelihood of Success on their Claim for Conspiracy to Violate California's Unfair Competition Law**

42.    Plaintiffs have also failed to establish a likelihood of success on their claim for conspiracy to violate California's Unfair Competition Law (**"UCL"**). Cal. Bus. & Prof. Code §§ 17200 et seq.

43.    The UCL defines "unfair competition" as, any "unlawful, unfair or fraudulent business practice" *Id.* Unlawful business activity" proscribed under section 17200 includes "anything that

- 18 -

can properly be called a business practice and that at the same time is forbidden by law." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (citations omitted). "[I]n essence, an action based on Business and Professions Code section 17200 to redress an unlawful business practice 'borrows' violations of other laws." *Id.*

44.    Plaintiffs have not identified or established a violation of any other federal or state law, that could be "borrowed" to satisfy the elements of a UCL claim. The issues of which all of Plaintiffs' declarations complain are breach of contract issues: (1) Wealth Assistants did not set up certain online stores as allegedly promised in the contracts; (2) Wealth Assistants did not provide certain inventory as allegedly promised in the contracts; and (3) Wealth Assistants did not honor the buyback clause in the contracts. *See* Pls.' Motion at pp. 10-11.

45.    "A plaintiff may thus not 'plead around' an 'absolute bar to relief' simply 'by recasting the cause of action as one for unfair competition'." *Zhang v. Superior Court*, 57 Cal. 4th 364, 377 (2013). All of Plaintiffs' contracts with Wealth Assistants, which they tellingly never discuss, have a strict limitation of liability clause, which provides that Wealth Assistants shall not be liable, whether in tort or breach of contract, for any consequential damages, loss of business, diminution in value, costs of replacement, etc. and that Plaintiffs are limited to a recovery of the amount of fees they paid to Wealth Assistants in the prior 12 month period. *See* Ex. A. to Harrinarine Decl. at p. 6, Clause 8. Plaintiffs seek to evade the limitation of liability clause, which was highlighted for them in all capital letters, in the contracts they knowingly signed, by couching their claims under various tort theories. *Id.* If plaintiffs were allowed to cast any breach of contract as a UCL claim, it would eviscerate contract law in California, and the specifically negotiated for benefit of the bargain.

46.    Furthermore, "[t]o achieve its goal of deterring unfair business practices in an expeditious manner, the Legislature limited the scope of the remedies available under the UCL. A UCL action

DEFENDANTS' OPPOSITION TO PLAINTIFFS' TEMPORARY RESTRAINING ORDER

is equitable in nature; **damages cannot be recovered**." *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 790 (2015) (emphasis added). Since the recovery of damages is prohibited under the UCL, and Plaintiffs' damages are limited by the contracts they signed, it is ludicrous that Plaintiffs would attempt to obtain a TRO freezing all of the Defendants' personal and business assets based upon an alleged violation of the UCL.

47.    Plaintiffs are unclear in their Motion; however, they cite case law, which involves basing a UCL claim on a violation of California's false advertising laws, thus Defendants will discuss that issue. To state a claim under either the UCL based on false advertising, it is necessary to show that "members of the public are likely to be deceived." *Committee on Children's Television, Inc. v. General Foods Corp.*, (1983) 35 Cal. 3d 197, 211. Unless the challenged conduct "targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer." *Lavie v. Procter & Gamble Co.,* (2003) 105 Cal. App. 4th 496, 506–507.

48.    As noted by the FTC many years ago: "Perhaps a few misguided souls believe, for example, that all 'Danish pastry' is made in Denmark. Is it, therefore, an actionable deception to advertise 'Danish pastry' when it is made in this country? Of course not. A representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." *Id.*

49.    Wealth Assistants' alleged slide decks, merely state that the goal is to obtain $10,000 in profits by months 9-12 of owning an Amazon store.[5] *See* Ex. 1 to Cundiff Declaration. A reasonable consumer would understand that the examples of profitable stores in Wealth Assistant's alleged advertising, were just that, examples of profitability that might be attained, not an absolute guarantee that any certain number would be obtained by any certain date.

---

[5] Plaintiffs also have not even established that they had operational Amazon stores for 9-12 months.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' TEMPORARY RESTRAINING ORDER

**G.      Plaintiffs Have Not Shown Irreparable Harm or that the Equities Tip in His Favor.**

50.      Ordinarily, economic injury is not considered irreparable, because monetary damages are available as an adequate remedy. *Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.1991). As discussed *supra*, Plaintiffs cannot show irreparable harm as the relief they seek is exclusively monetary damages, which are easily calculable based upon the amounts paid under the written contracts.

