RACHEL M. CROCKETT
California State Bar No. 266447
**LLOYD & MOUSILLI, PLLC**
11807 Westheimer Road
Suite 550 PMB 944
Houston, TX 77077
Tel: (512) 609-0059
Fax: (281) 783-8565
*litigation@lloydmousilli.com*

**ATTORNEYS FOR DEFENDANTS**

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DISTRICT**

| | |
|---|---|
| DAVID HOUGH;<br>MOULOUD HOCINE;<br>JENNIFER LEHMKUHL HILL;<br>AMUND THOMPSON;<br>PAUL PANICO<br><br>*Plaintiffs*,<br><br>v.<br><br>RYAN CARROLL; MAX K. DAY;<br>MAX O. DAY; MICHAEL DAY;<br>YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC;<br>WA DISTRIBUTION LLC;<br>PROVIDENCE OAK PROPERTIES, LLC;<br>WA AMAZON SELLER LLC;<br>MKD INVESTMENT ADVISOR, LLC;<br>MKD FAMILY BENEFICIARY, LLC;<br>MKD FAMILY PRIVATE MANAGEMENT COMPANY, LLC;<br>MAX DAY CONSULTING, LLC;<br>HOUTEX FARM EQUITY PARTNERS LLC; BUSINESS FINANCIAL SOLUTIONS ADVISORY LLC; EVO MAXX LLC;<br>YAX IP AND MANAGEMENT INC. (D.B.A. "FULFILLABLE"); WWKB LLC;<br>DREAMS TO REALITY LLC;<br><br>*Defendants.* | Case No.: 2:24-cv-02886<br><br>Assigned for all purposes to:<br>JUDGE WESLEY L. HSU<br><br>**JURISDICTIONAL DEFENDANTS RYAN CARROLL; MAX K. DAY; MAX O. DAY; MICHAEL DAY; YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC; AND WA DISTRIBUTION LLC'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION**<br><br>Action Filed: April 9, 2024<br>Hearing: April 29, 2024, 3:00 p.m. PT<br>Trial Date: N/A |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... - 2 -
MEMORANDUM OF POINTS AND AUTHORITIES ................................................. - 3 -
   I.   FACTUAL AND PROCEDURAL BACKGROUND ........................................ - 3 -
   II.  ARGUMENT AND AUTHORITIES .................................................................. - 5 -
     A.   The Proposed Preliminary Injunction is a Mandatory Injunction and is Unsupported by Applicable Law ............................................................................ - 5 -
     B.   The Harm Suffered by the Jurisdictional Defendants Will be Immense and Irreparable if a Preliminary Injunction is Issued ................................................. - 7 -
     C.   A Bond of $10 Million Should Be Issued for Any Proposed Preliminary Injunction ... - 9 -
     D.   Plaintiffs Have Established No Wrongdoing by Max O. Day or the other Non-Jurisdictional Defendants. ........................................................................... - 10 -
        a.   This Court lacks Personal Jurisdiction over Max O. Day ......................... - 10 -
        b.   This Court Has Already Ruled that it Lacks Personal Jurisdiction over the Non-Jurisdictional Defendants and the OSC was Only Issued as to the Jurisdictional Defendants. - 11 -
     E.   Plaintiffs Have No Evidence or Prior Fraud by Any of the Jurisdictional Defendants - 12 -
   III.  CONCLUSION .................................................................................................. - 13 -
CERTIFICATE OF COMPLIANCE ............................................................................ - 14 -
CERTIFICATE OF SERVICE ..................................................................................... - 14 -

# TABLE OF AUTHORITIES

**Cases**

*Accord F.T.C. v. U.S. Mortg. Funding, Inc.* ................................................................ - 8 -
*Accord Rosen v. Cascade Int'l, Inc.* ........................................................................... - 6 -
*Burger King Corp. v. Rudzewicz* ............................................................................. - 10 -
*Committee of Central American Refugees v. I.N.S.,* ................................................ - 4 -
*De Beers Consol. Mines v. United States* ................................................................. - 6 -
*Fabrique Innovations, Inc. v. A.P. Express, LLC* ..................................................... - 5 -
*Fed. Sav. & Loan Ins. Corp. v. Dixon* ........................................................ - 5 -, - 8 -
*Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Local No. 70* ................... - 5 -
*Gregori v. Bank of America* ...................................................................................... - 7 -
*In re Fredeman Litig.* ................................................................................. - 5 -, - 6 -
*Lowell Staats Mining Co., Inc. v. Pioneer Uravan Inc.* ........................................... - 12 -
*Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.* ............................................... - 5 -
*Motel & Hotel Apartments, Inc. v. Superior Court* .................................................. - 7 -
*Sonora Diamond Corp. v. Superior Court* .............................................................. - 12 -
*Stanley v. University of Southern California* ........................................................... - 4 -
*Stowe v. Matson* ........................................................................................................ - 5 -
*United States v. Thier* ................................................................................................ - 8 -

