RACHEL M. CROCKETT
California State Bar No. 266447
**LLOYD & MOUSILLI, PLLC**
11807 Westheimer Road
Suite 550 PMB 944
Houston, TX 77077
Tel: (512) 609-0059
Fax: (413) 473-6164
litigation@lloydmousilli.com

**ATTORNEY FOR PLAINTIFF
LLOYD & MOUSILLI, PLLC**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| DAVID HOUGH;<br>MOULOUD HOCINE;<br>JENNIFER LEHMKUHL HILL;<br>AMUND THOMPSON;<br>PAUL PANICO<br><br>*Plaintiffs,*<br><br>v.<br><br>RYAN CARROLL; MAX K. DAY;<br>MAX O. DAY; MICHAEL DAY;<br>YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC;<br>WA DISTRIBUTION LLC;<br>PROVIDENCE OAK PROPERTIES, LLC;<br>WA AMAZON SELLER LLC;<br>MKD INVESTMENT ADVISOR, LLC;<br>MKD FAMILY BENEFICIARY, LLC;<br>MKD FAMILY PRIVATE MANAGEMENT COMPANY, LLC;<br>MAX DAY CONSULTING, LLC;<br>HOUTEX FARM EQUITY PARTNERS LLC; BUSINESS FINANCIAL SOLUTIONS ADVISORY LLC; EVO MAXX LLC;<br>YAX IP AND MANAGEMENT INC. (D.B.A. "FULFILLABLE"); WWKB LLC;<br>DREAMS TO REALITY LLC;<br><br>*Defendants.* | Case No.: 2:24-cv-02886<br><br>Assigned for all purposes to:<br>JUDGE WESLEY L. HSU<br><br><br>**JURISDICTIONAL DEFENDANTS RYAN CARROLL; MAX K. DAY; MAX O. DAY; MICHAEL DAY; YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC; AND WA DISTRIBUTION LLC'S MOTION TO COMPEL ARBITRATION AND MOTION TO STAY**<br><br><br>Action Filed: April 9, 2024<br>Hearing: April 29, 2024, 3:00 p.m. PT<br>Trial Date: N/A |

## TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on April 29, 2024, at 3:00 p.m. or as soon thereafter as this matter may be heard before Judge Wesley L. Hsu in the above-entitled Court, located at 350 W. 1ST Street, Los Angeles, CA 90012, Defendant Ryan Carroll, Max K. Day, Max O. Day, Michael Day, Yax Ecommerce LLC; Precision Trading Group, LLC; and WA Distribution LLC (**"Defendant"**) will and hereby do move this Court for (1) an Order compelling Plaintiffs David Hough, Mouloud Hocine, Jennifer Lehmkuhl Hill, Amund Thompson, and Paul Panico (**"Plaintiffs"**) to submit all claims herein to binding arbitration pursuant to CODE CIV. PROC. § 1281.2; and, (2) if an arbitration is ordered, pursuant to CODE CIV. PROC. § 1281.4, paragraph 1, an Order staying this action until the arbitration is completed.

This motion is made on the grounds that Plaintiff executed valid written arbitration agreements that govern the claims Plaintiff asserts in this action. Further, a stay of these proceedings is mandatory pursuant to CODE CIV. PROC. § 1281.4, paragraph 1, pending completion of the arbitration, if ordered.

This Motion is based upon this Notice, the instant Motion, including the attached Memorandum of Points and Authorities, Defendant's Motion to Stay Proceedings in this Action Pending a Determination on Defendant's Motion to Compel Arbitration, the accompanying Declaration of Max O. Day, all supporting exhibits, all pleadings and records on file in this action, any other matters of which the Court may or is required to take judicial notice, and any such further oral and documentary evidence as may be presented at the hearing on this Motion.

