RACHEL M. CROCKETT
California State Bar No. 266447
**LLOYD & MOUSILLI, PLLC**
11807 Westheimer Road
Suite 550 PMB 944
Houston, TX 77077
Tel: (512) 609-0059
Fax: (281) 783-8565
*litigation@lloydmousilli.com*

**ATTORNEYS FOR DEFENDANTS**

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DISTRICT**

| | |
|---|---|
| **DAVID HOUGH;**<br>**MOULOUD HOCINE;**<br>**JENNIFER LEHMKUHL HILL;**<br>**AMUND THOMPSON;**<br>**PAUL PANICO**<br><br>*Plaintiffs*,<br><br>v.<br><br>**RYAN CARROLL; MAX K. DAY;**<br>**MAX O. DAY; MICHAEL DAY;**<br>**YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC;**<br>**WA DISTRIBUTION LLC;**<br>**PROVIDENCE OAK PROPERTIES, LLC;**<br>**WA AMAZON SELLER LLC;**<br>**MKD INVESTMENT ADVISOR, LLC;**<br>**MKD FAMILY BENEFICIARY, LLC;**<br>**MKD FAMILY PRIVATE MANAGEMENT COMPANY, LLC;**<br>**MAX DAY CONSULTING, LLC;**<br>**HOUTEX FARM EQUITY PARTNERS LLC; BUSINESS FINANCIAL SOLUTIONS ADVISORY LLC; EVO MAXX LLC;**<br>**YAX IP AND MANAGEMENT INC. (D.B.A. "FULFILLABLE"); WWKB LLC;**<br>**DREAMS TO REALITY LLC;**<br><br>*Defendants*. | Case No.: 2:24-cv-02886<br><br>Assigned for all purposes to:<br>JUDGE WESLEY L. HSU<br><br>**JURISDICTIONAL DEFENDANTS RYAN CARROLL; MAX K. DAY; MAX O. DAY; MICHAEL DAY; YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC; AND WA DISTRIBUTION LLC'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S EX PARTE MOTION FOR EXPEDITED BRIEFING AND MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY**<br><br>Action Filed: April 9, 2024<br>Hearing: April 29, 2024, 3:00 p.m. PT<br>Trial Date: N/A |

- 1 -

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... - 2 -
MEMORANDUM OF POINTS AND AUTHORITIES ................................................... - 4 -
  I.    FACTUAL AND PROCEDURAL BACKGROUND ............................................ - 4 -
  II.   ARGUMENT AND AUTHORITIES ..................................................................... - 8 -
    A.  Legal Standard. ...................................................................................................... - 8 -
    B.  The Proposed Expedited Discovery is Woefully Premature ............................. - 9 -
  III.  CONCLUSION ........................................................................................................ - 17 -
CERTIFICATE OF COMPLIANCE ................................................................................. - 17 -
CERTIFICATE OF SERVICE ............................................................................................ - 17 -

