Nico Banks, Esq.
nico@bankslawoffice.com
Filing on behalf of all Plaintiffs
CA Bar No. 344705
Banks Law Office
712 H St NE,
Unit #8571,
Washington, DC 20002
Tel.: 971-678-0036

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

DAVID HOUGH; *et al.*

       Plaintiffs,

   vs.

RYAN CARROLL; *et al.*

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:24-cv-02886-WLH

**REPLY SUPPORTING APPLICATION FOR A PRELIMINARY INJUNCTION**

Hearing: April 29, 2024, 3:00 pm
Trial Date: N/A

## REPLY SUPPORTING APPLICATION FOR A PRELIMINARY INJUNCTION

   Plaintiffs submit this Reply supporting their Application for a Preliminary Injunction.

1

# TABLE OF CONTENTS

2

3

**A.    Plaintiffs Have Brought No Previous Actions Against Defendants** ......... - 3 -

4

**B.    The Arbitrability Issue Is Not Ripe** ............................................. - 4 -

5

6

**C.    Asset Freezes Are Neither Mandatory Injunctions Nor Improper**

7

**Attachments** ....................................................................... - 4 -

8

**D.    Jurisdictional Defendants Should Not Receive Allowances For**

9

10

**Professional Expenses, Including Attorneys' Fees** ............................. - 6 -

11

**E.    The Human Jurisdictional Defendants Should Receive An Allowance For**

12

**Household Expenses Of No More Than 1.5 Times The Poverty Guidelines** .... - 9 -

13

14

**F.    Plaintiffs Should Not Be Required To Post A Bond** ............................. - 10 -

15

**G.    Max O. Day Was Central To Wealth Assistants' Fraudulent Scheme** . - 11 -

16

17

**H.    Plaintiffs Have Shown A Likelihood Of Success On The Merits** ........... - 14 -

18

**I.    Plaintiffs' Evidence Is Not Barred By The Parol Evidence Rule** .............. - 15 -

19

**J.    The Court Has Specific Personal Jurisdiction Over The Jurisdictional**

20

**Defendants** ........................................................................ - 15 -

21

22

**K.    Plaintiffs May Pierce The Veil Of The Jurisdictional Defendants' Alter-**

23

**Ego Entities** ........................................................................ - 18 -

24

25

**L.    Plaintiffs' Evidence Of Prior Fraud Is Properly Before The Court** ...... - 20 -

26

**M.    Conclusion** ........................................................................ - 21 -

27

28

REPLY SUPPORTING APPLICATION FOR PRELIMINARY INJUNCTION

**MEMORANDUM OF LAW**

**A. Plaintiffs Have Brought No Previous Actions Against Defendants**

On April 11, 2024, Jurisdictional Defendants filed a first Opposition ("First Opposition"), which was incorporated by reference into a second Opposition ("Second Opposition") filed on April 26, 2024. (Second Opposition at ¶ 6). In their First Opposition, Jurisdictional Defendants state that

> Plaintiffs' counsel initially brought an identical action against Defendants in California state court in January of 2024. When the state court summarily rejected Plaintiffs' counsel's arguments and denied his requests for a temporary restraining order ("TRO") and later a preliminary injunction, Plaintiffs' counsel voluntarily dismissed that action, stating he would refile the action in another forum.

(First Opposition at ¶ 2). Plaintiffs respectfully disagree with Jurisdictional Defendants' assertion that the referenced state-court action was an "identical action." The state-court complaint and motions for injunctive relief were brought by different Plaintiffs and contained significantly less evidence than the present motion. Moreover, every individual victim of Wealth Assistants is entitled to their day in court. The fact that some individual victims failed to obtain injunctive relief against Wealth Assistants does not preclude other victims from attempting to obtain that same relief in any forum that has jurisdiction to adjudicate their claims.

It is worth noting, however, that Jurisdictional Defendants have had ample opportunity to compile any exonerating evidence, including evidence in preparation for the evidentiary hearing on the preliminary injunction in the state-court action they

REPLY SUPPORTING APPLICATION FOR PRELIMINARY INJUNCTION

cite. Yet, Jurisdictional Defendants have presented no evidence that Wealth Assistants ever had any intention to conduct legitimate operations. Therefore, the uncontradicted evidence cited in Plaintiffs' Motion demonstrates that Plaintiffs will succeed on the merits, and Jurisdictional Defendants will continue to dissipate and conceal the proceeds of their fraudulent scheme if the asset-freeze order is not continued until the close of the case.

