RACHEL M. CROCKETT
California State Bar No. 266447
**LLOYD & MOUSILLI, PLLC**
11807 Westheimer Road
Suite 550 PMB 944
Houston, TX 77077
Tel: (512) 609-0059
Fax: (281) 783-8565
*litigation@lloydmousilli.com*
**ATTORNEYS FOR DEFENDANTS**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DISTRICT**

**DAVID HOUGH;**
**MOULOUD HOCINE;**
**JENNIFER LEHMKUHL HILL;**
**AMUND THOMPSON;**
**PAUL PANICO**

***Plaintiffs*,**

**v.**

**RYAN CARROLL; MAX K. DAY;**
**MAX O. DAY; MICHAEL DAY;**
**YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC;**
**WA DISTRIBUTION LLC;**
**PROVIDENCE OAK PROPERTIES, LLC;**
**WA AMAZON SELLER LLC;**
**MKD INVESTMENT ADVISOR, LLC;**
**MKD FAMILY BENEFICIARY, LLC;**
**MKD FAMILY PRIVATE MANAGEMENT COMPANY, LLC;**
**MAX DAY CONSULTING, LLC;**
**HOUTEX FARM EQUITY PARTNERS LLC; BUSINESS FINANCIAL SOLUTIONS ADVISORY LLC; EVO MAXX LLC;**
**YAX IP AND MANAGEMENT INC. (D.B.A. "FULFILLABLE"); WWKB LLC;**
**DREAMS TO REALITY LLC;**

***Defendants*.**

Case No.: 2:24-cv-02886-WLH

Assigned for all purposes to:
JUDGE WESLEY L. HSU

**DEFENDANTS RYAN CARROLL; MAX K. DAY; MAX O. DAY; MICHAEL DAY; YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC; WA DISTRIBUTION LLC; PROVIDENCE OAK PROPERTIES, LLC; WA AMAZON SELLER LLC; MKD INVESTMENT ADVISOR, LLC; MKD FAMILY BENEFICIARY, LLC; MKD FAMILY PRIVATE MANAGEMENT COMPANY, LLC; MAX DAY CONSULTING, LLC; HOUTEX FARM EQUITY PARTNERS LLC; BUSINESS FINANCIAL SOLUTIONS ADVISORY LLC; EVO MAXX LLC; YAX IP AND MANAGEMENT INC. (D.B.A. "FULFILLABLE"); WWKB LLC; AND DREAMS TO REALITY LLC'S MOTION TO DISMISS**

Action Filed: April 9, 2024
Hearing: June 7, 2024, 1:30 p.m. PT
Trial Date: N/A

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 7, 2024, at 1:30 p.m. or as soon thereafter as this matter may be heard before Judge Wesley L. Hsu in the above-entitled Court, located at 350 W. 1ST Street, Los Angeles, CA 90012, Defendants Ryan Carroll; Max K. Day; Max O. Day; Michael Day; Yax Ecommerce LLC; Precision Trading Group, LLC; WA Distribution LLC; Providence Oak Properties, LLC; WA Amazon Seller LLC; MKD Investment Advisor, LLC; MKD Family Beneficiary, LLC; MKD Family Private Management Company, LLC; Max Day Consulting, LLC; Houtex Farm Equity Partners LLC; Business Financial Solutions Advisory LLC; Evo Maxx LLC; Yax IP and Management Inc. d/b/a "Fulfillable"; WWKB LLC; and Dreams To Reality LLC's (**"Defendants"**) will and hereby do move this Court for (1) An Order dismissing Plaintiffs David Hough, Mouloud Hocine, Jennifer Lehmkuhl Hill, Amund Thompson, and Paul Panico's (**"Plaintiffs"**) claims for conspiracy to commit fraud, conspiracy to make fraudulent transfers, conspiracy to violate CAL. BUS. & PROF. CODE § 17200 and §17500, and violations of securities laws pursuant to 15 U.S.C. § 771 against all Defendants pursuant to Federal Rule of Civil Procedure 12(b)(2) and Federal Rule of Civil Procedure 12(b)(6).

This Motion is made on the grounds that this Court lacks personal jurisdiction over the Defendants and Plaintiffs have failed to state a claim upon which relief may be granted for each of their causes of action against Defendants.

Dated: April 30, 2024.
Avon, CT

Respectfully submitted,

By: */s/ Rachel M. Crockett*
Rachel M. Crockett
Attorney-in-Charge

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. - 5 -
I. FACTUAL AND PROCEDURAL BACKGROUND ............................................................. - 5 -
II. ARGUMENT AND AUTHORITIES ............................................................. - 7 -
A. Legal Standard for a Rule 12(b)(2) Motion to Dismiss ............................................................. - 7 -
B. This Court Lacks Personal Jurisdiction Over the Defendants, Particularly All Defendants Apart from Wealth Assistants ............................................................. - 8 -
a. The Court Lacks Personal Jurisdiction over the other Entity Defendants. ................ - 9 -
b. This Court lacks Personal Jurisdiction over Defendant Max O. Day. ..................... - 10 -
c. This Court lacks Personal Jurisdiction over the Remaining Individual Defendants.- 11 -
C. Legal Standard for a Rule 12(b)(6) Motion to Dismiss. ............................................. - 13 -
D. Plaintiffs Have Failed to State a Claim Upon Which Relief Can be Granted for Each of the Defendants, Particularly the Non-Wealth Assistants Defendants................................ - 14 -
E. Plaintiffs Failed to State a Claim for Their Fraud Cause of Action........................... - 15 -
F. Plaintiffs' Alleged Representations Outside of the Written Contract are Prohibited by the Parol Evidence Rule............................................................................................. - 18 -
G. Plaintiffs Cannot Show a Likelihood of Success on Their Fraudulent Transfer Claim- 19 -
H. Plaintiffs Cannot Show a Likelihood of Success on Their Claim for Conspiracy to Violate California's Unfair Competition Law ..................................................................... - 20 -
I. Plaintiffs' Claims for Violations of Securities Laws Must Also Fail .......................... - 22 -
III. CONCLUSION ............................................................................................. - 24 -
CERTIFICATE OF COMPLIANCE ........................................................................ - 24 -
CERTIFICATE OF SERVICE.................................................................................. - 24 -

