WILLIAM H. SHIBLEY
California State Bar No. 56093
**LLOYD & MOUSILLI, PLLC**
11807 Westheimer Road
Suite 550 PMB 944
Houston, TX 77077
Tel: (512) 609-0059
Fax: (281) 783-8565

**ATTORNEYS FOR DEFENDANTS**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DISTRICT

| | |
|---|---|
| **DAVID HOUGH, et al.**<br><br><br>*Plaintiffs*,<br><br>v.<br><br><br><br>**RYAN CARROLL, et al.**<br><br>*Defendants*. | Case No.: 2:24-cv-02886<br><br>Assigned for all purposes to:<br>JUDGE WESLEY L. HSU<br><br>**JURISDICTIONAL DEFENDANTS RYAN CARROLL; MAX K. DAY; MAX O. DAY; MICHAEL DAY; YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC; AND WA DISTRIBUTION LLC'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION AND OSC RE SANCTIONS**<br><br>Hearing: 5/13/24, 1:30 p.m. PT<br><br>Action Filed: April 9, 2024<br>Trial Date: N/A |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................- 2 -
MEMORANDUM OF POINTS AND AUTHORITIES ............................- 3 -
   I.   FACTUAL AND PROCEDURAL BACKGROUND ..............................- 3 -
   II.  ARGUMENT AND AUTHORITIES ......................................................- 11 -
     A. Neither Coercive or Compensatory Civil Contempt Sanctions are Warranted
        Here .........................................................................................................- 11 -
     B. The Jurisdictional Defendants Are In Substantial Compliance with this
        Court's Orders .........................................................................................- 13 -
     C. Plaintiffs' Counsel is Engaging in Professional Misconduct and Abuse of
        Process with Respect to the TRO ..........................................................- 19 -
   III.   CONCLUSION ................................................................................- 22 -
CERTIFICATE OF COMPLIANCE ...................................................- 23 -
CERTIFICATE OF SERVICE ...........................................................- 23 -

# TABLE OF AUTHORITIES

**Cases**

*Commodity Futures Trading Comm'n v. Noble Metals Int'l*, Inc., 67 F.3d 766 (9th Cir.
   1995) ............................................................................................- 11 -

*Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376 (9th Cir. 1986) ....................- 13 -

*Hernandez v. Cnty. of Monterey*, No. 13-CV-02354-BLF, 2023 WL 6299863 (N.D.
   Cal. Sept. 26, 2023) .................................................................................- 18 -

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693 (9th Cir. 1993)
   .................................................................................................................- 17 -

*Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464 (5th Cir. 1996) .-
   12 -

*Parsons v. Ryan*, 949 F.3d 443 (9th Cir. 2020) ...............................................- 10 -

*Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623 (9th Cir. 2016)................- 11 -

*Stone v. City & Cnty. of San Francisco*, 968 F.2d 850 (9th Cir. 1992)................- 11 -

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885 (9th Cir. 1982) - 17 -

*Wealth Assistants, LLC v. Thread Bank*, Case No. 4:24-cv-00040 .......................- 15 -

*Wolfard Glassblowing Co. v. Willy Vanbragt, Mary Vanbragt d/b/a Zodiac
   Expressions*, 118 F.3d 1320 (9th Cir. 1997) ......................................- 13 -

**Statutes**

Cal. R. Prof. Cond. 4.2. ............................................................................- 20 -

**COME NOW** JURISDICTIONAL DEFENDANTS RYAN CARROLL; MAX K. DAY; MAX O. DAY; MICHAEL DAY; YAX ECOMMERCE LLC; PRECISION TRADING GROUP, LLC; and WA DISTRIBUTION LLC (**"Jurisdictional Defendants"**), and hereby files *Jurisdictional Defendants' Second Supplemental Brief in Opposition to Plaintiffs' Application for a Preliminary Injunction and OSC re Sanctions* ("Second Supplemental Brief") and respectfully shows the Court as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    FACTUAL AND PROCEDURAL BACKGROUND

1.    On April 9, 2024, Plaintiffs filed an *Ex Parte* Application for a Temporary Restraining Order and an Order to Show Cause regarding a Preliminary Injunction (**"Application"**), seeking the extraordinary remedy of a freeze of all of the Defendants' assets pre-judgment as well as a disclosure of all their financial information pre-judgment. *See* Dkt. 9.

