**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID HOUGH, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>RYAN CARROLL, et al.,<br><br>　　　　Defendants. | Case No.: 2:24-cv-02886-WLH-SKx<br><br>**ORDER DISCHARGING ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION [17] AND GRANTING PRELIMINARY INJUNCTION FREEZING ASSETS** |

　　　　Before the Court is an Order to Show Cause why a preliminary injunction should not issue. (Docket No. 17). On April 15, 2024, the Court imposed a temporary restraining order (the "TRO") on the "Jurisdictional Defendants," freezing their assets and requiring them to disclose financial information to Plaintiffs, and issued the instant Order to Show Cause ("OSC"). (Docket No. 17). Having considered the parties' briefs and supporting documents, and after holding hearings on April 19, 2024, April 29, 2024, and May 13, 2024, the Court **ORDERS** a Preliminary Injunction freezing Jurisdictional Defendants' assets.

//

//

ORDER

## I. BACKGROUND

The basic facts of this case are known to the parties and have been summarized in previous orders. (*See, e.g.*, TRO). On April 9, 2024, Plaintiffs brought this action against Defendants Ryan Carroll; Max K. Day; Max O. Day; Michael Day; Yax Ecommerce LLC (formerly known as "Wealth Assistants"); Precision Trading Group, LLC; WA Distribution LLC; Providence Oak Properties, LLC; WA Amazon Seller LLC; MKD Investment Advisor, LLC; MKD Family Beneficiary, LLC; MKD Family Private Management Company, LLC; Max Day Consulting, LLC; Houtex Farm Equity Partners, LLC; Business Financial Solutions Advisory LLC; Evo Maxx LLC; Yax IP and Management Inc. (D.B.A. "Fulfillable"); WWKB LLC; and Dreams to Reality LLC (collectively, "Defendants").[1] (*Id.*). The same day, Plaintiffs filed an *Ex Parte* Motion for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction. (Mot. for TRO, Docket No. 9). Plaintiffs requested that the Court (1) temporarily order Defendants not to transfer, liquidate, or otherwise dispose of any assets owned by or held for the benefit of Defendants, except what is necessary for personal living expenses, which expenditures may not exceed $9,000 per month without leave of the Court; (2) order Defendants to provide a list of their financial accounts within five days of receiving the order; and (3) order Defendants to show cause, if they have any, why a preliminary injunction should not issue. (*Id.*).

On April 15, 2024, the Court granted in part Plaintiffs' request and entered a TRO against Individual Defendants Ryan Carroll; Max K. Day; Max O. Day; and Michael Day, and over Entity Defendants Yax Ecommerce LLC; WA Distribution LLC; and Precision Trading Group, LLC (collectively, the "Jurisdictional Defendants"). (TRO). The Court found for the purposes of the TRO that it did not have personal jurisdiction over the other defendants. (*Id.* at 4). The Court ordered

---

[1] Defendants Ryan Carroll, Max K. Day, Max O. Day, and Michael Day are collectively referred to as the "Individual Defendants." The other defendants are collectively referred to as the "Entity Defendants."

Jurisdictional Defendants to produce to Plaintiffs, within five days of the TRO's issuance, identifying information for accounts held "by or for the benefit of Jurisdictional Defendants," and the values of those accounts. (*Id.* at 7). In addition, the Court temporarily restrained Jurisdictional Defendants from "withdrawing, transferring, spending, or otherwise disposing of any assets held by or for the benefit of Jurisdictional Defendants without leave of the Court," except that each human Defendant was allowed to spend up to $9,000 per month in personal or household expenditures. (*Id.* at 6–7). The Court set the TRO to expire on April 29, 2024. (*Id.* at 7). Finally, the Court set an order to show cause why a preliminary injunction should not issue against the Jurisdictional Defendants (the "OSC"). (*Id.* at 6).

On April 22, 2024, Defendants sent Plaintiffs' counsel a letter regarding Defendants' account information. (Decl. of Nico Banks in Support of Mot. for Leave to Conduct Expedited Discovery, Docket No. 25-1, Ex. 1). Individual Defendant Max K. Day disclosed no assets; Individual Defendants Ryan Carroll and Michael Day each disclosed less than $1,100 worth of assets; and Individual Defendant Max O. Day disclosed less than $10,000 worth of assets. (*Id.*). The Entity Defendants disclosed "an account that holds more than $100,000 and an account that holds more than $200,000." (*Id.* ¶ 5). In all, the total of the assets disclosed to Plaintiffs came out to less than $500,000. (*Id.* ¶ 6).

