Nico Banks, Esq.
nico@bankslawoffice.com
Filing on behalf of all Plaintiffs
CA Bar No. 344705
Banks Law Office
712 H St NE,
Unit #8571,
Washington, DC 20002
Tel.: 971-678-0036

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

DAVID HOUGH; *et al.*

            Plaintiffs,

  vs.

RYAN CARROLL; *et al*.

            Defendants.

Case No.: 2:24-cv-02886-WLH

**PLAINTIFFS' MOTION FOR SANCTIONS AGAINST ORIGINAL JURISDICTIONAL DEFENDANTS**

Hearing: June 28, 2024, 1:30 pm
Presiding Judge. Hon. Wesley L. Hsu
Trial Date: N/A

## PLAINTIFFS' MOTION FOR SANCTIONS AGAINST ORIGINAL JURISDICTIONAL DEFENDANTS

Plaintiffs submit this Motion for Sanctions against the Original Jurisdictional Defendants[1] (hereinafter, "Defendants") and state to the Court as follows:

---

[1] The "Original Jurisdictional Defendants" are the defendants named in the original complaint: Ryan Carroll; Max K. Day; Max O. Day; Michael Day; Yax Ecommerce LLC; Precision Trading Group, LLC; and WA Distribution LLC.

- 1 -
PLAINTIFFS' MOTION FOR SANCTIONS AGAINST ORIGINAL JURISDICTIONAL DEFENDANTS

# TABLE OF CONTENTS

**MEMORANDUM OF LAW** ......................................................................................... - 3 -

**SUMMARY** ................................................................................................................ - 3 -

**FACTS** ...................................................................................................................... - 3 -

   A.  Defendants Failed To Make Disclosures Required By The Court's Temporary Restraining Order ............................................................................ - 3 -

   B.  Defendants Failed To Comply With The Court's Subsequent Discovery Order ............................................................................................................... - 6 -

   C.  Defendants Have Failed To Correct The Tax-Return Production Deficiencies .................................................................................................. - 7 -

   D.  Plaintiffs Repeatedly Met And Conferred With Defendants Regarding Discovery Deficiencies ................................................................................. - 9 -

   E.  Defendants' Asset Disclosures Are Clearly Incomplete ......................... - 12 -

**ARGUMENT** ........................................................................................................... - 14 -

   A.  The Court Should Order Defendants' Attorneys To Pay Plaintiffs' Attorneys' Fees And Costs ........................................................................ - 14 -

   B.  The Court Should Order Defendants' Attorneys To Pay Plaintiffs $1,000 For Each Day That Defendants Are Not Compliant With The Court's Orders. - 16 -

   C.  The Court Should Order Defendants To Be Incarcerated Until They Have Complied With The Court's Discovery Orders ............................................. - 16 -

**CONCLUSION** ........................................................................................................ - 17 -

# TABLE OF AUTHORITIES

**Cases**
*Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-47 (1991) ........................................... - 15 -
*Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) ........................................ - 16 -
*In re Dyer*, 322 F.3d 1178, 1192 (9th Cir. 2003) .................................................. - 15 -
*Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005) ............................ - 17 -
*Roadway Exp. Inc. v. Piper*, 447 U.S. 752, 763 (1980) ......................................... - 16 -
*SEC v. Elmas Trading Corp.* 824 F.2d 732, 733 (9th Cir. 1987) ........................... - 17 -

**Statutes**
Fed. R. Civ. P. 37(b)(2)(C) ...................................................................................... - 16 -

## MEMORANDUM OF LAW

### SUMMARY

At the outset of this case, the Court ordered Defendants to make basic disclosures about their assets urgently—within five business days of receiving the Order—to ensure that Defendants did not dissipate or conceal those assets while the case was pending. More than a month later, Defendants' disclosures in response to that Order remain woefully incomplete. Furthermore, despite numerous requests from Plaintiffs, Defendants have failed to correct important technical deficiencies in their productions.

It is clear that Defendants and their attorneys are acting in bad faith. Therefore, Plaintiffs respectfully request that the Court (1) order that Defendants be incarcerated until they have complied with the Court's asset-disclosure orders, (2) order Defendants' attorneys to pay Plaintiffs $1,000 for each day that Defendants are not in compliance with the Court's previous discovery orders (in the past or in the future), and (3) order Defendants' attorneys to pay Plaintiffs' attorneys fees and costs that would not have been incurred but-for Defendants' bad-faith conduct.

### FACTS

**A. Defendants Failed To Make Disclosures Required By The Court's Temporary Restraining Order**

Plaintiffs' original complaint alleged that Defendants carried out a fraudulent scheme that defrauded Plaintiffs and many other individuals, and that Defendants are

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST ORIGINAL JURISDICTIONAL DEFENDANTS

in the process of concealing and fraudulently transferring assets for the purpose of preventing Plaintiffs and others from collecting on a judgment against Defendants.[2]

On April 15, 2024, the Court issued a temporary restraining order (ECF 17) that (1) froze all assets held "by or for the benefit of" the entities and individuals that the Court referred to as the "Jurisdictional Defendants" (with certain allowances for the humans' necessary personal expenses), and (2) ordered the Jurisdictional Defendants to disclose, within five business days of receiving the order, certain identifying information about accounts holding assets "for the benefit of" Defendants.

On the day that Defendants' asset disclosures were due, April 22, 2024, Defendants disclosed fewer than $15,000 worth of assets, all of which were held in the name of the human Defendants. (Banks Declaration, ¶ 3). The next day, Plaintiffs notified Defendants that they clearly had not complied with the Court's asset-disclosure order. (Banks Declaration, ¶ 4). On April 24, 2024, Defendants disclosed some additional assets held in the name of the entity Defendants but no additional assets held in the name of the human Defendants. (Banks Declaration, ¶ 5). The value of all assets disclosed by Defendants totaled less than $500,000. (Banks Declaration, ¶ 5-6). Notably, Defendants later disclosed several accounts held in their own names in response to the interrogatories discussed below, which demonstrates that

---

[2] Plaintiffs have now amended their complaint to include putative class allegations, additional factual allegations, and additional defendants.

- 4 -

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST ORIGINAL JURISDICTIONAL DEFENDANTS

Defendants' initial asset disclosures were facially incomplete. (Banks Declaration, ¶ 7).

On April 25, 2024, Plaintiffs filed an *ex parte* motion requesting expedited discovery. (ECF 25-27). In that motion, Plaintiffs noted that Defendants' scant asset disclosures were still clearly incomplete, in part because Defendants had stated at a recent hearing that they required at least $13,000 per month to satisfy their ordinary living expenses. (*Id*.) That statement was clearly inconsistent with Defendants' disclosures stating that none of the human Defendants had more than $10,000. (*Id*.) Therefore, it was obvious that Defendants were not making asset disclosures in good faith, and Plaintiffs needed leave to conduct additional discovery to locate Defendants' assets. (*Id*.)

On April 29, 2024, the Court granted Plaintiffs' *ex parte* motion for expedited discovery. (ECF 38). In particular, the Court (1) granted Plaintiffs leave to issue an expedited document request to Defendants requiring them to produce their federal tax returns for 2021, 2022, and 2023 by May 8, 2024, and (2) granted Plaintiffs leave to issue an expedited interrogatory that required Defendants to make broader asset disclosures—including identifying assets they have controlled at any time since May of 2022—by May 11, 2024. (*Id*.) The Court also ordered Defendants to show cause on May 13, 2024 why they should not be sanctioned for their bad-faith failure to reasonably comply with the Court's initial asset-disclosure order issued in the temporary restraining order. (*Id*.).

**B. Defendants Failed To Comply With The Court's Subsequent Discovery Order**

On April 30, 2024, Plaintiffs sent Defendants an email reiterating the Court's statement that Defendants' litigation conduct must improve. (Banks Declaration at Exhibit A). Plaintiffs also warned Defendants that if they did not promptly and completely update their asset disclosures, then Plaintiffs would ask the Court to hold Defendants in contempt of court. (*Id.*). Plaintiffs stated that the overdue asset disclosures responsive to the temporary restraining order must be updated before Defendants served their interrogatory responses. (*Id.*). The disclosures were urgent in part because Plaintiffs knew that, soon, Defendants would be notified by their banks about which of their accounts had been identified and frozen. That information would allow Defendants to disclose only the assets that had already been identified and keep other assets—which Plaintiffs had not been able to find—hidden. Nonetheless, Defendants refused to update their disclosures responsive to the temporary restraining order.

On May 8, 2024, Defendants produced some tax returns (Banks Declaration, ¶ 8), but the production did not evince a reasonable attempt to comply with the Court's expedited discovery order because, as discussed in more detail below, (1) Defendants inappropriately redacted some of the most important information on the tax returns, such as the last four digits of the employer identification numbers of the entities they controlled, and (2) the tax returns were unsigned, and Defendanats

refused to confirm that the produced tax returns were the same as the ones that were filed with the IRS.

On May 11, 2024, Defendants produced responses to Plaintiffs' interrogatories that required Defendants to disclose additional information about assets that Defendants had held since May of 2022. (Banks Declaration, ¶ F). The responses were deficient because, as discussed in more detail below, (1) they clearly omitted many significant assets, and (2) they often did not include the last four digits of Defendants' financial account numbers.

On May 13, 2024, the Court issued a preliminary injunction order that extended the temporary restraining order's asset freeze until the end of the case, with certain modifications, including that the order did not extend to Defendants WA Distribution or Precision Trading Group because the Court found that it may not have personal jurisdiction over those defendants. (ECF 49). The Court also discharged the aforementioned order to show cause without sanctioning Defendants. (*Id.*) The Court's rationale for discharging the order to show cause was likely that Plaintiffs had not yet been able to identify specific assets that Defendants had not identified.

**C. Defendants Have Failed To Correct The Tax-Return Production Deficiencies**

As noted above, the tax returns that Defendants produced do not appear to be the tax returns actually filed with the IRS. On May 9, 2024—the day after Defendants produced the tax returns—Plaintiffs sent Defendants emails identifying numerous deficiencies in the tax-return production. (Banks Declaration, Exhibit B). Defendants

subsequently (but belatedly) corrected two of those deficiencies: (1) Plaintiffs noted that Defendants had improperly redacted the last four digits of their social security numbers, which were urgent and vital for identifying Defendants' financial accounts, and Defendants subsequently emailed Plaintiffs the last four digits of the social security numbers on May 17 (the day *after* Plaintiffs issued and served the subpoenas directed to banks) (Banks Declaration, ¶ 14); and (2) Plaintiffs noted that Defendant Michael Day's 2022 tax return was missing, and Defendants subsequently produced that tax return on May 17. (Banks Declaration, ¶ 14).

However, Defendants failed to correct the other deficiencies that Plaintiffs noted in their May 9th emails. To begin with, all of the produced tax returns are unsigned except Ryan Carroll's tax returns and Yax Ecommerce's[3] tax returns. (Banks Declaration, ¶ 5). Yax Ecommerce's produced tax returns were signed May 3, 2024, so they were clearly prepared solely for the purpose of the production. (Banks Declaration, ¶ 11-12).

Defendants noted at the prior hearing (for the first time) that the unsigned tax returns may be unsigned because they were e-filed. That explanation seems implausible; even e-filed tax returns must be signed (albeit with an electronic signature rather than a physical one).

Nonetheless, on May 14, 2024, Plaintiffs told Defendants that Plaintiffs would accept the unsigned versions of the tax returns if Defendants or their attorneys

---

[3] Yax Ecommerce is one of the entities formerly known as Wealth Assistants.

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST ORIGINAL JURISDICTIONAL DEFENDANTS

confirmed in writing that the produced tax returns were identical to the ones filed with the IRS except for the signature. (Banks Declaration, Exhibit I). Plaintiffs have followed up with Defendants about that request multiple times, but Defendants have failed to confirm that the tax returns they produced are identical to the tax returns filed with the IRS. (Banks Declaration, ¶ 15).

Moreover, the May 9 emails noted that the tax-return production improperly redacted critical identifying information, including the last four digits of the employer identification numbers for the shell companies under Defendants' control. Plaintiffs have requested that Defendants remove those improper redactions on multiple occasions, and Defendants have not done so. (Banks Declaration, ¶ 15).

**D. Plaintiffs Repeatedly Met And Conferred With Defendants Regarding Discovery Deficiencies**

On May 12, 2024—the day after Plaintiffs received Defendants' responses to the interrogatories regarding asset disclosures—Plaintiffs noted several deficiencies in the interrogatory responses. In particular, Plaintiffs responded to the production by stating:

> Some initial comments and questions:
>
> The PDFs you produced exclude a lot of information. Please immediately either disclose the native spreadsheets or disclose PDFs that do not cut off the cells.
> Why don't Michael Day's disclosures include WWKB's assets, given that he owns and controls that company?
>
> Several of the entities only show the "peak value" of assets and do not have a column for "current value." Please fix that immediately.

(Banks Declaration, Exhibit G). On May 14, 2024—the day after the prior court hearing—Plaintiffs told Defendants that if Defendants did not cure their discovery deficiencies within the next forty-eight hours, Plaintiffs would move for sanctions. (Banks Declaration, Exhibit I). Defendants responded by implausibly feigning ignorance about the discovery deficiencies. Specifically, on May 15, 2024, Defendants' counsel William Shibley wrote a letter claiming, falsely, that he was not a party to prior discussions about Defendants' discovery deficiencies. (Banks Declaration, Exhibit H). In reality, Mr. Shibley received all emails about discovery deficiencies discussed herein and was a party to the related conversations.

Nonetheless, Plaintiffs responded on the same day by attaching the email threads listing the discovery deficiencies so that Mr. Shibley could review them. (Banks Declaration, Exhibit I). Mr. Shibley responded to those lists of discovery deficiencies by stating:

> Although I am still uncertain as to what you actually want in responses to discovery, I have asked the Texas attorneys to review and respond further. It still may take a few days for them to obtain that information and respond. It would simplify matters for all parties involved if you would provide a specific list of what you claim the inadequacies are.

(*Id.*) That response was absurd; the correspondence that Plaintiffs had sent and re-sent to Mr. Shibley set forth a clear list of the discovery deficiencies, which were very simple, and the asset disclosures were long overdue pursuant to the Court's emergency discovery order. Nonetheless, Plaintiffs then sent a consolidated list of discovery deficiencies to Defendants, and Plaintiffs agreed to meet with Defendants

via videoconference for further discussion. (*Id.*). Prior to the videoconference, Plaintiffs also noted that they planned to move for sanctions and proposed that the sanctions should include incarcerating Defendants and fining Defendants' attorneys. (*Id.*)

Less than five minutes before the videoconference on May 17, 2024, Defendants produced updated interrogatory responses. (Banks Declaration, ¶ 16). During the videoconference, Plaintiffs used a share-screen function to review the updated interrogatory responses with Defendants. (Banks Declaration, ¶ 17). The parties agreed that the updated interrogatory responses still failed to include the account numbers for many of the bank accounts that were disclosed. (*Id.*) After Plaintiffs had gone through some of the interrogatory responses to show the missing account numbers, Defendants stated that the issue was clear and Plaintiffs did not need to point out the missing account numbers in the remaining interrogatory responses. (Banks Declaration, Exhibit J).

Furthermore, during the videoconference, Plaintiffs noted that the updated interrogatory responses still failed to include current balances for many of the disclosed financial accounts. (Banks Declaration, ¶ 18). Plaintiffs also re-iterated the tax-return-production deficiencies that they had previously identified. (*Id.*). The parties also agreed that there was a clear inconsistency between Ryan Carroll's prior interrogatory responses and his updated interrogatory responses: the prior interrogatory responses disclosed that Dreams to Reality's bank accounts had a

current value of $1,385,466, whereas the updated interrogatory responses disclosed that Dreams to Reality's current bank accounts had a current value of $0. (*Id.*). Finally, Plaintiffs repeated that they intended to move for sanctions given the clear continuing deficiencies in Defendants' productions. (*Id.*).

On May 19, 2024, Defendants sent Plaintiffs an email that attempted to cure some, but not nearly all, of the deficiencies that Plaintiffs discussed with Defendants during the videoconference. (Banks Declaration, Exhibit K). In particular, Defendants noted that Ryan Carroll's original interrogatory responses disclosing that Dreams to Reality had current assets of over $1.38 million was incorrect because that figure was a "comprehensive accounting of the peak value of all former Dreams to Reality bank accounts" and had been incorrectly listed as the current value of the Dreams to Reality accounts in the interrogatory responses. (*Id.*). Notably, Defendants' explanation still does not add up because, although Defendants are stating that the $1.38 million figure represented the peak value of the Dreams to Reality accounts, on the updated interrogatory, the peak value of all Dreams to Reality assets sum to less than $1 million. (*Id.*).

The May 19 email also disclosed account numbers for only two of the accounts. (*Id.*). The email implied that Plaintiffs had only pointed out two missing account numbers on the videoconference, which was not true. (*Id.*). To date, Defendants still have not corrected the remaining deficiencies.

**E. Defendants' Asset Disclosures Are Clearly Incomplete**

As noted above, on April 15, 2024, the Court ordered Defendants to disclose financial accounts held by them or for their benefit by April 22, 2024. Subsequently, the Court ordered Defendants to also disclose assets that had been under their control, directly or indirectly, since May of 2022. Defendants have failed to do so. As examples:

- Precision Trading Group's tax returns indicate that an entity called Business Financial Solutions Advisory ("BFSA") had an ending capital account of $896,015 as of the end of 2022. Yet, Max K. Day's (the owner of BFSA) disclosures indicate that BFSA's accounts had a peak value of only $65,000. (Banks Declaration, ¶ 19-20).

- Precision Trading Group's 2022 tax returns indicate that its current assets included "Max Pro Marketing" with a value of $66,400 and "HouTex Farm" with a value of $184,327, but those assets do not appear on Precision Trading Group's disclosures. (Banks Declaration, ¶ 21).

- Precision Trading Group's tax returns indicate that it has depreciable assets and a vehicle, and it has not disclosed those assets. (Banks Declaration, ¶ 22).

- Yax Ecommerce's tax returns indicate that it made an investment in Bitcoin of $144,972 in 2021 or 2022, and its later tax returns do not indicate any sales or transfers of that Bitcoin. Yet, Yax Ecommerce has not disclosed any cryptocurrency assets. (Banks Declaration, ¶ 23-24).

- Yax Ecommerce's tax returns indicate that its assets included $2,568,010 of investments as of the end of 2022, but Yax Ecommerce did not disclose any investment accounts. (Banks Declaration, ¶ 25).

Furthermore, the circumstantial evidence strongly indicates the examples listed above are only the tip of the iceberg. Specifically, Yax Ecommerce's tax returns report revenues of more than $57,000,000 between October 2021 and September 2023 (Banks Declaration, ¶ 13), and the evidence in the record demonstrates that the revenues were not spent to run a legitimate business; Yax Ecommerce did not provide meaningful assets or services to its clients. That money was instead collected for the benefit of Yax Ecommerce' owners and principals, and those individuals must disclose where the assets are hiding. Moreover, each of the individual defendants has indicated that they ordinarily require more than $13,000 per month to spend on ordinary personal expenses. Yet, Ryan Carroll and Max O. Day have both disclosed less than $25,000 in cash. (Banks Declaration, ¶ 26).

## ARGUMENT

### A. The Court Should Order Defendants' Attorneys To Pay Plaintiffs' Attorneys' Fees And Costs

"The Court has the inherent power to impose sanctions where a party is engaged in bad faith or willful disobedience of a court's order." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-47 (1991). "Civil penalties must either be compensatory or designed to coerce compliance." *In re Dyer*, 322 F.3d 1178, 1192 (9th Cir. 2003).

Furthermore, under Fed. R. Civ. P. 37(b)(2)(C), when a party disobeys a discovery order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *See also Roadway Exp. Inc. v. Piper*, 447 U.S. 752, 763 (1980) ("Both parties and counsel may be held personally liable for expenses, 'including attorney's fees,' caused by the failure to comply with discovery orders.") (quoting *Stanziale v. First Nat'l City Bank*, 74 F.R.D. 557, 560 (S.D.N.Y. 1997)). Moreover, an attorney may be sanctioned "whether or not he or she filed a paper containing misstatements." *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001).

Here, in all the manners discussed above, Defendants have repeatedly and blatantly disobeyed the Court's discovery orders without substantial justification. Therefore, the Court must order Defendants or their attorneys to pay Plaintiffs' attorneys' fees and costs caused by Defendants' failures. However, in this case, ordering Defendants to pay Plaintiffs' attorneys fees would have little effect because Defendants are already almost certainly insolvent. Moreover, Defendants' attorneys have made bad-faith interpretations of the Court's orders and failed to correct deficiencies in Defendants' productions. Therefore, the Court should order Defendants' attorneys to pay Plaintiffs' attorneys' fees and costs.[4]

---

[4] Plaintiffs are currently represented pursuant to a contingency-fee arrangement. For purposes of this motion, Plaintiffs propose that the hourly rates for Plaintiffs' attorneys be assumed to be $400 per hour.

### B. The Court Should Order Defendants' Attorneys To Pay Plaintiffs $1,000 For Each Day That Defendants Are Not Compliant With The Court's Orders

A court may issue coercive or compensatory sanctions against an attorney. *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005).

Here, the Court should order Defendants' attorneys to pay Plaintiffs $1,000 for each day that Defendants are not in compliance with the Court's previous discovery orders (in the past or in the future).[5] Plaintiffs are almost certainly suffering harm each day that Defendants' attorneys fail to comply with the Court's emergency discovery order because it hinders Plaintiffs' ability to find and trace Defendants' assets; with each day that passes, it becomes less likely that Plaintiffs will be able to find the assets at issue. Accordingly, the fine of $1,000 per day serves to compensate Plaintiffs for their lost ability to collect on any judgment that is eventually entered against Defendants. Moreover, the fine will also serve a coercive purpose because it will encourage Defendants' attorneys to finally produce the information required by the Court's prior orders.

### C. The Court Should Order Defendants To Be Incarcerated Until They Have Complied With The Court's Discovery Orders

It is also appropriate to incarcerate individual defendants fail to reasonably attempt to comply with a court's order.  For example, in *SEC v. Elmas Trading Corp.*,

---

[5] The fine could be paid to the Court pending class certification. If the class is certified, then the sanctions could be distributed to the class members. Moreover, the fine should not be paid from the retainer that Defendants have paid their attorneys because that money belongs to Defendants' attorneys, not Defendants. These mechanics—that is, directing the payments into a trust and prohibiting payment from the retainer—should apply to any order for Defendants' attorneys to pay Plaintiffs (whether the order is for Defendants to pay Plaintiffs' attorneys fees or to pay a coercive fine).

the Ninth Circuit upheld the district court's order to incarcerate the defendants until they complied with the court's discovery order. 824 F.2d 732, 733 (9th Cir. 1987). More specifically the Ninth Circuit held that "[t]he record amply supports the district court's view that [the defendant] has control of the documents and other materials which the court seeks and that [the defendant] is simply playing games with the court" in part because "[t]he district court did not find credible [the defendant's] assertions that he has done everything he can to comply with its order." *Id.*

Here—like in *Elmas*—Defendants have failed to comply with the Court's order to disclose their assets, and they should be incarcerated until they comply.

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court (1) order that Defendants be incarcerated until they have complied with the Court's asset-disclosure orders, (2) order Defendants' attorneys to pay Plaintiffs $1,000 for each day that Defendants are not in compliance with the Court's previous discovery orders (in the past or in the future), and (3) order Defendants' attorneys to pay Plaintiffs' attorneys fees and costs that would not have been incurred but-for Defendants' bad-faith conduct.

- 17 -
PLAINTIFFS' MOTION FOR SANCTIONS AGAINST ORIGINAL JURISDICTIONAL DEFENDANTS

Dated: May 31, 2024

/s/Nico Banks
Nico Banks (CA SBN:344705)
BANKS LAW OFFICE
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

Richard A. Nervig (CA SBN:226449)
RICHARD A. NERVIG, P.C.
501 West Broadway, Suite 800
San Diego, CA 92101
Phone: 760-451-2300
Email: richard@nerviglaw.com

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST ORIGINAL JURISDICTIONAL DEFENDANTS

## WORD COUNT COMPLIANCE CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains fewer than 7,000 words, which complies with the word limit of L.R. 11-6.1.

/s/Nico Banks
Nico Banks
Dated: May 31, 2024

## CERTIFICATE OF CONSULTAION

As described in the Motion and the accompanying affidavit, I have consulted with Defendants extensively regarding the discovery issues discussed herein, and I consulted with Defendants specifically about the sanctions requested via email and via videoconference on May 17, 2024.

/s/Nico Banks
Nico Banks
Dated: May 31, 2024

## CERTIFICATE OF SERVICE

On May 31, 2024, I served this motion and accompanying papers via first-class mail to the parties listed below with addresses below their names, and via email to the parties with email addresses below their names:

JARED DAY;
19710 Chara Ct,
Cypress, TX 77433

MATTHEW CROUCH;
9566 Greiner Rd,
Clarence, NY 14031

CHRISTINE CARROLL;
11298 Snow View Ct,
Yucaipa, CA 92399

TRAVIS MARKER; THE LAW OFFICE OF TRAVIS R. MARKER, A PROFESSIONAL CORPORATION (D.B.A. "MARKER LAW AND

MEDIATION"); & PARLAY LAW GROUP A PROFESSIONAL CORPORATION
333 2nd St.
Suite 16,
Ogden, UT, 84404

REYHAN PASINLI & TOTAL-APPS, INC.
26800 Aliso Viejo Pkwy
Ste 130,
Aliso Viejo, Ca 92656

TROY MARCHAND & QUANTUM ECOMMERCE
Via email to their attorney Marc Reich at mgr@reichradcliffe.com

BONNIE NICHOLS & WHOLESALE UNIVERSE;
Via email to their attorney Brad Geyer at bradford.geyer@formerfedsgroup.com

I declare under penalty of perjury under the laws of the State of California that the foregoing statements in this Certificate of Service are true and correct.

/s/Nico Banks
Nico Banks
Dated: May 31, 2024