Nico Banks, Esq.
nico@bankslawoffice.com
Filing on behalf of all Plaintiffs
CA Bar No. 344705
Banks Law Office
712 H St NE,
Unit #8571,
Washington, DC 20002
Tel.: 971-678-0036

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

DAVID HOUGH; *et al.*

                Plaintiffs,

   vs.

RYAN CARROLL; *et al.*

                Defendants.

Case No.: 2:24-cv-02886-WLH

**PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS**

Hearing: June 28, 2024, 1:30 pm
Trial Date: N/A

**PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................ - 4 -

**ARGUMENT** ...................................................................................... - 5 -

A.  **Defendants' Motion Addresses Plaintiffs' Original Complaint Instead Of Plaintiffs' Amended Complaint** ........................................................ - 5 -

B.  **The Court Has Specific Personal Jurisdiction Over All Defendants** ...... - 6 -

   i.  **Courts Have Personal Jurisdiction Over Defendants That Perpetrate Intentional Torts Knowing The Impact Will Be Felt In The Forum State** - 6 -

   ii.  **The Wealth Assistants Entity Defendants And Human Defendants Intentionally Defrauded California Residents** ................................... - 9 -

   iii.  **The Court Also Has Personal Jurisdiction Over Alter-Ego Defendants**- 11 -

C.  **Defendants' Motion To Dismiss For Failure To State A Claim Fails** ... - 16 -

   a.  **A 12(b)(6) Motion Must Be Denied Unless Plaintiffs' Allegations Fail To Plausibly Allege A Cause Of Action** .............................................. - 16 -

   b.  **Jurisdictional Defendants' Motion To Dismiss Plaintiffs' Fraud Claims Is Frivolous** ........................................................................... - 16 -

   c.  **Plaintiffs Have Adequately Alleged That Non-Jurisdictional Defendants Participated In The Fraud Conspiracy By Concealing Assets** ................. - 18 -

   d.  **Plaintiffs Have Adequately Alleged Their Fraudulent Transfer Claims** ..- 19 -

   e.  **Defendants' Parol-Evidence Argument Is Misplaced** ......................... - 21 -

D.  **If The Court Is Inclined To Dismiss Any Of Plaintiffs' Claims, Plaintiffs Should First Be Allowed Leave To Amend** ........................................ - 21 -

**CONCLUSION** .................................................................................. - 22 -

# TABLE OF AUTHORITIES

**Cases**

*Brainerd v. Governors of the Univ. of Alta.*, 873 F.2d 1257, 1260 (9th Cir.1989).. - 8 -

*Calder v. Jones*, 465 U.S. 783, (1984)................................................................. - 7 -

*Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997) ............................................................................ - 8 -

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993) ...................... - 8 -

*Curci Investments, LLC v. Baldwin*, 221 Cal. Rptr. 3d 847, 851 (Ct. App. 2017). - 12 -

*Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) ................................... - 12 -

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) ............................ - 7 -

*Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) .................................... - 16 -

*Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir. 1986)................................................................................................... - 8 -

*In re 3Com Securities Litigation*, 761 F. Supp. 1411, 1416 (N.D. Cal. 1990)....... - 18 -

*Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 741-42 (9th Cir. 2013)...................... - 7 -

*LNS Enters. v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) ................. - 6 -

*Marino v. United States*, 91 F.2d 691, 694 (9th Cir.1937)................................ - 17 -

*Philipson Simon v. Gulsuig*, 154 Cal. App. 4th 347, 363 (2007) ....................... - 17 -

*Screen Capital Int'l Corp. v. Library Assset Acquisition Co.*, 510 B.R. 266 (C.D. Cal. 2015) .................................................................................................. - 21 -

*Sheard v. Superior Court*, 40 Cal.App.3d 207, 210, 114 Cal. Rptr. 743 (1974).... - 11 -

*Snowney v. Harrah's Entertainment, Inc.*, 35 Cal.4th 1054, 1061 (Cal. 2005)........ - 7 -

*Sonora Diamond Corp. v. Super. Ct.*, 83 Cal.App.4th 523, 538 (2000) ............... - 11 -

*Swartz v. KPMG LLP*, 476 F.3d 756, 758 (9th Cir. 2007) ............................... - 22 -

*Taylor v. S M Lamp Co.*, 190 Cal.App.2d 700, 706 (Cal. Ct. App. 1961) ............. - 19 -

*Thurston v. Fairfield Collectibles of Ga.*, LLC, 53 Cal.App.5th 1231, 1240 (Cal. Ct. App. 2020)................................................................................................ - 8 -

*Tiedemann v. Blanckensee*, 72 F.4th 1001, 1011 (9th Cir. 2023) ...................... - 22 -

*Wood v. Greenberry Fin. Servs., Inc.*, 907 F. Supp. 2d 1165, 1181 (D. Haw. 2012) .... - 17 -

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)........................................................................................ - 7 -

*Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914, 929 (S.D. Tex. 1998) ....... - 22 -

**Statutes**

Cal. Civ. Code § 1709.................................................................................. - 17 -

Cal. Civ. Code § 3439.................................................................................. - 20 -

Cal. Code Civ. Proc. § 410.10 ...................................................................... - 6 -

Fed R. Civ. P. Rule 9(b)............................................................................... - 20 -

Fed. R. Civ. P. 12(b)(2)............................................................................... - 6 -

Fed. R. Civ. P. 12(b)(6)............................................................................... - 16 -

Fed. R. Civ. P. 4(k)(1)(a) ............................................................................ - 6 -

Fed. R. Civ. P. 9(b)..................................................................................... - 5 -

PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS

Plaintiffs submit this Opposition to the Original Defendants'[1] (hereinafter, "Defendants") Motion to Dismiss (hereinafter, the "Motion"):

## INTRODUCTION

It appears that Defendants did not review the Amended Complaint before filing their Motion, which addresses the causes of action and allegations in the now-inoperative Original Complaint rather than the substantially different allegations and causes of action in the Amended Complaint. For that reason alone, Defendants' Motion to Dismiss should be denied in its entirety.

Moreover, Defendants' motion to dismiss for lack of personal jurisdiction fails because Defendants failed to address the numerous allegations in the Amended Complaint connecting Defendants to California. In particular, Plaintiffs allege that the Human Defendants and the Wealth Assistants Entity Defendants intentionally defrauded many California residents and collected more than $1,000,000 from those residents as part of the fraudulent scheme.

Finally, Defendants' motion to dismiss for failure to state a claim fails with respect to all claims because the motion simply ignores the vast majority of Plaintiffs' factual allegations.

---

[1] The Original Defendants are Ryan Carroll; Max K. Day; Max O. Day; Michael Day; Yax Ecommerce LLC; Precision Trading Group, LLC; WA Distribution LLC; Providence Oak Properties, LLC; WA Amazon Seller LLC; MKD Investment Advisor, LLC; MKD Family Beneficiary, LLC; MKD Family Private Management Company, LLC; Max Day Consulting, LLC; Houtex Farm Equity Partners LLC; Business Financial Solutions Advisory LLC; Evo Maxx LLC; Yax IP and Management Inc. d/b/a "Fulfillable"; WWKB LLC; and Dreams To Reality LLC.

# ARGUMENT

## A. **Defendants' Motion Addresses Plaintiffs' Original Complaint Instead Of Plaintiffs' Amended Complaint**

Defendants' Motion states: "On May 20, 2024, Plaintiffs filed their First Amended Complaint ("Amended Complaint"), alleging identical causes of action . . ." (Motion at ¶ 10). The Motion later argues at length that the Court should dismiss Plaintiffs' causes of action alleging a violation of the California Unfair Competition Law and violations of securities laws. (Motion at ¶ 58-71). It appears that Defendants did not read the Amended Complaint; unlike the Original Complaint, the Amended Complaint does not include causes of action alleging violations of securities laws or the California Unfair Competition Law. (ECF 56).

The rest of the Motion also reflects a failure to review the Amended Complaint. The only material differences Plaintiffs could discern between the "Argument" section of Defendants' Original Motion to Dismiss (ECF 40, which was filed before Plaintiffs filed the Amended Complaint) and the "Argument" section of Defendants' Amended Motion to Dismiss were the addition of some discussion related to Fed. R. Civ. P. 9(b), which requires that claims sounding in fraud be pleaded with particularity (discussion regarding Rule 9 was added in the Motion at ¶¶ 54, 65, and 68). Defendants do not address the substantial new and pertinent allegations in the Amended Complaint, such as the allegations that Defendants' scheme to conceal and dissipate assets was centered in California. (ECF 56 at ¶ 3-7). Moreover, Defendants ask the Court to dismiss

Plaintiffs' Complaint in its entirety without even mentioning Plaintiffs' cause of action for aiding and abetting a fraud. (ECF 56 at ¶ 201-203).

In summary, Defendants' Motion does not meaningfully address the operative Amended Complaint. For that reason, the Motion must be denied.

## B. The Court Has Specific Personal Jurisdiction Over All Defendants

### i. Courts Have Personal Jurisdiction Over Defendants That Perpetrate Intentional Torts Knowing The Impact Will Be Felt In The Forum State

In adjudicating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction, a court must take as true all uncontroverted allegations in the Amended Complaint and resolve all genuine disputes in the plaintiff's favor. *LNS Enters. v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022). If both sides submit affidavits, then conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor. *LNS Enters. v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022).

Fed. R. Civ. P. 4(k)(1)(a) provides that a federal court has personal jurisdiction over a party whenever a state court in the state where the federal court is located would have personal jurisdiction over that party. California courts, in turn, may exercise jurisdiction on any basis consistent with the Constitution of California and the United States. Cal. Code Civ. Proc. § 410.10. The exercise of jurisdiction over a nonresident defendant comports with these Constitutions if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate traditional

notions of fair play and substantial justice. *Snowney v. Harrah's Entertainment, Inc.*, 35 Cal.4th 1054, 1061 (Cal. 2005).

Courts use the following three-part test to analyze whether a party's "minimum contacts" meet the due process standard for the exercise of specific personal jurisdiction: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws (the "purposeful direction or availment requirement"); (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 741-42 (9th Cir. 2013).

"[T]he purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the 'effects' test" that is derived from *Calder v. Jones*, 465 U.S. 783, (1984). *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). That test has three requirements: the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

Notably, with respect to the third prong ("causing harm…"), some district courts in the Ninth Circuit used to apply a rule that the "*brunt* of the harm which is suffered"

from the defendant's conduct must have been suffered in the forum state. *Id*. (emphasis added) (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993)). However, the Ninth Circuit expressly rejected that test and held that "[i]f a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Id.* at 1207. For example, online sales to California residents totaling $325,000 easily satisfy that "jurisdictionally sufficient amount of harm" requirement, even if the non-resident defendant sells nationwide and has no additional contact with California. *Thurston v. Fairfield Collectibles of Ga.*, LLC, 53 Cal.App.5th 1231, 1240 (Cal. Ct. App. 2020).

"[P]urposeful availment is satisfied even by a defendant 'whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state.'" *Dole*, 303 F.3d at1111 (quoting *Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir. 1986)); *Brainerd v. Governors of the Univ. of Alta.*, 873 F.2d 1257, 1260 (9th Cir.1989) (noting that it is easier for a plaintiff to meet the purposeful direction or availment requirement in a case involving an intentional tort than in a case involving negligence because in intentional-tort cases the "acts are performed for the very purpose of having their consequences felt in the forum state."); *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997) (finding personal jurisdiction over defendant Feltner where plaintiff Columbia alleged that Feltner, the owner of television stations in the southeast that continued to broadcast Columbia-licensed shows after failing to

pay that company royalties; the fact that Feltner *knew* the impact of his willful violation would be felt in California was "sufficient to satisfy the 'purposeful availment' requirement.").

### ii. The Wealth Assistants Entity Defendants And Human Defendants Intentionally Defrauded California Residents

In this case, Plaintiffs allege that the Wealth Assistants Entity Defendants intentionally defrauded many California residents and collected more than $1,000,000 from those residents as part of the fraudulent scheme. (ECF 56 at ¶ 3). Because Defendants have not submitted any evidence to the contrary, the Wealth Assistants Entity Defendants[2] are subject to the Court's personal jurisdiction. *See LNS Enters.*, 22 F.4th at 858 (holding that a court must take as true all uncontroverted allegations in the complaint).

Defendants implicitly take the position that Wealth Assistants' operations were only attributable to Yax Ecommerce LLC and not the other Wealth Assistants Entity Defendants. (Motion at ¶ 18). However, Defendants do not explain that position, and it is contradicted by Plaintiffs' allegations (ECF 56, ¶ 36-41), contradicted by the

---

[2] The Wealth Assistants Entity Defendants are Yax Ecommerce LLC; Precision Trading Group, LLC; WA Distribution LLC; Providence Oak Properties, LLC; WA Amazon Seller LLC; and Yax IP and Management Inc. (ECF 56, p. 3).

1    evidence in the record (ECF 9 (hereinafter, "Motion for TRO") ),[3] and not supported

2    by any affirmative evidence.[4]

3        Moreover, Plaintiffs' uncontradicted allegations show that Ryan Carroll, Max K.

4    Day, Max O. Day,[5] and Michael Day all directed Wealth Assistants' fraudulent conduct

5

6    aimed at intentionally defrauding Plaintiffs. (ECF 56, ¶ 4, stating that the Human

7    Defendants were "intentionally defrauding dozens of California residents out of more

8

9    than $1,000,000").[6] The Court has already found that Plaintiffs set forth evidence

10   sufficient to subject Ryan Carroll, Max K. Day, Max O. Day, and Michael Day to the

11

12   Court's personal jurisdiction at the preliminary injunction stage because those

13   Defendants orchestrated the conspiracy to defraud California residents. (ECF 49 at 4-

14   5). Because Defendants have submitted no additional evidence, there would be no

15

16   justification for disrupting that finding.[7]

17

18   _____

19   [3] The evidence shows that "Precision Trading Group, LLC" did business as "Wealth Assistants LLC," "WA Distribution, LLC," "WA Amazon Seller, LLC," which shows the interchangeability of those four entities. (Motion for TRO at Ex. A, Ex. 2). The evidence also shows that Yax IP and Management is an alter ego of Wealth Assistants because (1) it has the same law firm of record (Mac Leckrone) as many of the Defendant entities; (2) it also has the same registered agent ("Cogency Global Inc.") as many of the defendant entities; (3) its name's prefix ("Yax") matches the prefix of "Yax Ecommerce"; and (4) a press release indicates that "Max Day" is the "CEO of Fulfillable." (Motion for TRO at Ex. A, Ex. 6, 16).

22   [4] Even if Wealth Assistants' operations were not directly attributable to all of the Wealth Assistants entities, the entities would still be subject to the Court's personal jurisdiction because Plaintiffs allege that they are Wealth Assistants' alter egos (ECF 56, ¶¶ 36-41), and that they participated in the conspiracy by helping the other Defendants conceal assets (*Id.*). The law regarding personal jurisdiction for alter egos and conspiracy participants is discussed in the sections that follow.

24   [5] Max O. Day has resubmitted an affidavit in which he asserts that he was merely an independent contractor of Wealth Assistants and not a central figure in the conspiracy. However, the Court has already found that affidavit was not credible. (ECF 49 at p. 5).

26   [6] Many more uncontradicted allegations support the finding that Ryan Carroll, Max K. Day, Max O. Day, and Michael Day orchestrated the conspiracy that intentionally defrauded California residents. For example, those four individuals were the sole members of the limited liability companies that perpetrated that fraud. (ECF 56, ¶¶ 36-41). Moreover, each of those individuals performed important substantive work to orchestrate that fraud, and subsequently fraudulently transfer the assets to themselves and conceal those assets. (ECF 56, ¶¶ 166-169).

28   [7]

Plaintiffs' Amended Complaint also alleges new facts that link the Human Defendants to California, which Defendants do not address in their Motion. For example, Plaintiffs allege that the Human Defendants' scheme to fraudulently transfer and conceal the stolen money was centered in California because the people responsible for transferring and concealing the money—Christine Carroll, Rey Passinli, and Total Apps—were all residing in and doing business in California. (ECF 56 at ¶ 5). There should be no doubt that the Court has personal jurisdiction over the Human Defendants on the grounds that they directed acts in California to help themselves steal more than $1,000,000 of California residents' money.

### iii.    The Court Also Has Personal Jurisdiction Over Alter-Ego Defendants

A person's alter ego is subject to personal jurisdiction wherever the person is subject to personal jurisdiction. *See Sheard v. Superior Court*, 40 Cal.App.3d 207, 210, 114 Cal. Rptr. 743 (1974). Whether a person has an "alter ego" is determined by applying the corporate-veil-piercing doctrine. "A corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the [owner] of a corporation liable for the acts of the corporation." *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal.App.4th 523, 538 (2000). Although there is a presumption against disregarding a corporate identity, that presumption may be overcome by showing that (1) there is such unity of interest that the separate personalities render one corporation the mere instrumentality of the other, and (2)

failure to disregard their separate entities would result in fraud or injustice. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

Similar to the "veil piercing" doctrine, the doctrine of "reverse veil piercing" allows a human debtor's creditor to collect on the debt from the debtor's corporation. "Reverse veil piercing is similar to traditional veil piercing in that when the ends of justice so require, a court will disregard the separation between an individual and a business entity." *Curci Investments, LLC v. Baldwin*, 221 Cal. Rptr. 3d 847, 851 (Ct. App. 2017). "But, the two serve unique purposes and are used in different contexts. Rather than seeking to hold an individual responsible for the acts of an entity, reverse veil piercing seeks to satisfy the debt of an individual through the assets of an entity of which the individual is an insider." *Id.* Although reverse veil piercing is different from veil piercing, courts consider the same factors in deciding whether to apply the doctrine: (1) whether the debtor and the corporation have a unity of interest, and (2) whether declining to pierce the corporate veil would yield an inequitable result. *Id.* For example, when the debtor is the sole owner of a corporation and uses it as his or her bank account, the debtor's creditor may be able to reverse-pierce the corporate veil. *Id.*

Here, Plaintiffs have plausibly alleged that the Alter Ego Defendants are the human Defendants' alter egos. In particular, Plaintiffs have plausibly alleged that the Alter Ego Defendants were undercapitalized, had no distinct operations, and failed to follow corporate formalities such as maintaining their own by-laws or accurate books and records. (ECF 56 at ¶¶ 42-54). Because Defendants have not contradicted those

allegations with any evidence, the allegations alone are sufficient to overcome the motion to dismiss. *LNS Enters.*, 22 F.4th at 858 (holding that a court must take as true all uncontroverted allegations in the complaint).

Although presenting evidence is not necessary at this stage, Plaintiffs note that they have also provided uncontradicted evidence that Alter Ego Defendants accepted funds on behalf of "Wealth Assistants" and the human Defendants and had no operations distinct from Wealth Assistants. (*See* Plaintiffs' Motion for Temporary Restraining Order at 10-14). In particular:

- **HouTex Farm Equity Partners LLC (Max K. Day's alter ego)**
  - HouTex is a cricket farm according to its website. According to its corporate registration, it is managed by Max K. Day and has its corporate headquarters listed as Max K. Day's home.[8] However, its phone line on its website does not seem to accept calls.[9] Because there is no evidence that it has real operations, is likely engaged in money laundering rather than cricket farming.

- **MKD Investment Adviser (Max K. Day's alter ego)**;
  - MKD Investment Adviser appears to be Max K. Day's alter ego not only because of its name but also because MKD Investment Adviser is the registered owner of Max K. Day's home.[10]

---

[8] Motion for TRO Exh. A, Ex. 10.
[9] Motion for TRO Exh. A, Ex. 12, 17.
[10] Motion for TRO Exh. A, A, Ex. 14.

- **MKD Family Beneficiary (Max K. Day's alter ego)**;
  - MKD Family Beneficiary appears to be Max K. Day's alter ego not just because of the initials at the beginning of the corporate name, but also because it has the same registered address as MKD Investment Adviser.[11]

- **MKD Family Private Management Company (Max K. Day's alter ego)**;
  - MKD Family Beneficiary appears to be Max K. Day's alter ego not just because of the initials at the beginning of the corporate name, but also because it has the same registered address as MKD Investment Adviser.[12]

- **Max Day Consulting (Max K. Day's alter ego)**
  - Max Day Consulting appears to be Max K. Day's alter ego not only because of its name but also because its address is also Precision Trading Group, LLC's address.[13]

- **Business Financial Solutions Advisory LLC (Max K. Day's alter ego)**

---

[11] Motion for TRO Exh. A, Ex. 26.
[12] Motion for TRO Exh A, Ex. 13.
[13] Motion for TRO Exh. A, Ex. 11.

- o Business Financial Solutions Advisory LLC appears to be Max K. Day's alter ego because it is managed by Max K. Day and has the same corporate address as Max K. Day's home address.[14]

- **Evo Maxx LLC (Max K. Day's alter ego)**

  - o Max Day is the manager of this corporation. The attorney of record is Feras Mousilli, who is the principal of the law firm that is the attorney of record on many of the entity defendants' corporate registrations. The address is the same as WA Amazon Seller LLC's address.[15]

- **WWKB LLC (Michael Day's alter ego)**

  - o WWKB was an owner of Wealth Assistants which was owned by Michael Day.[16] Plaintiffs allege that it served no purpose other than helping Michael Day conceal the proceeds of the fraudulent scheme. (ECF 56, ¶¶ 50-54).

- **Dreams to Reality LLC (Ryan Carroll's alter ego)**

  - o Dreams to Reality LLC was an owner of Wealth Assistants and was owned by Ryan Carroll. Plaintiffs allege that it served no purpose other than helping Ryan Carroll conceal the proceeds of the fraudulent scheme. (ECF 56, ¶¶ 49, 51-54).

---

[14] Motion for TRO Exh. A, Ex. 8.
[15] Motion for TRO Exh. A, Ex. 9.
[16] *Wealth Assistants v. Thread Bank*, No. 4:24-cv-00040, ECF 13 (S.D. Tex. 2024).

It would be a gross injustice to allow Defendants to continue to abuse corporate privileges by hiding assets in their alter egos, which may deprive Plaintiffs of any opportunity to obtain meaningful final relief. In this situation, it is appropriate to disregard any distinction between the Human Defendants and the fictitious corporations they have formed. *See Sheard*, 40 Cal.App.3d at 210.

### C. Defendants' Motion To Dismiss For Failure To State A Claim Fails

#### i. A 12(b)(6) Motion Must Be Denied Unless Plaintiffs' Allegations Fail To Plausibly Allege A Cause Of Action

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim, is only granted if the complaint fails to allege enough facts to state a claim to relief that is plausible on its face. *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Although the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully, it is not akin to a probability requirement. *Id*.

Furthermore, although a court may ignore conclusory allegations of law and unwarranted inferences, a court must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party. *Id.*

#### ii. Jurisdictional Defendants' Motion To Dismiss Plaintiffs' Fraud Claims Is Frivolous

Plaintiffs have brought a cause of action against Defendants for conspiring to defraud Plaintiffs and conceal their assets. To show the existence of a conspiracy, Plaintiffs must show the existence of "'an agreement . . . No formal agreement between the parties is essential to the formation of the conspiracy, for the agreement may be shown if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose.'" *Wood v. Greenberry Fin. Servs., Inc.*, 907 F. Supp. 2d 1165, 1181 (D. Haw. 2012) (quoting *Marino v. United States*, 91 F.2d 691, 694 (9th Cir.1937)).

Moreover, common law fraud consists of five elements: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage. Cal. Civ. Code § 1709; *see Philipson Simon v. Gulsuig*, 154 Cal. App. 4th 347, 363 (2007). "Statements relating to predictions or forecasts of future activity may be material misrepresentations if the prediction did not have a reasonable factual basis." *In re 3Com Securities Litigation*, 761 F. Supp. 1411, 1416 (N.D. Cal. 1990).

Defendants' motion to dismiss Plaintiffs' fraud-conspiracy claims (Motion at ¶ 40-48) is almost identical to a section in their Opposition to a Preliminary Injunction. (ECF 13 at 12-16). With respect to the Jurisdictional Defendants,[17] the Court has already rejected Defendants' arguments, finding that Plaintiffs not only have properly

---

[17] Jurisdictional Defendants are Yax Ecommerce LLC, and each of the human Defendants.

alleged those claims but indeed have established a likelihood of success on their merits. (ECF 49).[18]

To briefly recap the already rejected arguments, Defendants argued that Plaintiffs' claims related to fraud must be dismissed because Plaintiffs "fail to identify a single misrepresentation of material fact." (Motion at ¶ 40). That is not true. Plaintiffs have alleged that the Jurisdictional Defendants made false statements about the profitability of stores and sent fraudulent invoices to Plaintiffs, for example. (ECF 56 at ¶ 14). Moreover, Plaintiffs allege with particularity the fraudulent statements made to them regarding the profitability of Wealth Assistants' stores, identifying who made the statement, when they made it, and by what means they were made. (ECF 56 at ¶¶ 80-100). Those misrepresentations are more than sufficient to sustain Plaintiffs' causes of action for fraud against Wealth Assistants. *See In re 3Com*, 761 F. Supp. at 1416.

### iii.    Plaintiffs Have Adequately Alleged That Non-Jurisdictional Defendants Participated In The Fraud Conspiracy By Concealing Assets

When a person has engaged in a fraud conspiracy, helping that person conceal their assets constitutes participation in the conspiracy. *Taylor v. S M Lamp Co.*, 190 Cal.App.2d 700, 706 (Cal. Ct. App. 1961) ("a debtor and those who conspire with him to conceal his assets for the purpose of defrauding creditors are guilty of committing a tort and each is liable in damages.").

---

[18] Plaintiffs incorporate by reference the pertinent section of their Reply to Defendants' Opposition to the Preliminary Injunction. (ECF 37 at 14-15).

In the Motion, Defendants define the term "Additional Defendants" as all Defendants other than the Jurisdictional Defendants.[19] Defendants assert that "the allegations with respect to the 'Additional Defendants' consist solely of the fact that one Defendant Max K. Day bears some relationship to the other entities (whether it be by virtue of some level of ownership, management, a simple shared address for service of process, or even just similarly sounding initials)." (Motion at ¶ 38). That is false. Plaintiffs have adequately alleged causes of action against all "Additional Defendants," including by alleging that they have participated in the Jurisdictional Defendants' conspiracy by helping them conceal assets; indeed, Plaintiffs allege that the Additional Defendants had no purpose *but* to conceal assets. (ECF 56 at ¶¶ 39, 54, 167(f)).

Moreover, as discussed above, the Alter Ego Defendants are alter egos of the Human Defendants, and the Wealth Assistants Entity Defendants are each others' alter egos. Accordingly, even if those Defendants did not directly participate in the conspiracy, they would still be liable because they are alter-egos of those who did participate in the conspiracy.

### iv. Plaintiffs Have Adequately Alleged Their Fraudulent Transfer Claims Against The Alter Ego Defendants

Plaintiffs' third cause of action is that the Alter Ego Defendants received fraudulently transferred assets. To succeed in an *actual* fraudulent transfer claim, a plaintiff must show: (1) he or she had a right to payment from a debtor who transferred

---

[19] Specifically, the Additional Defendants are the Alter Ego Defendants and all of the Wealth Assistants Entity Defendants except Yax Ecommerce LLC.

money to the defendant, and (2) the debtor transferred property with the intent to hinder, delay or defraud plaintiff. Cal. Civ. Code § 3439.04 (hereinafter, "CUFTA").

However, a plaintiff can also bring a *constructive* fraudulent transfer claim under CUFTA. A Plaintiff can succeed on a constructive fraudulent claim, without showing any fraudulent intent, by showing that: (1) he or she had a right to payment from a debtor who transferred money to the defendant, (2) the debtor did not receive a reasonably equivalent value in exchange for the transfer or obligation, and (3) the debtor reasonably should have believed that she was insolvent. *Id.*; *Screen Capital Int'l Corp. v. Library Assset Acquisition Co.*, 510 B.R. 266, 273-74 (C.D. Cal. 2015).

As Defendants note, under Fed R. Civ. P. Rule 9(b), claims sounding in fraud must allege "with particularity the circumstances constituting the fraud or mistake." However, Rule 9(b)'s heightened pleading standards are not generally applied to claims of *constructively* fraudulent transfers because, despite the name of those claims, they do not sound in fraud because they do not require proof of intent. *Screen Capital*, 510 B.R. at 274.

Here, Plaintiffs have adequately alleged each of the elements of a constructive fraudulent transfer claim.[20] (ECF 56 at p. 53-54). In particular, Plaintiffs alleged non-conclusory facts from which one could plausibly infer that the Alter Ego Defendants[21]

---

[20] Defendants assert that Plaintiffs did not adequately allege fraudulent transfer claims. But Plaintiffs do, in fact, allege that "the non-Recipient Defendants transferred assets to the Recipient Defendants when the non-Recipient Defendants knew that they were insolvent." (ECF 56 at p. 53-54).

[21] The "Alter Ego Defendants" are MKD Investment Advisor, LLC; MKD Family Beneficiary, LLC; MKD Family Private Management Company, LLC; Max Day Consulting, LLC; Houtex Farm Equity Partners LLC; Business Financial Solutions Advisory LLC; Evo Maxx LLC; WWKB LLC; and Dreams To Reality LLC.

received constructively fraudulent transfers from the Wealth Assistants Entity Defendants and the human Defendants. For example, Plaintiffs have alleged that the Alter Ego Defendants had no purpose other than to help Wealth Assistants and the human Defendants conceal assets, they had no operations, and they did not follow corporate formalities such as maintaining their own by-laws or accurate books and records. (ECF 56, ¶¶ 51-54, 166(d-g), 167(f), 168(d), 169)).

### v.   Defendants' Parol-Evidence Argument Is Misplaced

The Jurisdictional Defendants argue that evidence of Jurisdictional Defendants' misrepresentations outside the written contract are prohibited by the parol evidence rule. (Motion at ¶ 49). That argument merits no discussion because it is simply not true; the parol evidence rule does not prohibit parties from introducing evidence of misrepresentations to prove a fraud or unfair competition claim. *Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914, 929 (S.D. Tex. 1998) ("because Plaintiffs here allege fraud, the parol evidence rule does not apply.").

### D. If The Court Is Inclined To Dismiss Any Of Plaintiffs' Claims, Plaintiffs Should First Be Allowed Leave To Amend

If the Court were inclined to find that it does not have personal jurisdiction over any Defendants, or that Plaintiffs have failed to adequately plead any of their claims, Plaintiffs would respectfully request leave to amend to address any deficiencies in the pleadings. *Swartz v. KPMG LLP*, 476 F.3d 756, 758 (9th Cir. 2007) ("although the original complaint failed to allege sufficient jurisdictional facts, Swartz should have

been given an opportunity to cure this defect through amendment."); *Tiedemann v. Blanckensee*, 72 F.4th 1001, 1011 (9th Cir. 2023) (holding that before dismissing a claim for failure to state a claim, "[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.") (internal quotations omitted).

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety. If the Court is inclined to grant any part of Defendants' Motion, Plaintiffs respectfully request leave to amend.

Dated: June 7, 2024

/s/Nico Banks
Nico Banks, Esq.
Banks Law Office
Bar No. 344705
Tel.: 971-678-0036
nico@bankslawoffice.com
712 H St NE,
Unit #8571,
Washington, DC 20002

## WORD COUNT COMPLIANCE CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains fewer than 7,000 words, which complies with the word limit of L.R. 11-6.1

/s/Nico Banks
Nico Banks
Dated: June 7, 2024

## CERTIFICATE OF SERVICE

On June 7, 2024, I served this brief and accompanying papers via first-class mail to the parties listed below with addresses below their names, and  via email to the parties with email addresses below their names:

JARED DAY;
19710 Chara Ct,
Cypress, TX 77433

MATTHEW CROUCH;
9566 Greiner Rd,
Clarence, NY 14031

CHRISTINE CARROLL;
11298 Snow View Ct,
Yucaipa, CA 92399

TRAVIS MARKER; THE LAW OFFICE OF TRAVIS R. MARKER, A PROFESSIONAL CORPORATION (D.B.A. "MARKER LAW AND MEDIATION"); & PARLAY LAW GROUP A PROFESSIONAL CORPORATION
333 2nd St.
Suite 16,
Ogden, UT 84404

REYHAN PASINLI & TOTAL-APPS, INC.
26800 Aliso Viejo Pkwy
Ste 130,
Aliso Viejo, Ca 92656

TROY MARCHAND & QUANTUM ECOMMERCE
Via email to their attorney Marc Reich at mgr@reichradcliffe.com

BONNIE NICHOLS & WHOLESALE UNIVERSE;
Via email to their attorney Brad Geyer at bradford.geyer@formerfedsgroup.com

WELLS FARGO N.A.
Via email to its attorney Anthony Le at ALe@mcguirewoods.com

I declare under penalty of perjury under the laws of the State of California that the foregoing statements in this Certificate of Service are true and correct.

/s/Nico Banks
Nico Banks
Dated: June 7, 2024

PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS