Nico Banks (CA SBN:344705)
**BANKS LAW OFFICE**
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

Richard A. Nervig (CA SBN:226449)
**RICHARD A. NERVIG, P.C.**
501 West Broadway, Suite 800
San Diego, CA 92101
Phone: 760-451-2300
Email: richard@nerviglaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HOUGH; *et al.*<br><br>        Plaintiffs,<br><br>   vs.<br><br>RYAN CARROLL; *et al.*<br><br>        Defendants. | Case No.: 2:24-cv-02886-WLH<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO QUASH**<br><br>Hearing: July 12, 2024, 1:30 pm<br>Presiding Judge: (Unknown; the Motion is directed to District Judge Hsu, but discovery motions are typically routed to Magistrate Judge Kim)<br>Trial Date: N/A |

**PLAINTIFFS' OPPOSITION TO MOTION TO QUASH**

# BACKGROUND

## I. The Court Gave Plaintiffs Leave To Issue The Subpoenas At Issue Because Defendants Had Failed To Comply With The Asset-Disclosure TRO

This case is a putative class action brought by Plaintiffs who allege that they are the victims of Jurisdictional Defendants' scheme to (1) defraud Plaintiffs, and (2) subsequently conceal the proceeds of the fraud. At the outset of this matter, on April 15, 2024, the Court issued a temporary restraining order requiring Jurisdictional Defendants to freeze their assets (with an exception for ordinary personal expenditures) and disclose their assets. (ECF 17).

At a subsequent hearing, the Court found that Jurisdictional Defendants had demonstrated "bad faith efforts to comply with the TRO" and, accordingly, the Court (1) issued an order to show cause why Defendants should not be sanctioned, and (2) granted Plaintiffs leave to conduct expedited discovery, including certain third-party discovery at issue in Defendants' Motion to Quash (the "Motion"). (ECF 41-42).

At a subsequent hearing on May 13, 2024, the Court converted the temporary restraining order into a preliminary injunction, and the Court stated on the record that Plaintiffs could issue subpoenas not just to financial entities, but also to other third-party entities to obtain information about Defendants' assets. Plaintiffs have requested a transcript of that hearing and expect to receive that transcript the week of

June 24, 2024. Plaintiffs will file a copy of that transcript as a supplement to this brief as soon as the transcript is available.

In accordance with that statement on the record, on May 16, 2024, Plaintiffs issued subpoenas to third-party entities requesting "[a]ll documents reflecting action upon assets or accounts held for the benefit of or controlled by, in whole or in part, any individuals or entities listed in Attachment A … 'Documents' includes without limitation: account statements, wire transfer records, checks, correspondence, and account opening documents." (Motion at ¶ 21). "Attachment A" included a list of several entities controlled by Defendants and includes identifying information for those entities. (*See* Motion, Attachment A to Exhibit B). The compliance date for the subpoena was June 17, 2024. (*Id.*).

## II.    Defendants Rebuffed Plaintiffs' Attempts To Resolve Any Issues With The Subpoena

On May 29, 2024, Defendants wrote to Plaintiffs:

> The subpoenas that you have propounded greatly exceed that which you were authorized to obtain.
>
> Will you agree to amend those subpoenas to conform to the court's order? If not please consider this letter our offer to meet and confer prior to our seeking the court's assistance in limiting these subpoenas.

(Exhibit A to Banks Declaration). Plaintiffs responded:

> We discussed this matter on the record at the prior hearing. I told the court I'd like to issue subpoenas to find defendants' assets that went beyond that May 1 order because some of the assets weren't with banks that issue account statements, and were instead with other non-financial entities like Amazon. The court said that was fine and that the purpose of the order was to make sure all assets were on the table. Also, I don't

believe you have standing to object to subpoenas. But, if there's something specific you're concerned about, I'm willing to discuss it further.

(Exhibit B to Banks Declaration). Defendants never described their issues with the subpoena with any more specificity. Nonetheless, Plaintiffs re-issued most[1] of the subpoenas to add an instruction stating:

> The aim of this subpoena is to allow Plaintiffs to identify the current location of assets that have been in Defendants' control since May of 2022, and Plaintiffs are willing to tailor the request to achieve that goal in the least burdensome manner possible. For example, producing correspondence is likely not necessary if you produce other records that show action upon the assets at issue. Likewise, if you produce account statements that show the originating account and destination account for wire transfers and checks at issue, then Plaintiffs will likely tell you that you do not need to also produce wire confirmations or copies of the checks.

(*Id*.) Defendants, however, continued to steadfastly insist that Plaintiffs' modified subpoenas were still overbroad solely on the grounds that the Court's original order—which only allowed subpoenas to request account statements from financial entities—was somehow not affected by the Court's subsequent on-the-record oral Order that Plaintiffs could more generally issue subpoenas to entities regarding Defendants' assets. Plaintiffs eventually ended the discussions because Defendants' flatly incorrect position, that the Court's oral Order was invalid, was a non-starter.

---

[1] Plaintiffs did not re-issue the subpoenas to a few of the subjects of the original subpoenas because, after issuing the original subpoenas, Plaintiffs determined that those few subjects were unlikely to have responsive documents.

As discussed in Plaintiffs' pending Motion for Sanctions (ECF 62), throughout this case, Defendants have continued to refuse to comply with the Court's emergency asset-disclosure orders. To disrupt Plaintiffs' efforts to find Defendants' assets through third-party discovery—and buy themselves a few extra weeks to continue shuffling their assets—Defendants filed their Motion about a month after Plaintiffs issued the subpoenas and only one business day before the date scheduled for complying with the subpoenas.

## ARGUMENT

### I. Defendants' Motion To Quash Is Untimely

A motion to quash a subpoena must be "timely" filed. Fed R. Civ. P. 45(c)(3)(A). While not all courts agree on the definition of "timely," many courts have held that a motion to quash is only timely if it is served within "14 days after the subpoena is served." *Lillywhite v. AECOM*, No. C18-1840-JCC, at *3 (W.D. Wash. Aug. 5, 2020) (citing Fed. R. Civ. P. 45(d)(2)(B)).

Here, Defendants did not timely file their motion because they did not file it within 14 days after the subpoena was served; Plaintiffs served their subpoenas on May 16, 2024, and Defendants did not file their Motion until June 14, 2024.

Moreover, a motion to quash is untimely when the proponent waits to file the motion until the moment before the compliance date in the subpoena. *See Allstate Ins. Co. v. Nassiri*, 2011 WL 4905639, *1 (D. Nev. Oct. 14, 2011) (overruling objections to magistrate judge order finding an emergency motion to quash subpoena was

untimely when three-weeks' notice was provided for a deposition but the motion to quash was filed only three days before the deposition); *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1141 (D. Nev. 2015) ("The odor of gamesmanship is often especially pronounced in the context of discovery disputes where it appears parties routinely seek to delay their discovery obligations by filing an emergency motion for protective order on the eve of a discovery deadline or noticed deposition.").

Here, Defendants filed their Motion a month after Plaintiffs issued the subpoenas and only one business day before the date scheduled for complying with the subpoenas. It is clear that Defendants delayed filing their Motion so that the filing itself would accomplish Defendants' purpose. Specifically, by filing their Motion, Defendants hoped to delay third-party financial entities' production of financial documents until the Motion was resolved at least a month later. As a result, Defendants will have at least an extra month to shuffle their assets before Plaintiffs can view Defendants' financial documents. Therefore, the Motion must be denied because it is untimely and dilatory.

II.    **Plaintiffs' Subpoenas Do Not Exceed The Scope Of The Court's Written And Oral Orders Governing The Scope Of Expedited Subpoenas**

Defendants argue that the subpoenas are invalid because the Court's written Order only allowed Plaintiffs to subpoena information about the Original Jurisdictional Defendants, and Plaintiffs' subpoena requests information about other

entities. The Court's written Order, however, allowed the subpoenas to extend to assets "owned or controlled, in whole or in part, directly or indirectly, by or for the benefit of . . . any entity that is directly or indirectly owned, managed, or controlled by any Jurisdictional Defendant." All of the entities listed in the subpoenas clearly fall within that scope of that Order; indeed, the subpoena itself explains how each of the entities are owned or controlled by one or more of the Original Jurisdictional Defendants.

Defendants also argue that the subpoenas are invalid to the extent they request information about Defendants' entities that Defendants did not disclose in their interrogatories. The notion that Plaintiffs should be prohibited from discovering information about assets held in Defendants' shell companies because Defendants fraudulently omitted those assets from their interrogatory responses is absurd on its face. It is also inconsistent with the language of the Court's Order allowing expedited discovery, which allows Plaintiffs to request information "for any accounts that are *required* to be identified in the interrogatory . . ." (emphasis added). If Defendants did not *in fact* identify the accounts held by their shell companies, that is of no moment; Plaintiffs may still request information about those accounts because Defendants were *required* to disclose them (whether they did so or not).

Defendants also argue that the subpoenas are invalid because they exceed the scope of the Court's written order, which allowed subpoenas to request "account statements" from "financial entities." However, the Motion never mentions the

- 7 -
PLAINTIFFS' OPPOSITION TO MOTION TO QUASH

Court's subsequent oral Order stating that Plaintiffs could issue subpoenas to any entities —not just financial entities — requesting Defendants' financial documents. Plaintiffs properly relied on the Court's oral Order allowing Plaintiffs to issue subpoenas to any entities for information about the dispositions of assets that Defendants have controlled, directly or indirectly, since May of 2022. *See Noli v. Commissioner*, 860 F.2d 1521, 1525 (9th Cir. 1988) (holding that an oral order is binding on the parties even if never reduced to writing or recorded on a docket). The transcript of that oral Order is not yet available, but Plaintiffs will file it as a supplement to this brief as soon as it is available.

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court deny Defendants' Motion to Quash.

Dated: June 21, 2024

        /S/ Nico Banks
Nico Banks (CA SBN:344705)
**BANKS LAW OFFICE**
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

Richard A. Nervig (CA SBN:226449)
**RICHARD A. NERVIG, P.C.**
501 West Broadway, Suite 800
San Diego, CA 92101
Phone: 760-451-2300
Email: richard@nerviglaw.com

*Attorneys for Plaintiffs*

## WORD COUNT COMPLIANCE CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains fewer than 7,000 words, which complies with the word limit of L.R. 11-6.1

/s/Nico Banks
Nico Banks
Dated: June 21, 2024

## CERTIFICATE OF SERVICE

On June 21, 2024, I served this motion and accompanying papers via first-class mail to the parties listed below with addresses below their names, and via email to the parties with email addresses below their names:

JARED DAY;
19710 Chara Ct,
Cypress, TX 77433

MATTHEW CROUCH;
9566 Greiner Rd,
Clarence, NY 14031

CHRISTINE CARROLL;
11298 Snow View Ct,
Yucaipa, CA 92399

TRAVIS MARKER; THE LAW OFFICE OF TRAVIS R. MARKER, A PROFESSIONAL CORPORATION (D.B.A. "MARKER LAW AND MEDIATION"); & PARLAY LAW GROUP A PROFESSIONAL CORPORATION
333 2nd St.
Suite 16,
Ogden, UT, 84404

REYHAN PASINLI & TOTAL-APPS, INC.
Via email to their attorney Geoffrey Brethen at gbrethen@wattslawyers.com

TROY MARCHAND & QUANTUM ECOMMERCE
Via email to their attorney Marc Reich at mgr@reichradcliffe.com

BONNIE NICHOLS & WHOLESALE UNIVERSE;

Via email to their attorney Brad Geyer at bradford.geyer@formerfedsgroup.com

WELLS FARGO N.A.
Via email to its attorney Dave Gettings at Dave.Gettings@troutman.com

I declare under penalty of perjury under the laws of the State of California that the foregoing statements in this Certificate of Service are true and correct.

/s/Nico Banks
Nico Banks
Dated: June 21, 2024