1                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
2                   WESTERN DIVISION - LOS ANGELES

3

4   DAVID HOUGH, et al.,          ) Case No. CV 24-2886-WLH (SKx)
                                   )
5          Plaintiffs,            ) Los Angeles, California
                                   ) Monday, May 13, 2024
6             v.                   ) 1:31 P.M. to 1:56 P.M.
                                   )
7   RYAN CARROLL, et al.,         )
                                   )
8          Defendants.            )
    _____)

9

10

11

12

13                  TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE WESLEY L. HSU
14                UNITED STATES DISTRICT JUDGE

15

16  Appearances:              See Page 2

17  Deputy Clerk:             Holidae Crawford

18  Court Reporter:           Recorded; CourtSmart

19  Transcription Service:    JAMS Certified Transcription
                              16000 Ventura Boulevard #1010
20                            Encino, California  91436
                              (661) 609-4528

21

22

23

24

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

```
 1   APPEARANCES:

 2

 3   For the PlaintiffS:      Banks Law Office
                              By:  NICOLO E. BANKS
 4                            712 H Street NE, Unit 8571
                              Washington, DC  20002
 5                            (971) 678-0036
                              nico@bankslawoffice.com
 6
                              Richard Nervig Law Offices, PC
 7                            By:  RICHARD A. NERVIG
                              501 West Broadway, Suite 800
 8                            San Diego, California  92101
                              (760) 390-2181
 9                            richard@nerviglaw.com

10

11   For the Defendants:      Lloyd and Mousilli PLLC
                              By:  WILLIAM H. SHIBLEY
12                            11807 Westheimer Road, Suite 550
                              PMB 944
13                            Houston, Texas  77077
                              (512) 609-0059
14                            william@lloydmousilli.com
                              (Specially Appearing)
15

16

17

18

19

20

21

22

23

24

25
```

 1    <u>LOS ANGELES, CALIFORNIA, MONDAY, MAY 13, 2024, 1:31 P.M.</u>

 2       (Call to Order of the Court.)

 3          THE CLERK:  Calling item No. 1, LA 24-cv-2886,

 4    *David Hough, et al. v. Ryan Carroll, et al.*

 5          Counsel, please state appearances starting with

 6    plaintiff.

 7          NICO E. BANKS:  Good morning, Your Honor.

 8    Nico Banks and my co-counsel Richard Nervig on behalf of

 9    plaintiffs.

10          RICHARD A. NERVIG:  Good morning, Your Honor.

11          THE COURT:  Good afternoon.

12          MR. BANKS:  Good afternoon.  I'm sorry.

13          MR. NERVIG:  Oh.  Yeah.  Good afternoon.

14          WILLIAM H. SHIBLEY:  William Shibley specially

15    appearing for the jurisdictional defendants.

16          THE COURT:  Okay.  Thank you.

17          The matter is on calendar for the order to show

18    cause re: sanctions that the Court sua sponte ordered at the

19    last hearing in this case.  I also, prior to the hearing

20    today, distributed a close-to-final draft copy of the

21    preliminary injunction that the Court intends to enter today

22    before the TRO expires.

23          Let me take the draft first.  Is there anything

24    about the draft that you want to comment on, Mr. Banks?

25          MR. BANKS:  Your Honor, I certainly appreciate that

1    opportunity.  I think reviewing the case law my impression

2    was that when you allege that a company is somebody's alter

3    ego, then the company is subject to personal jurisdiction

4    wherever that alter ego is also subject to personal

5    jurisdiction.  And so I'm wondering -- partly because we --

6    you know, we intend to amend our Complaint coming up here

7    pretty soon, I'm wondering if you agree with that, and, if

8    so, are we -- are our alter ego allegations deficient

9    somehow?

10        THE COURT:  I didn't focus on that specific

11    question in  -- I assume that you're talking about the two

12    entities that I now don't think I have personal jurisdiction

13    over.

14        MR. BANKS:  Right.

15        THE COURT:  I only looked at is what did those --

16    what -- in the Complaint as alleged, what did those entities

17    do?

18        MR. BANKS:  Uh-huh.

19        THE COURT:  And it turns out, upon further review

20    -- my opinion was that those entities were alleged to have

21    transacted with people who are not actually California

22    plaintiffs in the action.  And so based on that alone, I

23    determined that there wasn't personal jurisdiction over them.

24    I did not go back and say, "Well, if that's an alter ego,

25    then it's responsible for everything that this" -- you know,

1  "the individual defendant did."  I didn't think about that.

2  So -- but if you're going to amend anyway, I would suggest

3  that you just amend to, you know, specifically say what that

4  entity was doing.  So, for example, you could say, you know,

5  "Individual defendant, also acting as entity defendant, did"

6  -- "conducted the following transaction in California."

7          MR. BANKS:  Okay.  Thank you.  That's helpful.

8          THE COURT:  That'll make it clear for me to look

9  at.

10          MR. BANKS:  Thank you.

11          THE COURT:  Okay.

12          Mr. Shibley, anything on the preliminary

13  injunction?

14          MR. SHIBLEY:  Yes.

15          THE COURT:  Other than obviously what you've

16  objected to before.

17          MR. SHIBLEY:  Yes.  You know, I -- even going back

18  to *International Shoe*, I don't think the individual

19  defendants have sufficient jurisdiction.  You know,

20  *International Shoe* is the first great case that talked about

21  choice of law and local jurisdiction.

22          I was afraid that we would be talking about other

23  issues, the tax returns that we provided where counsel

24  complained that they weren't sign, but I haven't personally

25  signed my own copy of a tax return since I tried to refinance

1    my house about 12 years ago.

2              THE COURT:  They're e-filed copies?

3              MR. SHIBLEY:  Yes.

4              THE COURT:  Is that what you're telling me?

5              MR. SHIBLEY:  Yeah.

6              THE COURT:  Okay.

7              MR. SHIBLEY:  Or they're copies that were prepared

8    by an accountant where the accountant had the party sign and

9    then submitted them and the party was not given duplicate of

10   --

11             THE COURT:  I see.

12             MR. SHIBLEY:  But that, I assume, would be a

13   discovery matter for us to deal with your magistrate judge.

14             And for the record, it's my understanding that you

15   are going to discharge the OSC re: sanctions and find no

16   sanctions --

17             THE COURT:  Well, I'm going to talk about that in a

18   second.

19             MR. SHIBLEY:  Oh.  Okay.

20             THE COURT:  Right now I'm only focused on the

21   preliminary injunction.

22             MR. SHIBLEY:  Okay.  Well, we agree that

23   eliminating corporate parties, as well as several of the

24   other parties, is appropriate.

25             As far as Max O., you know, I've read and re-read

1   his affidavit, and it seems to me that it set forth

2   sufficient facts.  I suspect Your Honor has disagreed.  Did

3   Your Honor have the opportunity to review what was provided

4   to you over the weekend and this morning?

5           THE COURT:  Yes.

6           MR. SHIBLEY:  Okay.  And the other --

7           THE COURT:  Although I should be clear about that,

8   I guess.  That's -- I'm not sure about this morning.  In

9   terms of what was filed over the weekend, I did review the

10  jurisdictional defendants' listed supplemental brief and

11  opposition and the exhibits attached thereto.  Was there

12  something else?

13          MR. SHIBLEY:  No.  No.  But the one issue we wanted

14  to bring up was the fact that Mr. Banks had actually

15  contacted one of the represented parties.

16          THE COURT:  Yeah.  I think that -- that is a

17  separate issue that I'm going to inquire into, but I don't

18  think it pertains to the preliminary injunction.  So why

19  don't we finish talking about the preliminary injunction, and

20  then we'll move on.

21          MR. SHIBLEY:  Well, you know, as the Court will

22  understand, on, I think, June 7th -- Monday, June 7th, there

23  are two motions pending.  One is to dismiss for lack of

24  personal jurisdiction, and another is to refer this matter to

25  arbitration.

1          THE COURT:  Right.

2          MR. SHIBLEY:  And I don't know if Your Honor has

3    reviewed those as well?

4          THE COURT:  Nope.

5          MR. SHIBLEY:  Okay.  But one of the problems I see

6    with the plaintiffs' case is that he's failed to attach the

7    contracts, and that may be because I came into the case late

8    and don't have the original exhibits that were filed.

9          THE COURT:  You mean to the Complaint?

10         MR. SHIBLEY:  Yeah.

11         THE COURT:  Why -- what requirement is there that

12   he attach the contracts?

13         MR. SHIBLEY:  Well, for evidentiary purposes the

14   substance of the contracts and the insistence on arbitration

15   in Texas choice of law would be appropriate.

16         THE COURT:  It's an affirmative defense.  You're

17   raising it, and you're doing it the way you're supposed to do

18   it.  They've alleged a fraud.  You've alleged that they have

19   to arbitrate the fraud claim.  So, I mean, I don't think that

20   -- I don't think failing to attach the contracts to the

21   Complaint itself is here nor there.

22         MR. SHIBLEY:  Or to the preliminary hearing -- or

23   TRO request.

24         THE COURT:  I -- again, I don't think that that is

25   an affirmative burden on his part.  That is an affirmative

 1  defense on your part.

 2          MR. SHIBLEY:  Right.  And we did attach those --

 3          THE COURT:  Yes.

 4          MR. SHIBLEY:  -- for the Court to review.

 5          Finally, it -- it seems that limiting the TRO --

 6  and we would disagree on Max O. because it seems that he is

 7  only ancillary --

 8          THE COURT:  Yeah, I don't agree.

 9          MR. SHIBLEY:  Okay.  Okay.  Then I'll submit on the

10  TRO -- on the tentative.

11          THE COURT:  Okay.  Then I'll adopt the tentative as

12  a final.  We'll issue it in paper form in -- before this

13  afternoon expires.

14          Let me turn to the order to show cause re:

15  sanctions.

16          I have a couple of questions for you,

17  Mr. Shibley.  First, is it true, from your perspective, that

18  Max O. Day has no assets whatsoever?

19          MR. SHIBLEY:  I think at some point he responded

20  further, and he responded in response to the discovery

21  request, and, you know, considering that I'm a California

22  attorney representing folks in Texas, I don't have personal

23  knowledge --

24          THE COURT:  No, no.

25          MR. SHIBLEY:  Oh.

1          THE COURT:  I'm not asking you if you have personal

2    knowledge.  Based on what has been disclosed, is it the

3    defendants' position that Max O. Day has no assets

4    whatsoever?  Because he hasn't disclosed any.

5          MR. SHIBLEY:  Well, he may have assets, and it's my

6    understanding that those have been frozen by --

7          THE COURT:  Oh, the -- you're talking about the

8    Treat (phonetic) Bank?  Is --

9          MR. SHIBLEY:  Well, that was one, and I don't have

10   the full response to discovery, but he disclosed his home and

11   other property that he has in response to the discovery.  So

12   they have a full and complete record of his -- anything that

13   he has access to or in his name or -- except counsel has

14   apparently brought Mr. "O. Day's" daughter's --

15          THE COURT:  Well --

16          MR. SHIBLEY:  Yeah.

17          THE COURT:   -- I don't read it that way.  The

18   email that was submitted -- I read it as Mr. Banks submitted

19   the restraining order to the bank and the bank took it upon

20   itself to freeze the daughter's account.  So I -- I do not

21   have enough information to suggest to me that Mr. Banks did

22   anything improper "or," frankly, that the bank did anything

23   improper because why would they have frozen the daughter's

24   account if his name was not associated with it?

25          MR. SHIBLEY:  And by the way, Your Honor, one more

1    thing on the preliminary injunction.

2              THE COURT:  Yes?

3              MR. SHIBLEY:  As to the funds that are already held

4    by the Texas firm in their attorney-client trust account --

5              THE COURT:  Yes.

6              MR. SHIBLEY:  -- are those subject to the $10,000

7    limit?

8              THE COURT:  No.

9              MR. SHIBLEY:  Okay.

10             THE COURT:  As long as they're being used for, you

11   know, litigation expenses.

12             MR. SHIBLEY:  Yeah.

13             THE COURT:  If they -- you know, if the Texas law

14   firm decides to give them money back out of that account --

15             MR. SHIBLEY:  Oh, I understand that.

16             THE COURT:  Okay.  All right.

17             MR. SHIBLEY:  Okay.  Okay.

18             And your second question?

19             THE COURT:  Oh, yes.  The second question was --

20   I'm sorry.  I lost my train of my thought.

21             (Pause.)

22             THE COURT:  I'm sorry.  I lost my train of thought.

23   It'll come back to me.

24             MR. SHIBLEY:  And -- okay.

25             THE COURT:  Anything else with respect to --

1          MR. SHIBLEY:  No.  Other than the fact that the

2    parties, as soon as they realized what hadn't been provided,

3    provided it as promptly as they could and I -- from my own

4    personal knowledge, I know that the people in Texas have been

5    working, you know, 12 to 15 hours a day to try to get

6    everything completed and served upon the plaintiff, and my

7    understanding is that they've produced everything.

8          THE COURT:  Okay.  Thank you.

9          Mr. Banks, let me ask you -- before I allow the

10   parties to say whatever they want, let me ask you a direct

11   question.  Do you have any assets from Max O. Day?  Because I

12   didn't see any evidence of the assets from Max O. Day.

13         MR. BANKS:  Your Honor, I believe it was Max K. Day

14   who did not disclose any assets.

15         THE COURT:  Nothing.  Okay.

16         MR. BANKS:  I think Max O. Day disclosed something,

17   like, $10,000 of assets in the original disclosure, and then

18   he disclosed a few more small accounts in the responses to

19   the interrogatories, and we can get into that.

20         THE COURT:  Okay.  All right.

21         Okay.  I guess I don't have any more specific

22   questions about the discovery.

23         Are -- do you have anything with respect to the

24   original temporary restraining order discovery that you think

25   exists but don't have even today?

1              MR. BANKS:  That's a very good question.  The

2    answer --

3              THE COURT:  I mean, obviously --

4              MR. BANKS:  The answer is probably yes.  I think

5    there is a lot of circumstantial evidence that there are a

6    lot of assets not being disclosed, but at this point I can't

7    point to a particular bank account or anything like that and

8    say that, you know, we know this account exists and hasn't

9    been disclosed yet.

10             THE COURT:  Okay.  All right.  Thank you.

11             All right.  I think based on that I'm going to

12   discharge the order to show cause re: sanctions that was set

13   for today.

14             And that leaves the question of the case going

15   forward.  I was -- let me just say for clarity of the record

16   I was not troubled at all by the freeze of the daughter's

17   account.  I mean, it seems like the bank did -- undertook

18   that on its own, and I don't have enough facts before me to

19   understand whether the bank properly froze that account or

20   didn't properly froze that account.  I don't know based on

21   the information that's been presented.

22             I was a little troubled by the idea that, you know,

23   Mr. Banks directly contacted a potentially represented party,

24   but I also think based on -- well, first of all, the idea

25   that Mr. Banks threatened him is entirely conclusory.  The

1    quotes that are actually in the declaration don't suggest

2    that, but that's kind of a different issue.  The contact with

3    the represented party, though, I'm -- it is unclear to me

4    that Mr. Banks knew that this individual was represented.

5    That is not clear from the papers, and in fact, the

6    declaration itself from the individual sort of suggests that

7    he didn't know that he was contacting a represented party; he

8    was contacting someone whose name appeared on the website and

9    he wanted to know who he was.

10          And so I don't know that that's out of bounds,

11   Mr. Shibley but I -- you know, maybe we can litigate this in

12   the protective order context, but based on the information

13   that I have, I mean, it seems like, you know, it could have

14   been an innocent contact, and I would not find otherwise

15   based on what's been presented now.

16          (Pause.)

17          THE COURT:  But I understand that you're going to

18   file a motion, and so we'll see what happens.  I mean, to be

19   clear, I -- you know, I certainly don't support contacting

20   represented parties, but it's not clear to me that that's

21   what happened here, even taking the declaration of the

22   individual at face value.

23          MR. SHIBLEY:  Thank you.

24          THE COURT:  Okay.  Anything else that we need to

25   cover today?

1           MR. BANKS:  Just -- can I have one moment --

2           THE COURT:  Sure.

3           MR. BANKS:  -- to confer, Your Honor?

4           (Pause.)

5           MR. BANKS:  Your Honor, I just have a couple

6  things.

7           First of all, you mentioned that the Texas attorney

8  account does not apply to -- or -- I'm sorry -- the limit

9  that the Court sets in --

10          THE COURT:  The retainer.

11          MR. BANKS:  Right.  Does not --

12          THE COURT:  Right.

13          MR. BANKS:  -- apply to the retainer.

14          THE COURT:  Yes.

15          MR. BANKS:  So does that mean that the defendants

16  can spend the $10,000 per month on the attorneys plus the

17  $280,000 retainer?

18          THE COURT:  I guess so, yes, because the retainer

19  is not current spending, as far as I'm concerned.  It's a

20  litigation cost that's already been passed on to the lawyers.

21  If they want to release any of that money to the defendants

22  themselves, then I would want to know about that beforehand.

23          Is that clear, Mr. Shibley?

24          MR. SHIBLEY:  Yes.

25          THE COURT:  I mean, it seemed like it was clear.

 1          MR. SHIBLEY:  That seems to be my understanding as

 2  well.

 3          THE COURT:  Yes.  Yes.  So they're ordered to

 4  notify me -- they can't return the money in the client trust

 5  account that was obtained for a retainer to any of the

 6  defendants without leave of Court.

 7          MR. SHIBLEY:  Okay.

 8          THE COURT:  Okay.  But, yes, I mean, I think that -

 9  - well, I guess -- I mean, maybe for the time being the rule

10  should be no expenditures on attorneys' fees until leave of

11  Court is sought because if they have 280- -- well, if they

12  have some amount left over in the client -- in the retainer

13  agreement, it'll be a little while, at least, before the

14  Texas lawyers need to ask for more money; isn't that correct?

15          MR. SHIBLEY:  I'm not sure, Your Honor.  The last

16  -- the copyright case I had that ended up with a

17  Clarence Thomas opinion the plaintiff attorneys were asking

18  for 850 an hour and there were, like, ten attorneys.  So I

19  don't know how many people are working on this, but I doubt

20  that they will -- these people will be available -- or able

21  to provide 10,000 collectively to the firm, but 10,000

22  collectively seems like a small amount considering everything

23  else that we're dealing with.

24          THE COURT:  Well, I guess -- I can see a way that

25  the defendants could game the system by just continuing to

1    deposit money with the law firm and then waiting for the end

2    of the case and then, if there's a success, they just get all

3    the money back, right.  So I mean, I could see where -- that

4    the system could be gamed, but I'm not so overly concerned

5    about it, but I guess why don't we -- you're coming back on

6    June 7th, you said?

7           MR. SHIBLEY:  Yes.

8           THE COURT:  Okay.  So let's do this: Let's say no

9    "further" expenditures from the defendants themselves towards

10   legal costs, and if it looks like that's going to be a

11   problem for either you or the Texas firm, then we can -- I

12   will address it on June 7th.

13          MR. SHIBLEY:  Okay.

14          THE COURT:  Okay?  And you can just tell me that

15   that's a problem, and you can explain why, and I'll fix it

16   then.  Okay?

17          MR. SHIBLEY:  Thank you, Your Honor.

18          THE COURT:  Anything else, Mr. Banks?

19          MR. BANKS:  Yes, Your Honor.  The prior order

20   granting us leave to issue subpoenas -- which I appreciate --

21   we asked for that to apply to financial institutions.  We've

22   learned a little bit more, that some of the -- I think some

23   of the records of the dispositions of assets are going to be

24   with institutions that are not traditionally considered

25   financial institutions, like Amazon.

1          THE COURT:  Hm.

2          MR. BANKS:  And so I just want to make sure that it

3   wouldn't be out of bounds for me to issue subpoenas to

4   parties that I think have records of dispositions of -- you

5   know, dispositions by or for the benefit of the defendants

6   but aren't traditionally considered financial institutions.

7          THE COURT:  Yes, I think that's -- I think that's

8   fine.  I mean, third-party entities --

9          MR. BANKS:  Okay.  Thank you.

10          THE COURT:  -- is fine.  I mean, that's just part

11   of discovery.

12          MR. SHIBLEY:  Do those need to be on shortened

13   notice under the rules?

14          THE COURT:  The subpoenas?

15          MR. SHIBLEY:  Or if they're subpoenas re:

16   deposition or subpoenas to the court.

17          THE COURT:  I think that they're just subpoenas for

18   documents; right?  You're just talking about document

19   subpoenas?

20          MR. BANKS:  That's right.  Just for --

21          MR. SHIBLEY:  (Inaudible.)

22          THE COURT:  Just that show -- like, account

23   statements.  Things that show the disposition of assets.

24          THE COURT:  I mean, I don't think that the

25   subpoenas themselves need to be expedited.

1          MR. SHIBLEY:  Okay.

2          THE COURT:  They'll just issue them in due course.

3    I -- I'm -- but I'm fine with them being issued now because

4    what we're -- what the Court is concerned about is making

5    sure that all the assets are on the table so that we know

6    what we're talking about.

7          MR. SHIBLEY:  And I assume counsel will provide

8    copies of those subpoenas and the records produced?

9          MR. BANKS:  Of course.

10          MR. SHIBLEY:  Okay.

11          THE COURT:  Okay?

12          MR. SHIBLEY:  Thank you.

13          THE COURT:  All right.  Anything else, Mr. Banks?

14          MR. BANKS:  Oh, yes.  I'm sorry.  There is one

15    other thing.

16          I just -- we just wanted to let the Court know that

17    -- I mentioned we're planning to amend our Complaint, and

18    when we amend the Complaint, it will be as a putative class

19    action, we think.  So we just wanted to give a court -- the

20    Court a head's up about that.

21          THE COURT:  Okay.  We'll address that and

22    Mr. Shibley's objection when we get -- when we cross that

23    bridge.

24          MR. SHIBLEY:  Thank you.

25          THE COURT:  All right?

1        I don't know how the amendment is going to play

2   against the motion to dismiss and the motion to compel.  So I

3   guess we'll just cross that bridge when we get to it.

4        MR. SHIBLEY:  Well, for the record, the

5   Supreme Court has made it obvious that arbitration can apply

6   to class actions as well.

7        THE COURT:  No, I know, but I just mean

8   procedurally.  Like, if they amend the Complaint tomorrow,

9   can we hear the motion to dismiss and the motion to compel on

10  June 7?  I don't know the answer to that.  So --

11       MR. SHIBLEY:  We can stipulate that you could.  I

12  don't know if counsel is willing to.

13       THE COURT:  I mean, if the issues are the same,

14  then presumably we could just go forward on June 7th.

15       MR. BANKS:  I think that's right.  So what's going

16  to be different is that the defendants failed to pay

17  arbitration costs for one of my clients, and so that client

18  now can come in to court -- the defendants have waived their

19  right to compel arbitration -- for four of my clients,

20  actually.

21       THE COURT:  I see.

22       MR. BANKS:  And so those will be the class

23  representatives where arbitration is not going to be an

24  issue.

25       THE COURT:  I see.  Hm.  Okay.  All right.  We'll

1   cross that bridge when we get to it.

2            Okay.  Anything from you, Mr. Shibley?

3            MR. SHIBLEY:  No.  I think we've covered it.

4            THE COURT:  Okay.  Thank you very much.

5            THE CLERK:  All rise.  Court is adjourned.

6        (Proceedings adjourned at 1:56 p.m.)

7   ///

8   ///

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                                   CERTIFICATE

5        I certify that the foregoing is a correct transcript

6   from the electronic sound recording of the proceedings in the

7   above-entitled matter.

8   /s/ Julie Messa              June 23, 2024
    Julie Messa, CET**D-403      Date
9   Transcriber

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25