Nico Banks (CA SBN:344705)
**BANKS LAW OFFICE**
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

Richard A. Nervig (CA SBN:226449)
**RICHARD A. NERVIG, P.C.**
501 West Broadway, Suite 800
San Diego, CA 92101
Phone: 760-451-2300
Email: richard@nerviglaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID HOUGH; *et al.*<br><br>                    Plaintiffs,<br>    vs.<br><br>RYAN CARROLL; *et al*.<br><br>                    Defendants. | Case No.: 2:24-cv-02886-WLH-SK<br><br>**PLAINTIFFS' MOTION TO COMPEL WELLS FARGO BANK, N.A., AND HOLD IN CONTEMPT HSBC BANK USA AND JP MORGAN CHASE & CO. [DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE STEVE KIM]**<br><br>Hearing: August 28, 2024<br>Presiding Judge: Hon. Steve Kim<br>Action Filed: April 9, 2024<br>Trial Date: N/A |

**PLAINTIFFS' MOTION TO COMPEL WELLS FARGO BANK, N.A., AND HOLD IN CONTEMPT HSBC BANK USA AND JP MORGAN CHASE & CO.**

1

# TABLE OF CONTENTS

**SUMMARY** ............................................................................................ - 4 -

**FACTS** .................................................................................................... - 5 -

   **I.**   **The Court Gave Plaintiffs Leave To Issue The Subpoenas.**..................... - 5 -

   **II.**  **Plaintiffs Served Subpoenas And Amended Subpoenas In May, And Wells Fargo Objected** ................................................................................................. - 5 -

   **III.**  **Plaintiffs Met And Conferred With Wells Fargo Extensively** .............. - 7 -

   **IV.**  **HSBC And JP Morgan Chase & Co. Have Neither Produced Responsive Documents Nor Objected** ................................................................................. - 9 -

   **V.**  **The Court Denied Jurisdictional Defendants' Motion To Quash The Subpoenas** ............................................................................................................ - 10 -

**LEGAL STANDARD** ........................................................................... - 12 -

**ARGUMENT** ......................................................................................... - 13 -

   **I.**   **Wells Fargo Cannot Maintain Its Objections Following The Court's Denial Of The Motion to Quash** ................................................................ - 13 -

   **II.**  **Wells Fargo's Objections Are Without Merit** ......................................... - 13 -

      **a.**  **The Subpoena is Not Improperly Issued to a Party** ......................... - 13 -

      **b.**  **The Subpoena Is Not Vague, Overbroad, Or Unduly Burdensome** .. - 14 -

      **c.**  **The Subpoena Is Not Overbroad Or Unduly Burdensome** ............... - 14 -

      **d.**  **The Subpoena Does Not Seek Privileged Information** ....................... - 17 -

      **e.**  **Confidential Information Is Not Exempt From Discovery** ................. - 17 -

      **f.**  **Wells Fargo Cannot Withhold Documents On The Basis That It Is Being Investigated** ................................................................................................. - 18 -

   **III.**  **Plaintiffs Have Made Good Faith Efforts to Resolve This Dispute** ... - 18 -

   **IV.**  **Other Respondents Have Failed to Comply Without Justification** ... - 18 -

      **a.**  **Service On HSBC Was Proper** ............................................................ - 18 -

      **b.**  **JP Morgan Chase & Co. Cannot Avoid Compliance By Directing Plaintiffs To Subsidiaries** ........................................................................... - 20 -

**CONCLUSION** ..................................................................................... - 20 -

# TABLE OF AUTHORITIES

**Cases**

*Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) .......................... - 13 -

*ColfaxNet, LLC v. City of Colfax*, No. 2:19-cv-02167-WBS-CKD, at *3 (E.D. Cal. Aug. 19, 2020)................................................................................................. - 12 -

*King v. American Fam. Mut. Ins. Co.*, 632 F.3d 570, 575 (9th Cir. 2011) ............ - 19 -

*L.N.R. Co. v. Chatters,* 279 U.S. 320, 323 (1929)................................................. - 19 -

*U.S. v. Int'l Union of Petro. Indus. Wkrs*, 870 F.2d 1450, 1452 (9th Cir. 1989).... - 20 -

**Statutes**

Fed. R. Civ. P. 26(b)(1) .......................................................................................... - 12 -

Fed.R.Civ.P. 45 ........................................................................................................ - 12 -

PLAINTIFFS' MOTION TO COMPEL

# MEMORANDUM OF LAW

## SUMMARY

This motion arises from subpoenas that Plaintiffs issued to financial institutions in order to procure documents that would show the dispositions of Jurisdictional Defendants'[1] assets. The purpose of the subpoenas is to help Plaintiffs find Jurisdictional Defendants' assets—which are subject to an asset-freeze preliminary injunction—before they have the opportunity to further shuffle their assets.

The Court previously denied a motion to quash the subpoenas at issue. Nonetheless, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") has maintained its objections to the subpoena. For the reasons discussed below, the objections are not well taken. Moreover, non-parties HSBC Bank USA ("HSBC") and JP Morgan Chase & Co. have neither objected to the subpoena nor produced documents. Therefore, Plaintiffs respectfully request that the Court (1) order Wells Fargo to comply with the subpoena, and (2) hold HSBC and JP Morgan Chase & Co. in contempt of court for failing to respond to the subpoena by ordering each of those entities to pay Plaintiffs $1,000 per day until they have complied with it.

---

[1] "Jurisdictional Defendants" refers to Ryan Carroll; Max K. Day; Max O. Day; Michael Day; and Yax Ecommerce LLC.

PLAINTIFFS' MOTION TO COMPEL

# FACTS

## I.    The Court Gave Plaintiffs Leave To Issue The Subpoenas.

This case is a putative class action brought by Plaintiffs who allege that they are the victims of Jurisdictional Defendants' scheme to (1) defraud Plaintiffs, and (2) subsequently conceal the proceeds of the fraud. At the outset of this matter, on April 15, 2024, the Court issued a temporary restraining order requiring Jurisdictional Defendants to freeze their assets (with an exception for ordinary personal expenditures) and disclose their assets, and the Court also gave Plaintiffs leave to issue subpoenas to "financial entities" to uncover:

> [A]ssets that, since May of 2022, have been (1) owned or controlled, in whole or in part, directly or indirectly, by or for the benefit of any Jurisdictional Defendant [or] (2) owned or controlled, in whole or in part, directly or indirectly, by or for the benefit of any corporation, partnership, asset protection trust, or other entity directly or indirectly owned, managed, or controlled by any Jurisdictional Defendant.

(ECF 17).

## II.    Plaintiffs Served Subpoenas And Amended Subpoenas In May, And Wells Fargo Objected

On May 16, 2024, Plaintiffs issued subpoenas to third-party entities—including the respondents to this motion— requesting that they produce:

> All documents reflecting action upon assets or accounts held for the benefit of or controlled by, in whole or in part, any individuals or entities listed in Attachment A … 'Documents' includes without limitation: account statements, wire transfer records, checks, correspondence, and account opening documents.

(Banks Declaration, ¶ 2). "Attachment A" was identical for all of the subpoenas, and it included (1) a list of several entities controlled by Defendants, and (2) identifying information for those entities. The compliance date for the subpoenas was June 17, 2024.

On May 20, 2024, Plaintiffs filed an amended complaint and added Wells Fargo as a defendant to this case. (ECF 56). The amended complaint alleges that Wells Fargo knowingly aided Wealth Assistants' fraudulent scheme by providing various financial services. (*Id.*).

On May 29, 2024, Plaintiffs amended the subpoenas previously served on Respondents. (Exhibits A-C). The amended subpoenas were substantively almost identical to the original subpoenas, but the attachment to them—which was again identical for all of the subpoenas—added an instruction stating: "The aim of this subpoena is to allow Plaintiffs to identify the current location of assets that have been in Defendants' control since May of 2022, and Plaintiffs are willing to tailor the request to achieve that goal in the least burdensome manner possible." (Exhibit D).

On June 12, 2024, Wells Fargo served objections to Plaintiffs' subpoena. (Exhibit E). The objections included: (1) the modified subpoena was improper because subpoenas cannot be served on named parties; (2) "the phrase 'all documents reflecting action upon assets or accounts' is vague;" (3) the subpoena is overbroad; (4) the subpoena extends to information protected by the attorney work-product doctrine or attorney-client privilege; (5) the subpoena seeks production of confidential, business

proprietary, or other non-public protected information; and (6) the subpoena seeks discovery to investigate Wells Fargo or otherwise build a case against it. (*See id.*).

### III.  Plaintiffs Met And Conferred With Wells Fargo Extensively

On June 12, 2024, Plaintiffs sent Wells Fargo an email about its objections. The email stated, in part:

> [T]he subpoena would impose very little burden because the modified subpoena's instructions—and my subsequent correspondence—noted that all we need from Wells Fargo is transactional information necessary to trace the subjects' assets. I'm also aware that Wells Fargo complied with an account-statements subpoena to the NY AG's Office regarding this case, so I believe many or all of the requested documents have already been prepared for production.

(Exhibit F). On June 13, 2024, Wells Fargo informed Plaintiffs that it had disengaged its previous attorneys and engaged new attorneys to represent it in connection with this lawsuit. (Exhibit G). Plaintiffs informed Wells Fargo's new counsel that the documents requested in the subpoena were highly time-sensitive and that the conferral process should be urgent. (*Id.*).

Plaintiffs conferred with Wells Fargo's new counsel about the subpoena via videoconference on June 17, 2024. (Banks Declaration, ¶ 11). At the conference, Wells Fargo reiterated its position that the subpoenas were invalid because subpoenas cannot be directed to parties to a case. (*Id.*). However, Wells Fargo stated that it would nonetheless be willing to consider producing documents that Plaintiffs needed to trace the Jurisdictional Defendants' assets. (*Id.*). Plaintiffs informed Wells Fargo that the necessary documents would likely include account statements, wire transfer

PLAINTIFFS' MOTION TO COMPEL

statements, and checks, and Wells Fargo agreed to consider producing those documents. (*Id.*). Plaintiffs asked Wells Fargo to finalize its position by June 15, and Wells Fargo said that it would do its best to meet that deadline. (*Id.*).

On June 25, 2024, Plaintiffs and Wells Fargo had a call in which Wells Fargo confirmed that it could produce account statements, but it had not yet decided whether it would produce other documents. (*Id.* at ¶ 12). Plaintiffs requested that Wells Fargo finalize its position prior to June 28, 2024. (*Id.*) Wells Fargo stated that it would probably do so. (*Id.*). On June 28, 2024, Wells Fargo informed Plaintiffs that it was still working with its subpoena department to determine whether it could produce wire confirmations. (*Id.*).

On June 29, 2024, Plaintiffs informed Wells Fargo that Plaintiffs would also need it to produce relevant transaction data for third-party agents over which Wells Fargo had supervisory responsibility. (Exhibit G). For example, Wells Fargo is a supervising bank for the payment processor Stripe, which Defendants frequently used to process payments. Plaintiffs were requesting that Wells Fargo produce transaction data for entities like Stripe.

On July 2, 2024, Plaintiffs sent an email to Wells Fargo stating, in part, "it is not reasonable for Wells Fargo to take a month and a half to decide what account documents it can produce in response to this urgent subpoena for routinely produced account statements." (Exhibit H). Wells Fargo responded that it was willing to produce wire transfer documents so long as they were not too voluminous. (*Id.*). On July 3,

2024, Plaintiffs responded by stating, in part, "[s]o long as Wells Fargo can provide a reasonable explanation for why producing account statements and wire transfer documents is burdensome in this case and could therefore require a rolling production -- and so long as Wells Fargo is willing to produce the third-party-agent documents -- we don't need to file a motion to compel." (*Id.*).

(*Id.*). Wells Fargo did not respond to that email. Moreover, Wells Fargo has not produced any documents to date.

## IV.    HSBC And JP Morgan Chase & Co. Have Neither Produced Responsive Documents Nor Objected

The other respondents to this motion—HSBC, and JP Morgan Chase & Co.— have neither produced documents nor served objections regarding Plaintiffs' motion. Plaintiffs served HSBC with the subpoena by serving their process agent: CT Corporation. More specifically, Plaintiffs mailed the two subpoenas to CT Corporation's Delaware Office. (Exhibit B; Exhibit I). CT Corporation, however, has refused to share the subpoena with HSBC's banking department because, according to CT Corporation, Plaintiffs cannot serve a process agent's Delaware office if the target of the subpoena is not registered in Delaware. (Exhibit I). Plaintiffs have explained to CT Corporation that it is incorrect (Exhibit I), but CT Corporation has not agreed to share any of Plaintiffs' correspondence with HSBC USA's subpoena department.

JP Morgan Chase & Co. has refused to respond to the subpoena because it contends that the subpoena must instead be directed to JP Morgan Chase & Co.'s specific subsidiaries that custody the documents. (*Id.* at ¶ 18-21). Specifically, JP

- 9 -

Morgan Chase & Co. demanded that Plaintiffs address the subpoena to one of two of its subsidiaries: either JP Morgan Chase Bank, N.A. or JP Morgan Securities LLC. (*Id.*). Plaintiffs, however, do not know which of JP Morgan Chase & Co.'s subsidiaries custody the documents Plaintiffs are seeking. (*Id.* at ¶ 22). Moreover, at least one of the subsidiaries that custodies relevant documents—J.P. Morgan Payments—is not under either of the possible subsidiaries that JP Morgan Chase & Co. suggests (JP Morgan Chase Bank, N.A. or JP Morgan Securities LLC). Plaintiffs have attempted to explain this issue to JP Morgan Chase & Co., but JP Morgan Chase & Co. has refused to negotiate.

On July 2, 2024, Plaintiffs sent HSBC USA and JP Morgan Chase & Co. a final letter noting that Plaintiffs intended to move to compel them to comply with the subpoenas. (Banks Declaration, ¶ 17). HSBC and JP Morgan Chase & Co. did not respond.

## V.    The Court Denied Jurisdictional Defendants' Motion To Quash The Subpoenas

On June 14, 2024, Jurisdictional Defendants filed a motion to quash the subpoenas. (ECF 66). Jurisdictional Defendants[2] argued, in part, that (1) the scope of the subpoenas was broader than what the Court permitted in its order giving Plaintiffs leave to issue the subpoenas, and (2) the subpoenas could not be issued to parties to the case. (*Id.*).

---

[2] Certain other defendants, but not Wells Fargo, joined the motion.

Plaintiffs encouraged Wells Fargo to litigate its objections to the subpoena in parallel with the motion to quash so that the Court would not need to reconsider the same issues in a separate motion. For example, on June 27, 2024, Plaintiffs sent Wells Fargo an email stating "We'd be willing to stipulate to having Wells Fargo appear at this hearing and argue its objections — and submit a brief in support of the motion to quash by the reply deadline set by the court — if you're okay with that. I don't think it makes sense to have two separate hearings regarding the breadth of this subpoena, and we want to resolve this issue as soon as possible." (Banks Declaration, ¶ 23). Plaintiffs also called Wells Fargo the next day and made the same request. (*Id.*). Ultimately, Wells Fargo declined to litigate its discovery disputes in connection with the motion to quash.

On July 1, 2024, the Court conditionally granted in part and conditionally denied in part Jurisdictional Defendants' motion to quash the subpoenas (including the subpoenas addressed to respondents as well as the identical subpoenas addressed to other third-party entities). (ECF 81).

The Court found that certain subpoenas addressed to what the Court termed "non-financial entities" were invalid on the grounds that Plaintiffs had not shown that the information called for by those subpoenas was relevant to the case. (*Id.*). However, the Court denied the motion to quash with respect to the other subpoenas (including all the subpoenas at issue in this motion to compel). (*Id.*). The order also expressly stated:

> Their motion is DENIED insofar as the basis for an objection is that
> a subpoenaed entity is not itself one of the Jurisdictional Defendants

> or that a subpoenaed entity just so also happens to be (or is somehow affiliated with) one of the other named defendants in this action. Nothing in the district court's orders or instructions suggested such limits. (ECF 42 at 5) (emphasis added).

(*Id.*). Moreover, the Court noted that "[n]othing in this order precludes a subpoenaed *nonparty*—on its own behalf—from lodging timely objections or timely moving to quash a subpoena on permissible grounds other than those addressed in this order. (*Id.*) (emphasis added). Nonetheless, Wells Fargo has maintained its objections and produced no documents.

## LEGAL STANDARD

Fed. R. Civ. P. 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 45 governs subpoenas for inspections of documents. After the recipient of a subpoena serves objections on the issuer, the issuer may move the court for an order compelling production. Fed.R.Civ.P. 45(d)(2)(B)(i). "It is well-settled that all grounds for objecting to discovery must be stated with specificity." *ColfaxNet, LLC v. City of Colfax*, No. 2:19-cv-02167-WBS-CKD, at \*3 (E.D. Cal. Aug. 19, 2020) (citing *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981)). Moreover, the party

resisting discovery carries the heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Finally, when a person properly served with a subpoena fails to respond to the subpoena without adequate excuse, the court may hold that person in contempt. Fed.R.Civ.P. 45(g).

## ARGUMENT

### I.    Wells Fargo Cannot Maintain Its Objections Following The Court's Denial Of The Motion to Quash

The Jurisdictional Defendants' motion to quash the subpoenas was conditionally denied by the Court, which confirmed the validity of the subpoenas addressed to financial entities like Wells Fargo. More specifically, the Court's order on July 1, 2024, clearly stated that subpoenas addressed to financial entities were valid and necessary for this case, and that entities, even if named as parties, could be subpoenaed. (ECF 81, at 5). The Court further clarified that only *nonparties* could submit objections on permissible grounds other than those addressed in the order. (*Id*. at 8). Despite this clear directive, and despite the urgency of the discovery, Defendant Wells Fargo has maintained its objections and has not produced a single document.

### II.    Wells Fargo's Objections Are Without Merit

#### a.  The Subpoena is Not Improperly Issued to a Party

Wells Fargo's primary objection is that subpoenas cannot be served on named parties. (Exhibit E, 2-3). The Court's July 1, 2024 order clarified that the subpoenas

addressed to financial entities like Wells Fargo were valid, rejecting the argument that

subpoenas could not be issued to parties in the case. (ECF 81, at 5).

### b.  The Subpoena Is Not Vague, Overbroad, Or Unduly Burdensome

Wells Fargo objects that the phrase "all documents reflecting action upon assets

or accounts" is vague in the context of the subpoena's request for:

> All documents reflecting action upon assets or accounts held for the benefit of or controlled by, in whole or in part, any individuals or entities listed in Attachment A. "Documents" includes without limitation: account statements, wire transfer records, checks, correspondence, and account opening documents.

(Exhibit E, 3-4). The phrase in question is not vague. It is clear which documents

fall within the scope of that request: account statements, wire transfer records, records

of checks' dispositions, and transactional data, for example (indeed, Plaintiffs offered

to limit the subpoena to only those four documents, but Wells Fargo did not respond to

that offer). Likewise, it is clear that documents such as emails would not fall into the

scope of the request (unless the email showed the disposition of Jurisdictional

Defendants' assets).

Moreover, Wells Fargo's objections recite no specific documents for which it

cannot discern whether they do or do not fall within the scope of the request; instead,

it improperly withholds all documents. Accordingly, the vagueness objection is itself

vague and without merit.

### c.  The Subpoena Is Not Overbroad Or Unduly Burdensome

Wells Fargo has also objected that the subpoena is overbroad because it requests documents reflecting action upon assets controlled by 48 different individuals and entities. Specifically, Wells Fargo objects because:

> Notably, not all of these individuals and entities are parties to this action, or are even owned by parties to this action, and it is unclear how documents related to these entities are relevant in this action. Attachment A to Plaintiffs' Modified Subpoena provides a list of specific bank accounts showing that only 4 entities (and no individuals) banked at Wells Fargo—Wealth Assistants LLC, Business Financial Solutions Advisory, Pithy Productions Inc dba Fulfillable, and Precision Trading Group. It is unduly burdensome and disproportionate to require Wells Fargo to search for, and produce, responsive documents to an ambiguous request, over a two-year time period, for at least for 48 different individuals and entities, within 2.5 weeks.

(Exhibit E, 4). The note that not all of the entities listed "are even parties to this action" is not well taken because those entities are controlled by parties to this action. (ECF 81). Indeed, as the Court previously explained in denying the motion to quash, excluding non-party companies that Jurisdictional Defendants control from the scope of the subpoenas would not:

> have made any sense given the purpose of expedited discovery here: to uncover not only "assets that, since May of 2022, have been (1) owned or controlled, in whole or in part, directly or indirectly, by or for the benefit of any Jurisdictional Defendant" itself, but also such assets that, since May 2022, "have been (2) owned or controlled, in whole or in part, directly or indirectly, by or for the benefit of *any corporation, partnership, asset protection trust, or other entity* directly or indirectly owned, managed, or controlled by any Jurisdictional Defendant."

(ECF 81, at 5). As Wells Fargo knows, Jurisdictional Defendants have created many shell companies in their efforts to conceal their assets. The fact that Plaintiffs

have not named all of those shell companies as parties to this action does not mean that Wells Fargo can avoid producing documents reflecting those companies' dispositions of assets.

Moreover, Wells Fargo's point that Plaintiffs have been able to show that "only 4 entities (and no individuals) banked at Wells Fargo" is not a valid basis for the overbreadth objection. Indeed, part of the reason that Plaintiffs need Wells Fargo to comply with the subpoena is because Plaintiffs do not have alternative means of identifying which entities and individuals banked at Wells Fargo.

Finally, Wells Fargo provided no explanation about why searching for those entities' documents would be unduly burdensome, even after Plaintiffs requested that explanation. For at least three reasons, it seems highly unlikely that searching for or producing those documents would be burdensome. First, pursuant to the Court's asset-freeze order and anti-money-laundering laws, Wells Fargo has an obligation to locate the accounts at issue to ensure that they are not violating the asset freeze, with or without the subpoena. *See* 31 CFR § 1020.200-220 (establishing anti-money-laundering and know-your-customer obligations for banks); (ECF 49 at 11, noting that any "persons who are in active concert or participation with anyone [subject to the asset-freeze order] are bound by the asset-freeze order."). Accordingly, the subpoena does not *add* the burden of searching for those accounts; Wells Fargo should have already searched for them pursuant to its anti-money-laundering obligations, know-your-customer obligations, and the Court's asset-freeze order.

Second, banks are routinely subpoenaed for documents that reflect action upon assets, such as wire transfer confirmations, account statements, checks, and transactional data. Accordingly, banks have streamlined the process for producing those documents. Third, ***Wells Fargo has already produced many—if not all—of the documents at issue to the New York Attorney General's Office***. It is clearly not unduly burdensome for Wells Fargo to reproduce those already produced documents to Plaintiffs. Yet, Wells Fargo has not produced a single document.

### d.  The Subpoena Does Not Seek Privileged Information

Wells Fargo has also objected on the grounds that the subpoena seeks information protected by attorney-client privilege or the work-product doctrine. (Exhibit E, 4). Of course, Plaintiffs are not requesting privileged communications or protected work product. If any documents do contain privileged information, Wells Fargo can produce a privilege log, specifying the nature of the privilege claimed, without withholding the entire set of responsive documents. *See* Fed.R.Civ.P. 45(e)(2)(A) (requiring parties withholding privileged documents to describe the nature of the withheld documents).

### e.  Confidential Information Is Not Exempt From Discovery

Wells Fargo's boilerplate objection that the subpoena seeks confidential, proprietary, or non-public information does not hold. (*See* Exhibit E, 4-5). The importance of obtaining the information requested to trace Defendants' assets far

outweighs any confidentiality concerns, as the Court has already determined by allowing these expedited subpoenas. (ECF 81).

### f. Wells Fargo Cannot Withhold Documents On The Basis That It Is Being Investigated

Wells Fargo objects "to the extent Plaintiffs are seeking discovery to investigate Wells Fargo or otherwise build a case against it as an improper use of discovery." (Exhibit E, 4-5). It is not clear why investigating Wells Fargo, a defendant in this case, would be an improper use of a document request. However, the purpose of the subpoenas—as articulated by Plaintiffs and the Court—is not to investigate Wells Fargo, but rather to expeditiously identify the Jurisdictional Defendants' assets to stop the Jurisdictional Defendants from further shuffling them. (ECF 81, at 5). The objection, therefore, is not well taken.

## III. Plaintiffs Have Made Good Faith Efforts to Resolve This Dispute

As described in more detail in the "Facts" section of this motion, Plaintiffs have made extensive efforts to confer with Wells Fargo and address its objections. Despite repeated attempts to negotiate, Wells Fargo has not provided the requested documents or a satisfactory explanation for its delays. Indeed, it did not even respond to Plaintiffs' latest email sent on July 3, 2024. Plaintiffs have demonstrated a willingness to accommodate Wells Fargo's concerns, but Wells Fargo's continued delay in producing any documents necessitates this motion to compel.

## IV. Other Respondents Have Failed to Comply Without Justification

### a. Service On HSBC Was Proper

HSBC has not complied with the subpoena, nor has it objected, nor has it articulated a valid excuse for failing to respond to the subpoena. (Banks Declaration, ¶ 17); Fed.R.Civ.P. 45(g) (the court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena"). Plaintiffs properly served HSBC by serving its registered agent, CT Corporation, at its Delaware office. (Exhibit B).

Service was effectuated correctly, notwithstanding CT Corporation's erroneous argument that the subpoena could not be served on CT Corporation in Delaware because HSBC is not registered in Delaware. *See, e.g., L.N.R. Co. v. Chatters,* 279 U.S. 320, 323 (1929) (holding that a corporation could have a registered agent in a place where it was not subject to personal jurisdiction); *King v. American Fam. Mut. Ins. Co.*, 632 F.3d 570, 575 (9th Cir. 2011) (citing *L.N.R.* approvingly). As Plaintiffs noted to CT Corporation, if its assertion were correct, then a corporation would effectively prevent service on a registered agent by designating an out-of-state registered agent. (Exhibit I).[3]

Plaintiffs have also directly reached out to HSBC employees and sent HSBC a letter about the subpoena, but HSBC has not responded. Therefore, HSBC should be held in contempt for failing to respond to the properly served subpoena without adequate excuse. *See* Fed.R.Civ.P. 45(g).

---

[3] To maximize chances of reaching HSBC, Plaintiffs have sent letters to various CT Corporation offices, including the Delaware office and the Washington, DC office. This motion will be served on the Los Angeles office (and also emailed to HSBC's employees).

### b. JP Morgan Chase & Co. Cannot Avoid Compliance By Directing Plaintiffs To Subsidiaries

JP Morgan Chase & Co. has refused to respond to the subpoena, arguing that the subpoena must be directed to JP Morgan Chase & Co.'s specific subsidiaries that hold the documents. This objection is without merit because JP Morgan Chase & Co., as the parent company, has control over the documents maintained by its subsidiaries that it wholly owns and controls. *See U.S. v. Int'l Union of Petro. Indus. Wkrs*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls.") As such, JP Morgan Chase & Co. cannot force Plaintiffs to redirect the subpoena to specific subsidiaries when it has the ability to produce the requested documents. *See id*. Moreover, as discussed above, JP Morgan Chase & Co. has dozens of subsidiaries, and Plaintiffs would not know to whom to direct the subpoenas. Therefore, Plaintiffs' subpoena is appropriately directed at JP Morgan Chase & Co., and the company has no reasonable excuse for failing to respond to it. *See* Fed.R.Civ.P. 45(g).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to compel and order Wells Fargo to produce the requested documents immediately. Furthermore, Plaintiffs respectfully request that the Court hold J.P. Morgan Chase & Co. and HSBC in contempt for failing to respond to properly served subpoenas by ordering each of those entities to pay Plaintiffs $1,000 per day until they have complied with the subpoenas.

Dated: July 16, 2024

/S/ Nico Banks
Nico Banks (CA SBN:344705)
**BANKS LAW OFFICE**
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

Richard A. Nervig (CA SBN:226449)
**RICHARD A. NERVIG, P.C.**
501 West Broadway, Suite 800
San Diego, CA 92101
Phone: 760-451-2300
Email: richard@nerviglaw.com

***Attorneys for Plaintiffs***

PLAINTIFFS' MOTION TO COMPEL

## WORD COUNT COMPLIANCE CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains fewer than 7,000 words, which complies with the word limit of L.R. 11-6.1

/s/Nico Banks
Nico Banks
Dated: July 16, 2024

## CERTIFICATE OF CONSULTATION

As described in the accompanying affidavit, I discussed the discovery issues raised in this motion with Wells Fargo extensively, including via videoconference. I attempted to discuss the issues with J.P. Morgan Chase and HSBC, but they have not been responsive.

/s/Nico Banks
Nico Banks
Dated: July 16, 2024

## CERTIFICATE OF SERVICE

On July 16, 2024, I served this motion and accompanying papers via first-class mail to the parties and non-parties listed below with addresses below their names, and via email to the parties with email addresses below their names:

JP MORGAN CHASE BANK, N.A.;
c/o CT Corporation System
1015 15th Street, NW
Suite 1000
Washington, DC 20005

HSBC BANK USA, NATIONAL ASSOCIATION
c/o Corporation Trust Company
818 W Seventh St.,
Los Angeles, CA 90017

JARED DAY;
19710 Chara Ct,
Cypress, TX 77433

CHRISTINE CARROLL;

11298 Snow View Ct,
Yucaipa, CA 92399

TRAVIS MARKER; THE LAW OFFICE OF TRAVIS R. MARKER, A PROFESSIONAL CORPORATION (D.B.A. "MARKER LAW AND MEDIATION"); & PARLAY LAW GROUP A PROFESSIONAL CORPORATION
3183 N 1125 E,
Ogden, UT 84414

MATTHEW CROUCH;
Via email to his attorney Levi Y. Silver at lsilver@swsslaw.com

REYHAN PASINLI & TOTAL-APPS, INC.
Via email to their attorney Geoffrey Brethen at gbrethen@wattslawyers.com

TROY MARCHAND & QUANTUM ECOMMERCE
Via email to their attorney Marc Reich at mgr@reichradcliffe.com

BONNIE NICHOLS & WHOLESALE UNIVERSE;
Via email to their attorney Brad Geyer at bradford.geyer@formerfedsgroup.com

I declare under penalty of perjury under the laws of the State of California that the foregoing statements in this Certificate of Service are true and correct.

/s/Nico Banks
Nico Banks
Dated: July 16, 2024