51.      Moreover, the balance of hardships must tip "sharply in favor of the plaintiff." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012). Plaintiffs cannot show that the interim harm to Plaintiffs if the TRO is denied is greater than the interim harm to Defendants if an injunction is issued, i.e. that all their assets will be frozen and the doors to their businesses shuttered.

52.      Plaintiffs claim that Defendants will suffer "no oppressive hardship" is disingenuous at best. Plaintiffs seek to freeze all personal and business assets of multiple individuals and businesses. It is hard to imagine a greater economic harm than the one proposed by Plaintiffs. As discussed *supra*, in the limited scenarios where a freezing of assets is permitted, there are numerous exemptions in place to ensure that an individual can meet their basic living needs, which is notably absent here. Defendants are also not assuaged by the arbitrary proposed $9,000 cap and limitation of "ordinary personal and household expenses," which applies solely to the individual Defendants.

53.      On the other hand, the harm alleged by Plaintiffs is no more than the potential harm to any plaintiff in any lawsuit, the ultimate collectability of a judgment. Injunctions do not ordinarily issue in such circumstances because to hold otherwise would mean that any plaintiff could simply draft a specious lawsuit and have all a defendant's personal assets frozen essentially overnight. To issue a TRO here, based on the scintilla of admissible evidence offered by Plaintiffs would be a miscarriage of justice.

- 21 -

## V.    LACK OF PERSONAL JURISDICTION

54.    Defendants will address this Court's lack of personal jurisdiction over them in more depth, upon a Rule 12(b) Motion to Dismiss if they are ever properly served. However, it is evident from Plaintiffs' Complaint that they have not alleged sufficient facts to establish personal jurisdiction over any of the Defendants. Plaintiffs do not allege that any of the Defendants are California residents, only that Plaintiffs are.

55.    A California court may exercise personal jurisdiction over a nonresident defendant to the extent allowed under the state and federal Constitutions. *See* CODE CIV. PROC., § 410.10. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under California state law and federal due process are the same. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted).

56.    The exercise of personal jurisdiction is constitutionally permissible only if the defendant has sufficient "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, (1945) 326 U.S. 310, 316. "Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, (1984) 465 U.S. 783, 788.

57.    A defendant that has substantial, continuous, and systematic contacts with the forum state is subject to general jurisdiction. *Perkins v. Benguet Mining Co.*, (1952) 342 U.S. 437, 445–446. Absent such extensive contacts, a defendant may only be subject to specific jurisdiction. *Helicopteros Nacionales de Colombia v. Hall*, (1984) 466 U.S. 408, 414, fn. 8. Specific jurisdiction "depends on the quality and nature of the defendant's forum contacts in relation to the particular cause of action alleged." *HealthMarkets, Inc. v. Superior Court*, 171 Cal. App. 4th 1160, 1167 (2009).

58.    A nonresident defendant is subject to specific jurisdiction only if "(1) the defendant purposefully availed itself of the benefits of conducting activities in the forum state; (2) the controversy arises out of or is related to the defendant's forum contacts; and (3) the exercise of jurisdiction would be fair and reasonable." *Id.* (*Citing Burger King Corp. v. Rudzewicz*, (1985) 471 U.S. 462, 472, 475-478).

59.    Plaintiffs have "the initial burden to demonstrate facts establishing a basis for personal jurisdiction." *HealthMarkets*, 171 Cal. App. 4th at 1167. Plaintiffs' bare bones allegations that Wealth Assistants marketed its services throughout the United States and that it entered business contracts with a couple of California residents is certainly insufficient to establish the high burden of general jurisdiction over a nonresident. Plaintiffs' cursory jurisdictional allegations are also woefully insufficient to subject any of the Defendants to specific jurisdiction.

60.    "The purposeful availment inquiry ... focuses on the defendant's intentionality." *HealthMarkets*, 171 Cal. App. 4th at 1168 (citations omitted). "This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on his contacts with the forum." *Pavlovich v. Superior Court*, (2002) 29 Cal. 4th 262, 269.

61.    A few contracts with California residents is insufficient to establish purposeful availment, even for Wealth Assistants, let alone the other entity and individual defendants who were not a party to these contracts. *See Goehring v. Superior Court*, (1998) 62 Cal. App. 4th 894, 907 (finding no purposeful availment based solely on the defendants' execution of "sales, security and escrow agreements" with a forum resident); *Doe v. Unocal Corp.*, (9th Cir. 2001) 248 F.3d 915, 924 (finding no purposeful availment based solely on the defendant's contractual relations with a forum resident); *McGlinchy v. Shell Chemical Co.,* (9th Cir. 1988) 845 F.2d 802, 816 (same).

62.    With respect to the other entity Defendants, Plaintiffs have merely alleged that one or more directors or owners are common. However, the fact that "directors and officers were interlocking is insufficient to rebut the presumption that each common officer or director wore the appropriate 'hat' when making corporate and operational decisions for the respective entities," and does not provide basis for exercise of personal jurisdiction over a nonresident corporation, even in a state where an affiliate or subsidiary engaged in business. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 549 (2000) (*Citing Lowell Staats Mining Co., Inc. v. Pioneer Uravan Inc.*, (10th Cir. 1989) 878 F.2d 1259, 1262).

63.    Similarly, "the mere fact that an officer of the foreign corporation also exercised director duties in-forum" is insufficient to establish personal jurisdiction over that director or officer. *Rivelli v. Hemm*, 67 Cal. App. 5th 380, 396 (2021) (*Citing Sonora Diamond*, 83 Cal.App.4th at 549, 552). "Personal jurisdiction must be based on forum-related acts that were personally committed by each nonresident defendant." *Id.* (*Quoting In re Automobile Antitrust Cases I & II*, (2005) 135 Cal. App.4th 100, 113). "Allegations of conspiracy [also] do not establish as a matter of law that if one conspirator comes within the personal jurisdiction of our courts, then California may exercise jurisdiction over other nonresident defendants who are alleged to be part of that same conspiracy." *In re Automobile Antitrust*, 135 Cal. App.4th at 113.

64.    Accordingly, it is apparent that California does not have personal jurisdiction over any of the Defendants and issuance of this TRO would violate their due process rights.

## VI.    LACK OF ALLEGATIONS OF WRONGDOING BY THE OTHER DEFENDANTS

65.    With respect to all Defendants apart from Wealth Assistants and the individual defendants, (the **"Additional Defendants"**) Plaintiffs' Complaint and *Ex Parte* Application is completely devoid of any specific factual allegations of wrongdoing by said Additional Defendants. The allegations with respect to the Additional Defendants consist solely of the fact

- 24 -

that one Defendant Max K. Day bears some relationship to the other entities (whether it be by virtue of some level of ownership, management, a simple shared address for service of process, or even just a similar sounding name or initials). *See* Pls.' Motion at pp. 13-15. This is woefully insufficient to prove a likelihood of success on the merits on any of Plaintiffs' causes of action against these Additional Defendants. Plaintiffs have not alleged a single fact with respect to any action or inaction taken by the Additional Defendants. *Id.*

66.     Plaintiffs' counsel once again attempts to provide the sole evidentiary support against these Additional Defendants, through unsupported hearsay assertions that they do not appear to have legitimate business operations. *Id.*; Banks Decl. The Banks Declaration, even if it contained admissible evidence, merely states that he attempted to contact **one** of the fourteen additional defendants, and no one answered the phone. *See* Second Banks Declaration at ¶25. Again, this falls far short of Plaintiffs' burden at the TRO stage to show an actual fraudulent transfer of assets or conspiracy to commit fraud. Plaintiffs know they cannot possibly meet their burden, merely alleging that they "appear" to have no "real" operations based on a Google search and a phone call to single defendant. Pls.' Motion at p. 17. This is unsubstantiated and false. For example, HouTex Farm Equity Partners LLC is actually a cricket farm as Plaintiffs admit is stated on their website and it has legitimate operations that are wholly unrelated to Wealth Assistants or the claims in this case. Plaintiffs have the burden of showing a likelihood of success on every element of their claims against each and every Defendant in order to obtain a TRO. *Lopez*, 680 F.3d at 1072. As Plaintiffs admittedly cannot meet this burden, Plaintiffs' request for a TRO against the Additional Defendants must fail even in the highly unlikely event that they are even partially successful as to Wealth Assistants.

## VII.   CONCLUSION

Based on the foregoing and for good cause shown, Defendants respectfully requests that this Court deny Plaintiffs' Temporary Restraining Order and for such other and further relief to which Defendants may show themselves to be justly entitled.


Dated:   April 11, 2024.                          Respectfully submitted,
   Avon, CT

              By: */s/ Rachel M. Crockett*
              Rachel M. Crockett


## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants certifies that this Response contains 6,949 words, which complies with the word limit of L.R. 11-6.1

              */s/ Rachel M. Crocket*
              Rachel Crockett


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document, and any attachments, will be served to counsel of record, in accordance with the governing rules of procedure regarding service in this court on this ***April 11, 2024***, via email as follows:

              */s/ Rachel Crockett*
              Rachel Crockett

DEFENDANTS' OPPOSITION TO PLAINTIFFS' TEMPORARY RESTRAINING ORDER