**Statutes**

Fed. R. Civ. P. 65 ..................................................................................................... - 11 -
Fed. R. Evid. 609(a) ................................................................................................. - 13 -
Federal Practice & Procedure § 2948 ........................................................................ - 5 -

JURISDICTIONAL DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PRELIMINARY INJUNCTION

COME NOW **JURISDICTIONAL DEFENDANTS RYAN CARROLL; MAX K. DAY; MAX O. DAY; MICHAEL DAY; YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC; and WA DISTRIBUTION LLC** ("**Jurisdictional Defendants**"), and hereby files *Jurisdictional Defendants' Supplemental Brief in Opposition to Plaintiffs' Application for a Preliminary Injunction* ("**Supplemental Brief**") and respectfully shows the Court as follows:

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.   FACTUAL AND PROCEDURAL BACKGROUND

1. On April 9, 2024, Plaintiffs filed an *Ex Parte* Application for a Temporary Restraining Order and an Order to Show Cause regarding a Preliminary Injunction ("**Application**"), seeking the extraordinary remedy of a freeze of all of the Defendants' assets pre-judgment as well as a disclosure of all their financial information pre-judgment. *See* Dkt. 9.

2. On April 11, 2024, Defendants filed an Opposition to Plaintiffs' Application ("**Opposition**") on the grounds that (a) this Court lacked personal jurisdiction over the Defendants; (b) the case should be compelled to binding arbitration pursuant to the Plaintiffs' written contracts; (c) Plaintiffs lacked a legal basis to freeze all of the Defendants' assets; (c) Plaintiffs failed to establish a likelihood of success on the merits on any of their claims; (d) Plaintiffs' evidence of alleged representations outside the written contracts constituted inadmissible parol evidence; (e) Plaintiffs had not established irreparable harm sufficient to grant a mandatory injunction that went beyond maintaining the status quo; and (f) the balance of the equities did not tip in Plaintiffs' favor. *See* Dkt. 13.

3. On April 12, 2024, Plaintiffs filed a Reply to Defendants' Opposition to Plaintiffs' Application. *See* Dkt. 15.

4.On April 15, 2024, this Court issued a Temporary Restraining Order (**"TRO"**), holding that (a) the Court did not have personal jurisdiction over any of the Defendants apart from the Defendants Ryan Carroll; Max O. Day; Max K. Day; Michael Day; Yax Ecommerce LLC; WA Distribution LLC; and Precision Trading Group, LLC (the **"Jurisdictional Defendants"**) based upon the facts available to the Court at the present time; (b) that the Jurisdictional Defendants were ordered to appear at an OSC on April 19, 2024 regarding why a preliminary injunction (**"PI"**) should not issue prohibiting them from withdrawing, transferring, spending, or otherwise disposing of any assets held by or for the benefit of Jurisdictional Defendants until the close of this proceeding, except that each human Defendant would be allowed to spend $9,000 per month and have the ability to seek leave of Court for additional expenditures; and (c) ordering the Jurisdictional Defendants to identify account information for all accounts that contain assets held by or for the benefit of the Jurisdictional Defendants. *See* Dkt. 17.

5.At the hearing on April 19, 2024, the Jurisdictional Defendants' counsel requested that this court (a) continue the hearing on the Application to allow for supplemental briefing on the issues of the asset freeze and the financial disclosures; (b) increase the monthly spending limit in the TRO for the individual Defendants to $13,000 per month; (c) include a provision in the TRO allowing the Jurisdictional Defendants to pay their attorney's fees. The Court agreed with the Jurisdictional Defendants' arguments in this regard and (a) set a continued hearing for April 29, 2024; (b) set a supplemental briefing schedule for that hearing; and (c) issued a Minute Order reflecting the changes to the TRO. *See* Dkt. 21.

6.Thus, the Jurisdictional Defendants hereby submit this Supplemental Brief in accordance with the Court's Minute Order. For purposes of judicial efficiency, the Jurisdictional Defendants hereby incorporate by reference the arguments previously made in their previously filed

Opposition (Dkt. 13) and will not be restating all of the arguments in their Opposition in this Supplemental Brief.

## II. ARGUMENT AND AUTHORITIES

### A. The Proposed Preliminary Injunction is a Mandatory Injunction and is Unsupported by Applicable Law

7. The PI sought by Plaintiffs seeks to freeze all of the Jurisdictional Defendants' assets without a trial on the merits, which is indisputably a mandatory injunction that goes beyond maintaining the status quo, requiring the Court to "be extremely cautious." *Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir.1994). Thus, this injunction should not issue "unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir.1986); *See also Fabrique Innovations, Inc. v. A.P. Express, LLC, No.* CV197904MWFGJSX, 2019 WL 7945586, at *3 (C.D. Cal. Sept. 24, 2019) ("mandatory injunction is disfavored and requires a heightened showing") (*Citing* Wright & A. Miller, Federal Practice & Procedure § 2948, Grounds for Granting or Denying a Preliminary Injunction (3d ed. 2018) ("Movant seeking a preliminary injunction that falls into one of the categories of historically disfavored preliminary injunctions, which either alter the status quo, are mandatory preliminary injunctions, or afford the movant all the relief that it could recover at the conclusion of a full trial on the merits, must satisfy a heightened burden.")).

8. "[T]his preliminary injunction, like the order in *Dixon*, is in the nature of an attachment whose availability is governed by Federal Rule of Civil Procedure 64 … and through that rule by state law." *In re Fredeman Litig.*, 843 F.2d 821, 826 (5th Cir. 1988); (*Citing Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987)). The remedy of attachment is, however, unavailable to the plaintiffs here. *Id.* Under Texas and California law, attachment may issue only upon a certain and liquidated demand that is liquidated or whose amount is reasonably certain,

and in California only for breach of contract claims. *Id. Dixon,* 835 F.2d at 560; *Stowe v. Matson*, 94 Cal. App. 2d 678, 683 (1949).

9. As the U.S. Supreme Court has explained, "long-settled federal law provide[s] that in all cases in federal court, ... state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Local No. 70*, 415 U.S. 423, 437 n.10 (1974). As the Eleventh Circuit has stated "we conclude that Rule 64, and not Rule 65 (which governs injunctions generally), provides the standard for evaluating a request for preliminary injunctive relief that is, in reality, no more than a request for prejudgment attachment; Rule 64 thus properly controls our disposition of these cases. *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1521–22 (11th Cir. 1994).

10. Plaintiffs essentially contend "that the *defendants are scoundrels who will try to escape judgment*, an allegation that, even if true, would not justify the preliminary injunction." *In re Fredeman Litig.*, 843 F.2d at 826 (emphasis added). In cases where the extraordinary remedy of an asset freeze has been permitted, "the assets frozen were in some way the subject of the litigation." *Id.* at 827 (collecting cases). "The defendants' assets here, by contrast, are simply unrelated and, under *De Beers*, may not be drawn into the dispute solely to aid the plaintiffs in enforcing a potential money judgment." *Id.* (Citing *De Beers Consol. Mines v. United States,* 325 U.S. 212, 220, 65 S. Ct. 1130, 1134, 89 L. Ed. 1566 (1945)).

11. In overturning the PI issued by the district court, the Fifth Circuit held that "the district court here, by contrast, froze essentially all of the defendants' assets, effectively putting the defendants into involuntary receivership, based on unproven claims for unliquidated damages." *Id.* at 828. That would be the exact result here if the Court were to issue the PI proposed by Plaintiffs.

12. "[A]n injunction is generally not permissible to secure a potential money damage judgment and that the injunction should be modified so as not to freeze assets not subject to equitable remedies." *In re Fredeman Litig.*, 843 F.2d 821, 825 (5th Cir. 1988) (citation omitted). "[T]he general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *Id. Accord Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994).

**B.    The Harm Suffered by the Jurisdictional Defendants Will be Immense and Irreparable if a Preliminary Injunction is Issued**

13. In the TRO, the Court found that the Defendants would not sustain any costs or damages by reason of being wrongfully enjoined or restrained. *See* Dkt. 17 at p. 6. If the TRO becomes a PI, the Jurisdictional Defendants will certainly sustain significant and irreparable damages.

14. While the Plaintiffs claim that the entity Defendants will suffer no harm from the issuance of this injunction as they have ceased operations, this is not the case. While Yax Ecommerce, LLC formerly known as Wealth Assistants, LLC (**"Wealth Assistants"**) has ceased business operations, it is currently in the process of winding up its business affairs, which includes legal expenses, accounting expenses (for bookkeeping and final tax returns), and other related professional fees. If the entity Defendants are not able to pay for such services, then they will suffer irreparable harm.

15. The proposed PI also does not provide for any ability of the Jurisdictional Defendants to pay their attorney's fees in this matter or any other matter. While the Court stated that the Jurisdictional Defendants could still pay their attorney's fees, the current PI proposed by Plaintiffs does not contain such terms. If the PI issues on the current terms proposed by Plaintiffs, then this PI will be the functional equivalent of a full trial on the merits, for not only this case but for a numerosity of other litigations and arbitrations involving the Jurisdictional Defendants, depriving them of their due process rights and their constitutional right to counsel of their choice.

16. It is highly unlikely that the Jurisdictional Defendants will find any legal counsel willing to represent them without payment. "A client deprived of the attorney of his choice suffers a particularly heavy penalty." *Motel & Hotel Apartments, Inc. v. Superior Court*, (2004) 121 Cal. App. 4th 773, 791 (*Citing Gregori v. Bank of America*, (1989) 207 Cal. App. 3d 291, 300). Here, the Plaintiffs purport to deprive the Jurisdictional Defendants of any counsel whatsoever.

17. In overruling the district court's decision to deny the defendant's attorney's when their assets were frozen via a TRO and eventually a preliminary injunction, the Fifth Circuit stated that:

> "[T]his suit was brought to establish the defendants' wrongdoing; the court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves. The basis of our adversary system is threatened when one party gains control of the other party's defense as appears to have happened here. Thus we conclude that some kind of an allowance must be made to permit each defendant to pay reasonable attorneys' fees."

*Dixon,* 835 F.2d at 565 (*Citing United States v. Thier*, 801 F.2d 1463 (1986), mod. on den of reh'g 809 F.2d 249 (1987); *Accord F.T.C. v. U.S. Mortg. Funding, Inc.*, No. 11-CV-80155, 2011 WL 2293377, at *2 (S.D. Fla. June 9, 2011).

18. Here, the Jurisdictional Defendants have already paid a retainer to the law firm of Lloyd & Mousilli, PLLC (well in advance of the filing of this litigation) and the Jurisdictional Defendants do not believe that the TRO or the PI would be applicable to those funds held in the law firm's IOLTA account. However, Plaintiffs' counsel has stated that he intends to contest this issue. If the TRO and the potential PI is held to be applicable to the funds previously paid to Lloyd & Mousilli, PLLC (well before the filing of this litigation) to secure the availability and provision of legal services in a numerosity of litigation, arbitration, and transactional matters, then the Jurisdictional Defendants will quite literally be left with no ability to defend themselves in this case and dozens of other matters; nor to appropriately wind up the affairs of the entity Defendants' businesses. In his hard to imagine irreparable harm greater than this.

19. For the individual Defendants, in addition to the issue of payment of their attorney's fees in this and other matters, Plaintiffs' counsel attempts to impose an arbitrary monthly spending limit of $9,000 per month. This amount is insufficient to meet the individual Defendants' "personal and household expenses." As set forth in the Affidavit of Max O. Day, his monthly needs to support him and his family are $13,000 per month, as provided for in the Court's Minute Order of April 23, 2024. *See* **Ex. A**, Max O. Day Decl. at ¶10.

20. Moreover, even if a $13,000 spending limit is more permanently approved, this does not account for things such as the individual Defendants' potential need to make larger purchases, such as a new family vehicle, new furniture, etc. The burden to seek leave of Court for such purchases would be substantial and costly.

21. While the Jurisdictional Defendants maintain that the issuance of any PI would be contrary to existing law; if any PI is issued by this Court, the Jurisdictional Defendants would request, at a minimum, that (a) a provision be included allowing for the payment of their attorney's fees in this proceeding and any other litigation, arbitration, or pre-suit disputes in which they may be involved; (b) that the monthly spending limit for the individual Jurisdictional Defendants be permanently raised to $13,000 per month so that they may meet their ordinary and household expenditures as permitted by the Court in its prior Minute Order.

**C.   A Bond of $10 Million Should Be Issued for Any Proposed Preliminary Injunction**

22. Given the significant and irreparable harm that would be suffered by the Jurisdictional Defendants if the proposed PI is issued, a significant bond is required. Part of the problem with issuing an asset freeze based upon tort claims with immeasurable damages (contrary to Texas, California, and Florida law) is the immeasurable harm that will be caused to defendants by such an injunction.

23. If Plaintiffs were properly seeking their easily calculable breach of contract damages, as required by their written contracts, then the Court and the Jurisdictional Defendants would be able to construct an appropriately measured bond. However, Plaintiffs are seeking a ludicrous and unlawful amount of over $1 million in damages, thus Jurisdictional Defendants need a minimum bond of $1 million dollars if this proposed asset-freeze is continued through trial. Furthermore, if Jurisdictional Defendants are prohibited in any way from paying their attorney's fees in this matter or the numerous other matters in which they are involved, then the resulting judgments from a complete and utter lack of legal defense (and Mr. Banks' absurd and unsupported requests for millions of dollars in damages in those other cases as well) could amount to well over $10 million, which will prove impossible to rectify after the fact. Thus, a bond of $10 million is requested if Plaintiffs' proposed PI is issued.

**D.    Plaintiffs Have Established No Wrongdoing by Max O. Day or the other Non-Jurisdictional Defendants.**

   a.    <u>This Court lacks Personal Jurisdiction over Max O. Day</u>

24. As set forth in the Declaration of Max O. Day, he only ever served as an independent contractor to Wealth Assistants. *See* Ex. A, Max O. Day Decl. at ¶5. He was not an employee, owner, manager or stakeholder. *Id.* He never had any access to any company funds, financial records, bank accounts, or other assets, beyond the occasional performance report provided by the owners and managers of Wealth Assistants. *Id.* at ¶6. Plaintiffs' counsel, Nico Banks' (**"Mr. Banks"**), relentless pursuit of Max O. Day in this litigation and other proceedings is a case of assumed malfeasance based upon a shared name. *Id.* at ¶9. Mr. Banks assumes, without any factual basis, that because Max O. Day happens to share a name, with Max K. Day, he must also have been an owner or manager of Wealth Assistants, and thus a participant in the alleged (but unsubstantiated) fraud. The TRO was erroneously issued against Max O. Day on the basis of Mr. Banks' false assertions of "fact" against Max O. Day.

25. In reality, Max O. Day is presently owed a substantial sum of money from Wealth Assistants. *See* Ex. A, Max O. Day Decl. at ¶8. This Court also lacks personal jurisdiction over Max O. Day as he was not an owner or manager of Wealth Assistants and had no dealings with California or its residents such that he should have expected to be hauled into Court in this forum. *Id.* at ¶5; *Burger King Corp. v. Rudzewicz*, (1985) 471 U.S. 462, 472, 475-478.

26. This litigation and the resultant TRO has caused significant financial strain to Max O. Day and his family. *See* Ex. A, Max O. Day Decl. at ¶9. It has also damaged his personal and professional reputation by falsely associating him with allegations of fraud, without any factual basis. *Id.* Thus, Defendant Max O. Day requests that he be excluded from any PI that may be issued by the Court on the basis that (a) the Court lacks personal jurisdiction over him; and (b) the Plaintiffs have no evidence of wrongdoing by Max O. Day.

   b. <u>This Court Has Already Ruled that it Lacks Personal Jurisdiction over the Non-Jurisdictional Defendants and the OSC was Only Issued as to the Jurisdictional Defendants.</u>

27. This hearing should only be in regards to the Jurisdictional Defendants and the terms of the proposed PI provided by the Plaintiffs in their Application, as this Court made it clear in its order that (a) it lacked jurisdiction over all Defendants, apart from the specified Jurisdictional Defendants (the "Non-Jurisdictional Defendants"); (b) the OSC was only issued as to the Jurisdictional Defendants as to why a PI should not issue on the terms proposed by Plaintiff in its Application. *See* Dkt. 17.

28. However, Plaintiffs' counsel, Mr. Banks, has now sent a last-minute email on the afternoon of April 24, 2024, attempting to propose new language for the PI, which vastly expands the reach of this Court's prior Orders. As set forth more fully in Defendants' Opposition, Plaintiffs have not established any evidence of wrongdoing by the Non-Jurisdictional Defendants, let alone any fraudulent transfers to the Non-Jurisdictional Defendants. Thus, Plaintiffs lack a factual and legal

basis to rope the Non-Jurisdictional Defendants into this proposed PI. Mr. Banks' last-minute email is nothing more than an attempt to get a second bite at the apple on his prior failed arguments against the Non-Jurisdictional Defendants.

29.    Furthermore, as the OSC was not issued as to the Non-Jurisdictional Defendants, and Mr. Banks admits that the new proposed language is significantly "broader" than the language included in the OSC, this also violates the due process rights of both the Jurisdictional Defendant and the Non-Jurisdictional Defendants. *See* FED. R. CIV. P. 65. This new proposed language by Mr. Banks is ludicrous, as it would result in a freeze of assets of completely unrelated entities over whom this Court lacks jurisdiction.

30.    As set forth more fully in the Defendants' Opposition, Plaintiffs have no evidence that any of these entities participated in any alleged wrongdoing. *See* Dkt. 13 at pp. 24-25. The allegations with respect to the Non-Jurisdictional Defendants consist solely of the fact that one Defendant Max K. Day bears some relationship to the other entities (whether it be by virtue of some level of ownership, management, a simple shared address for service of process, or even just a similar sounding name or initials). *See* Pls.' Application at pp. 13-15. The fact that one or more of the entities share a common owner or common name with one or more of the Jurisdictional Defendants is woefully insufficient. The fact that "directors and officers were interlocking is insufficient to rebut the presumption that each common officer or director wore the appropriate 'hat' when making corporate and operational decisions for the respective entities." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 549 (2000) (*Citing Lowell Staats Mining Co., Inc. v. Pioneer Uravan Inc.*, (10th Cir. 1989) 878 F.2d 1259, 1262). Especially at the preliminary injunction stage for a mandatory injunction, where Plaintiffs must make a clear showing of a high likelihood of success on the merits.

**E.    Plaintiffs Have No Evidence or Prior Fraud by Any of the Jurisdictional Defendants**

31. The Court based its TRO, in part, upon Plaintiffs' allegations that some of the Jurisdictional Defendants have engaged in prior fraud. *See* Dkt. 17 at p. 5. However, these false and inflammatory allegations of Plaintiffs and their counsel are unsupported. The evidence submitted by Plaintiffs consist of unsupported allegations in a complaint and a motion for summary judgment, which was not granted against any of the Jurisdictional Defendants. Allegations in a complaint or legal argument of counsel in a motion for summary judgment are hardly findings of fact or conclusions of law by any tribunal. Alleged, but unproven, credit card application fraud by third-parties and bankruptcy filings of third parties, are wholly unrelated to the facts of this case and are inadmissible. As the alleged evidence of prior bad acts do not consist of any conviction or judgment of fraud as required by the rules of evidence for prior bad acts, but rather merely consist of allegations in a complaint and motion for summary judgment filed by an adversary; they do not constitute findings of fact or final judgments and are wholly inadmissible in any event. *See* FED. R. EVID. 609(a).

### III.   CONCLUSION

32. Based on the foregoing and for good cause shown, the Jurisdictional Defendants respectfully requests that this Court deny Plaintiffs' Preliminary Injunction and for such other and further relief to which the Jurisdictional Defendants may show themselves to be justly entitled.

Dated:   April 26, 2024.

Respectfully submitted,

By: */s/ Rachel M. Crockett*
Rachel M. Crockett

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this Opposition contains 3,618 words, which complies with the word limit of L.R. 11-6.1

*/s/ Rachel M. Crocket*
Rachel Crockett

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document, and any attachments, will be served to counsel of record, in accordance with the governing rules of procedure regarding service in this court on this ***April 26, 2024***, via email as follows:

*/s/ Rachel Crockett*
Rachel Crockett