Dated:   April 27, 2024.
        Avon, CT

Respectfully submitted,

By: */s/ Rachel M. Crockett*
Rachel M. Crockett
Attorney-in-Charge

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. - 5 -
   I.   INTRODUCTION ........................................................................................................... - 5 -
   II.   STATEMENT OF FACTS ............................................................................................. - 5 -
      A.   The Agreements with Arbitration Clauses ............................................................ - 5 -
      B.   Plaintiffs' Refusal to Arbitrate ............................................................................... - 7 -
   III.   LEGAL STANDARD GOVERNING ARBITRATION CLAUSES .............................. - 7 -
      A.   The FAA is Applicable to the Contracts. .............................................................. - 8 -
      B.   The Court Must Compel Arbitration as a Valid Arbitration Agreement Exists. ... - 9 -
   IV.   THE ARBITRATION AGREEMENTS ARE ENFORCEABLE .................................. - 11 -
      A.   Valid Arbitration Agreements Exist ..................................................................... - 11 -
      B.   Plaintiffs' Claims are Within the Scope of the Arbitration Agreement. ............... - 12 -
      C.   There are No Grounds for Revocation of the Arbitration Agreement .................. - 14 -
      D.   Plaintiff is Equitably Estopped from Avoiding the Duty to Arbitrate ................... - 15 -
   V.   A STAY PENDING THE COMPLETION OF ARBITRATION IS MANDATORY .... - 17 -
   VI.   CONCLUSION AND PRAYER ................................................................................... - 17 -
CERTIFICATE OF COMPLIANCE ................................................................................................. - 18 -
CERTIFICATE OF SERVICE ........................................................................................................... - 18 -

**TABLE OF AUTHORITIES**

**Cases**

*Accord In re Bruce Terminix Co.*, 988 S.W.2d 702 (Tex. 1998) ................................................... - 16 -
*Accord Lapidus v. Arlen Beach Condominium Ass'n., Inc.*, 394 So.2d 1102 (Fla. 3d DCA 1981) - 8 -
*Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265 ........................................ - 8 -, - 16 -
*Appel v. Concierge Auctions*, LLC, No. 17-CV-02263-BAS-MDD, 2018 WL 1773479 (S.D. Cal. Apr. 13, 2018) ............................................................................................................................. - 8 -
*BallenIsles Country Club, Inc. v. Dexter Realty*, 24 So. 3d 649Fla. Dist. Ct. App. 2009) ........... - 10 -
*Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023 (11th Cir. 1982) ....................... - 16 -
*Boucher v. Alliance Title Company, Inc.*, (2005) 127 Cal.App.4th 262 ....................................... - 15 -
*Brennan v. Opus Bank,* (9th Cir. 2015) 796 F.3d 1125 ................................................................ - 12 -
*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ..................................... - 14 -, - 15 -
CAL. CODE CIV. PROC. § 1281.2 ..................................................................................................... - 10 -
*Cargill Ferrous Int'l v. SEA PHOENIX MV*, 325 F.3d 695 (5th Cir.2003) .................................. - 16 -
*Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir. 2000) .................................. - 13 -
*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716 (Tex. 2014) ................ - 14 -
*Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, No., 819CV00642JLSJDE, 2020 WL 620294 (C.D. Cal. Jan. 9, 2020) .............................................................................................................. - 17 -
*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ................................. - 9 -
*Cione v. Foresters Equity Services, Inc.*, 58 Cal. App. 4th 625 (1997) .......................................... - 8 -
*Citicorp Real Est., Inc. v. Smith*, 155 F.3d 1097 (9th Cir. 1998) .................................................. - 15 -
*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) ...................................................................... - 8 -
*Condee v. Longwood Mgmt. Corp.*, 88 Cal. App. 4th 215 (2001) ................................................ - 10 -

DEFENDANT LLOYD & MOUSILLI, PLLC'S MOTION TO COMPEL ARBITRATION AND MOTION TO STAY

*Dallas Cardiology Associates P.A. v. Mallick*, 978 S.W.2d 209 (Tex. App.—Texarkana 1998.. - 10 -
*Davis*, 59 Cal.App.4th at 214-215 ................................................................................ - 16 -
*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. JOO Oak Street*, (1983) 35 Cal.3d 312 ...- 10 -, - 14 -
*Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691 (9th Cir. 1986) ................................ - 16 -
*Ford v. Shearson Lehman Am. Exp., Inc.* (1980) 180 Cal.App.3d 1011 ...................... - 15 -
*Forest Oil Corp. v. McAllen*, 268 S.W.3d 51 (Tex. 2008) ............................................ - 10 -
*Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867 (9th Cir. 2021) ................................. - 15 -
*Gloster v. Sonic Automotive, Inc.*, (2014) 226 Cal. App.4th 438 ................................... - 9 -
*Groom v. Health Net*, (2000) 82 Cal. App.4th 1189 ............................................- 10 -, - 16 -
*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522 (5th Cir. 2019) .. - 10 -
*Henry v. Cash Biz, LP,* 551 S.W.3d 111 (Tex. 2018) .................................................. - 14 -
*Henry v. Gonzalez*, 18 S.W.3d 684 ............................................................................. - 10 -
*Hilton Sea, Inc. v. DMR Yachts*, Inc., 750 F. Supp. 35 (D.Me.1990) ......................... - 14 -
*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ...................................... - 12 -
*In re Odyssey Healthcare, Inc.,* 310 S.W.3d 419 (Tex. 2010) ..................................... - 11 -
*Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266 (Tex. 1992) ............................................ - 7 -
*Jackson v. Amazon.com, Inc.*, 559 F. Supp. 3d 1132 (S.D. Cal. 2021), aff'd, 65 F.4th 1093 (9th Cir. 2023) ................................................................................................................. - 11 -
*JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029 (N.D. Cal. 2012) .............. - 7 -
*Keating v. Superior Court*, (1982) 31 Cal.3d 584 ....................................................... - 10 -
*Kennebrew v. Harris*, 425 S.W.3d 588 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).... - 15 -
*Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016) ....................................................... - 16 -
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .......................- 9 -, - 17 -
*Nelsen v. Legacy Partners Residential, Inc.*, (2012) 207 Cal. App.4th 1115 ................. - 9 -
*Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013) .............. - 12 -
*Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716 (Tex. App—Fort Worth 1997) ................. - 8 -
*Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520 (1987) ........................................ - 8 -
*Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ................................. - 8 -
*Prudential Sec. Inc., v. Marshall*, 909 S.W.2d 896 (Tex. 1995) ................................. - 11 -
*Rice v. Downs*, 248 Cal. App. 4th 175 (2016) ......................................................- 10 -, - 11 -
*Royal Pro. Builders, Inc. v. Roggin*, 853 So. 2d 520 (Fla. Dist. Ct. App. 2003) .......... - 11 -
*Saperstein v. Thomas P. Gohagan & Co.*, 476 F. Supp. 3d 965 (N.D. Cal. 2020) ....... - 15 -
*Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999) ............................................. - 10 -
*Valdes v. Leisure Resource Group, Inc.*, 810 F.2d 1345 (5th Cir.1987) ..................... - 14 -
*William B. Roberts, Inc. v. McDrilling Co.*, 579 S.W.2d 335 ..................................... - 14 -

**Statutes**

559 F. Supp. 3d at 1144 ................................................................................................ - 13 -
9 U.S.C. § 1 ..................................................................................................................... - 8 -
9 U.S.C. § 2 ................................................................................................................... - 14 -
9 U.S.C. §§2, 4 (FAA) ................................................................................................... - 9 -
9 U.S.C. § 16(a)(1) ....................................................................................................... - 11 -
9 U.S.C. § 3 ................................................................................................................... - 17 -
Tex. Civ. Prac. & Rem. Code §§171.001, 171.002, 171.021 ....................................... - 9 -

**Rules**

AAA Commercial Rule 7(a) ......................................................................................... - 12 -

Defendant Lloyd & Mousilli, PLLC's Motion to Compel Arbitration and Motion to Stay

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

1. Arbitration is an efficient method for settling a dispute outside the courtroom and is strongly favored by both state and federal laws. Arbitration is so strongly favored that it is an abuse of discretion for a trial court to refuse to compel arbitration under a valid and enforceable agreement to arbitrate.

2. This action arises out of Plaintiffs' payment of money to Yax Ecommerce, LLC, formerly known as Wealth Assistants, LLC (**"Wealth Assistants"**) pursuant to the parties' written contracts (collectively, the **"Contracts"**) and the Jurisdictional Defendants alleged failure to perform the services agreed to under the terms of said Contracts. Pursuant to the Contracts, Plaintiffs expressly and knowingly agreed to arbitrate the claims alleged in the Complaint. A true and correct copy of the Contracts containing the relevant arbitration provisions to which Plaintiffs agreed is found attached as Exhibits A, B, C, D and E to the accompanying Declaration of Max O. Day. Because Plaintiffs' claims in this proceeding fall squarely within the scope of said arbitration provision, Plaintiffs' claims must be submitted to arbitration.

## II. STATEMENT OF FACTS

**A.   The Agreements with Arbitration Clauses**

3. Plaintiffs have improperly brought this action, bringing unsupported allegations of fraud, to avoid the clear arbitration clause and limitation of liability clause in their written contracts with Wealth Assistants. Pursuant to the arbitration clauses in their written contracts, Plaintiffs must submit all disputes related to or arising out of the contracts to binding arbitration, in some instances to be administered by the American Arbitration Association (**"AAA"**) in Houston, Texas, and in

other instances in Miami-Dade, Florida.[1] For four of the Plaintiffs, Clause 9 C of the written contracts provides that Plaintiffs must submit all disputes related to or arising out of the contracts to binding arbitration to be administered by the AAA in Houston, Texas in accordance with their Commercial Rules. *See* Ex. A. to Decl. Day at p. 7; Ex. B. to Decl. Day at p. 7; Ex. C. to Decl. Day at p. 7;  Ex. D. to Decl. Day at p. 7. For one of the Plaintiffs, Hough, the Arbitration Provision (Exhibit B to the written contracts), as expressly referenced by Clause 14 provides that arbitration shall be commenced in Miami-Dade, Florida. *See* Ex. E to Decl. Day at p. 6, 10.

4.  For the four Plaintiffs who agreed to submit all claims to arbitration in Houston, Texas, the pertinent language in the Contracts reflecting Plaintiffs' agreement to arbitration is as follows:

- Clause 9C of the Contracts, which states that "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules … The place of arbitration shall be Harris County, Texas. The arbitration shall be governed by the laws of the State of Texas."[2]

5.  For Plaintiff Hough, who agreed to submit his claims to arbitration in Miami-Dade, Florida, the pertinent language in the contracts reflecting his agreement to arbitration is as follows:

- Exhibit B to the Agreement is entitled "ARBITRATION PROVISION", and states that ANY CONTROVERSY OR CLAIM BETWEEN OR AMONG THE PARTIES HERETO INCLUDING BUT NOT LIMITED TO THOSE ARISING OUT OF OR RELATING TO THIS INSTRUMENT, AGREEMENT OR DOCUMENT OR ANY RELATED

---

[1] The Service Agreement between Thompson and Wealth Assistants is attached to the Declaration of Max O. Day as **Exhibit A**. The Service Agreement between Pacino and Wealth Assistants is attached to the Declaration of Max O. Day as **Exhibit B**. The Service Agreement between Hocine and Wealth Assistants is attached to the Declaration of Max O. Day as **Exhibit C**. The Service Agreement between Hill and Wealth Assistants is attached to the Declaration of Max O. Day as **Exhibit D**. The Service Agreement between Hough and Wealth Assistants is attached to the Declaration of Max O. Day as **Exhibit E**.

[2] *See* Ex. A. to Decl. Day at p. 7; Ex. B. to Decl. Day at p. 7; Ex. C. to Decl. Day at p. 7; Ex. D. to Decl. Day at p. 7.

Defendant Lloyd & Mousilli, PLLC's Motion to Compel Arbitration and Motion to Stay

INSTRUMENTS, AGREEMENTS OR DOCUMENTS, INCLUDING ANY CLAIM BASED ON OR ARISING FROM AN ALLEGED TORT, SHALL BE DETERMINED BY BINDING ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT … THE ARBITRATION SHALL BE CONDUCTED IN THE COUNTY OF MIAMI-DADE, MIAMI, FLORIDA."[3]

6. The plain language of the arbitration agreements in all of the Plaintiffs' Contracts required Plaintiffs to submit all controversies between the parties to arbitration.

**B.   Plaintiffs' Refusal to Arbitrate**

7. The Complaint alleges a myriad of causes of action against the Jurisdictional Defendants, which are all centered around Plaintiffs' payment of funds to Wealth Assistants under the terms of the written Contracts and Wealth Assistant's alleged failure to perform services under the Contracts. Plaintiffs repeatedly and extensively refer to and rely upon the Contracts throughout their Complaint. *See* Dkt. 1 at ¶¶ 38-51, 59-63, 67-68, 72, 76.

8. All of Plaintiffs' claims are subject to binding arbitration under the above-cited provisions. Indeed, the Complaint references the Contracts extensively. *Id.* Yet, Plaintiffs refuse to submit their claims to arbitration. Therefore, the Jurisdictional Defendants were forced to file this Motion.

### III.   LEGAL STANDARD GOVERNING ARBITRATION CLAUSES

9. Four of the Contracts have clear choice of law provisions which state that Texas law shall apply to any and all disputes under the agreements. *See* Ex. A. to Decl. Day at p. 7; Ex. B. to Decl. Day at p. 7; Ex. C. to Decl. Day at p. 7;  Ex. D. to Decl. Day at p. 7. For Plaintiff Hough, his contract has a clear choice of law provision, which states that Florida law applies. *See* Ex. E to Decl. Day at p. 6, 10.  Therefore, Texas and Florida law, not California law should apply to the determination of

---

[3] *See* Ex. E to Decl. Day at p. 6, 10.

this motion. *See JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012) ("all claims 'arising from or related to' a contract are covered by the contract's choice-of-law clause, regardless of whether they are characterized as contract or tort claims) (citations omitted). However, the law governing arbitration provisions in all three states is substantially the same in this case.

10.  Arbitration is strongly favored under Texas law, California law, Florida law and federal law. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992) ("The public policy of both our state and federal governments favor agreements to resolve legal disputes through such voluntary settlement procedures"); *Cione v. Foresters Equity Services, Inc.*, 58 Cal. App. 4th 625, 638 (1997) ("the particular facts must be viewed in light of the strong policy favoring arbitration"); *Accord Lapidus v. Arlen Beach Condominium Ass'n., Inc*., 394 So.2d 1102 (Fla. 3d DCA 1981).

**A.   The FAA is Applicable to the Contracts.**

11.  Moreover, the Contracts here are covered by the Federal Arbitration Act (**"FAA"**), as expressly referenced in Hough's agreement as they affect interstate commerce. The FAA applies to all suits in state and federal court when the dispute concerns a "contract evidencing a transaction involving commerce." *Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525 (1987); 9 U.S.C. § 1 ("commerce" means commerce "among the several States ..."). Nor is its application limited solely to interstate shipment of goods. *Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n. 7 (1967). For jurisdiction, the FAA does not require a substantial effect on interstate commerce; it requires only that commerce be involved or affected. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citations omitted). Here, Plaintiffs admit that they are California residents who contracted with an out-of-state entity for the creation of Amazon storefronts which were to sell products on the worldwide web on a nationwide basis. *See* Dkt. 1 at ¶¶1, 15-27, 38, 40. Furthermore, if some activity of one of the parties, even if not directly the subject of the contract or transaction at issue, has a nexus to interstate commerce, the FAA applies. *Appel v. Concierge Auctions*, *LLC*, No. 17-CV-

02263-BAS-MDD, 2018 WL 1773479, at *3 (S.D. Cal. Apr. 13, 2018); *See also Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 282 (holding the FAA applied to a local service contract between a homeowner and termite control company because the termite control company was multi-state in nature and used out-of-state material in performing on the contract); *Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716, 720 (Tex. App—Fort Worth 1997) (purchase of mobile home manufactured and delivered in Texas affected interstate commerce where mobile home included components purchased or manufactured in other states and countries and where Florida manufacturer operated facilities in other states and was bonded by New York insurance company).

12.    The FAA reflects a strong federal policy toward resolving disputed arbitrable issues through arbitration; indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the language itself or an allegation of waiver, delay, or a likely defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

**B.    The Court Must Compel Arbitration as a Valid Arbitration Agreement Exists.**

13.    An arbitration clause is governed by the same principles of contract interpretation as other contractual agreements. "The fundamental rule is that interpretation of... any contract ... is governed by the mutual intent of the parties at the time they form the contract ... The parties' intent is found, if possible, solely in the contract's written provisions. [citation] "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless "used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation." *Gloster v. Sonic Automotive, Inc.*, (2014) 226 Cal. App.4th 438, 447, *citing Nelsen v. Legacy Partners Residential, Inc.*, (2012) 207 Cal. App.4th 1115, 1129).

14.    Under the FAA, Texas and Florida law, once a party seeking to compel arbitration establishes that (1) there is a valid agreement to arbitrate and (2) that the claims raised are within the agreement's scope, then the trial court ***must*** compel arbitration. *See* 9 U.S.C. §§2, 4 (FAA); TEX.

Civ. Prac. & Rem. Code §§171.001, 171.002, 171.021 (TAA); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (the court's role is limited to determining whether a valid arbitration agreement covering the claims exists); *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999).

15. Similarly, California also has a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, (1983) 35 Cal.3d 312, 322 (reversing a trial court's order denying a motion to compel arbitration); *See also Groom v. Health Net*, (2000) 82 Cal. App.4th 1189; *See also Keating v. Superior Court*, (1982) 31 Cal.3d 584.) Consistent with this policy, Cal. Code Civ. Proc. § 1281.2 provides:

> "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court s**hall order the petitioner and the respondent to arbitrate the controversy** if it determines that an agreement to arbitrate the controversy exists, unless it determines that: (a) The right to compel arbitration has been waived by the petitioner; or (b) Grounds exist for the revocation of the agreement."

Cal. Code Civ. Proc. § 1281.2. (emphasis added).

16. Under Texas, Florida, and California law, once a party establishes the existence of a valid arbitration agreement, a presumption attaches favoring arbitration. *See Henry v. Gonzalez*, 18 S.W.3d 684, 689 (Tex. App.–San Antonio 2000, pet. dism'd by agr.); *Condee v. Longwood Mgmt. Corp.*, 88 Cal. App. 4th 215, 218-219 (2001); *Seifert*, 750 So. 2d at 636. The burden then shifts to the opposing party to establish some ground for the revocation of the arbitration agreement. *Id.* Doubts regarding the scope of arbitration agreements are resolved in favor of arbitration. *Dallas Cardiology Associates P.A. v. Mallick*, 978 S.W.2d 209, 212 (Tex. App.—Texarkana 1998); *Rice v. Downs*, 248 Cal. App. 4th 175, 185 (2016), as modified on denial of reh'g (June 23, 2016), as

modified (June 28, 2016); *BallenIsles Country Club, Inc. v. Dexter Realty*, 24 So. 3d 649, 652 (Fla. Dist. Ct. App. 2009).

17. The policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Prudential Sec. Inc., v. Marshall*, 909 S.W.2d 896, 898-99 (Tex. 1995); *Accord Downs*, 248 Cal. App. at 185; *Royal Pro. Builders, Inc. v. Roggin*, 853 So. 2d 520, 523 (Fla. Dist. Ct. App. 2003).

18. "The party opposing arbitration has the burden of demonstrating that an arbitration clause cannot be interpreted to require arbitration of the dispute." *Downs*, 248 Cal. App. At 185; *See also Jackson v. Amazon.com, Inc.*, 559 F. Supp. 3d 1132, 1144 (S.D. Cal. 2021), aff'd, 65 F.4th 1093 (9th Cir. 2023). In fact, it is an abuse of discretion for a trial court to refuse to compel arbitration under a valid and enforceable arbitration agreement. *In re Odyssey Healthcare, Inc.,* 310 S.W.3d 419, 422 (Tex. 2010). The denial of the right to arbitration is so severe, that the FAA authorizes interlocutory appeals from orders denying arbitration. 9 U.S.C. § 16(a)(1)

19. As further set forth below, compelling Plaintiffs' claims to arbitration is appropriate because the arbitration agreements are valid and enforceable, are not revocable, and no party has waived the right to arbitrate under these agreements.

### IV. THE ARBITRATION AGREEMENTS ARE ENFORCEABLE

**A. Valid Arbitration Agreements Exist**

20. As discussed *supra*, each and every Plaintiff executed a written contract containing a binding arbitration agreement. The arbitration agreements are valid and enforceable. Plaintiffs' contracts state that the arbitration is to be governed by the highly respected and well-known American Arbitration Association (**"AAA"**) rules, which have been widely accepted as reasonable by California and federal courts. Furthermore, "[t]he question whether the parties have submitted a

particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

21. The parties here clearly and unmistakably agreed to have an arbitrator determine questions of arbitrability. The arbitration agreements mandate arbitration in accordance with the AAA rules. Rule 7 of those rules states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" and "the existence or validity of a contract of which an arbitration clause forms a part." *See* AAA Commercial Rule 7(a). "'[V]irtually every circuit to have considered the issue has determined that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank,* (9th Cir. 2015) 796 F.3d 1125, 1130; (*Quoting Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases)). Furthermore, "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." *Id.* (collecting cases). Thus, whether the Plaintiffs were sophisticated parties or not and whether they were commercial contracts or not, which they are, is of no import.

22. The arbitration agreements are valid and enforceable and regardless all issues concerning the validity of the arbitration clauses in Plaintiffs' contracts and the arbitrability of Plaintiffs' claims must be determined by the Arbitrator, not the trial court.

**B.     Plaintiffs' Claims are Within the Scope of the Arbitration Agreement.**

23. It is indisputable that Plaintiffs' claims stem from their written contracts with Wealth Assistants. Plaintiffs would not have paid a single dollar to Wealth Assistants absent execution of the Contracts. All of Plaintiff's claims, although disguised as fraud claims, revolve around an alleged failure to perform under the written Contracts.

24. Furthermore, the arbitration clauses in this case are written broadly and encompass "[a]ny controversy or claim *arising out of or relating to* this Agreement," and in the case of Plaintiff Hough specifically reference "any claim based on or arising from an alleged tort." See Ex. A. to Decl. Day at p. 7; Ex. B. to Decl. Day at p. 7; Ex. C. to Decl. Day at p. 7; Ex. D. to Decl. Day at p. 7; Ex. E to Decl. Day at p. 6, 10 (emphasis added). Thus, the arbitration agreements are to be interpreted broadly and cover tort claims which have their "root in the relationship between the parties which was created by the contract. As stated by the district court in *Jackson v. Amazon.com*,

> It [i]s well established in both state and Ninth Circuit decisions that an arbitration provision that include[s] both the "arising from" or "arising out of" type of language and a phrase such as "in connection with" or "relating to" extend[s] the scope of an arbitration provision to also encompass tort claims having "their roots in the relationship between the parties which was created by the contract" and "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.

559 F. Supp. 3d at 1144 (citations omitted).

25. All of the issues of which Plaintiffs complain are breach of contract issues that are clearly rooted in the parties' relationship, which was created by the Contracts: (1) that Wealth Assistants did not set up certain online stores as allegedly promised to Plaintiffs in the Contracts; (2) that Wealth Assistants did not provide certain inventory to Plaintiffs as allegedly promised in the Contracts; and (3) that Wealth Assistants allegedly did not honor the buyback clause in the Contracts. *See* Dkt. 1 at ¶¶ 38-51, 59-63, 67-68, 72, 76. By signing the Contracts (which contain arbitration clauses), Plaintiffs agreed to submit all disputes relating to Wealth Assistant's alleged failure to perform services under the agreements to arbitration. They cannot now evade those obligations by recasting their claims as tort claims.

26. "A plaintiff may thus not 'plead around' an 'absolute bar to relief' simply 'by recasting the cause of action as one for unfair competition" or fraud. *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000); *See also Hilton Sea, Inc. v. DMR Yachts*, Inc., 750 F. Supp.

35, 39 (D.Me.1990). All of Plaintiffs' claims are actually breach of contract claims, which are expressly covered by the parties' written Contracts, and Claimant cannot recast these acts or omissions as tort claims to evade the arbitration clauses. *See Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) ("[t]he economic loss rule generally precludes recovery in tort for losses resulting from a party's failure to perform under a contract when the only harm is the economic loss of contract expectations."); *William B. Roberts, Inc. v. McDrilling Co.*, 579 S.W.2d 335, 340 (Tex. Civ. App.-Corpus Christi 1979, no writ) ("A promise to perform in the future, although made for the purpose of inducing another to enter a contract, will not amount to legal fraud, though at a later date, the promise, without any excuse is broken. This is a plain and well established proposition of law; otherwise, every breach of contract would amount to fraud."), *cited with approval and with emphasis in, Valdes v. Leisure Resource Group, Inc.*, 810 F.2d 1345, 1350 n. 4 (5th Cir.1987); *Hilton Sea*, 750 F. Supp. at 39 ("A failure to perform as promised does not, without more, constitute fraud. If the opposite were true, every breach of contract would present a colorable claim for fraud and, perhaps, a RICO violation.").

27. Because of the strong public policy favoring arbitration agreements, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Henry v. Cash Biz, LP,* 551 S.W.3d 111, 115 (Tex. 2018); *Ericksen*, 35 Cal.3d at 320. As the arbitration agreements are broad, and Plaintiff's claims are clearly rooted in the parties relationship created by the Contracts and have at a minimum a significant relationship to the Contracts, this Court must compel such claims to arbitration.

**C.     There are No Grounds for Revocation of the Arbitration Agreement**

28. A written agreement to arbitrate is enforceable, "save upon such grounds as exist for the revocation of any contract." 9 U.S.C. § 2; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). These grounds include, among other things, incapacity, undue influence, duress,

illegality, and fraud. *Buckeye Check Cashing*, 546 U.S. at 443. The burden of proving such a ground falls on the party opposing the contract. *Saperstein v. Thomas P. Gohagan & Co.*, 476 F. Supp. 3d 965, 973 (N.D. Cal. 2020).

29.  It is noteworthy here, that Plaintiffs do not seek to rescind the Contracts or to declare the entire Contracts void. To escape the obligations of contract, an aggrieved party must rescind by prompt notice and offer to restore consideration received. *Citicorp Real Est., Inc. v. Smith*, 155 F.3d 1097, 1103 (9th Cir. 1998); *Kennebrew v. Harris*, 425 S.W.3d 588, 596 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) *Ford v. Shearson Lehman Am. Exp., Inc.* (1980) 180 Cal.App.3d 1011, 1028. Plaintiffs have done neither, but rather rely upon the provisions of the Contract, including its alleged promises to create Amazon stores, supply inventory, and buy-back stores under certain conditions to make their claims herein. *See* Dkt. 1 at ¶¶ 38-51, 59-63, 67-68, 72, 76.

**D.    Plaintiff is Equitably Estopped from Avoiding the Duty to Arbitrate**

30.   Equitable estoppel prevents a party from asserting legal rights that, in equity and good conscience, they should not be allowed to assert. The doctrine precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens the contract imposes. "The fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021) (*Quoting Boucher v. Alliance Title Company, Inc.*, (2005) 127 Cal.App.4th 262, 271-272.)

31.    The vast majority of the "misrepresentations" upon which Plaintiffs rely to make their fraud claims are representations in the written Contracts. *See* Dkt. 1 at ¶¶ 38-51. The Complaint also admits that Plaintiffs obtained benefits from the Contracts – Amazon storefronts, inventory, and revenue from said Amazon storefronts. *Id.* at ¶¶ 70, 74, 78. Hence, Plaintiffs are equitably estopped from arguing against the enforceability of the arbitration clauses contained in the Contracts while simultaneously: (1) acknowledging that they received benefits from those Contracts and (2) seeking

to enforce Wealth Assistants' purported breach thereof. Plaintiffs must seek recission of the Contracts and return all benefits received thereunder before seeking to evade its obligations.

**E.    The Jurisdictional Defendants Have Not Waived Their Arbitration Rights**

32.    A determination of whether "the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (*Quoting Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). Because waiver of the right to arbitration is disfavored, "any party arguing waiver of arbitration bears a heavy burden of proof." *Id.* (*Quoting Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982)); *Accord In re Bruce Terminix Co.*, 988 S.W.2d 702, 705 (Tex. 1998). As such, "[a] party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* (citations omitted).

33.    The mere participation in litigation (i.e., the filing of an answer, a demurrer, service of written discovery, and the taking of depositions) does not necessarily amount to a waiver of arbitration rights. *Cargill Ferrous Int'l v. SEA PHOENIX MV*, 325 F.3d 695, 700–01 (5th Cir.2003) (holding that arbitration was not waived even though the parties had conducted full discovery and had a bench trial on the merits after the district court refused to compel arbitration, when the party seeking arbitration asserted that right in its initial answer and filed a motion to compel arbitration six months later when only a minimal amount of discovery had occurred); *Bruce Terminix*, 988 S.W.2d at 704 ("when only a minimal amount of discovery has been conducted, which may also be useful for the purpose of arbitration, the court should not ordinarily infer waiver based upon prejudice."). Rather, "waiver of the right to compel arbitration normally means some impairment of the other party's ability to participate in arbitration." *Groom,* 82 Cal.App.4th at 1197; *See also Davis*, 59 Cal.App.4th at 214-215.

34.     The Jurisdictional Defendants have not waived their right to compel arbitration. "[D]efending against attempts to obtain a TRO or preliminary injunction do not constitute acts inconsistent with the right to arbitrate." *Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc., No.*, 819CV00642JLSJDE, 2020 WL 620294, at *9 (C.D. Cal. Jan. 9, 2020). Here, the Jurisdictional Defendants have merely opposed Plaintiffs' attempts to obtain a temporary restraining order and a preliminary injunction, and they raised their right to compel arbitration in their first filing with this Court. *See* Dkt. 13 at p. 6. The Jurisdictional Defendants have not participated in written discovery or engaged in any other law or motion practice, apart from the filing of this Motion to Compel Arbitration and Motion to Stay.

## V.     A STAY PENDING THE COMPLETION OF ARBITRATION IS MANDATORY

35.     A stay of litigation pending the conclusion of arbitration is mandatory in any case raising a dispute referable to arbitration under the FAA. 9 U.S.C. § 3; *See also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22. All of the claims in the Complaint are subject to the arbitration agreements executed by Plaintiffs and must be compelled to arbitration. Thus, this Court must stay all litigation pertaining to the Jurisdictional Defendants, including all discovery and law and motion practice until arbitration is completed. *Id.*

## VI.     CONCLUSION AND PRAYER

36.     Based on the foregoing and for good cause shown, the Jurisdictional Defendants respectfully request that this Court grant their Motion to Compel Arbitration and Motion to Stay and enter an order (1) compelling all of Plaintiffs' claims herein to binding arbitration; and (2) staying this proceeding until the final resolution of the arbitration. The Jurisdictional Defendants pray for such other and further relief to which the Jurisdictional Defendants may show themselves to be justly entitled.

Dated: April 27, 2024.
Avon, CT

Respectfully submitted,

By: */s/ Rachel M. Crockett*
Rachel M. Crockett
Attorney-in-Charge

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this Motion contains 4,430 words, which complies with the word limit of L.R. 11-6.1

*/s/ Rachel M. Crocket*
Rachel Crockett

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document, and any attachments, will be served to counsel of record, in accordance with the governing rules of procedure regarding service in this court on this *April 27, 2024*, via email as follows:

*/s/ Rachel Crockett*
Rachel Crockett

Defendant Lloyd & Mousilli, PLLC's Motion to Compel Arbitration and Motion to Stay