# TABLE OF AUTHORITIES

**Cases**

*Accord Cai v. CMB Exp. LLC*, No. CV222025MWFJPRX, 2024 WL 439441 (C.D. Cal. Jan. 29, 2024) ................................................................................................................ -15-, - 16 -
*Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063 (C.D. Cal. 2009) .................... - 8 -, - 9 -, - 10 -
*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996) ................... - 13 -
*Cai*, 2024 WL 439441 ................................................................................................... - 16 -
*Davis v. Bangs*, No. 220CV05738SBJDEX, 2021 WL 6882324 (C.D. Cal. Mar. 26, 2021) ....... - 16 -
*Dickson v. Nat'l Maintenance & Repair of Ky., Inc.*, No. 5:08–CV–8, 2011 WL 2610195 (W.D.Ky. July 1, 2011) ....................................................................................................... - 14 -
*Dimension Data N. Am. v. NetStar–1, Inc.*, 226 F.R.D. 528 (E.D.N.C.2005) ............................... - 8 -
*DiNapoli v. Int'l Alliance of Theatrical Stage Employees 8*, Civ. Action No. 09–5924, 2011 WL 1004576 (E.D.Pa. Mar. 18, 2011) ................................................................................ - 14 -
*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4 (D.D.C.2006) ............................................................................................................. - 8 -
*Grosek v. Panther Transp., Inc.*, 251 F.R.D. 162 (M.D.Pa.2008) .............................................. - 14 -
*Hallford v. Cal. Dep't of Corrections*, No. CIV S–05–0573 FCD DAD P, 2010 WL 921166 (E.D.Cal. Mar. 12, 2010) ........................................................................................... - 14 -
*Hernandez v. Mimi's Rock Corp.*, 632 F. Supp. 3d 1052 (N.D. Cal. 2022) ................................. - 13 -
*Lincoln Elec. Co. v. MPM Techs., Inc.*, No. 1:08–CV–2853 WL 2413625 (N.D.Ohio Aug. 5, 2009) - 15 -
*Mack Boring & Parts Co. v. Novis Marine Ltd.*, Civ. Action No. 06–2692(HAA), 2008 WL 5136955 (D.N.J. Dec. 5, 2008) ................................................................................. - 15 -
*Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618 (N.D.Ill.2000) ................. - 8 -
*Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*, 2012 WL 12887396 (C.D. Cal. Nov. 14, 2012) - 16 -
*Quoting Davis v. Leal*, 43 F. Supp. 2d 1102, 1109 (E.D. Cal. 1999) ......................................... - 16 -
*Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418 (D.Colo.2003) .......... - 8 -
*Ranney–Brown Distribs., Inc. v. E.T. Barwick Indus., Inc.*, 75 F.R.D. 3 (S.D.Ohio 1977) .......... - 14 -
*Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077 (N.D. Cal. Dec. 19, 2009) - 13 -
*Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir.2009) ............................................... - 9 -
*Sierrapine v. Refiner Prod. Mfg., Inc.*, 275 F.R.D. 604 (E.D. Cal. 2011) ......................... - 14 -, - 16 -

JURISDICTIONAL DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S EX PARTE MOTION FOR EXPEDITED BRIEFING AND MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY

*Textron Fin. Corp. v. Gallegos*, No. 15CV1678-LAB (DHB), 2016 WL 4077505 (S.D. Cal. Aug. 1, 2016) .................................................................................................................. - 14 -

*U.S. EEOC v. Ian Schrager Hotels, Inc.*, No. CV 99–0987GAFRCX, 2000 WL 307470 (C.D.Cal. Mar. 8, 2000).................................................................................................................. - 15 -

*U.S. for the Use and Benefit of P.W. Berry Co. v. Gen. Elec. Co.*, 158 F.R.D. 161 (D.Or.1994)  - 15 -

*Vincent v. Money Store*, No. 11 CIV. 7685 JGK, 2012 WL 6622707 (S.D.N.Y. Dec. 20, 2012) - 16 -

**Statutes**

Federal Rules of Civil Procedure Rule 26(d) ........................................................- 8 -, - 9 -, - 14 -, - 16 -

- 3 -

JURISDICTIONAL DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S EX PARTE MOTION FOR EXPEDITED BRIEFING AND MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY

COME NOW **JURISDICTIONAL DEFENDANTS RYAN CARROLL; MAX K. DAY; MAX O. DAY; MICHAEL DAY; YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC; and WA DISTRIBUTION LLC** ("**Jurisdictional Defendants**"), and hereby files *Jurisdictional Defendants' Supplemental Brief in Opposition to Plaintiff's Ex Parte Motion for Expedited Briefing and Motion for Leave to Conduct Expedited Discovery* ("**Response**") and respectfully shows the Court as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   FACTUAL AND PROCEDURAL BACKGROUND

1. On April 9, 2024, Plaintiffs filed an *Ex Parte* Application for a Temporary Restraining Order and an Order to Show Cause regarding a Preliminary Injunction ("**Application**"), seeking the extraordinary remedy of a freeze of all of the Defendants' assets pre-judgment as well as a disclosure of all their financial information pre-judgment. *See* Dkt. 9.

2. On April 11, 2024, Defendants filed an Opposition to Plaintiffs' Application ("**Opposition**") on the grounds that (a) this Court lacked personal jurisdiction over the Defendants; (b) the case should be compelled to binding arbitration pursuant to the Plaintiffs' written contracts; (c) Plaintiffs lacked a legal basis to freeze all of the Defendants' assets; (c) Plaintiffs failed to establish a likelihood of success on the merits on any of their claims; (d) Plaintiffs' evidence of alleged representations outside the written contracts constituted inadmissible parol evidence; (e) Plaintiffs had not established irreparable harm sufficient to grant a mandatory injunction that went beyond maintaining the status quo; and (f) the balance of the equities did not tip in Plaintiffs' favor. *See* Dkt. 13.

3. On April 12, 2024, Plaintiffs filed a Reply to Defendants' Opposition to Plaintiffs' Application. *See* Dkt. 15.

4. On April 15, 2024, this Court issued a Temporary Restraining Order (**"TRO"**), holding that (a) the Court did not have personal jurisdiction over any of the Defendants apart from the Defendants Ryan Carroll; Max O. Day; Max K. Day; Michael Day; Yax Ecommerce LLC; WA Distribution LLC; and Precision Trading Group, LLC (the **"Jurisdictional Defendants"**) based upon the facts available to the Court at the present time; (b) that the Jurisdictional Defendants were ordered to appear at an OSC on April 19, 2024 regarding why a preliminary injunction (**"PI"**) should not issue prohibiting them from withdrawing, transferring, spending, or otherwise disposing of any assets held by or for the benefit of Jurisdictional Defendants until the close of this proceeding, except that each human Defendant would be allowed to spend $9,000 per month and have the ability to seek leave of Court for additional expenditures; and (c) ordering the Jurisdictional Defendants to identify account information for all accounts that contain assets held by or for the benefit of the Jurisdictional Defendants. *See* Dkt. 17.

5. At the hearing on April 19, 2024, the Jurisdictional Defendants' counsel requested that this court (a) continue the hearing on the Application to allow for supplemental briefing on the issues of the asset freeze and the financial disclosures; (b) increase the monthly spending limit in the TRO for the individual Defendants to $13,000 per month; (c) include a provision in the TRO allowing the Jurisdictional Defendants to pay their attorney's fees. The Court agreed with the Jurisdictional Defendants' arguments in this regard and (a) set a continued hearing for April 29, 2024; (b) set a supplemental briefing schedule for that hearing; and (c) issued a Minute Order reflecting the changes to the TRO. *See* Dkt. 21.

6. On April 23, 2024, Plaintiffs' counsel, Nico Banks (**"Mr. Banks"**) emailed the Jurisdictional Defendants' counsel attempting to significantly broaden the language of his proposed PI to include disclosures of financials of any entity in which any of the Jurisdictional Defendants hold a single share or have any management or employment role. When the

- 5 -

Jurisdictional Defendants' counsel pointed out that this vastly expanded the reach of this Court's prior Orders, Mr. Banks quickly backed down, but then stated he would file yet another *ex parte* motion that day instead.

7. The Jurisdictional Defendants consider this to be an abuse of the *ex parte* process as Mr. Banks is continuing to go back to the well for more and more relief and unnecessarily increasing the costs of this litigation and burdening the Jurisdictional Defendants with extraneous filings at a time when their efforts should be focused on preparing for the PI hearing on April 29, 2024, all because he did not think to ask for such records in his initial filings.

8. Mr. Banks' thinly-veiled attempts to tie this expedited discovery to the prior requested PI based upon misrepresentations of his conversations with the Jurisdictional Defendants' counsel is not well taken. Mr. Banks misrepresents that the Jurisdictional Defendants claimed they did not have to produce financial records for their "alter-egos." That is not what happened, and Mr. Banks knows it. In a telephone conversation amongst counsel on April 24, 2024, Mr. Banks proposed a broadening of the PI to include any of the Defendants, including the Defendants over whom the Court previously ordered it had no personal jurisdiction (the **"Non-Jurisdictional Defendants"**), as well as unnamed Defendants that are purported potential alter-egos of all Defendants (even though Plaintiffs and their counsel cannot even identify who they may be). *See* Dkt. 21. The Jurisdictional Defendants' counsel pointed out that this was significantly broader than the TRO and OSC issued by the Court, and that the Jurisdictional Defendants' position is that **they have no alter-egos**. Their position was never that they have alter-egos yet refuse to produce records for them. Mr. Banks is once again putting the cart before the horse, as he must prove with some evidentiary substance (not mere wild conjecture) that the Non-Jurisdictional Defendants and any other unnamed and unknown entities are the alter-egos of Wealth Assistants before being entitled to their records or to making claims against them, which he has utterly failed to do in every forum

- 6 -

thus far. Plaintiffs' counsel's tactics in this and other litigation is to throw up scandalous terms like "money laundering" with zero proof in order to defame the Jurisdictional Defendants and outrage the Court. However, an examination of the actual evidence submitted proffers no support for such claims.

9. It is also noteworthy that Mr. Banks made no efforts to "*orally*" advise all counsel of the substance of his second proposed *ex parte* application; instead electing to simply send an email stating that he assumed the Jurisdictional Defendants were opposed. *See* Local Rule 7-19.1 (emphasis added). Mr. Banks also made no efforts to orally advise the Jurisdictional Defendants' counsel of his first *ex parte* Application; instead, simply emailing a copy of the filings after the fact stating that he assumed the Defendants were opposed. Mr. Banks has been forum shopping his claims in multiple courts and arbitration forums and was thus well aware of who Defendants' counsel of record is and yet chose not to properly inform them in accordance with the local rules.

10. On April 25, 2024, Plaintiffs filed their *Ex Parte* Motion for Expedited Briefing and Motion for Leave to Conduct Expedited Discovery (**"Discovery Motions"**). *See* Dkt. 25.

11. On April 26, 2024, the Jurisdictional Defendants submitted their Supplemental Brief in Opposition to Plaintiffs' Application (**"Supplemental Brief"**) in accordance with the Court's Minute Order. *See* Dkt. 31. For purposes of judicial efficiency, the Jurisdictional Defendants hereby incorporate by reference the arguments previously made in their previously filed Opposition (Dkt. 13) and their Supplemental Brief (Dkt. 31) and will not be restating all of the arguments in their Opposition and Supplemental Brief here.

12. The Jurisdictional Defendants hereby file their Opposition to the Discovery Motions.

## II. ARGUMENT AND AUTHORITIES

**A.     Legal Standard.**

13.    "Rule 26(d) of the Federal Rules of Civil Procedure generally provides that formal discovery will not commence until after the parties have conferred as required by Rule 26(f)." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009) (citations omitted). However, courts may permit expedited discovery before the Rule 26(f) conference upon a showing of "good cause." *Id.*; (*Citing Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D.Colo.2003) [The "party seeking expedited discovery in advance of [the] Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures."]; *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 623 (N.D.Ill.2000) ["Expedited discovery is not the norm. Plaintiff must make some *prima facie* showing of the need for the expedited discovery."]).

14.    "Good cause exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*

15.    Contrary to Plaintiffs' assertions, "expedited discovery is not automatically granted merely because a party seeks a preliminary injunction." *Id.* at 1066-1067. (*Citing Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 7 (D.D.C.2006) ["Surely, plaintiffs are not seeking expedited discovery to gain evidence to get the court to preserve the status quo. They want to gather all the evidence they would need to radically transform the status quo, on an expedited basis. But, that is not the purpose of a preliminary injunction, nor of the limited discovery that the courts traditionally permit a plaintiff to have to secure it."]; *Dimension Data N. Am. v. NetStar–1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C.2005) (denying request for expedited discovery in part because "the discovery requested is not narrowly tailored to obtain information relevant to a preliminary injunction determination" and because

- 8 -

"plaintiff has not made an adequate showing that it will be irreparably harmed by delaying the broad-based discovery requested until after the initial conference between the parties pursuant to Rule 26").

16. Rather, "where a plaintiff seeks expedited discovery to prepare for a preliminary injunction hearing, it makes sense to examine the discovery request ... on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances...." *Id.* at 1067 (citation omitted). Factors commonly considered in determining the reasonableness of expedited discovery include, but are not limited to: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (citations omitted). Moreover, "in every case, the court has the discretion, in the interests of justice, to prevent excessive or burdensome discovery." *Id.*

**B.     The Proposed Expedited Discovery is Woefully Premature.**

17. In *American LegalNet*, this District denied plaintiff's request for expedited discovery, noting that "plaintiff has not limited its discovery requests to information 'to preserve the status quo,' as it must." *Id.* at 1068 (citation omitted); *See also Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir.2009) ("The sole purpose of a preliminary injunction is to 'preserve the status quo ante litem pending a determination of the action on the merits.'") (citation omitted).

18. Similarly, here, Plaintiffs seek broad expedited discovery that is completely unrelated to the determination of whether a preliminary injunction should issue. Even worse, in this case, Plaintiffs do not even seek information to determine whether their proposed preliminary injunction should issue; rather, they seek substantially broader discovery than what was proposed in their initial TRO and PI in order to unlawfully broaden the scope of the OSC without court

- 9 -

authority. The discovery proposed by Plaintiffs would not be answered *until after* the PI hearing. The fact that a PI application is pending has no import in this case, as that determination will already be made before the issuance of this discovery. Thus, the proposed discovery is clearly not aimed at aiding the Court's decision on the preliminary injunction.

19.     This District in *American Legal Net*, found certain document requests "problematic because they are unrestrained as to time and scope and, therefore, seek wholly irrelevant matter to ALN's motion for preliminary injunctive relief." *Id.* at 1070. Here, Plaintiffs seek financial information that is essentially unlimited in scope and unrelated to this litigation or the PI. As best as the Jurisdictional Defendants can comprehend of the poorly drafted requests, Plaintiffs seek the complete turnover of financial information for any entity whatsoever in which any of the Jurisdictional Defendants own a single share or perform work for in any capacity whatsoever, other than securities traded on a public exchange. This broad-sweeping discovery far exceeds the bounds of what is permitted in ordinary discovery; let alone expedited discovery.[1] Certain Jurisdictional Defendants have an ownership interest in or a management or employment role in other entitles that are legitimate businesses that have absolutely nothing to do with Wealth Assistants; and Plaintiffs have made no showing otherwise. To require the Jurisdictional Defendants to turn-over detailed information regarding every asset of such entitles within 10 days is absurd. While Plaintiffs are surreptitiously describing their discovery request as a single interrogatory; it actually requests a plethora of information which would in reality constitute multiple interrogatories, each of which would be improper under the Federal Rules of Civil Procedure as they would require the Jurisdictional Defendants to compile an abstract or list not in existence.

---

[1] Plaintiffs have not even shown how the Jurisdictional Defendants could possibly compel information or have records in their custody, possession or control if they merely possess a minority interest in a company.

20.     Performing an examination of Plaintiffs' preposterous "interrogatory" reveals that it seeks information about the "peak value" of every asset since May of 2021. Such a request has absolutely no bearing on this entire case, let alone the PI. First of all, Plaintiffs are not entitled to a red cent until they receive a monetary judgment in their favor, which is highly unlikely on their fraud claims. Second, even if successful, they would only be entitled to collect said judgment upon the Jurisdictional Defendants current assets, not some alleged "peak value" of the asset legitimately held by unrelated entitles from up to ***three years ago***. Plaintiffs have not even attempted to explain why they are seeking such financial information from wholly unrelated entities ***three years prior to this litigation*** even being instated, and ***over a year before any Plaintiffs entered into their contracts with or paid any funds to Wealth Assistants***.[2] Plaintiffs' all-encompassing discovery requests are not even focused on the merits of this litigation and certainly are not tied to the determination of the PI, as admitted by their counsel, Mr. Banks.

21.     While Plaintiffs contend that the numerous accounts previously provided by the Jurisdictional Defendants is incomplete, at least as to the individual Defendants, they provide no proof of such a claim other than that they assume there must be a pot of gold at the end of the rainbow for them to collect or they would not have brought this case. While Plaintiffs contend the disclosures must be insufficient because they amount to less than $500,000 and "the Jurisdictional Defendants were the perpetrators and beneficiaries of a fraudulent scheme that likely raised around $45 million," this number is literally pulled out of thin air without absolutely no support or evidence for such a wild and astronomical speculation. *See* Dkt. 25 at p. 8. In reality, the

---

[2] *See* Exhibits to the Declaration of Max O. Day ("**Exhibit 1**"). The Service Agreement between Thompson and Wealth Assistants dated November 21, 2022, is attached as **Exhibit A**. The Service Agreement between Pacino and Wealth Assistants November 15, 2022, is attached as **Exhibit B**. The Service Agreement between Hocine and Wealth Assistants dated June 20, 2023, is attached as **Exhibit C**. The Service Agreement between Hill and Wealth Assistants dated November 7, 2022, is attached as **Exhibit D**. The Service Agreement between Hough and Wealth Assistants dated August 2, 2022, is attached as **Exhibit E**.

maximum total amount Plaintiffs can potentially claim as damages is $250,000 pursuant to their written contracts.[3] Thus, Plaintiffs cannot establish good cause for additional expedited discovery beyond that which was already granted by this Court upon Plaintiffs' first *ex parte* application.

22.  The proposed discovery requests also now seek to rope back in the Non-Jurisdictional Defendants, over whom this Court has already ruled it does not have personal jurisdiction in the TRO, as well as other unnamed defendants. *See* Dkt. 21. This is nothing more than Mr. Banks' back-door attempt to circumvent the TRO and the OSC (the terms of which were drafted by Mr. Banks) in order to get a second-bite at the apple. Mr. Banks should have drafted such language in his initial Application and Proposed OSC, but having failed to do so, he should be prohibited from doing so now. Mr. Banks' attempts to make this expedited discovery relevant are completely disingenuous. Instead, Mr. Banks is simply going back to the well for more because he has found a favorable forum for the first time (after numerous attempts in other forums) without a proper meet and confer with the Jurisdictional Defendants' counsel, based upon blatant misrepresentations of counsel's conversations with Mr. Banks.

23.  The Jurisdictional Defendants' counsel's position that Mr. Banks must prove his alter-ego claims is in accordance with Ninth Circuit precedent. Indeed, in the Ninth Circuit, in order to "demonstrate that the parent and subsidiary are 'not really separate entities,' thereby satisfying the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out 'a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard

---

[3] Pursuant to the terms of their written contracts with Wealth Assistants, Plaintiffs' recovery is expressly limited to the amount paid to Wealth Assistants in the prior 12 month period, or if electing to institute the Buyback Clause, the set-up fee minus any profits received. *See* Ex. A to Ex. 1 at p. 6-7, 13; Ex. B to Ex. 1 at p. 6-7, 13; Ex. C to Ex. 1 at p. 6-7, 13; Ex. E to Ex. 1 at p. 6-7, 13; F to Ex. 1 at p. 3-4, 9. Thompson's set-up fee was $50,000. Ex. A at p. 12. Pacino's set-up fee was $55,000. Ex. B at p. 12. Hocines's set-up fee was $55,000. Ex. C at p. 13. Hill's set-up fee was $35,000. Ex. D at p. 12; Dkt. 9-3, Hill Declaration at ¶3. Hough's set-up fee was $55,000. Ex. E at p. 1. Thus, the total set-up fees paid by Plaintiffs are $250,000 ($50,000 + $55,000 + $55,000 + $35,0000 + $55,000).

[their separate identities] would result in fraud or injustice'." *Hernandez v. Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1058 (N.D. Cal. 2022) (*Citing Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996). Plaintiffs have not done that here as discussed in the Jurisdictional Defendants' Opposition to Plaintiffs' Application as Plaintiffs' counsel once again attempts to provide the sole evidentiary support against these Additional Defendants, through unsupported hearsay assertions that they do not appear to have legitimate business operations. *See* Dkt. 9 at pp. 13-15; Dkt. 9-1, Banks Decl. The Banks Declaration, even if it contained admissible evidence, merely states that he attempted to contact one of the fourteen additional defendants, and no one answered the phone. *See* Dkt. 9-1, Banks Decl. at ¶25. Again, this falls far short of Plaintiffs' burden at the TRO stage to show an actual fraudulent transfer of assets or conspiracy to commit fraud.

24. Plaintiffs know they cannot possibly meet their burden, merely alleging that they "appear" to have no "real" operations based on a Google search and a phone call to single defendant. *See* Dkt. 9 at p. 17. This is unsubstantiated and false. For example, HouTex Farm Equity Partners LLC is actually a cricket farm as Plaintiffs admit is stated on their website and it has legitimate operations that are wholly unrelated to Wealth Assistants or the claims in this case. Plaintiffs have the burden of making a prima facie case against each and every Defendant in order to obtain this *ex parte* relief. *Compagnie Bruxelles Lambert*, 94 F.3d at 591. As Plaintiffs admittedly cannot meet this burden, Plaintiffs' request for this broad-based expedited discovery seek the financial records of unrelated entitles against whom they have no claims in this forum or any other forum must fail.

25. This kind of "fishing expedition" to "fish for assets" is only permitted in post-judgment discovery, not expedited discovery before the Defendants have even answered the Complaint. *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, *4 (N.D. Cal. Dec. 19, 2009)

1  (*Citing Textron Fin. Corp. v. Gallegos*, No. 15CV1678-LAB (DHB), 2016 WL 4077505, at *3 (S.D. Cal. Aug. 1, 2016)). "Rather than conduct pre-judgment discovery into a defendant's assets or ability to satisfy a judgment, an appropriate means of obtaining such information is to conduct post-judgment discovery pursuant to Federal Rule of Civil Procedure 69(a)(2), which provides: 'Obtaining Discovery'." *Sierrapine v. Refiner Prod. Mfg., Inc.*, 275 F.R.D. 604, 610 (E.D. Cal. 2011); Fed. R. Civ. P. 69(a)(2).

26.  "[D]istrict courts across the country generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment—aside from ... on the grounds that such discovery is not relevant to the parties' claims or defenses ..." *Id.* (*Citing Dickson v. Nat'l Maintenance & Repair of Ky., Inc.*, No. 5:08–CV–8, 2011 WL 2610195, at *1–2 (W.D.Ky. July 1, 2011) (unpublished) (denying motion to reopen discovery to permit plaintiff to seek discovery of reservation of rights letters and information about the defendant's assets and ability to pay a judgment) (*Citing Ranney–Brown Distribs., Inc. v. E.T. Barwick Indus., Inc.*, 75 F.R.D. 3, 5 (S.D.Ohio 1977)) ("Ordinarily, Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence."); *DiNapoli v. Int'l Alliance of Theatrical Stage Employees 8*, Civ. Action No. 09–5924, 2011 WL 1004576, at *7 (E.D.Pa. Mar. 18, 2011) (unpublished) ("If the plaintiff does not claim punitive damages, or if punitive damages are unavailable, the court will not allow discovery to determine whether the defendant has the means to satisfy a judgment because a defendant's ability to satisfy a judgment has little to do with the subject matter of the litigation notwithstanding a claim for punitive damages." ) (*citing Grosek v. Panther Transp., Inc.*, 251 F.R.D. 162, 165 (M.D.Pa.2008)); *Hallford v. Cal. Dep't of Corrections*, No. CIV S–05–0573 FCD DAD P, 2010 WL 921166, at *2 (E.D.Cal. Mar. 12, 2010) (unpublished) (denying, on relevance grounds among others, plaintiff's motion to

- 14 -

compel the production of a copy of salary schedules for employees in the individual defendants' employment positions for the purpose of considering an offer of settlement); *Lincoln Elec. Co. v. MPM Techs., Inc.*, No. 1:08–CV–2853, 2009 WL 2413625, at *3 & n. 2 (N.D.Ohio Aug. 5, 2009) (unpublished) (questioning the wisdom of the prevailing rule, but in any event denying on relevance grounds plaintiff's motion to compel discovery responses regarding the defendant's financial status or ability to satisfy a judgment in a breach of contract and warranties action); *Mack Boring & Parts Co. v. Novis Marine Ltd.*, Civ. Action No. 06–2692(HAA), 2008 WL 5136955, at *1–3 (D.N.J. Dec. 5, 2008) (unpublished) (collecting cases and denying motion to compel discovery of defendant's ability to satisfy a soon-to-be entered judgment in a contract-based action where punitive damages were *610 not implicated); *U.S. EEOC v. Ian Schrager Hotels, Inc.*, No. CV 99–0987GAFRCX, 2000 WL 307470, at *4 (C.D.Cal. Mar. 8, 2000) (unpublished) (granting on part a motion to compel in a Title VII action, requiring the defendants to produce their financial information so plaintiff could determine, relative to a claim for punitive damages, whether defendants had attempted to transfer income or assets to others to avoid potential liability if defendants lose the pending litigation); cf. *U.S. for the Use and Benefit of P.W. Berry Co. v. Gen. Elec. Co.*, 158 F.R.D. 161, 164 (D.Or.1994) (granting motion for protective order in a breach of contract action, precluding pre-judgment discovery of corporate and individual financial information including tax returns and financial statements, because that information was not relevant within the meaning of Rule 26(b)(1)); *Accord* James Wm. Moore, 6 Moore's Federal Practice § 26.41[8][a] (Matthew Bender 3d ed. 2011) (discussing the increasingly restrictive standards pertaining to discovery of a party's financial condition and stating that "[t]he relevancy requirement is not met when a party wants to know the opposing party's assets prejudgment to determine what assets are available for attachment should that party succeed in obtaining a favorable judgment").

- 15 -

JURISDICTIONAL DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S EX PARTE MOTION FOR EXPEDITED BRIEFING AND MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY

27. This District previously followed *Sierrapine* in denying sweeping discovery into all of a defendant's assets pre-judgment as irrelevant. *Davis v. Bangs*, No. 220CV05738SBJDEX, 2021 WL 6882324, at *12 (C.D. Cal. Mar. 26, 2021). This District has also held multiple times that "California law affords a very strong privilege from discovery for tax returns." *Id.* at *5 (C.D. Cal. Mar. 26, 2021) (*Citing Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*, 2012 WL 12887396, at *4 (C.D. Cal. Nov. 14, 2012) (*Quoting Davis v. Leal*, 43 F. Supp. 2d 1102, 1109 (E.D. Cal. 1999)).; *Accord Cai v. CMB Exp. LLC*, No. CV222025MWFJPRX, 2024 WL 439441, at *2 (C.D. Cal. Jan. 29, 2024). "The requesting party bears the burden of demonstrating that an exception applies," which Plaintiffs have not done. *Cai*, 2024 WL 439441 at *2 (citations omitted). Thus, the requests for the Jurisdictional Defendants' tax returns are also not permitted, certainly not on an expedited basis under California law.

28. Another district court facing an identical request for expedited discovery into a defendant's assets (whom they also alleged was out of business), summarily denied the requests holding that "plaintiffs have not come close to showing good cause for the extraordinary remedy of pre-judgment discovery of assets." *Vincent v. Money Store*, No. 11 CIV. 7685 JGK, 2012 WL 6622707, at *1 (S.D.N.Y. Dec. 20, 2012) (*Citing Sierrapine*, 275 F.R.D. at 610).

29. Plaintiffs have not shown that they "will be irreparably harmed by delaying the broad-based discovery [they] now request[s] until after the initial conference between the parties under Rule 26(f)." *Id.* at 1071. Plaintiffs already have a TRO in place preventing the alleged dissipation of assets and there is no reason for this unfettered discovery to take place *after* the PI hearing.

30. All of the factors weigh in the Jurisdictional Defendants' favor here, as this case is in its infancy; the discovery is extremely broad; the burden to respond to it would be enormous; it is unrelated to the preliminary injunction that is pending; and its purpose is to burden and harass Defendants. Thus, Plaintiffs' second set of *ex parte* Discovery Motions should be denied.

### III.  CONCLUSION

31. Based on the foregoing and for good cause shown, the Jurisdictional Defendants respectfully requests that this Court deny Plaintiffs' Motion for Expedited Discovery and for such other and further relief to which the Jurisdictional Defendants may show themselves to be justly entitled.

Dated:  April 29, 2024.

Respectfully submitted,

By: */s/ Rachel M. Crockett*
Rachel M. Crockett

### CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this Opposition contains 4,228 words, which complies with the word limit of L.R. 11-6.1

*/s/ Rachel M. Crockett*
Rachel Crockett

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document, and any attachments, will be served to counsel of record, in accordance with the governing rules of procedure regarding service in this court on this ***April 29, 2024***, via email as follows:

*/s/ Rachel M. Crockett*
Rachel Crockett