## B. The Arbitrability Issue Is Not Ripe

Jurisdictional Defendants next argue that the case should be compelled to binding arbitration. (First Opposition at ¶ 3). The Court need not resolve that argument at this stage for many reasons, including (1) the Jurisdictional Defendants' Motion to Compel Arbitration has not yet been fully briefed, and (2) courts may provide injunctive relief before sending a case to arbitration. *See, e.g.*, *Convergys Corporation v. Freedom Wireless, Inc.*, 02:06-CV-0644-LRH (GWF), at *5 (D. Nev. Oct. 11, 2006) ("injunctive relief is available from district courts in arbitrable matters").

## C. Asset Freezes Are Neither Mandatory Injunctions Nor Improper Attachments

Jurisdictional Defendants also argue that Plaintiffs are seeking a mandatory injunction by seeking an asset freeze. (First Opposition at ¶ 10, Second Opposition at ¶ 7). To the contrary, an asset freeze is not a mandatory injunction because it does not require any affirmative action. *Sec. & Exch. Comm'n v. Longfin Corp.*, 316 F. Supp.

3d 743, 756 (S.D.N.Y. 2018) ("an asset freeze will preserve the status quo and is less burdensome than the issuance of an order restraining future conduct").

Jurisdictional Defendants then argue that an asset freeze is "an improper attempt at attachment" (First Opposition at ¶ 13) because an asset freeze is "'in the nature of an attachment whose availability is governed by Federal Rule of Civil Procedure 64 . . . and through that rule by state law,'" as opposed to Federal Rule of Civil Procedure 65, which governs preliminary injunctions and temporary restraining orders. (Second Opposition at ¶ 8, quoting *In re Fredeman Litigation*, 843 F.2d 821, 826 (5th Cir. 1988), and also citing *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1521–22 (11th Cir. 1994)).

However, the cases the Jurisdictional Defendants cite, *Fredeman* and *Mitsubishi*, are Fifth Circuit and Eleventh Circuit decisions, respectively, that the Ninth Circuit expressly disagreed with in *In re Estate of Ferdinand Marcos Human Rights*, 25 F.3d 1467, 1480 (9th Cir. 1994) (citing *Fredeman* and *Mitsubishi*, expressly disagreeing with those cases, and "join[ing] the majority of circuits in concluding that a district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment.").

Jurisdictional Defendants also argue that Plaintiffs have provided no authority in support of their position that individuals can obtain an asset freeze as injunctive

relief (First Opposition at ¶ 19). To the contrary, Plaintiffs cited authority in their moving papers that allows individual plaintiffs to obtain an asset freeze when there is a high risk that defendants will dissipate assets in the absence of injunctive relief. (Motion at 20, citing *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009)).

Moreover, Jurisdictional Defendants assert that courts have extra authority to issue an asset freeze when the Federal Trade Commission, as opposed to private plaintiffs, is requesting the relief pursuant to Section 19 of the FTC Act. But in *FTC v. Automators*, the court noted that Rule 65(b) of the Federal Rules of Civil Procedure governed its issuance of a temporary restraining order, just as Rule 65(b) governs this Court's issuance of a temporary restraining order when it is requested by private plaintiffs. 23-cv-1444, ECF 8 at 3 (S. D. Cal. 2023). Just as the court in *Automators* issued the requested asset freeze, in a case with an eerily similar fact pattern (*see* Motion at 20-24), so should this Court. *See also Federal Trade Commission v. AWS*, 18-cv-00442 (D. Nev. 2018), ECF 25.

### D. Jurisdictional Defendants Should Not Receive Allowances For Professional Expenses, Including Attorneys' Fees

Jurisdictional Defendants assert they will be harmed by the proposed asset freeze because "Wealth Assistants, LLC . . . is currently in the process of winding up its business affairs, which includes legal expenses, accounting expenses (for bookkeeping and final tax returns), and other related professional fees." (Second Opposition at ¶ 13). Notably, Jurisdictional Defendants provide no evidence that Wealth Assistants, LLC is incurring legitimate accounting expenses or related

professional fees. Moreover, that assertion seems inconsistent with Jurisdictional Defendants' asset disclosures, which state that Wealth Assistants, LLC has "*no access to the funds*" that are in its bank accounts.

Jurisdictional Defendants also argue that they will be harmed by the proposed asset freeze because it would restrict their ability to pay attorneys' fees. (Second Opposition at ¶ 15). Plaintiffs do not believe it is plausible that Jurisdictional Defendants would suffer any *cognizable* harm if they were not given an allowance for attorneys' fees because the evidence in the record already demonstrates that the money Jurisdictional Defendants seek to spend on attorneys' fees does not rightfully belong to Jurisdictional Defendants. In the Ninth Circuit, "Courts regularly have frozen assets and denied attorney fees or limited the amount for attorneys fees" *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989); *see also Fed. Trade Comm'n v. Noland*, 475 F. Supp. 3d 992, 999 (D. Ariz. 2020) ("Although requests to unfreeze corporate assets for the purpose of paying attorneys' fees must be considered on a case-by-case basis, because the denial of funds is in tension with the fact that wrongdoing has not been proved, denial has been upheld when, as here, the frozen assets appear insufficient to satisfy a future restitution award."); *CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) ("A district court may, within its discretion, forbid or limit payment of attorney fees out of frozen assets. According to the record, the frozen assets fell far short of the amount needed to compensate [the alleged victims]. This was reason enough in the circumstances of

REPLY SUPPORTING APPLICATION FOR PRELIMINARY INJUNCTION

this case for the district court, in the exercise of its discretion, to deny the attorney fee application.") (citations omitted); *FTC v. Ideal Financial Solutions, Inc.*, 2014 WL 4541191, *2 (D. Nev. 2014) (rejecting defendants' unfreezing request, where the frozen funds were sought for attorneys' fees, and noting that "[t]he Ninth Circuit recognizes district courts' discretion in civil cases to 'forbid or limit payment of attorney fees out of frozen assets'") (citation omitted).

Providing Jurisdictional Defendants with an allowance for attorneys' fees would be particularly prejudicial in this case because the pool of collectible assets that the Jurisdictional Defendants have disclosed is already so small. Indeed, the Jurisdictional Defendants have represented that most of the assets held by them or for their benefit are the $287,950.93 currently being held for their benefit in a client trust account held by the law firm Lloyd Mousilli. If Jurisdictional Defendants are allowed to spend all that money on attorneys' fees, then according to their disclosures, they will have less than $200,000 in collectible assets remaining. The other proceeds of the fraudulent scheme that Jurisdictional Defendants perpetrated may have already been concealed and dissipated beyond the reach of Plaintiffs and Jurisdictional Defendants' other creditors.

To the extent the Court is inclined to allow Jurisdictional Defendants any allowance for attorneys' fees, Jurisdictional Defendants should be required to show that the attorneys' fees they incur are reasonable, and that the assets they intend to spend on attorneys' fees are not "tainted" or the product of wrongful business activity.

*See, e.g.*, *Sec. & Exch. Comm'n v. Humphries*, 2:22-cv-00612-CDS-EJY, ECF No. 209, at *8 (D. Nev. Sep. 27, 2022)) (noting that whenever the defendants sought leave to spend frozen assets on attorneys' fees, they would have an "obligation to demonstrate that the assets at issue are not tainted.").

### E. The Human Jurisdictional Defendants Should Receive An Allowance For Household Expenses Of No More Than 1.5 Times The Poverty Guidelines

The human Jurisdictional Defendants state that they need no less than $13,000 per month, which is $156,000 per year, for personal and household expenses (Second Opposition at ¶ 19) while claiming that each of them has less than $10,000 in financial accounts held by him or for his benefit. (ECF 25-1). In other words, the Jurisdictional Defendants are—absurdly—asking the Court to allow them to spend all of the assets they have disclosed within the next month.

Moreover, the median household income in Miami, Florida (where Ryan Carroll likely resides) in 2018-2022 was approximately $54,858,[1] and the median household income in Houston, Texas (where Max K. Day, Max O. Day, and Michael Day likely reside) in 2018-2022 was approximately $60,440.[2] The amount that the Jurisdictional Defendants claim they need for personal and household expenses is more than two-and-a-half times the median household income of average households.

---

[1] *See* United States Census Bureau, *QuickFacts Miami City, Florida*, available at https://www.census.gov/quickfacts/fact/table/miamicityflorida/POP060210 (last accessed April 28, 2024).
[2] *See* United States Census Bureau, *QuickFacts Houston City, Texas*, available at https://www.census.gov/quickfacts/fact/table/houstoncitytexas/INC110222 (last accessed April 28, 2024).

It would be unjust to allow the human Jurisdictional Defendants such a luxurious allowance, particularly when the record shows a very high likelihood that the money was wrongfully obtained. Plaintiffs initially suggested that the human Jurisdictional Defendants be allowed to spend $9,000 per month, but in light of their sparse asset disclosures, that allowance would be overly generous because it would allow the human Jurisdictional Defendants to spend all of their disclosed assets within the next two months. Plaintiffs suggest that the human Jurisdictional Defendants instead be given an allowance equal to one-and-a-half times the federal poverty level for their household size. For 2024, the household poverty level is $15,060 for one person; $20,440 for two people; $25,820 for three people; and $31,200 for four people.[3] If the Jurisdictional Defendants make more complete disclosures of their assets, the allowance could be revisited.

**F.  Plaintiffs Should Not Be Required To Post A Bond**

Without citing any authority, the Jurisdictional Defendants seem to argue that Plaintiffs should be required to post a bond in whatever amount the Jurisdictional Defendants may ultimately be obligated to pay in judgments entered against them by Plaintiffs and similarly situated individuals. (Second Opposition at ¶ 22). The amount of a bond, however, should be "an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or

---

[3] *See* U.S. Department of Health and Human Services, *Poverty Guidelines,* available at https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines (last accessed April 28, 2024).

REPLY SUPPORTING APPLICATION FOR PRELIMINARY INJUNCTION

restrained." FRCP 65(c). The amount that the Jurisdictional Defendants may be ordered to pay as a consequence of their own wrongdoing is not a cost or damage that they would sustain as a result of being wrongfully restrained.

As the Court already determined when issuing the temporary restraining order, "[t]here is no reason to believe that Defendants will sustain any costs or damages by reason of being wrongfully enjoined or restrained." (ECF 17 at 6). Accordingly, Plaintiffs should not be required to post any bond.

**G. Max O. Day Was Central To Wealth Assistants' Fraudulent Scheme**

Max O. Day declares under penalty of perjury that he was "not an employee, owner, manager, or stakeholder" for Wealth Assistants and was instead merely an "independent contractor," or more specifically, a "Chief Growth & Technology Consultant." (Second Opposition, Exhibit 1).

In reality, Max O. Day held himself out as Wealth Assistants' "Chief Growth Officer," not merely a "consultant." (*See* Motion, Exhibit A at Exhibit 19, shown below, which shows an example of an email from Max O. Day displaying his title as "Chief Growth Officer" in his signature line).

From: Max Day <maxday@wealthassistants.com>
To: "bcdllehav@yahoo.com" <bcdllehav@yahoo.com>
Sent: Tuesday, August 30, 2022 at 02:59:58 PM CDT
Subject: Contact Information

Craig,

Thanks for the time and feedback today. I have reached out to Noah regarding your questions. He will look into it and either get back to me or directly reach out. As discussed, we will be working to transition to the FBA and the FBM (drop ship) model. But get you some answers on the questions you brought up to me. Thank you again for the feedback!

Also, below is Nate and my contact information. Feel free to reach out anytime.

Nate Fancher | Director, Portfolio Management
nate@wealthassistants.com
949-998-4410

Max Day | Chief Growth Officer
maxday@wealthassistants.com
832-400-5695

Very Best,
Max

Max O. Day also helped convince many individuals to purchase the business opportunity Wealth Assistants was selling by telling those individuals that the stores Wealth Assistants was operating were highly profitable. (*See* Motion, Exhibit A at ¶ 16-18).

Moreover, Max O. Day coordinated the "payment processing" services for Wealth Assistants, which have helped Wealth Assistants conceal its assets from creditors, including Plaintiffs. (*See* Motion, Exhibit A at Exhibit 20, shown below, wherein Max O. Day discussed a "very creative and custom approach to processing," which is the euphemism Wealth Assistants used to describe dissipating and concealing assets).

REPLY SUPPORTING APPLICATION FOR PRELIMINARY INJUNCTION

---

Zach Henson <zach@mintsolutions.biz>                                    Wed, Dec 27, 2023 at 1:40 PM
To: Nico Banks <nico@bankslawoffice.com>

Introduction to payment processor helpers from Max Day

---------- Forwarded message ---------
From: **Max Day** <maxday@wealthassistants.com>
Date: Thu, Jan 5, 2023 at 1:43 PM
Subject: Introductions
To: Zach Henson <zach@mintsolutions.biz>, Alison Schmidt <alison@total-apps.com>, Rey Pasinli <Rey@total-apps.com>

Zach <> Rey & Alison

Zach - I would like to introduce you Rey and Alison with Total Apps. I have known Rey for 15+ years, and he is a trusted friend. They take a very creative and custom approach to processing. They could help with your rapidly expanding business.

Y'all take it from here.

Very Best,
Max

---

Furthermore, Max O. Day has a documented history of perpetrating similar fraudulent schemes with the members of his family that own Wealth Assistants (Michael Day and Max K. Day). Specifically, in *In re Today's Destiny*, an individual named Fleenor testified that as an insider of the *Today's Destiny* scheme, he had gained personal knowledge of how Michael Day, Max K. Day, and Max O. Day perpetrated that fraudulent scheme. *In re Today's Destiny*, 06-03285, ECF 718 (S.D. Tex. Bankruptcy Court 2006). Fleenor testified that Max O. Day was directly involved in pressuring customers to sign their documents without reading them. Fleenor also testified that Max O. Day used different sales names while selling for IBD/Medicus. That evidence about Max O. Day's past fraud is admissible to demonstrate his intent to participate in a fraudulent conspiracy in this case. *See* Fed. Rule of Evidence 404(b); *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir.1982).

Finally, Max O. Day states in his declaration that "the $9,000 that I would be permitted to spend pursuant to Plaintiffs' Application and proposed preliminary

injunction would barely scratch the surface of our needs," while at the same time disclosing that he has fewer than $10,000 held by him or for his benefit in any financial accounts. Those positions are plainly inconsistent.

In summary, Max O. Day's declaration lacks credibility, and the evidence demonstrates that he was a key perpetrator of the Wealth Assistants fraudulent scheme. He should not be excluded from the asset freeze.

### H. Plaintiffs Have Shown A Likelihood Of Success On The Merits

Jurisdictional Defendants also argue that Plaintiffs have not shown a likelihood of success on their fraud claims or unfair competition claims because they "fail to identify a single misrepresentation of material fact." (First Opposition at ¶ 23, 42). That is clearly not true. Ample evidence demonstrates that Jurisdictional Defendants operated a fraudulent scheme by telling their clients (including Plaintiffs) that an investment in an online Amazon store managed by Wealth Assistants would likely generate passive income of thousands of dollars per month when they knew that was not true. (Motion at 10-11); *see In re 3Com Securities Litigation*, 761 F. Supp. 1411, 1416 (N.D. Cal. 1990) ("Statements relating to predictions or forecasts of future activity may be material misrepresentations if the prediction did not have a reasonable factual basis."). Moreover, the Motion shows that Wealth Assistants sent invoices to its clients, including at least one Plaintiff, for inventory that was never uploaded into the clients' stores. (Motion at note 5).

REPLY SUPPORTING APPLICATION FOR PRELIMINARY INJUNCTION

Moreover, other than Max O. Day's declaration discussed above, Jurisdictional Defendants cite no exonerating evidence despite having had months to gather such evidence, which further demonstrates Plaintiffs' likelihood of success on the merits.[4]

## I.  Plaintiffs' Evidence Is Not Barred By The Parol Evidence Rule

The Jurisdictional Defendants argue that evidence of Jurisdictional Defendants' misrepresentations outside the written contract are prohibited by the parol evidence rule. (First Opposition at 16). That argument merits no discussion because it is simply not true; the parol evidence rule does not prohibit parties from introducing evidence of misrepresentations to prove a fraud or unfair competition claim. *Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914, 929 (S.D. Tex. 1998) ("because Plaintiffs here allege fraud, the parol evidence rule does not apply.").

## J.  The Court Has Specific Personal Jurisdiction Over The Jurisdictional Defendants

The Jurisdictional Defendants then argue that the Court lacks personal jurisdiction over the claims against them. The Wealth Assistants Defendants argue that the Court does not have personal jurisdiction over Yax Ecommerce LLC (one of the entities formerly known as Wealth Assistants) because it is not a resident of California, and a non-California party's contract with a California resident does not

---

[4] Defendants also argue that Plaintiffs' evidence is inadmissible because it is "parol evidence." However, "[a]s set forth in the Restatement (Second) of Contracts (Restatement), the rule against parol evidence applies only to the use of 'prior or contemporaneous agreements or negotiations' to 'contradict a term of the writing.'" U.S. v. Floyd, 1 F.3d 867, 872 (9th Cir. 1993). Here, Plaintiffs have not sought to admit evidence for the purpose of contradicting the terms of their contract—nor have Plaintiffs even brought breach-of-contract claims—so Defendants' "parol evidence" argument can be rejected out of hand.

automatically establish the non-California party's purposeful availment of California law. (First Opposition at ¶ 54). While it may be true that a single California contract is not always sufficient, "under California case law, making a substantial number of sales of goods or services to California residents via one's own website constitutes purposeful availment" sufficient to establish personal jurisdiction. *Thurston v. Fairfield Collectibles of Ga.*, LLC, 53 Cal.App.5th 1231, 1240 (Cal. Ct. App. 2020). Online sales in California totaling $325,000 a year easily surpass the "substantial number of sales" standard. *Id.*

Here, Wealth Assistants made well over $325,000 in sales per year to its California clients, including Plaintiffs. It is therefore subject to the Court's personal jurisdiction.

The Court also has clear personal jurisdiction over all the other Jurisdictional Defendants because they all participated in the conspiracy to defraud the California-resident Plaintiffs. In determining whether a court has personal jurisdiction over co-conspirators that injure California residents:

> The applicable test is whether plaintiff has offered substantial evidence that persuades the trial court that there is reason to believe that each of the named nonresident defendants might be linked to the alleged conspiracy .... This evidence need not be strong or conclusive, nor need plaintiffs prove each element of their causes of action. However, ... they must provide some evidence allowing the trial court—as finder of fact on jurisdictional issues—to conclude that these particular named defendants were involved in the alleged conspiracy.

*SK Trading Int'l Co. v. The Superior Court*, 77 Cal.App.5th 378, 390 (Cal. Ct. App. 2022). Here, Plaintiffs allege, and the uncontradicted evidence demonstrates,

that each of the Jurisdictional Defendants were involved in the conspiracy that defrauded Plaintiffs. Therefore, the Court has specific jurisdiction over all Jurisdictional Defendants.

Jurisdictional Defendants note that "'Allegations of conspiracy . . . do not establish as a matter of law that if one conspirator comes within the personal jurisdiction of our courts, then California may exercise jurisdiction over other nonresident defendants who are alleged to be part of that same conspiracy.'" (First Opposition at ¶ 63, quoting *In re Automobile Antitrust Cases I & II*, 135 Cal. App. 4th 100, 113 (2005)). The case they cite held that mere *allegations* that the nonresidents participated in a conspiracy (as opposed to evidence of participation in that conspiracy) are not enough to overcome a motion to dismiss for lack of personal jurisdiction once the plaintiff has had the opportunity to conduct jurisdictional discovery. In that case, after finishing jurisdictional discovery, the plaintiffs did not have any evidence that the nonresident defendants at issue participated in the conspiracy. 135 Cal. App. 4th at 113. The plaintiffs solely had evidence against certain other defendants, and they asked the court to "infer" that the nonresident defendants had entered the conspiracy based on allegations alone. *Id.* Quite understandably, the court rejected that invitation, but the court also noted that "[w]e only require that [Plaintiffs] offer some evidence that persuades the trial court that there is reason to believe that each of the named nonresident defendants might be linked to the alleged conspiracy" *Id.* at 118.

Here, by contrast, Plaintiffs have not even had the opportunity to conduct any jurisdictional discovery, and yet they have still submitted evidence that all Jurisdictional Defendants participated in the conspiracy at issue.

### K. Plaintiffs May Pierce The Veil Of The Jurisdictional Defendants' Alter-Ego Entities

The temporary restraining order and proposed preliminary injunction state that assets held "by or for the benefit of" Jurisdictional Defendants are subject to the asset freeze. However, Plaintiffs and Jurisdictional Defendants disagree on the meaning of the phrase "for the benefit of." For example, in Plaintiffs' view, assets are held "for the benefit of" the Jurisdictional Defendants if the assets are held by corporations that are (1) wholly owned (directly or indirectly) by the Jurisdictional Defendants, and (2) have no operations distinct from those of the Jurisdictional Defendants. The Jurisdictional Defendants disagree. Their position seems to be that assets are only held for their benefit if the bank account holding the assets says expressly that the assets are held for the benefit of the Jurisdictional Defendants. That narrow interpretation of the phrase "for the benefit of" is inconsistent with the plain meaning of that phrase.

Moreover, "[a] corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the [owner] of a corporation liable for the acts of the corporation." *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal.App.4th 523, 538 (2000). Although there is a presumption against disregarding a corporate identity, that presumption may be overcome by showing that

(1) there is such unity of interest that the separate personalities render one corporation the mere instrumentality of the other, and (2) failure to disregard their separate entities would result in fraud or injustice. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).[5]

Here, Plaintiffs have provided ample, uncontradicted evidence that the Jurisdictional Defendants have abused their corporate privileges by hiding their assets in alter-ego corporations, some of which are named as Defendants in this matter[6] and some of which are not. *See* Motion at 10-14. It would be a gross injustice to allow Jurisdictional Defendants to continue to abuse those corporate privileges, which may deprive Plaintiffs of any opportunity to obtain meaningful final relief. In this situation, it is appropriate to disregard any distinction between the Jurisdictional Defendants and the fictitious corporations they have formed.

Accordingly, Plaintiffs respectfully request that the Court clarify that the preliminary injunction include a clarifying provision stating that

> The phrase 'assets held by or for the benefit of the Jurisdictional Defendants' includes assets that a reasonable observer would believe—

---

[5] Similarly, the doctrine of "reverse veil piercing" allows a human debtor's creditor to collect on the debt from the debtor's corporation. "Reverse veil piercing is similar to traditional veil piercing in that when the ends of justice so require, a court will disregard the separation between an individual and a business entity." *Curci Investments, LLC v. Baldwin*, 221 Cal. Rptr. 3d 847, 851 (Ct. App. 2017). "But, the two serve unique purposes and are used in different contexts. Rather than seeking to hold an individual responsible for the acts of an entity, reverse veil piercing seeks to satisfy the debt of an individual through the assets of an entity of which the individual is an insider." *Id.* Although reverse veil piercing is different from veil piercing, courts consider the same factors in deciding whether to apply the doctrine: (1) whether the debtor and the corporation have a unity of interest, and (2) whether declining to pierce the corporate veil would yield an inequitable result. *Id.* For example, when the debtor is the sole owner of a corporation and uses it as his or her bank account, the debtor's creditor may be able to reverse-pierce the corporate veil. *Id.*

[6] The defendants other than the Jurisdictional Defendants in this case are: WA Amazon Seller LLC; MKD Investment Advisor, LLC; MKD Family Beneficiary, LLC; MKD Family Private Management Company, LLC; HouTex Farm Equity Partners LLC; Business Financial Solutions Advisory LLC; Evo Maxx LLC; Yax IM and Management Inc. (D.B.A. "Fulfillable"); WWKB LLC; Dreams to Reality LLC.

REPLY SUPPORTING APPLICATION FOR PRELIMINARY INJUNCTION

based on the objective circumstances known to the Jurisdictional Defendants or others who participate in the spending of the assets—were likely being held to benefit the Jurisdictional Defendants. Such assets would include, for example, assets held by corporations that, in the past year, have been both (1) wholly owned (directly or indirectly) by the Jurisdictional Defendants, and (2) as of April 29, 2024, have no meaningful operations that are distinct from those of the Jurisdictional Defendants.

Moreover, pursuant to the veil-piercing doctrine, Plaintiffs respectfully request that the Court find that it has jurisdiction over the Non-Jurisdictional Defendants, and Plaintiffs respectfully request that those Non-Jurisdictional Defendants be subject to the preliminary injunction order. *See Sheard v. Superior Court*, 40 Cal.App.3d 207, 210, 114 Cal.Rptr. 743 (1974) (noting that a corporate alter ego is subject to personal jurisdiction wherever its owner is subject to personal jurisdiction). The Non-Jurisdictional Defendants' attorneys presented the Non-Jurisdictional Defendants' position in anticipation of this hearing (*see* Second Opposition at ¶ 27-30) so they have not been deprived of an opportunity to be heard. Furthermore, the fact that the Non-Jurisdictional Defendants were not ordered to show cause why a preliminary injunction should not issue is of little moment because the Non-Jurisdictional Defendants' alter egos—the Jurisdictional Defendants—were ordered to show cause, and the Court may disregard any distinction between those alter egos. *See Sonora Diamond Corp.*, 83 Cal.App.4th at 538.

### L.  Plaintiffs' Evidence Of Prior Fraud Is Properly Before The Court

The Jurisdictional Defendants argue that the evidence of their fraudulent schemes prior to Wealth Assistants "consist of unsupported allegations in a complaint

REPLY SUPPORTING APPLICATION FOR PRELIMINARY INJUNCTION

and a motion for summary judgment, which was not granted against any of the Jurisdictional Defendants." (Second Opposition at ¶ 31). The evidence that the court may consider, however, is not so limited. "Courts have consistently held that courts may take judicial notice of documents filed in other court proceedings." *NuCalFoods, Inc. v. Quality Egg LLC*, 887 F.Supp.2d 977, 984-85 (E.D. Cal. 2012) (taking judicial notice of documents filed in related Iowa state court proceedings); *Tirado v. Victoria's Secret Stores, LLC*, 1:21-cv-00636-JLT-SKO, at *5 (E.D. Cal. Mar. 9, 2023). Here, therefore, the Court may take judicial notice of the ample evidence filed in a bankruptcy proceeding demonstrating that the Jurisdictional Defendants perpetrated the Today's Destiny fraud, such as the insider declaration discussed above in *In re Today's Destiny*, 06-03285, ECF 718 (S.D. Tex. Bankruptcy Court 2006) (the bankruptcy trustee's opposition to the Days' summary judgment motion).

## M. Conclusion

For the reasons discussed above, Plaintiffs respectfully request that the Court find that the Jurisdictional Defendants have failed to show cause why the proposed preliminary injunction should not issue. Accordingly, Plaintiffs respectfully request that the Court enter the proposed preliminary injunction, except that (1) the proposed injunction should be altered to decrease the Jurisdictional Defendants' allowance for personal and household expenditures to 1.5 times the federal poverty line, and (2) the proposed injunction should add the paragraph proposed above to clarify the phrase "for the benefit of." Finally, Plaintiffs respectfully request that the Court find that it

has personal jurisdiction over the Jurisdictional Defendants and that the Court extend the injunction to apply to the Jurisdictional Defendants.

Dated: April 29, 2024

/s/Nico Banks
Nico Banks, Esq.
Banks Law Office
Bar No. 344705
Tel.: 971-678-0036
nico@bankslawoffice.com
712 H St NE,
Unit #8571,
Washington, DC 20002

## WORD COUNT COMPLIANCE CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains fewer than 7,000 words, which complies with the word limit of L.R. 11-6.1

/s/Nico Banks
Nico Banks
Dated: April 29, 2024

## CERTIFICATE OF SERVICE

On April 29, 2024, I served this brief via email to Lema Mousilli (lema@lloydmousilli.com) and Rachel Crockett (rachel@lloydmousilli.com). One or both of those attorneys represent all Defendants in this matter.

I declare under penalty of perjury under the laws of the State of California that the foregoing statements in this Certificate of Service are true and correct.

/s/Nico Banks
Nico Banks
Dated: April 29, 2024

REPLY SUPPORTING APPLICATION FOR PRELIMINARY INJUNCTION