## TABLE OF AUTHORITIES

**Cases**

*Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d (Tex. 2011)............. - 19 -
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... - 14 -
*Barakat v. Broward Cnty. Hous. Auth*., 771 So. 2d (Fla. Dist. Ct. App. 2000)........................... - 19 -
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... - 14 -
*Burger King Corp. v. Rudzewicz*, (1985) 471 U.S. 462........................................................ - 11 -
*Burger King*, 471 U.S. ........................................................................................ - 8 -
*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d(9th Cir. 2011) ......................... - 15 -
*Calder v. Jones*, (1984) 465 U.S. 783 ...................................................................... - 7 -
*Citing Lowell Staats Mining Co., Inc. v. Pioneer Uravan Inc.*, (10th Cir.1989) 878 F.2d 1259.... - 9 -
*City of Indus. v. City of Fillmore*, 198 Cal. App. 4th 191 (2011), as modified (Aug. 24, 2011).. - 17 -
*Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104 (C.D. Cal. 1999) ......... - 11 -, - 12 -, - 13 -
*Committee on Children's Television, Inc. v. General Foods Corp.*, (1983) 35 Cal. 3d 197......... - 21 -
*Cornelison v. Chaney*, (1976) 16 Cal. 3d 143.................................................................. - 8 -
*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ................................................................... - 7 -
*Doe v. Unocal Corp.*, (9th Cir.2001) 248 F.3d 915 ............................................................. - 9 -
*Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377 (1992) ............................................. - 20 -
*First Bank v. Brumitt*, 519 S.W.3d (Tex. 2017)................................................................ - 19 -
*Flynt Distrib. Co., Inc. v. Harvey,* 734 F.2d 1389 (9th Cir.1984) ........................................... - 12 -
*Goehring v. Superior Court*, (1998) 62 Cal. App. 4th 894 ...................................................... - 9 -

*HealthMarkets*, 171 Cal. App. 4th ... - 8 -
*HealthMarkets, Inc. v. Superior Court*, 171 Cal. App. 4th 1160 (2009) ... - 8 -
*Helicopteros Nacionales de Colombia v. Hall*, (1984) 466 U.S. 408 ... - 8 -
*In re Automobile Antitrust Cases I & II*, (2005) 135 Cal. App.4th 100 ... - 9 -
*In re Automobile Antitrust*, 135 Cal. App.4th ... - 10 -
*In re Impac Mortg. Holdings, Inc. Sec. Litig*., 554 F. Supp. 2d (C.D. Cal. 2008) ... - 16 -
*International Shoe Co. v. Washington*, (1945) 326 U.S. 310 ... - 7 -
*Johnson v. Driver*, 198 S.W.3d (Tex. App.--Dallas 2006) ... - 19 -
*Kearns v. Ford Motor Co.*, 567 F.3d (9th Cir. 2009) ... - 15 -
*Lavie v. Procter & Gamble Co.,* (2003) 105 Cal. App. 4th 496 ... - 21 -
*Lloyd v. Junkin* 75 S.W.2d(Tex.Civ.App.—Dallas 1934, no writ) ... - 17 -
*Lone Star Fund V (U.S.), L.P. v. Barclays Banks PLC*, 594 F. 3d 383 (5th Cir. 2010) ... - 14 -
*McGlinchy v. Shell Chemical Co.,* (9th Cir.1988) 845 F.2d 802 ... - 9 -
*Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d (Tex. 2019) ... - 18 -
*Mihlon v. Superior Court*, 169 Cal.App.3d 703 (1985) ... - 11 -
*Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-0578-BTM-BLM, 2010 WL 3339432 (S.D. Cal. Aug. 24, 2010) ... - 13 -
*Pavlovich v. Superior Court*, (2002) 29 Cal. 4th 262 ... - 8 -
*Perkins v. Benguet Mining Co.*, (1952) 342 U.S. 437 ... - 7 -
*Posse Energy, Ltd. v. Parsley Energy*, LP. S.W.3d (Tex. App. 2021) ... - 19 -
*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) ... - 7 -, - 12 -
*Rivelli v. Hemm*, 67 Cal. App. 5th 380 (2021) ... - 9 -
*S.E.C. v. Goldfield Deep Mines Co. of Nevada*, 758 F.2d 459 (9th Cir. 1985) ... - 22 -
*Schwarzenegger v. Fred Martin Motor Co*., 374 F. 3d (9th Cir. 2004) (citation omitted) ... - 7 -
*Shearer v. Superior Court*, 70 Cal.App.3d 424 (1977) ... - 11 -
*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (2000) ... - 9 -
*Sonora Diamond*, 83 Cal.App.4th ... - 9 -
*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d (5th Cir. 2004) ... - 16 -
*Spring Lake NC, LLC v. Figueroa*, 104 So. 3d (Fla. Dist. Ct. App. 2012) ... - 19 -
*Tex. & Pac. Ry. Co. v. Poe,* 115 S.W.2d (1938) ... - 18 -
*The Florida Bar v. Frederick*, 756 So.2d n. 2 (Fla.2000) ... - 19 -
*Thigpen v. Locke,* 363 S.W.2d (Tex. 1962) ... - 18 -
*United States v. Greenlaw*, 84 F.4th (5th Cir. 2023) ... - 17 -
*Virtualmagic Asia, Inc. v. Fil–Cartoons, Inc.*, 99 Cal.App.4th 228 (2002) ... - 13 -
*Zar v. Omni Indus., Inc*., 813 F.2d (5th Cir. 1987) ... - 17 -
*Zhang v. Superior Court*, 57 Cal. 4th 364 (2013) ... - 21 -

**Statutes**

15 U.S.C. § 771 ... - 21 -
15 U.S.C. §77b ... - 21 -
CAL. BUS. & PROF. CODE §§ 17200 et seq ... - 19 -
CAL. CIV. CODE § 3439.04(A) ... - 18 -
CODE CIV. PROC., § 410.10 ... - 6 -
FED.R.CIV.P. 4(k)(1)(A) ... - 6 -, - 12 -
TEX. BUS. & COM. CODE § 24.005 ... - 18 -

COME NOW **SPECIALLY APPEARING DEFENDANTS RYAN CARROLL; MAX K. DAY; MAX O. DAY; MICHAEL DAY; YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC; WA DISTRIBUTION LLC; PROVIDENCE OAK PROPERTIES, LLC; WA AMAZON SELLER LLC; MKD INVESTMENT ADVISOR, LLC; MKD FAMILY BENEFICIARY, LLC; MKD FAMILY PRIVATE MANAGEMENT COMPANY, LLC; MAX DAY CONSULTING, LLC; HOUTEX FARM EQUITY PARTNERS LLC; BUSINESS FINANCIAL SOLUTIONS ADVISORY LLC; EVO MAXX LLC; YAX IP AND MANAGEMENT INC. (D.B.A. "FULFILLABLE"); WWKB LLC; DREAMS TO REALITY LLC** (**"Defendants"**), and hereby files *Defendants' Motion to Dismiss* (**"Motion"**) pursuant to Rule 12(b)(2) and Rule 12(b)(6) and respectfully shows the Court as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. FACTUAL AND PROCEDURAL BACKGROUND**

1. On April 9, 2024, Plaintiffs filed their original Complaint against Defendants asserting causes of action for conspiracy to commit fraud, fraudulent transfers, conspiracy to violate California Business and Professions Code §17200, and violations of securities laws, despite the fact that they each have valid written contracts that prohibit such claims. *See* Dkt. 1.

2. On April 9, 2024, Plaintiffs also filed an *Ex Parte* Application for a Temporary Restraining Order and an Order to Show Cause regarding a Preliminary Injunction (**"Application"**), seeking the extraordinary remedy of a freeze of all of the Defendants' assets pre-judgment as well as a disclosure of all their financial information pre-judgment. *See* Dkt. 9.

3. On April 11, 2024, Defendants filed an Opposition to Plaintiffs' Application (**"Opposition"**) on the grounds that (a) this Court lacked personal jurisdiction over the Defendants; (b) the case should be compelled to binding arbitration pursuant to the Plaintiffs'

written contracts; (c) Plaintiffs failed to establish a likelihood of success on the merits on any of their claims; (d) Plaintiffs' evidence of alleged representations outside the written contracts constituted inadmissible parol evidence; and other factors. *See* Dkt. 13.

4. On April 12, 2024, Plaintiffs filed a Reply to Defendants' Opposition to Plaintiffs' Application. *See* Dkt. 15.

5. On April 15, 2024, this Court issued a Temporary Restraining Order (**"TRO"**), which held that the Court did not have personal jurisdiction over any of the Defendants apart from the Defendants Ryan Carroll; Max O. Day; Max K. Day; Michael Day; Yax Ecommerce LLC; WA Distribution LLC; and Precision Trading Group, LLC (the **"Jurisdictional Defendants"**) based upon the facts available to the Court at the present time. *See* Dkt. 17.

6. On April 26, 2024, the Jurisdictional Defendants submitted their Supplemental Brief in Opposition to Plaintiffs' Application (**"Supplemental Brief"**) in accordance with the Court's Minute Order. *See* Dkt. 31.

7. On April 28, 2024, the Jurisdictional Defendants filed a Motion to Compel Arbitration and a Motion to Stay. *See* Dkt. 34. For purposes of judicial efficiency, the Jurisdictional Defendants hereby incorporate by reference the arguments previously made in their previously filed Opposition (Dkt. 13), their Supplemental Brief (Dkt. 31), and their Motion to Compel Arbitration (Dkt. 34) and will not be restating all of the arguments in their Opposition and Supplemental Brief here.

8. As set forth in Defendants' Opposition and the Jurisdictional Defendants' Motion to Compel Arbitration, this Court lacks personal jurisdiction over the Defendants and Plaintiffs have failed to state a claim upon which relief may be granted on any of their causes of action. Thus, Defendants hereby file their Motion to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim.

## II. ARGUMENT AND AUTHORITIES

### A. Legal Standard for a Rule 12(b)(2) Motion to Dismiss

9. Federal Rule of Civil Procedure 12(b)(2) permits a defendant to file a motion to dismiss based upon a lack of personal jurisdiction. “In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper.” *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). A plaintiff may not simply rest on the “bare allegations of [the] complaint.” *Id.* (citations omitted).

10. “Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [defendants].” *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing FED.R.CIV.P. 4(k)(1)(A)). Personal jurisdiction in federal court is governed by the law of the state in which the federal court sits. *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citations omitted).

11. A California court may exercise personal jurisdiction over a nonresident defendant to the extent allowed under the state and federal Constitutions. *See* CODE CIV. PROC., § 410.10. “Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under California state law and federal due process are the same. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted); *Accord Daimler*, 571 U.S. at 125.

12. The exercise of personal jurisdiction is constitutionally permissible only if the defendant has sufficient “minimum contacts” with the forum state so that the exercise of jurisdiction “does not offend ‘traditional notions of fair play and substantial justice.’ ” *International Shoe Co. v. Washington*, (1945) 326 U.S. 310, 316. “Each defendant's contacts with the forum State must be assessed individually.” *Calder v. Jones*, (1984) 465 U.S. 783, 788.

13. A defendant that has substantial, continuous, and systematic contacts with the forum state is subject to general jurisdiction. *Perkins v. Benguet Mining Co.*, (1952) 342 U.S. 437, 445–446.

Absent such extensive contacts, a defendant may only be subject to specific jurisdiction. *Helicopteros Nacionales de Colombia v. Hall*, (1984) 466 U.S. 408, 414, fn. 8. Specific jurisdiction "depends on the quality and nature of the defendant's forum contacts in relation to the particular cause of action alleged." *HealthMarkets, Inc. v. Superior Court*, 171 Cal. App. 4th 1160, 1167 (2009).

14.    A nonresident defendant is subject to specific jurisdiction only if "(1) the defendant purposefully availed itself of the benefits of conducting activities in the forum state; (2) the controversy arises out of or is related to the defendant's forum contacts; and (3) the exercise of jurisdiction would be fair and reasonable." *Id.* (*Citing Burger King Corp. v. Rudzewicz*, (1985) 471 U.S. 462, 472, 475-478).

**B.    This Court Lacks Personal Jurisdiction Over the Defendants, Particularly All Defendants Apart from Wealth Assistants**

15.    Plaintiffs have "the initial burden to demonstrate facts establishing a basis for personal jurisdiction." *HealthMarkets*, 171 Cal. App. 4th at 1167. Plaintiffs' bare bones allegations that Defendant Yax Ecommerce, LLC, f/k/a Wealth Assistants, LLC (**"Wealth Assistants"**) marketed its services throughout the United States and that it entered into business contracts with a couple of California residents is certainly insufficient to establish the high burden of general jurisdiction over a nonresident. Plaintiffs' cursory jurisdictional allegations are also woefully insufficient to subject any of the Defendants to specific jurisdiction.

16.    "The purposeful availment inquiry ... focuses on the defendant's intentionality." *HealthMarkets*, 171 Cal. App. 4th at 1168 (citations omitted). "This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on his contacts with the forum." *Pavlovich v. Superior Court*, (2002) 29 Cal. 4th 262, 269.

17. A few contracts with California residents is insufficient to establish purposeful availment, even for Wealth Assistants, let alone the other entity and individual defendants who were not a party to these contracts. *See Goehring v. Superior Court*, (1998) 62 Cal. App. 4th 894, 907 (finding no purposeful availment based solely on the defendants' execution of "sales, security and escrow agreements" with a forum resident); *Doe v. Unocal Corp.*, (9th Cir. 2001) 248 F.3d 915, 924 (finding no purposeful availment based solely on the defendant's contractual relations with a forum resident); *McGlinchy v. Shell Chemical Co.,* (9th Cir. 1988) 845 F.2d 802, 816 (same).

a. <u>The Court Lacks Personal Jurisdiction over the other Entity Defendants.</u>

18. With respect to the other entity Defendants, Plaintiffs have merely alleged that one or more directors or owners are common. However, the fact that "directors and officers were interlocking is insufficient to rebut the presumption that each common officer or director wore the appropriate 'hat' when making corporate and operational decisions for the respective entities," and does not provide basis for exercise of personal jurisdiction over a nonresident corporation, even in a state where an affiliate or subsidiary engaged in business. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 549 (2000) (*Citing Lowell Staats Mining Co., Inc. v. Pioneer Uravan Inc.*, (10th Cir. 1989) 878 F.2d 1259, 1262).

19. Similarly, "the mere fact that an officer of the foreign corporation also exercised director duties in-forum" is insufficient to establish personal jurisdiction over that director or officer. *Rivelli v. Hemm*, 67 Cal. App. 5th 380, 396 (2021) (*Citing Sonora Diamond*, 83 Cal.App.4th at 549, 552). "Personal jurisdiction must be based on forum-related acts that were personally committed by each nonresident defendant." *Id.* (*Quoting In re Automobile Antitrust Cases I & II*, (2005) 135 Cal. App.4th 100, 113). "Allegations of conspiracy [also] do not establish as a matter of law that if one conspirator comes within the personal jurisdiction of our courts, then California

may exercise jurisdiction over other nonresident defendants who are alleged to be part of that same conspiracy." *In re Automobile Antitrust*, 135 Cal. App.4th at 113.

20. In fact, this Court has already ruled that it does not have personal jurisdiction over all entity Defendants, apart from the specified Jurisdictional Defendants (the **"Non-Jurisdictional Defendants"**) based upon the facts and evidence thus far presented by Plaintiffs. *See* Dkt. 17.

21. Accordingly, California does not have personal jurisdiction over any of the other entity Defendants, even if it possesses personal jurisdiction over Wealth Assistants.

b. <u>This Court lacks Personal Jurisdiction over Defendant Max O. Day.</u>

22. As set forth in the Declaration of Max O. Day, he only ever served as an independent contractor to Wealth Assistants.[1] He was not an employee, owner, manager or stakeholder. *Id.* He never had any access to any company funds, financial records, bank accounts, or other assets, beyond the occasional performance report provided by the owners and managers of Wealth Assistants. *Id.* at ¶6. Plaintiffs' counsel, Nico Banks' (**"Mr. Banks"**), relentless pursuit of Max O. Day in this litigation and other proceedings is a case of assumed malfeasance based upon a shared name. *Id.* at ¶9. Mr. Banks assumes, without any factual basis, that because Max O. Day happens to share a name with Max K. Day, he must also have been an owner or manager of Wealth Assistants, and thus a participant in the alleged (but unsubstantiated) fraud. The TRO was erroneously issued against Max O. Day on the basis of Mr. Banks' false assertions of "fact" against Max O. Day.

23. In reality, Max O. Day is presently owed a substantial sum of money from Wealth Assistants. *See* Ex. A, Max O. Day Decl. at ¶8. This Court also lacks personal jurisdiction over Max O. Day as he was not an owner or manager of Wealth Assistants and had no dealings with

[1] *See* **Exhibit A**, Declaration of Max O. Day at ¶5.

California or its residents such that he should have expected to be hauled into Court in this forum. *Id.* at ¶5; *Burger King*, (1985) 471 U.S. at 472, 475-478.

24. This litigation and the resultant TRO has caused significant financial strain to Max O. Day and his family. *See* Ex. A, Max O. Day Decl. at ¶9. It has also damaged his personal and professional reputation by falsely associating him with allegations of fraud, without any factual basis. *Id.* Thus, this Court must dismiss Max O. Day form this litigation as it lacks personal jurisdiction over him.

c. <u>This Court lacks Personal Jurisdiction over the Remaining Individual Defendants.</u>

25. When a plaintiff is seeking to acquire jurisdiction over an officer of a corporation on an individual basis, "there must be a reason for the court to disregard the corporate form." *Davis v. Metro Prods.*, 885 F.2d 515, 520 (9th Cir.1988). "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Id.*

26. For jurisdictional purposes, "the acts of corporate officers and directors in their official capacities are the acts of the corporation *exclusively* and are thus *not material* for purposes of establishing minimum contacts as to the individuals." *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999) (emphasis added); (*Citing Shearer v. Superior Court*, 70 Cal.App.3d 424, 430 (1977)). "Implicit in this principle is the consideration that corporations are separate legal entities that cannot act on their own but must do so through their appointed representatives." *Id.* (*Citing Mihlon v. Superior Court*, 169 Cal.App.3d 703, 713 (1985)). Accordingly, "acts performed by these individuals, in their official capacities, cannot reasonably be attributed to them as individual acts creating personal jurisdiction." *Id.*

27. As admitted by Plaintiffs, none of the individual Defendants live in California and they are being sued solely due to their status as member of the various LLCs that Plaintiffs have sued. *See*

Dkt. 1 at ¶¶20-37. All of the alleged representations made by the individual Defendants occurred in their official capacity as members of Wealth Assistants. *Id.* at ¶¶75-76, 85, 89-92. Even taking the allegations of Plaintiffs' Complaint as true, it is clear that the individual Defendants' alleged representations about the potential financial performance of an Amazon Storefront pursuant to a contract for services with Wealth Assistants were made by and on behalf of Wealth Assistants. Furthermore, Plaintiffs cannot rest upon the laurels of the conclusory allegations in their Complaint. *Ranza*, 793 F.3d at 1068.

28. Plaintiffs also make allegations regarding alleged fraudulent transfers to certain individual Defendants; however, there is zero evidence that any transfer was ever made to a single individual Defendant, let alone a fraudulent transfer. *See* Dkt. 1 at ¶¶83-84, 89, 104, 108. These allegations are mere speculation by Plaintiffs and their counsel. Thus, on a Rule 12(b)(2) Motion to Dismiss, Plaintiffs cannot meet their burden of establishing personal jurisdiction over the individual Defendants based on such conclusory allegations.

29. Plaintiffs have also alleged in recent filings that they intend to pursue certain alter-ego theories. However, such theories are glaringly absent from their Complaint. *See* Dkt. 1. Nevertheless, Plaintiffs cannot establish an alter-ego theory to confer personal jurisdiction over the non-Wealth Assistants Defendants either. In order to prevail on an alter ego theory, plaintiff must make a prima facie case "(1) that there is such unity of interest and ownership that the separate personalities of [the entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Colt Studio*, 75 F. Supp. 2d at 1111 (*Quoting Flynt Distrib. Co., Inc. v. Harvey,* 734 F.2d 1389, 1393 (9th Cir.1984)).

30. Plaintiffs cannot establish that such a unity of interest exists such that the personality of Wealth Assistants no longer exists. Similar to the allegations in *Colt Studio*, Plaintiffs' conclusory allegations that the individual Defendants were behind the actions of Wealth Assistants or were

acting in concert with the entity Defendants is insufficient. *Colt Studio*, 75 F. Supp. 2d at 1111. Plaintiffs also cannot establish that a fraud or injustice would result if the separate identity of the LLC was not disregarded. Plaintiffs essentially contend that they may not be able to collect a monetary judgment against Wealth Assistants. However, "California courts have held that the difficulty in collecting a judgment, as from an undercapitalized subsidiary, does not fulfill the requirement of injustice. *Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-0578-BTM-BLM, 2010 WL 3339432, at *7 (S.D. Cal. Aug. 24, 2010) (*Citing Virtualmagic Asia, Inc. v. Fil–Cartoons, Inc.*, 99 Cal.App.4th 228, 245 (2002)). Thus, Plaintiffs cannot prove the second element of an alter-ego theory either. Rather, Plaintiffs "must rely solely on the minimum contacts doctrine to establish personal jurisdiction over the … individual defendants," which they admittedly cannot establish and they make no allegations to support such a claim. *Colt Studio*, 75 F. Supp. 2d at 1111.

31. Accordingly, this Court should grant Defendant's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction.

**C. Legal Standard for a Rule 12(b)(6) Motion to Dismiss.**

32. Rule 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted" when a complaint does not meet the pleading requirements of Rule 8. FED. R. CIV. P. 12(b)(6). As discussed more thoroughly in Defendant's Opposition and the Jurisdictional Defendant's Motion to Compel Arbitration, which are hereby incorporated by this reference, Texas and Florida law should apply to Plaintiffs' claims pursuant to the choice of law provisions in their written contracts.[2]

[2] *See* Dkt. 13 at p. 13, fn. 3; Dkt. 34 at p. 7; See Ex. A. to Decl. Day (Dkt. 34-2) at p. 7, Texas law; Ex. B. to Decl. Day (Dkt. 34-3) at p. 7, Texas law; Ex. C. to Decl. Day (Dkt. 34-4) at p. 7, Texas law; Ex. D. to Decl. Day (Dkt. 34-5) at p. 7, Texas law; Ex E to Decl. Day (Dkt. 34-6) at p. 6, 10, Florida law.

33. First, a court "considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Then, when reviewing the sufficiency of a complaint, the court must "determine whether the plaintiff has stated a legally cognizable claim that is plausible …" *Lone Star Fund V (U.S.), L.P. v. Barclays Banks PLC*, 594 F. 3d 383, 387 (5th Cir. 2010) (citation omitted). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678 (citation omitted). The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

34. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability," it fails to meet the plausibility test. *Ashcroft*, 556 U.S. at 678. While a court must accept well-plead factual allegations in the complaint as true, a court need not defer to legal conclusions that a complaint couches as facts. "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Id.* at 678-79. "Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, brackets, and citation omitted). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

### D. Plaintiffs Have Failed to State a Claim Upon Which Relief Can be Granted for Each of the Defendants, Particularly the Non-Wealth Assistants Defendants

35. With respect to all Defendants apart from Wealth Assistants and the individual defendants, (the **"Additional Defendants"**) Plaintiffs' Complaint and *Ex Parte* Application is completely devoid of any specific factual allegations of wrongdoing by said Additional Defendants. The allegations with respect to the Additional Defendants consist solely of the fact that one Defendant

Max K. Day bears some relationship to the other entities (whether it be by virtue of some level of ownership, management, a simple shared address for service of process, or even just a similar sounding name or initials). *See* Dkt. 9 at pp. 13-15. This is woefully insufficient to prove a likelihood of success on the merits on any of Plaintiffs' causes of action against these Additional Defendants. Plaintiffs have not alleged a single fact with respect to any action or inaction taken by the Additional Defendants. *Id.*

36. As Plaintiffs indisputably have no specific allegations regarding any alleged misconduct of the Additional Defendants, Plaintiffs' Complaint against the Additional Defendants must be dismissed even if they are even partially successful as to Wealth Assistants.

**E. Plaintiffs Failed to State a Claim for Their Fraud Cause of Action**

37. Plaintiffs' primary cause of action against Defendants is fraud, yet they fail to identify a single misrepresentation of material fact.

38. "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). To satisfy Rule 9(b), a pleading must identify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)

39. Such details are glaringly absent from Plaintiffs' Complaint. Plaintiffs did not plead their fraud claim with specificity, including what statements were made, when they were made, by whom they were made, to whom they were made, and by what means they were made.

40. Plaintiffs' allegations boil down to the fact that their businesses were unsuccessful, which is a known inherent risk of any entrepreneurial enterprise. The only alleged "misrepresentations" are

that Wealth Assistants advertised that the profits of an online store it managed ***should grow*** to more than $10,000 per month by the end of the store's first year. *See* Dkt. 1 at ¶6. It is clear under Texas law that the profit projections in Wealth Assistant's advertising were mere puffery, not actionable fraud. *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353 (5th Cir. 2004) (predictions of future earnings and revenues were puffery, not actionable)[3]. The slide deck and other advertising contained express warnings that the income projections were just that, projections, not guarantees of success. An assertion that a store may achieve $10,000 in profits within 12-18 months of operations, is not an unconditional guarantee of an exact dollar amount of income. The slide deck contained within Plaintiffs' Complaint also contains explicit warnings that any income projections are theoretical and not to be relied upon. *See* Dkt. 1 at p. 14. Specifically, it states multiple times on multiple pages that:

> The images and sales summary are not actual and are used for illustrative purposes only … No client's success, earnings, or production results should be viewed as typical, average, or expected. Not all clients achieve the same or similar results due to many factors, including, but not limited to, the amount of inventory purchase per month to be sold on your store, margins of products to be sold, and your results may be higher, or lower than stated.
> an stated.

*Id.* Plaintiffs written contracts also warned that "[t]he Service Provider is not liable for any specific outcomes and makes no claims about the amount of success the Client will achieve. Results may vary depending on many factors, such as market trends, conditions and third-party algorithms over which the Service Provider has not influence." *See* Ex. A to Dkt. 1 a p. 2. "The essence of fraud is that its perpetrator has persuaded his victim to believe, ***beyond the dictates of***

[3] Many of Plaintiffs' contracts have choice of law provisions, which hold that Texas law applies; hence the discussion of Texas law, however California law also holds that mere puffery is not actionable fraud. *See e.g. In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008).

***reason or prudence***, what is not so." *United States v. Greenlaw*, 84 F.4th 325, 339 (5th Cir. 2023) (emphasis added).

41. "It is well settled that representations as to future earnings or profits are mere opinion, and cannot be treated as fraud." *Sommer v. Martinaire, Inc.*, 1993 WL 385443 at *5 (Tex.App.-Dallas); *See also Zar v. Omni Indus., Inc.*, 813 F.2d 689, 693 (5th Cir. 1987)( "[t]he generally accepted rule in Texas jurisprudence is that future predictions and opinions, especially those regarding the future profitability of a business, cannot form a basis for fraud as a matter of law."). As stated in *Lloyd v. Junkin*:

> In order to effect a sale, induce the making of a contract, or place a proposed investment in a favorable light, it is quite common to make representations as to future value, productiveness, efficiency, or economy, or as to expected earnings or profits. But since that which lies in the future cannot be a matter of certain knowledge, it is held that all such representations must be taken and understood as mere expressions of opinion, and therefore their nonfulfillment cannot be treated as fraud.

75 S.W.2d 712, 714 (Tex.Civ.App.—Dallas 1934, no writ). Thus, the alleged representations regarding the potential profitability of an Amazon storefront cannot constitute actionable fraud.

42. Plaintiffs also have insufficiently pled the other elements of fraud (namely (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage). *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Plaintiffs' allegations that Defendants knew these statements regarding Wealth Assistant's businesses being profitable were false at the time they were made is a mere conclusory recitation of the element, which is insufficient. In fact, Plaintiffs allege in their Complaint that Wealth Assistants did not honor its alleged promises because it was going out of business and planned to "cease all operations before December 1, 2023." *See* Dkt. 1 at ¶79. If Wealth Assistants faced unanticipated financial conditions and had to shut down its business as Plaintiffs allege, that would indicate that

Defendants in fact did not know that the prior alleged representations about Wealth Assistants being profitable were false at the time they were made years prior.

43. Furthermore, Plaintiffs cannot establish justifiable reliance. If the parties' written agreement directly contradicts a party's alleged belief, that party cannot show actual and justifiable reliance as a matter of law. *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 559 (Tex. 2019). As the Texas Supreme Court explained, "a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." *Id.*; *See also Thigpen v. Locke,* 363 S.W.2d 247, 251 (Tex. 1962) ("In an arm's-length transaction the defrauded party must exercise ordinary care for the protection of his own interests.... [A] failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party."). This is particularly true when the party had a reasonable opportunity to review the written agreement but failed to do so. *See Tex. & Pac. Ry. Co. v. Poe,* 115 S.W.2d 591, 592 (1938).

44. Here, Plaintiffs are limited to the terms of his written contracts. "There is no evidence of active trickery or deceit in this record." *Thigpen,* 363 S.W.2d at 251.

45. Even if Plaintiffs' parol evidence were ultimately admissible, which it is not as discussed *infra,* the express written terms of such evidence also contradict Plaintiffs' position as they contained explicit warnings that they were merely indications of potential future profits, not guarantees of the performance of any particular store. Thus, Plaintiffs cannot prove the element of justifiable reliance and their fraud claims must be dismissed.

**F. Plaintiffs' Alleged Representations Outside of the Written Contract are Prohibited by the Parol Evidence Rule**

46. As the majority of Plaintiffs' contracts mandate the application of Texas substantive law, but some mandate the application of Florida substantive law, Defendants will discuss both Florida and Texas law, although the law is substantially identical in both venues. "[I]t is a well settled principle of contract law that where the terms of a contract are unambiguous, the parties' intent

must be determined from within the four corners of the document." *Barakat v. Broward Cnty. Hous. Auth.*, 771 So. 2d 1193, 1194 (Fla. Dist. Ct. App. 2000); *See also Posse Energy, Ltd. v. Parsley Energy*, LP, 632 S.W.3d 677, 687 (Tex. App. 2021). "[A] court may not consider extrinsic or parol evidence to change the plain meaning set forth in the contract." *Spring Lake NC, LLC v. Figueroa*, 104 So. 3d 1211, 1214 (Fla. Dist. Ct. App. 2012); *See also Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011).

47.    "It is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain." *Barakat*, 771 So. 2d at 1194. In the absence of ambiguity, "the language itself is the best evidence of the parties' intent and its plain meaning controls." *Id.*; *See also First Bank v. Brumitt*, 519 S.W.3d 95 (Tex. 2017).

48.    It is noteworthy that the parol evidence rule is not a rule of evidence, but a "fundamental rule of substantive law," making its discussion appropriate at this stage. *The Florida Bar v. Frederick*, 756 So.2d 79, 85 n. 2 (Fla.2000); *See also Johnson v. Driver*, 198 S.W.3d 359, 364 (Tex. App.--Dallas 2006).

49.    All of Plaintiffs' alleged misrepresentations, apart from the written contracts, is inadmissible parol evidence. The written contracts are not alleged to be ambiguous. Thus, in interpreting and enforcing the written contracts, the Court is limited to the four-corners of the agreement. *Spring Lake NC*, 104 So. 3d at 1214; *Anglo-Dutch*, 352 S.W.3d at 451.

**G.    Plaintiffs Cannot Show a Likelihood of Success on Their Fraudulent Transfer Claim**

50.    Both California and Texas have adopted the Uniform Fraudulent Transfer Act (**"UFTA"**). The elements of a fraudulent transfer are: (1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors; (5) without receiving a reasonably equivalent value in exchange. CAL. CIV. CODE § 3439.04(A); *See also* TEX. BUS. & COM. CODE § 24.005.

51. Plaintiffs merely make bare-bones conclusory allegations that Defendants have engage in fraudulent transfers with no specific factual information. *See* Dkt. 1 at ¶¶83-84, 89, 104, 108. There are no dates, amounts, or means specified. These allegations are mere speculation by Plaintiffs and their counsel without the requisite specificity.

52. Furthermore, there are no allegations sufficient to support an actual intent to hinder, delay, or defraud any alleged creditor. Nor is there anything apart from a conclusory statement to support the allegation that Wealth Assistants did not receive reasonably equivalent value for any purported transfer.

53. Thus, Plaintiffs' fraudulent transfer claim must also be dismissed.

**H. Plaintiffs Cannot Show a Likelihood of Success on Their Claim for Conspiracy to Violate California's Unfair Competition Law**

54. Plaintiffs also cannot meet the elements of their claim for conspiracy to violate California's Unfair Competition Law (**"UCL"**). CAL. BUS. & PROF. CODE §§ 17200 et seq.

55. The UCL defines "unfair competition" as, any "unlawful, unfair or fraudulent business practice" *Id.* Unlawful business activity" proscribed under section 17200 includes "anything that can properly be called a business practice and that at the same time is forbidden by law." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (citations omitted). "[I]n essence, an action based on Business and Professions Code section 17200 to redress an unlawful business practice 'borrows' violations of other laws." *Id.*

56. Plaintiffs have not identified or established a violation of any other federal or state law, that could be "borrowed" to satisfy the elements of a UCL claim. All of the issues of which Plaintiffs' complain are breach of contract issues: (1) Wealth Assistants did not set up certain online stores as allegedly promised in the contracts; (2) Wealth Assistants did not provide certain inventory as allegedly promised in the contracts; and (3) Wealth Assistants did not honor the buyback clause in the contracts. *See* Dkt. 1 at ¶¶8-10, 42-51 In fact, in alleging the promises that Wealth Assistants

failed to deliver upon, Plaintiffs extensively reference the written contracts. *Id.* at ¶42-51, 59, 63, 67, 72, 76.

57. "A plaintiff may thus not 'plead around' an 'absolute bar to relief' simply 'by recasting the cause of action as one for unfair competition'." *Zhang v. Superior Court*, 57 Cal. 4th 364, 377 (2013). All of Plaintiffs' contracts with Wealth Assistants, which they tellingly never discuss, have a strict limitation of liability clause, which provides that Wealth Assistants shall not be liable, whether in tort or breach of contract, for any consequential damages, loss of business, diminution in value, costs of replacement, etc. and that Plaintiffs are limited to a recovery of the amount of fees they paid to Wealth Assistants in the prior 12 month period. *See* Ex. A. to Dkt. 1 at p. 6, Clause 8. Plaintiffs seek to evade the limitation of liability clause, which was highlighted for them in all capital letters, in the contracts they knowingly signed, by couching their claims under various tort theories. *Id.* If plaintiffs were allowed to cast any breach of contract as a UCL claim, it would eviscerate contract law in California, and the specifically negotiated for benefit of the bargain.

58. Plaintiffs are unclear in their Complaint; however, to the extent they attempt to bae their UCL claim on a violation of California's false advertising laws, to state a claim under the UCL based on false advertising, it is necessary to show that "members of the public are likely to be deceived." *Committee on Children's Television, Inc. v. General Foods Corp.*, (1983) 35 Cal. 3d 197, 211. Unless the challenged conduct "targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer." *Lavie v. Procter & Gamble Co.,* (2003) 105 Cal. App. 4th 496, 506–507.

59. As noted by the FTC many years ago: "Perhaps a few misguided souls believe, for example, that all 'Danish pastry' is made in Denmark. Is it, therefore, an actionable deception to advertise 'Danish pastry' when it is made in this country? Of course not. A representation does not

become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." *Id.*

60. Wealth Assistants' alleged slide decks, merely state that the goal is to obtain $10,000 in profits by months 9-12 of owning an Amazon store. *See* Dkt. 1 at p. 14. A reasonable consumer would understand that the examples of profitable stores in Wealth Assistant's alleged advertising, were just that, examples of profitability that might be attained, not an absolute guarantee that any certain number would be obtained by any certain date as specifically stated in said advertising. *Id.*

61. Thus, Plaintiffs' UCL claim must also fail.

**I. Plaintiffs' Claims for Violations of Securities Laws Must Also Fail**

62. Plaintiffs bring a cause of action for violation of 15 U.S.C. § 77l against all Defendants. Section 77l creates a private cause of action for a plaintiff when a defendant sells the plaintiff unregistered securities, or sells the plaintiff securities by means of an untrue statement of material fact. *See* 15 U.S.C. § 771. The only definition of an unregistered security that could possibly apply is an "investment contract." *See* 15 U.S.C. §77b.

63. In order to constitute an investment contract, three elements must be satisfied: (1) it "must involve an investment of money;" (2) "the money must have been invested in a common enterprise;" and (3) "the anticipated profit must come solely from the efforts of others." *S.E.C. v. Goldfield Deep Mines Co. of Nevada*, 758 F.2d 459, 463 (9th Cir. 1985). Here, Plaintiffs cannot prove either the second or third element. There are no allegations to support a notion that the Plaintiffs' money was invested in a common enterprise. Rather, the allegations and contracts evidence that each Plaintiff was supplied with an individual storefront, whose profits belong solely to each individual Plaintiff. *See* Dkt. 1 at ¶¶58, 62, 66-78. Plaintiffs' artful inclusion of the term "business opportunity" in their Complaint does not turn it into an unregistered security.

64. Further, the anticipated profits were not to come solely from the efforts of others. Plaintiffs had to have an active role in operating and maintaining their Amazon storefronts, namely they had to: (1) " maintain a legal U.S. business entity in good standing … [(2)] establish an Amazon seller account owned by the Client's business … [(3)] obtain[ing] the necessary business licenses [and] state sales tax exemption certificates, [(4)] pay[ing] any legally required taxes, [(5)] fil[ing] any lawfully required tax returns … [and (6)] pay Amazon seller account fees directly to Amazon to maintain an active Amazon retail store, plus any webhosting fees." *See* Ex. A to Dkt. 1 at pp. 1-2. While Plaintiffs' make unsubstantiated allegations that other Wealth Assistant's clients had their Amazon storefronts suspended or terminated, Plaintiffs do not allege that this happened to any of them. Further, if other Amazon storefronts were suspended or terminated it was likely due to the client's failure to maintain the legal operation of their storefront as outlined in the contract above. *Id.*

65. The contracts also state that "[t]he final approval for the design, them, and niche for the Client's Amazon market place will be [made by] the Client … the Service Provider will not be responsible or liable for any such selections made.." *Id.* at p. 2. A client's individual success depended in large part upon the client's selection of a nice market and the type of inventory they would sell. The contract further warned that "[t]he Service Provider is not liable for any specific outcomes and makes no claims about the amount of success the Client will achieve. Results may vary depending on many factors, such as market trends, conditions and third-party algorithms over which the Service Provider has not influence." *Id.* The contract also specifically stated that "the ability of the Service Provider to complete its responsibilities under the Agreement may be contingent on the Client's responsibilities. Accordingly, Service Provider is not responsible for any costs, charges, or losses incurred by the Client due to the Client's failures to meet its duties under this Agreement." *Id.* Therefore, Plaintiffs attempt to couch their service contracts as passive

investment opportunities is disingenuous at best. If Plaintiffs failed to read their written contracts and understand their responsibilities thereunder, that blame rests with Plaintiffs, not Defendants.

66. Accordingly, this Court must dismiss Plaintiffs' cause of action for violation of securities laws.

## III. CONCLUSION

67. Based on the foregoing and for good cause shown, Defendants respectfully requests that this Court grant Defendants' Rule 12(b)(2) and Rule 12(b)(6) Motion to Dismiss and for such other and further relief to which the Defendants may show themselves to be justly entitled.

Dated: April 30, 2024.

Respectfully submitted,

By: */s/ Rachel M. Crockett*
Rachel M. Crockett

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this Motion contains 6,332 words, which complies with the word limit of L.R. 11-6.1

*/s/ Rachel M. Crocket*
Rachel Crockett

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document, and any attachments, will be served to counsel of record, in accordance with the governing rules of procedure regarding service in this court on this ***April 30, 2024***, via email as follows:

*/s/ Rachel Crockett*
Rachel Crockett