2.    On April 11, 2024, Defendants filed an Opposition to Plaintiffs' Application (**"Opposition"**) on the grounds that (a) this Court lacked personal jurisdiction over the Defendants; (b) the case should be compelled to binding arbitration pursuant to the Plaintiffs' written contracts; (c) Plaintiffs lacked a legal basis to freeze all of the Defendants' assets; (c) Plaintiffs failed to establish a likelihood of success on the merits on any of their claims; (d) Plaintiffs' evidence of alleged representations

outside the written contracts constituted inadmissible parol evidence; (e) Plaintiffs had not established irreparable harm sufficient to grant a mandatory injunction that went beyond maintaining the status quo; and (f) the balance of the equities did not tip in Plaintiffs' favor. *See* Dkt. 13.

3.    On April 12, 2024, Plaintiffs filed a Reply to Defendants' Opposition to Plaintiffs' Application. *See* Dkt. 15.

4.    On April 15, 2024, this Court issued a Temporary Restraining Order (**"TRO"**), holding that (a) the Court did not have personal jurisdiction over any of the Defendants apart from the Defendants Ryan Carroll; Max O. Day; Max K. Day; Michael Day; Yax Ecommerce LLC; WA Distribution LLC; and Precision Trading Group, LLC (the **"Jurisdictional Defendants"**) based upon the facts available to the Court at the present time; (b) that the Jurisdictional Defendants were ordered to appear at an OSC on April 19, 2024 regarding why a preliminary injunction (**"PI"**) should not issue prohibiting them from withdrawing, transferring, spending, or otherwise disposing of any assets held by or for the benefit of Jurisdictional Defendants until the close of this proceeding, except that each human Defendant would be allowed to spend $9,000 per month and have the ability to seek leave of Court for additional expenditures; and (c) ordering the Jurisdictional Defendants to identify account information for all accounts that contain assets held by or for the benefit of the Jurisdictional Defendants. *See* Dkt. 17.

5.    At the hearing on April 19, 2024, the Jurisdictional Defendants' counsel requested that this court (a) continue the hearing on the Application to allow for supplemental briefing on the issues of the asset freeze and the financial disclosures; (b) increase the monthly spending limit in the TRO for the individual Defendants to $13,000 per month; (c) include a provision in the TRO allowing the Jurisdictional Defendants to pay their attorney's fees. The Court agreed with the Jurisdictional Defendants' arguments in this regard and (a) set a continued hearing for April 29, 2024; (b) set a supplemental briefing schedule for that hearing; and (c) issued a Minute Order reflecting the changes to the TRO. *See* Dkt. 21.

6.    On April 22, 2024, the Jurisdictional Defendants disclosed twelve bank accounts held by the Jurisdictional Defendants as well as the fact that the law firm of Lloyd & Mousilli, PLLC (**"L&M"**) held a retainer fee for the Jurisdictional Defendants in its general firm IOLTA account. On April 23, 2024, a dispute arose between Jurisdictional Defendants and Plaintiffs regarding appropriate safeguards for disclosure of L&M's IOLTA account information and counsel met and conferred regarding such issues on April 23rd and again on April 24th. During these conversations, Plaintiffs' counsel, Nico Banks (**"Mr. Banks"**) also stated that (1) he believed certain accounts with Thread Bank that had been frozen six months ago and were the subject of other litigation should be disclosed even though the Jurisdictional Defendants had no access to any alleged funds in such accounts; and (2) he believed the phrase "for the benefit of" Jurisdictional Defendants in the

Court's TRO should apply to any "alter-egos" of Jurisdictional Defendants, including all named parties in this litigation and unnamed and unidentified parties. The Jurisdictional Defendants' counsel responded that the Jurisdictional Defendants' position is that they have no alter-egos. The parties mutually agreed to provide further briefing on the scope of the Court's TRO in order to gain the Court's guidance and further instructions on this issue, and specifically the "for the benefit of" language and its application to alleged and unalleged theoretical alter-egos. Mr. Banks also specifically agreed that he would not be seeking sanctions at this time. On April 24, 2024, as agreed to by the parties, the Jurisdictional Defendants disclosed (1) the balance of L&M's IOLTA account attributable to retainer fee funds deposited by or for the benefit of the Jurisdictional Defendants; (2) the eleven frozen accounts with Thread Bank; and (3) two other bank accounts held by Wealth Assistants, LLC, which were discovered to still be in existence after the original disclosure deadline, containing $62.80 and $599.77.

7.    On the afternoon of April 24, 2024, Mr. Banks sent an email attempting to propose new language for the PI, which would vastly expand the reach of this Court's TRO to include disclosures of financials of any entity in which any of the Jurisdictional Defendants hold a single share or have any management or employment role. This proposed language was also far beyond the briefing issue regarding the "for the benefit of" language for which the parties had agreed to provide supplemental briefing for the Court in their conference the day prior. When

the Jurisdictional Defendants' counsel pointed out that this vastly expanded the reach of this Court's prior Orders and was not what the parties had agreed to further brief, Mr. Banks quickly backed down, admitting that this was "broader" than the current TRO and OSC, but then stating that he would file yet another *ex parte* motion that day instead.

8.    On April 25, 2024, Plaintiffs filed their *Ex Parte* Motion for Expedited Briefing and Motion for Leave to Conduct Expedited Discovery (**"Discovery Motion"**). *See* Dkt. 25.

9.    On April 26, 2024, the Jurisdictional Defendants filed a Supplemental Brief in Opposition to Plaintiffs' Application (**"Supplemental Brief"**) in accordance with the Court's Minute Order, addressing the harm that would be suffered by the Jurisdictional Defendants if the TRO becomes a preliminary injunction and other matters. *See* Dkt. 31.

10.    On April 29, 2024, the Jurisdictional Defendants filed their Opposition to the Plaintiffs' Discovery Motion. *See* Dkt. 36.

11.    On April 30, 2024, following a hearing on this matter, the Court issued a Minute Order Extending and Amending the TRO (**"Amended TRO"**) and granting Plaintiffs' Motion for Leave to Conduct Expedited Discovery. *See* Dkt. 38. In its April 30 Minute Order, the Court (1) held that "'assets owned by or held for the benefit of Defendants' is confirmed to mean 'any assets over with the Jurisdictional Defendants have dominion and control'"; and (2) set an OSC why sanctions should

not issue for "failure to disclose all 'assets owned by or held for the benefit of Defendants'" by the original deadline in the TRO for May 13, 2024. *Id.*

12.    On May 1, 2024, the Court issued an Order granting Plaintiffs' Discovery Motion and ordering the Jurisdictional Defendants to (a) provide tax returns for 2021-2023 within 7 days; and (b) to identify and describe any assets that, since May 12, 2022 that have been "(1) owned or controlled, in whole or in part, directly or indirectly, by or for the benefit of any Jurisdictional Defendant; or (2) owned or controlled, in whole or in part, directly or indirectly, by or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Jurisdictional Defendant," subject to certain exemptions for publicly traded stocks and personal items of $5,000 or less, within 10 days. *See* Dkt. 42.

13.    On May 8, 2024, the Jurisdictional Defendants produced their federal tax returns to Plaintiffs as ordered by the Court. The Jurisdictional Defendants are also vigorously working on preparing the additional financial disclosures ordered by the Court on May 1, 2024 and will deliver them to Plaintiffs by the May 11, 2024 deadline.

14.    On May 8, 2024, it came to the Jurisdictional Defendants' counsel's attention that Plaintiffs' counsel, Mr. Bank has been violating the TRO, engaging in abuse of process with respect to the TRO and committing multiple ethical violations with respect to the TRO. First, Mr. Banks has been sending documents and providing

unknown instructions to the individual Defendants' banks in order to freeze all of their bank accounts, including Defendant Max O. Day.[1] Mr. Banks is well aware that this is in direct contradiction to the terms of the TRO, which permits each Defendant to spend $9,000 a month on ordinary household expenses. *See* Dkt. 17. This has caused irreparable harm to Max O. Day as he is not able to pay his monthly bills, including his mortgage. *See* Ex. A, Day Decl. at ¶¶6, 9. Mr. Banks has also had Max O. Day's adult daughter's bank accounts completely frozen, even though she is not a party to this lawsuit. *Id.* at ¶5. This is in direct contradiction to the TRO's terms. *See* Dkt. 17. The Jurisdictional Defendants' counsel sent Mr. Banks a letter advising him of this information and requesting that he contact the banks within 24 hours and advise them of the appropriate scope of the TRO.[2] Mr. Banks' responded by essentially blowing off the issue, claiming that Max O. Day has plenty of other accounts to draw from and would suffer no real harm by having his bank accounts completely frozen with no ability to pay his bills.[3]

15.    Second, Mr. Banks has been contacting persons that he knows are represented by counsel in this case and threatening them.[4] Mr. Banks contacted the owner and Farm Manager of Defendant Houtex Farm Equity Partners, LLC (**"Houtex"**), Todd Bradley (**"Mr. Bradley"**) even though he knew he was represented by counsel as

---

[1] *See* **Exhibit A**, Affidavit of Max O. Day at ¶¶5-7.
[2] *See* **Exhibit B**, Letter from William Shibley to Nico Banks dated May 8, 2024.
[3] *See* **Exhibit C**, Email from Nico Banks to William Shibley dated May 8, 2024
[4] *See* **Exhibit D**, Affidavit of Todd Bradley at ¶¶5-8.

L&M has made multiple appearances in this case on Houtex's behalf, beginning on April 11, 2024. *See* Dkt. 13; Dkt. 40. Mr. Banks accused Mr. Bradley of money laundering and threatened to take him down and have his accounts frozen too if he did not cooperate. *See* Ex. D, Bradley Aff. At ¶¶6-7. Defendants intend to file an *ex parte* Motion for a Protective Order to address the unethical behavior of Mr. Banks. However, Defendants needed to bring these issues to the Court's attention as soon as possible.

16.    In preparing for the additional financial discovery due on May 11, 2024, a few of the Jurisdictional Defendants (Ryan Carroll (**"Mr. Carroll"**) and Max K. Day) discovered that they had minor Coinbase accounts still in existence. Mr. Carroll's Coinbase account has a $518 balance. Max K. Day's Coinbase account has a $62.80 balance. Thus, Defendants Mr. Carroll and Max K. Day made a supplemental disclosure of these financial accounts on May 12, 2024.

17.    The Jurisdictional Defendants hereby submit this Second Supplemental Brief in opposition to Plaintiffs' Application for a PI and in response to the Court's OSC re sanctions. For purposes of judicial efficiency, the Jurisdictional Defendants hereby incorporate by reference the arguments previously made in their previously filed Opposition (Dkt. 13) and their Supplemental Brief (Dkt. 31) and will not be restating all of the arguments in their Opposition and Supplemental Brief here.

## II.    ARGUMENT AND AUTHORITIES

**A.    Neither Coercive or Compensatory Civil Contempt Sanctions are Warranted Here**

18.    "Civil contempt sanctions may be imposed when the district court finds by clear and convincing evidence that a party violated a specific and definite order of the court." *Parsons v. Ryan*, 949 F.3d 443, 454 (9th Cir. 2020) (citation omitted). The moving party has the burden of showing such violation by clear and convincing evidence. *See Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992). "The burden then shifts to the contemnors to demonstrate why they were unable to comply." *Id.* (citation omitted). "They must show they took every reasonable step to comply." *Id.*

19.    "A court may wield its civil contempt powers for two separate and independent purposes: (1) to coerce the defendant into compliance with the court's order; and (2) to compensate the complainant for losses sustained." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (internal quotation marks and citation omitted). "Coercive sanctions may only be imposed after a reasoned consideration of the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.* (internal quotation marks and citation omitted). The contemnor must have the ability to comply with the court's order and thus "purge" the contempt. *Id.* at 629-30. "[T]he ability to purge is perhaps the most

definitive characteristic of coercive civil contempt." *Id.* at 629. For that reason, "coercive civil sanctions ... generally take the form of conditional fines." *Id.*

20.   Furthermore, district courts must consider the least severe sanction necessary to accomplish the desired results. *Commodity Futures Trading Comm'n v. Noble Metals Int'l*, Inc., 67 F.3d 766, 776 (9th Cir. 1995). "[T]raditional sanctions, such as a monetary penalty increasing each day of [defendant's] noncompliance, [is] the exercise of the least power necessary to accomplish the court's purpose." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 468 (5th Cir. 1996).

21.   It is noteworthy here, that any sanctions imposed by the Court at the May 13, 2024 hearing would be *sua sponte* as Plaintiffs' counsel has not requested sanctions against the Jurisdictional Defendants in any of his moving papers, and in fact he specifically agreed not to pursue sanctions prior to the April 29, 2024 hearing if the Jurisdictional Defendants complied with the agreed further financial disclosures and further briefing schedule on the scope of the TRO and yet additional broader requested financial disclosures, which they did.

22.   Plaintiffs are not seeking compensatory sanctions here and they have not established any right to compensatory sanctions; nor could they as they have suffered no harm from any minor delay in the financial disclosures as a thorough asset-freeze was previously in place via the TRO and Amended TRO. Thus, any *sua sponte* sanctions issued in this case would be coercive in nature. However, no ability to further comply with the Court's TRO or ability to "purge" the sanction by

complying has been established. To the extent, that the Court finds that any of the additional financial disclosures that will be disclosed pursuant to the broader-based asset discovery issued via the Order on the Motion for Expedited Discovery should have been disclosed sooner, any alleged contempt will have been sufficiently "purged" via the May 11 disclosures, and before the May 13 hearing on sanctions.

23.    Therefore, there is no legal authority supporting the imposition of sanctions at this time. As discussed herein, the Jurisdictional Defendants have complied with this Court's Orders to the best of their abilities and will continue to comply with this Court's further Orders in this case. Sanctions are unnecessary to ensure further and future compliance.

## B.    The Jurisdictional Defendants Are In Substantial Compliance with this Court's Orders

24.    "[T]o succeed on [a] motion for civil contempt, [a movant must] show by clear and convincing evidence that [the non-movant] violated the [Order] beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the [Order]." *Wolfard Glassblowing Co. v. Willy Vanbragt, Mary Vanbragt d/b/a Zodiac Expressions*, 118 F.3d 1320, 1322 (9th Cir. 1997) (citation omitted). Substantial compliance "is a [complete] defense to an action for civil contempt." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986). The Jurisdictional Defendants have been in and continue to be in substantial compliance with the TRO. Further, to the extent there is any dispute

as to whether the required disclosures were made, the Jurisdictional Defendants' interpretation of the financial disclosures required by the TRO was made in good faith based upon a reasonable interpretation of the TRO.

25.    It is significant that the nature of this Court's Orders in this case were all issued on an *ex parte* basis with extremely shortened deadlines to oppose Plaintiffs' various *ex parte* filings, attend hearings, and comply with multiple Orders to disclose a plethora of financial information. The Jurisdictional Defendants have utilized their best efforts to comply with all Orders issued by the Court and do not believe that sanctions are warranted.

26.    The Jurisdictional Defendants disclosed twelve bank accounts held in their names on April 22, 2024. When a dispute arose as to disclosure of L&M's IOLTA account information, the Jurisdictional Defendants were diligent in their attempts to meet and confer with Plaintiffs' counsel regarding prompt disclosure of this account with appropriate safeguards in place. When Plaintiffs' counsel brought up issues with respect to frozen accounts, the Jurisdictional Defendants also agreed to promptly disclose those accounts (although they have had no access to such funds for over 6 months and these accounts are not under their "dominion and control") in an effort to avoid further unnecessary Court intervention. When Plaintiffs' counsel brought up expanding the reach of the TRO and proposed PI to include financial disclosure of other entities' information, the Jurisdictional Defendants also agreed to expeditiously brief such issues for the Court's further instruction and guidance.

There is no evidence of bad faith on the part of the Jurisdictional Defendants; rather they engaged in meet and confer efforts with Plaintiffs' counsel as to the most reasonable interpretation of the language in the TRO and briefed such issues before the Court. They did not seek to willfully violate the TRO nor to stonewall Plaintiffs' counsel in any regard.

27.    Pursuant to the Court's Amended TRO, which clarified the "for the benefit of" language to mean "dominion and control" the IOLTA account and Thread Bank accounts that were disclosed 2 days later on April 24, 2024 do not even fall under the Court's TRO. As set forth in the Jurisdictional Defendants' disclosures of April 24, 2024, the retainer fee is held in L&M's general IOLTA account, which contains millions of dollars held for other clients and is not under the dominion or control of the Jurisdictional Defendants, who have no ability to access this account, as it is held for the benefit of the law firm and to secure future legal services. As set forth in the April 24 disclosures, the accounts with Thread Bank have been frozen since October 11, 2023, prior to the filing of this litigation, and the Jurisdictional Defendants have had no access to the funds that should be in these accounts since that time. The balance amounts reflected for these accounts with Thread Bank are the amounts that the applicable account holders believe they are entitled to based upon their balances prior to the freeze. However, these bank accounts are currently the subject of prior filed litigation currently pending in the Southern District of Texas, Houston Division, *Wealth Assistants, LLC v. Thread Bank*, Case No. 4:24-

cv-00040. While the applicable account holders believe they are entitled to such funds, Thread Bank has refused to return them to the applicable account holders. Therefore, it is currently in dispute in pending previously filed litigation as to whether any funds in these accounts are still being held "for the benefit of the Jurisdictional Defendants" by Thread Bank or not, and they certainly are not under the Jurisdictional Defendants' "dominion and control." Plaintiffs' counsel herein, Mr. Banks previously filed an intervention in the Thread Bank case on March 29, 2024, which was granted by the district court, and is thus well aware of these matters. Out of an abundance of caution, and pursuant to an agreement with Plaintiffs' counsel, the Jurisdictional Defendants however disclosed these additional accounts, subject to the foregoing disclaimer.

28.    Thus, the only accounts that were disclosed late on April 24 that fall under the Amended TRO are two small accounts holding, $62.80 and $599.77 for Wealth Assistants, LLC. These accounts were unfortunately discovered to still be in existence after the Court's original deadline in the TRO. However, there was no malfeasance on the Jurisdictional Defendants' part in disclosing these additional accounts a few days later. Moreover, the Plaintiffs' have suffered no harm by the disclosure of these small accounts a few days later as Plaintiffs already had a complete asset-freeze in place against the entity Jurisdictional Defendants prohibiting them from withdrawing or transferring any assets, which they have fully abided by. Therefore, the account balances in these two minor accounts did not

change in the interim time between the Court's original deadline and the day they were disclosed and will not change until after the expiry of the Court's Amended TRO.

29.   All Jurisdictional Defendants were in complete compliance with the Court's TRO within a matter of days as discussed *supra*, apart from Mr. Carroll, Max K. Day and Michael Day. Mr. Caroll and Max K. Day did make a minor additional disclosure a couple of weeks later. However, this was because the Coinbase accounts were minor accounts that they had not used in a long time and merely forgot about (the balances of these accounts were all less than $663). Once again, there was no bad faith or intentional violation of a Court order. Moreover, due to the pre-existing asset freeze, there was no change in the balance of these accounts from the issuance of the TRO to the present, thus Plaintiffs have suffered no harm by the late disclosure of a few minor accounts. In any event, any alleged delay in these disclosures should not be attributed to the remaining Jurisdictional Defendants.

30.   "Substantial compliance … is not vitiated by a few technical violations where every reasonable effort has been made to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993), (*Citing Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 891 (9th Cir. 1982)). Any inadvertent or technical violations of this Court's TRO do not vitiate the

Jurisdictional Defendants' reasonable and good faith efforts to substantially comply with this Court's Orders.

31.    The Jurisdictional Defendants have also vigorously worked to produce 16 tax returns to Plaintiffs' counsel by the May 8, 2024 deadline imposed by the Court. The Jurisdictional Defendants are also fervently laboring on compiling the additional expansive expedited financial discovery permitted by the Court, and will comply with the May 11, 2024 deadline. The Jurisdictional Defendants have not been negligent in their duties to comply with this Court's Orders; rather, they have continuously worked to be in prompt compliance with these accelerated orders.

32.    Furthermore, clear and convincing evidence must not only be submitted to show "a historical lack of substantial compliance, but [also] a current lack of substantial compliance as required to issue coercive civil contempt sanctions." *Hernandez v. Cnty. of Monterey*, No. 13-CV-02354-BLF, 2023 WL 6299863, at *3 (N.D. Cal. Sept. 26, 2023). Even if the minor delay of a few days were enough to establish a "historical lack of substantial compliance," in order to issue coercive contempt sanctions, "a current lack of substantial compliance" must also be established. *Id.* No such lack of compliance has been established. If the Jurisdictional Defendants were not already in substantial compliance by the April 29, 2024 hearing (which they contend they were as all required financial disclosures were made at least 5 days in advance of said hearing), they certainly will be by the time of the hearing on this matter, given the broad-sweeping financial discovery

permitted by the Court in its May 1, 2024. The Jurisdictional Defendants are unaware of any further information that could possibly be provided after this next round of financial disclosures that could possibly bring them into any further compliance with the Court's TRO and Amended TRO. However, if Plaintiffs can identify any further information they believe is lacking pursuant to any of this Court's Orders, including the further discovery order, the Jurisdictional Defendants will of course promptly engage in meet and confer efforts and comply with any justified requests.

33.   In conclusion, sanctions are not warranted against the Jurisdictional Defendants as they have utilized reasonable efforts to substantially comply with this Court's TRO based upon their reasonable interpretation of this Court's Order. Plaintiffs have not established the right to compensatory sanctions as they have suffered no harm by any minor delay in the financial disclosures and coercive sanctions are not justified as there has been no further disclosures identified that could be made after the May 13 hearing to "purge" the Jurisdictional Defendants of any alleged contempt.

**C.   Plaintiffs' Counsel is Engaging in Professional Misconduct and Abuse of Process with Respect to the TRO**

34.   Defendants intend to file a separate *ex parte* Motion for a Protective Order to address the egregious behavior of Mr. Banks. However, it is important to bring these matters to the Court's attention as soon as possible, especially when the Court

is considering sanctions for the same TRO that Mr. Banks is violating. As set forth herein, Mr. Banks has been sending documents and giving unknown instructions to numerous banks in order to freeze the accounts of all individual Defendants, even though a $9,000 per month spending limit is allowed per the terms of the TRO as requested and drafted by Mr. Banks. *See* Ex. A, Day Decl. at ¶¶5-7. This has caused irreparable harm to both Max O. Day and his adult daughter as all of their bills are bouncing and they cannot pay any of their ordinary household expenses. *Id.* at ¶¶6, 9.

35.    Mr. Banks also contacted Mr. Bradley and proceeded to harass and threaten him even though he knew he was an owner of Houtex and that Houtex was represented by counsel in this matter. *See* Ex. D, Bradley Aff. at ¶¶5-7. Mr. Banks' conduct is a violation of California Rules of Professional Conduct Rule 3.10 and Rule 4.2. Rule 3.10 prohibits attorneys from threatening "to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute. *See* Cal. R. Prof. Cond. 3.10. Mr. Banks violated this rule when he threatened to take Mr. Bradley down and freezer all of his bank accounts if he did not volunteer information to give Plaintiffs an advantage in this litigation regarding their unsupported allegations of "money laundering." *See* Ex. D, Bradley Aff. at ¶¶6-7.

36.    Rule 4.2 states that "a lawyer shall not communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter." *See* CAL. R. PROF. COND. 4.2. It

further provides that in the case of a represented corporation, partnership, or other organization, that a lawyer may not communicate with "(1) A current officer, director, partner, or managing agent of the organization; or (2) A current employee, member, agent, or other constituent of the organization, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability." *Id.* L&M has made multiple appearances in this matter for Houtex, beginning on April 11, 2024. *See* Dkt. 13; Dkt. 40. Mr. Banks was well aware that Houtex was represented by counsel in this matter. *Id.* Yet, he proceeded to have unauthorized *ex parte* communications with a represented client about the subject matter of this litigation. *See* Ex. D, Bradley Aff. at ¶¶5-7. Mr. Bradley is an owner of Houtex as well as the Farm Manager for Houtex. Mr. Banks was aware of these facts as he questioned Mr. Bradley about them at the beginning of the conversation, yet he continued to question him and threaten him. *Id.* Even if Mr. Bradley were not an owner or managing agent of Houtex, which he is, Mr. Banks attempted to question him regarding acts or omissions that could be attributable to Houtex in this litigation; thus, Mr. Bradley falls into the second prohibited category as well. *Id.* at ¶¶6-7. Accordingly, Mr. Banks committed multiple ethical violations during his questioning of Mr. Bradley. These dilatory litigation tactics should not be tolerated by this Court.

### III.   CONCLUSION

37.    Based on the foregoing and for good cause shown, the Jurisdictional Defendants respectfully requests that this Court deny Plaintiffs' Preliminary Injunction, not issue any sanctions against the Jurisdictional Defendants, and for such other and further relief to which the Jurisdictional Defendants may show themselves to be justly entitled.

Dated: May 12, 2024.                                  Respectfully submitted,

                                                      By: */s/ William Shibley*
                                                      William Shibley

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this Opposition contains 4,827 words, which complies with the word limit of L.R. 11-6.1

*/s/ William Shibley*
William Shibley

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document, and any attachments, will be served to counsel of record, in accordance with the governing rules of procedure regarding service in this court on this ***May 12, 2024***, via email as follows:

*/s/ William. Shibley*
William Shibley

JURISDICTIONAL DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PRELIMINARY INJUNCTION RE OSC SANCTIONS