In response, on April 25, 2024, Plaintiffs' filed their Motion for Leave to Conduct Expedited Discovery (the "Expedited Discovery Motion"). (Docket No. 25). Plaintiffs requested leave to serve expedited discovery requests on Jurisdictional Defendants and on third-party financial institutions. (*Id.*). Later that day, the Court heard oral argument regarding the OSC and the Expedited Discovery Motion. (*See* Minutes of April 29, 2024, Docket No. 38). At the hearing, the Court extended the TRO until May 13, 2024; decreased the cap on expenditures to $9,000; and clarified that "assets owned by or held for the benefit of Defendants" means "any assets over which Jurisdictional Defendants have control and dominion." (*Id.*). The Court also set

an Order to Show Cause why sanctions should not be imposed for failure to disclose all "assets owned by or held for the benefit of Defendants" by the April 20, 2024, deadline imposed in the original TRO. (*Id.*). Finally, on May 1, 2024, the Court issued its Order on the Expedited Discovery Motion, in which it granted the bulk of Plaintiffs' requests. (Order re Expedited Discovery, Docket No. 42). The Court now makes the following findings and conclusions of law and enters an order freezing the assets of the Jurisdictional Defendants, as redefined below.

## II. DISCUSSION

### A. <u>Personal Jurisdiction</u>

As discussed above, the Court found in its TRO that it had sufficient evidence to establish personal jurisdiction over the Jurisdictional Defendants because they "purposefully directed their activities at residents of the forum state." (TRO at 4–5 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002) (finding purposeful availment where defendants intentionally made misrepresentations aimed at California)). The exercise of specific personal jurisdiction "requires, *inter alia,* that the defendant 'take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State,' and that the plaintiff's claims 'arise out of or relate to the defendant's contacts with the forum.'" *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). The defendant's contacts with the forum State "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there.'" *Ford*, 592 U.S. at 359 (quoting, with alterations, *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

Here, Plaintiffs have produced sufficient evidence to show at this stage that (1) Individual Defendants Max K. Day, Max O. Day, Michael Day, and Ryan Carroll, along with Entity Defendant Yax Ecommerce, purposefully availed themselves of the privilege of conducting activities in California and (2) those contacts gave rise to the

claims in this action. (*See* TRO at 4–5). The Jurisdictional Defendants assert that the Court does not have personal jurisdiction over Individual Defendant Max O. Day. (Opp'n at 10–11). They argue that Max O. Day "only ever served as an independent contractor to Wealth Assistants" and that Plaintiffs are targeting Max O. Day because he "happens to share a name with [codefendant] Max K. Day." (*Id.*). In support, the Jurisdictional Defendants submit a declaration by Max O. Day in which he declares that he was the "Chief Growth & Technology Consultant" at Yax Ecommerce, that he was an independent contractor, and that he is "currently owed a substantial sum" by Wealth Assistants. (Decl. of Max O. Day, Docket No. 31-1 ¶¶ 2, 5, 8).

This argument is unconvincing. An email exhibit submitted by Plaintiffs dated December 15, 2023, shows that Max O. Day held himself out as the "Chief Growth Officer" of Wealth Assistants, and not as a consultant. (Decl. of Nico Banks in Supp. of Mot. for TRO, Docket No. 9-1, ¶ 16; Ex. 19). The Court finds that this email is more credible than Max O. Day's present-day declaration. Moreover, even if Max O. Day was technically classified as an independent contractor at Wealth Assistants, Defendants provide no support for their underlying assumption that an independent contractor may not be held liable for fraudulent misrepresentations and transfers that he *himself* is alleged to have perpetrated. In sum, this Court again finds that it has personal jurisdiction over Individual Defendant Max O. Day.

The Court now finds, however, that there is not enough evidence to establish personal jurisdiction over Entity Defendants Precision Trading Group, LLC and WA Distribution LLC. The Court based its previous determination that it had personal jurisdiction over those entities in part on Plaintiffs' representation that "an account associated with Defendant WA Distribution LLC accepted some of the credit card payments from Plaintiffs" and "an account associated with Defendant Precision Trading [Group,] LLC accepted some payments from Plaintiffs." (Mot. for TRO at 18 (citing Ex. F, Docket No. 9-6; Ex. K, Docket No. 9-11)). A reexamination of the supporting affidavits shows that not only are the affiants not plaintiffs in this case, but

they are also not California residents. Because Plaintiffs have not carried their burden to show that Entity Defendants Precision Trading Group, LLC and WA Distribution LLC are subject to personal jurisdiction, the Court now redefines "Jurisdictional Defendants" to mean Entity Defendant Yax Ecommerce and Individual Defendants Max K. Day, Max O. Day, Michael Day, and Ryan Carroll.

### B. Preliminary Injunction

The standard for a preliminary injunction is substantially similar to that of a temporary restraining order. *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020). A party seeking a preliminary injunction must satisfy the following four factors: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm if denied preliminary relief, (3) the balance of equities tips in its favor, and (4) the injunction is in the public interest. *Am. Trucking Ass'ns Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). The Ninth Circuit applies a sliding scale approach to addressing each of the four factors; that is, a court may issue a preliminary injunction even if one of the factors is weaker, so long as the moving party makes a threshold showing as to each factor. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (holding that, even if a party shows that there are only "serious questions" as to the merits, rather than a likelihood of success, a preliminary injunction may nonetheless issue where the "balance of hardships tips sharply in the plaintiff's favor"). "To reach this sliding scale analysis, however, a moving party must, at an 'irreducible minimum,' demonstrate some chance of success on the merits." *Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007) (citing *Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987)).

In deciding on an application for preliminary injunction, a court may consider evidence that would be inadmissible at trial. *See e.g., Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) ("A district court may … consider hearsay in deciding whether to issue a preliminary injunction."); *Herb Reed Enters., LLC v. Florida*

*Entertainment Management, Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) ("Due to the urgency of obtaining a preliminary injunction at a point where there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings."). Therefore, in reaching its conclusions, the Court properly considers the papers, exhibits, and declarations submitted in this case.

### 1. Likelihood of Success on the Merits

To establish a likelihood of success on the merits, "plaintiffs need not conclusively prove their case or show that they are more likely than not to prevail. Rather, a fair chance of success is the standard for granting preliminary injunctive relief." *Stewart v. City & Cnty. of San Francisco, California*, 608 F. Supp. 3d 902, 911 (N.D. Cal. 2022), *aff'd sub nom. Stewart v. City & Cnty. of San Francisco*, No. 22-16018, 2023 WL 2064162 (9th Cir. Feb. 17, 2023) (internal quotations and citations omitted).

Here, Plaintiffs bring claims for (1) fraud conspiracy, (2) fraudulent transfers in furtherance of conspiracy, (3) conspiracy to violate California Business and Professions Code section 17200,[2] and (4) violation of securities laws. (Compl.). The core of these claims is that Defendants conspired to defraud Plaintiffs of their money.

Plaintiffs have, at the very least, raised serious questions regarding the Jurisdictional Defendants' commission of a fraud. "The elements of fraud in California are: '(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.'" *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1179 (C.D. Cal. 2016) (quoting *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007)). As stated in this Court's TRO, Plaintiffs' evidence—which includes around thirty declarations from former Wealth Assistants

---

[2] Section 17200 of the California Business and Professions Code "prohibits any 'unlawful, unfair or fraudulent business act or practice.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting Cal. Bus. & Prof. Code § 17200).

clients—shows that many of the Jurisdictional Defendants made intentional misrepresentations in connection with Wealth Assistants' services, its potential to earn clients thousands of dollars each month, and its "guarantee" to buy back unprofitable stores. (TRO at 4 (citing Mot. for TRO at 11–15; Exs. B–N)). Moreover, Wealth Assistants' continuous failures to create, stock, and/or maintain the e-commerce stores it promised, paired with its retention of Plaintiffs' investments, evinces the Jurisdictional Defendants' knowledge of falsity and intent to defraud. (*See id.*). Finally, Plaintiffs have suffered damages in the form of their lost investments and, for some, massive credit card debt. (*See id.*).

Plaintiffs have also raised serious questions as to whether the Jurisdictional Defendants conspired to defraud Wealth Assistants' clients. "The elements of an action for civil conspiracy are (1) the formation and operation of the conspiracy and (2) damage resulting to plaintiff from (3) an act or acts done in furtherance of the common design." *Tatung*, 217 F. Supp. 3d 1183. Plaintiffs have provided evidence showing that the Jurisdictional Defendants acted together to perpetrate the alleged fraud by making substantially similar, if not identical, misrepresentations. (*See* section II.A, *supra*). In sum, Plaintiffs have carried their burden at this stage to show "a fair chance of success" on the merits. *Stewart*, 608 F. Supp. 3d at 911.

2. *Irreparable Harm*

The Court also finds good cause to believe that irreparable harm will result if it does not grant the preliminary injunction. "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Couturier*, 572 F.3d at 1085 (citing *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 881 (9th Cir. 2003)). A defendant's prior conduct may serve as evidence that the defendant is likely to dissipate assets. *Id.* (collecting cases). As discussed in the TRO, Plaintiffs have shown that Individual Defendants Max K. Day, Max O. Day, and Michael Day have a history of attempting to hide fraudulently obtained assets from their creditors. (TRO at 4 (citing

*Hill v. Day, et al.*, Case No. 06-cv-03285 (Bankr. S.D. Tex. 2006)); *see also Wealth Assistants LLC v. Thread Bank*, Case No. 4:24-cv-00040, Mem. Op. & Order, Docket No. 20 at 7–8 (S.D. Tex. Mar. 29, 2024) (in action brought by Wealth Assistants against bank that froze assets, citing Day Defendants' alleged "denud[ing]" of a past business's assets as a reason to allow former Wealth Assistants clients to intervene)). Moreover, the Jurisdictional Defendants' decision to disclose a trivial amount of their assets to Plaintiffs, in contravention of the Court's TRO, raises serious concerns as to the location of their remaining assets. Therefore, the Court finds there is a high likelihood that Plaintiffs will be unable to recover should they prevail in this action if the preliminary injunction does not issue.

### 3. Balance of Equities

The balance of equities tips sharply in Plaintiffs' favor. *Cf. Jacobo v. Doe*, No. 1:22-cv-00672, 2022 WL 2052637, at *6 (E.D. Cal. June 7, 2022) ("A delay in defendant's ability to transfer the assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court."). The Court is providing ample protection for the Jurisdictional Defendants in allowing them to (1) pay reasonable attorney's fees, up to $10,000 a month, (2) pay personal and household expenses up to $9,000 a month, and (3) seek leave of court for other reasonable expenses. According to their disclosures, the Individual Defendants each have less than $10,000 in their accounts. These terms are therefore eminently reasonable. *Cf. Couturier*, 572 F.3d at 1085–86 (affirming district court finding "that any prejudice to Couturier would be substantially mitigated by limiting the injunction to permit Couturier 'to cover normal living expenses and legal fees' and by allowing Couturier to petition the court at any time for consent to an asset transfer or disposal").

### 4. Public Interest

Finally, granting a temporary restraining order is in the public interest. *See, e.g., Jacobo*, 2022 WL 2052637, at *6 (quotation omitted) ("the public interest is properly

served by … providing assurance to the public that courts will take action to promote protection of assets and recovery of stolen assets"); *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999) ("Obviously, the public interest in preserving the illicit proceeds … for restitution to the victims is great.").

### C. BOND

The Jurisdictional Defendants provide no evidence regarding the appropriate amount of bond.[3]  "District courts may set the bond at zero 'if there is no evidence the party will suffer damages from the injunction.'" *Gaponyuk v. Alferov*, No. 2:23-cv-01317-KJM-JDP, 2023 WL 4670043, at *3 (E.D. Cal. July 20, 2023) (quoting *Conn. Gen. Life Ins.*, 321 F.3d at 882.  There is no reason to believe that the Jurisdictional Defendants will sustain any costs or damages by reason of being wrongfully enjoined or restrained.  Accordingly, Plaintiffs are not required to post any security.

### III. CONCLUSION

The preliminary injunction request is **DENIED** without prejudice as to Entity Defendants Precision Trading Group, LLC; WA Distribution LLC; Providence Oak Properties, LLC; WA Amazon Seller LLC; MKD Investment Advisor, LLC; MKD Family Beneficiary, LLC; MKD Family Private Management Company, LLC; Max Day Consulting, LLC; Houtex Farm Equity Partners, LLC; Business Financial Solutions Advisory LLC; Evo Maxx LLC; Yax IP and Management Inc. (D.B.A. "Fulfillable"); WWKB LLC; and Dreams to Reality LLC.  It is **GRANTED** as to Jurisdictional Defendants Ryan Carroll, Max K. Day, Max O. Day, Michael Day, and Yax Ecommerce LLC.  The Jurisdictional Defendants are hereby enjoined from withdrawing, transferring, spending, or otherwise disposing of any assets held by or for the benefit of Jurisdictional Defendants without leave of the Court; except that each

---

[3] The Jurisdictional Defendants do state that "Plaintiffs are seeking a ludicrous and unlawful amount of over $1 million in damages, thus Jurisdictional Defendants need a minimum bond of $1 million dollars if this proposed asset-freeze is continued through trial." (Opp'n at 10).  But this is clearly not evidence, and the underlying logic of this argument is unclear.

human Defendant may spend what is necessary for ordinary personal or household expenditures, which expenditures may not exceed $9,000 per month without leave of the Court. Additionally, because the Jurisdictional Defendants have given their attorneys a substantial retainer, they are prohibited from making further payments for legal costs and fees without leave of the Court.

Because Defendants are apparently unclear on what "assets" means—going so far as to argue that frozen accounts are not within the dominion or control of Jurisdictional Defendants by virtue of being frozen (*see* Defs. Response to OSC Re Sanctions, Docket No. 48 at 5–6)—the Court further clarifies that "assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts including bank accounts and accounts at financial institutions, credits, receivables, lines of credit, contracts including spot and futures contracts, insurance policies, and all cash, wherever located. For the avoidance of doubt, this injunction binds "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in [A or B]," so long as they have actual notice of the injunction. Fed. R. Civ. P. 65 (d)(2). This includes nonparties that are in "privity" with the Jurisdictional Defendants, such as their successors. *See Consumer Fin. Prot. Bureau v. Howard L., P.C.*, 671 F. App'x 954, 955 (9th Cir. 2016).

**IT IS SO ORDERED.**

Date: May 13, 2024

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE