Nico Banks (CA SBN:344705)
**BANKS LAW OFFICE**
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

Richard A. Nervig (CA SBN:226449)
**RICHARD A. NERVIG, P.C.**
501 West Broadway, Suite 800
San Diego, CA 92101
Phone: 760-451-2300
Email: richard@nerviglaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HOUGH; *et al.* | Case No.: 2:24-cv-02886-WLH |
| Plaintiffs, | **PLAINTIFF'S OPPOSITION TO JURISDICTIONAL DEFENDANTS' MOTION TO COMPEL ARBITRATION** |
| vs. | |
| RYAN CARROLL; *et al.* | |
| Defendants. | Hearing: August 23, 2024, 1:30 pm |
| | Presiding Judge: Hon. Wesley L. Hsu |
| | Trial Date: N/A |

## PLAINTIFFS' OPPOSITION TO JURISDICTIONAL DEFENDANTS' MOTION TO COMPEL ARBITRATION

1

# TABLE OF CONTENTS

2  **INTRODUCTION** ........................................................................ - 3 -

3  **FACTS** ........................................................................................ - 4 -

4

5  **A.  Plaintiffs Do Not Bring Causes Of Action For Breach Of Contract, And Most Jurisdictional Defendants Are Not Parties To Any Contracts With**
6  **Plaintiffs** ............................................................................. - 4 -

7  **B.  A Mass Arbitration Brought By Two Plaintiffs Against Jurisdictional Defendants Proved Cost Prohibitive, And Yax Ecommerce LLC Failed To Pay The Arbitration Fees** ......................................................... - 4 -

8  **C.  An Individual Arbitration Against Yax Ecommerce LLC Also Proved**
9  **Cost Prohibitive** ................................................................. - 7 -

**D.  Yax Ecommerce LLC Moved To Stay Arbitration Proceedings** ............. - 9 -

10  **CHOICE OF LAW** ..................................................................... - 10 -

11  **ARGUMENT** ............................................................................. - 11 -

12

13  **A.  Jurisdictional Defendants Waived Their Right To Compel Arbitration By Failing To Pay Arbitration Fees** .............................................. - 11 -

14  **i.    Yax Ecommerce LLC Violated California's Black-Letter Law Requiring It To Timely Pay Arbitration Costs** .............................................. - 11 -

15  **ii.   Yax Ecommerce LLC Failed To Participate In And Moved To Stay**
16  **Arbitration** .......................................................................... - 15 -

**B.  Plaintiffs' Arbitration Agreements Are Unconscionable** ...................... - 17 -

17  **i.    California Law, Texas Law, And Florida Law Bar Unconscionable Arbitration Agreements** ............................................................ - 17 -

18  **ii.   Plaintiffs' Arbitration Agreements Are Unconscionable** ................... - 19 -

19  **CONCLUSION** ......................................................................... - 21 -

20

21

22

23

24

25

26

27

28

Plaintiffs submit this Opposition to Jurisdictional Defendants'[1] Motion to Compel Arbitration.

## INTRODUCTION

Jurisdictional Defendants begin their motion by arguing that the Court should compel the parties to arbitrate their claims because arbitration is "efficient." The reality, however, is that Jurisdictional Defendants seek to force Plaintiffs to arbitrate their claims because that process would be so inefficient and expensive that it would prevent Plaintiffs from pursuing their claims at all. In fact, shortly after filing their motion to compel arbitration in this case, Jurisdictional Defendants filed a motion to stay in arbitration proceedings because of the extraordinary costs and time requirements.

Not only have Jurisdictional Defendants moved to stay arbitration proceedings regarding claims virtually identical to Plaintiffs' claims, but they have also refused to pay costs for or otherwise participate in other similar arbitration proceedings. For example, they refused to pay arbitration costs they owed—or otherwise participate— in arbitrations filed against them by Plaintiff Isabel Ramos and Plaintiff Michael Nibarger before those Plaintiffs brought their causes of action in this court. As a result, Jurisdictional Defendants have waived their right to compel arbitration. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) ("Dillard's refused to participate in the arbitration process at all. Under general principles of California contract law,

---

[1] "Jurisdictional Defendants" refers to Defendants Ryan Carroll, Max K. Day, Max O. Day, Michael Day, Yax Ecommerce LLC; Precision Trading Group, LLC; and WA Distribution LLC.

1    Dillard's breach of its obligations under the arbitration agreement deprives it of the

2    right to enforce that agreement.")

3                                      **FACTS**

4

5    **A. Plaintiffs Do Not Bring Causes Of Action For Breach Of Contract, And
        Most Jurisdictional Defendants Are Not Parties To Any Contracts With
6        Plaintiffs**

7        Plaintiffs have brought a putative class action against Jurisdictional Defendants

8    alleging various fraud-conspiracy causes of action. (ECF 56). Plaintiffs have not

9    brought any causes of action for breach of contract. (*Id.*).

10

11       Jurisdictional Defendants have accurately quoted the terms of Plaintiffs'

12   arbitration clauses in their brief. (Motion, ¶ 4-5). Moreover, the contracts that

13   Jurisdictional Defendants attach to their brief are correct copies of Plaintiffs' contracts

14   with Wealth Assistants. (Motion, Exhibits A-D). However, Jurisdictional Defendants

15   fail to mention that the only Jurisdictional Defendant that is a party to the agreements

16   is Yax Ecommerce LLC (f.k.a. Wealth Assistants LLC). (Motion, Exhibits A-D).

17   While there are several legal theories about how affiliates of a party to an arbitration

18   agreement may invoke that agreement to compel arbitration in limited circumstances,

19

20   Jurisdictional Defendants have not argued that any of those theories apply in this case.

21   Therefore, Jurisdictional Defendants other than Yax Ecommerce LLC have waived any

22   arguments that may allow them to invoke Yax Ecommerce's arbitration agreements.

23

24   **B. A Mass Arbitration Brought By Two Plaintiffs Against Jurisdictional
        Defendants Proved Cost Prohibitive, And Yax Ecommerce LLC Failed To
25       Pay The Arbitration Fees**

26

27

28

1
2
3
4
5
6

On March 21, 2024, the undersigned filed a mass arbitration against Yax Ecommerce LLC, Ryan Carroll, Max K. Day, Max O. Day, and Michael Day. (Banks Declaration, ¶ 2). The American Arbitration Association, however, declined to include the individual defendants in the mass arbitration, so the arbitration continued only as to Yax Ecommerce LLC. (*Id*. at ¶ 2).

7
8
9
10
11
12
13
14
15
16
17

Defendant Yax Ecommerce LLC subsequently failed to pay the arbitration fees for more than thirty days after the payments were due. The American Arbitration Association ("AAA") determined that Ramos and Nibarger were entitled to withdraw their claims and pursue them in court because Respondent had waived its right to compel arbitration pursuant to California Code of Civil Procedure 1281.97. (Banks Declaration, ¶ 4). Accordingly, on May 10, 2024, Ramos and Nibarger withdrew their arbitration claims, electing to instead bring their claims as named plaintiffs in this lawsuit. (Banks Declaration, ¶ 4).

18
19
20
21
22
23
24
25
26
27
28

Respondent blamed its failure to pay on technical difficulties and vehemently objected to Ramos's and Nibarger's withdrawal of their arbitration claims. Respondent insisted that it fully paid the amount due for all claims in the mass arbitration within hours after Ramos and Nibarger withdrew their claims. However, the American Arbitration Association ("AAA") later noted that Respondent had not in fact paid the amount due, even after Plaintiffs withdrew their claims. Instead, Respondent sent a check that did not clear. AAA requested that Respondent send a valid check, but

OPPOSITION TO MOTION TO COMPEL ARBITRATION

Respondent never responded to that email or paid AAA any money for the costs of the arbitration. (Banks Declaration, ¶ 5).

On June 10, 2024, when Respondent had still failed to replace the bounced check or pay any arbitration costs, the remaining Claimants in the mass arbitration also withdrew their claims. (Banks Declaration, ¶ 6). Claimants did not receive a refund of their arbitration fees. (*Id.*).

Even if the mass arbitration had proceeded, it would have been a prohibitively expensive and inefficient process, in part because AAA did not allow the parties to include more than one respondent in the mass arbitration. To obtain an award against more than one respondent, therefore, Claimants would have needed to bring separate mass arbitrations against each such respondent.

Filing so many mass arbitrations would be cost prohibitive. For a consumer, filing a mass arbitration costs in AAA a $3,125 flat fee, plus $125 per claimant in the arbitration for the first 500 claimants, and $75 per claimant for the next 1,000 claimants. (Exhibit 2). Therefore, if 600 of Jurisdictional Defendants' victims commenced a mass arbitration, it would cost $73,125 to file one mass arbitration. Because mass arbitrations can only name one respondent, **commencing mass arbitrations against all seven Jurisdictional Defendants would cost $511,875 in filing fees**.

Because Jurisdictional Defendants claim to have minimal collectible assets, the American Arbitration Association's upfront fees alone would almost certainly prevent

those mass arbitrations from ever being filed. Moreover, AAA requires each individual's claim in a mass arbitration to be "heard and decided individually." (Banks Declaration, ¶ 8). For example, in the only AAA consumer mass arbitration that the undersigned has prosecuted past the arbitrator-selection stage, the parties were not allowed to litigate the issues in common; each claimant had to litigate the issues-in-common at their own individual hearing. (Banks Declaration, ¶ 8). As a result, AAA may require each claimant to try their case in a separate hearing. If 600 claimants tried their cases against each Jurisdiction Defendant, it may require **4,200 separate hearings**.

## C. An Individual Arbitration Against Yax Ecommerce LLC Also Proved Cost Prohibitive

In November of 2023, an individual named Ben David brought a *pro se* $25,000 arbitration claim against Defendant Yax Ecommerce LLC. His claim was substantively identical to the claims brought by Plaintiffs in this case. (Banks Declaration, ¶ 9). The American Arbitration Association determined that his claim must proceed under the commercial rules instead of the consumer rules, meaning that he would need to split all arbitration costs with Yax Ecommerce LLC. (Banks Declaration, ¶ 9). To minimize such costs, David agreed to have a "desk arbitration," meaning that the arbitrator would decide the case based on papers submitted instead of holding a hearing on the merits of the case. (Banks Declaration, ¶ 9). Yax Ecommerce and the assigned arbitrator also agreed to those procedures. (Banks Declaration, ¶ 9).

David engaged the undersigned attorney to represent him in the course of the desk arbitration, and the undersigned filed an opening brief and a reply brief regarding the merits of the case. (Banks Declaration, ¶ 10). Pursuant to AAA Rules, the hearing was closed at the time David submitted his reply brief. (Banks Declaration, ¶ 11).

Nonetheless, after David filed his reply brief, the arbitrator opted to hold a conference. (Banks Declaration, ¶ 12). At that conference, the arbitrator announced that he had decided to move the arbitration from the "desk arbitration" rules to the in-person-hearing rules, which meant that the arbitrator's compensation would increase to $500 per hour. (Banks Declaration, ¶ 13-14). AAA later applied the new $500-per-hour fee to all hours the arbitrator worked on the case, including the hours worked prior to the announcement of the new compensation arrangement. (Exhibit 3).

AAA then sent the parties a letter stating that they would have the opportunity to object to the arbitrator's new compensation arrangement, and that AAA would decide those objections. (Banks Declaration, ¶ 14). Accordingly, David sent AAA vehement objections to the new compensation arrangement, arguing that the arrangement was contrary to AAA rules and would make the arbitration cost prohibitive for David. (Exhibit 3). Instead of deciding those objections, AAA forwarded the objections to the arbitrator. (Exhibit 3). Because the objections were highly prejudicial and would likely cause the arbitrator to be biased against David, David requested that the arbitrator be removed from the case. (Exhibit 3).

AAA, however, opted to take no action. (Exhibit 3). Instead, it simply sent Claimant an invoice for more than $11,000 of arbitrator fees, which was more than Claimant could realistically recover. (Exhibit 3). Because the fees exceeded the amount of realistic recovery, Claimant ceased pursuing the arbitration. (Exhibit 3).

**D. Yax Ecommerce LLC Moved To Stay Arbitration Proceedings**

After filing their motion to compel arbitration in this case, Yax Ecommerce moved to stay arbitration proceedings. In their motion to stay, Yax Ecommerce argued that it does not have the "financial resources necessary to adequately participate in the arbitration process." (Exhibit 4 at 2). More specifically, it does not "fulfill financial obligations related to the arbitration, including but not limited to, payment of arbitration fees, costs of representation, and other related expenses." (Exhibit 4 at 1). Plaintiffs agree with Yax Ecommerce that arbitration proceedings are prohibitively expensive, and accordingly, Plaintiffs joined Yax Ecommerce's motion to stay.[2] (Banks Declaration, ¶ 17).

In the motion to stay, Yax Ecommerce LLC blamed its inability to pay on the asset freeze that the Court issued in this matter. (Exhibit 4 at 1). But that is not a plausible excuse for two reasons. First, the asset-freeze order did not apply to the more than $200,000 that Jurisdictional Defendants' attorneys were holding in an IOLA account for Jurisdictional Defendants' benefit, and those funds could be used to defend

---

[2] Plaintiffs notified the American Arbitration Association that Plaintiffs would join the motion to stay after Jurisdictional Defendants filed the motion to stay. Jurisdictional Defendants did not meet and confer about the matter with Plaintiffs before filing the Motion.

Yax Ecommerce in arbitration. (ECF 49 at 11). Second, Jurisdictional Defendants have paid no mind to the asset freeze that has been in place since mid-April of 2024; they have instead violated it repeatedly. For example, Defendant Ryan Carroll moved $11,500 between two of his different bank accounts on May 31, 2024; Defendant Max K. Day transferred $40,000 from his company "MKD Family Private Management Company, LLC" to his company "Dask LLC" on April 25, 2024; and Defendant Michael Day transferred $200,000 from his personal account to the IRS for the benefit of his company WWKB LLC on May 13, 2024. (Banks Declaration, ¶ 18-19).

## CHOICE OF LAW

California law should apply in this instance because California has a stronger interest than Texas in protecting California residents from unconscionable arbitration clauses. *See Ford Motor Co. v. Insurance Co. of North America*, 35 Cal.App.4th 604, 614 (Cal. Ct. App. 1995) ("In determining a choice of laws, California relies on the Restatement Second, Conflict of Laws."); Restatement (Second) on Conflicts of Laws, § 148 ("When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.")

Moreover, the Texas and Florida choice-of-law provisions in the contracts do not apply because Plaintiffs allege that the contracts—including the choice-of-law provisions—were fraudulently induced. "A choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake." *Wash. Mut. Bank v. Superior Court of Orange Cty.*, 24 Cal.4th 906, 918 n.6 (Cal. 2001).

Jurisdictional Defendants are correct that, in addition to state law, the Federal Arbitration Act is also applicable. 9 U.S.C. § 1-16. However, in 2022, the Supreme Court clarified in *Morgan v. Sundance* that courts cannot "create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's policy favoring arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1712 (2022) (internal citations and quotations omitted).

## ARGUMENT

### A. Jurisdictional Defendants Waived Their Right To Compel Arbitration By Failing To Pay Arbitration Fees

#### i. Yax Ecommerce LLC Violated California's Black-Letter Law Requiring It To Timely Pay Arbitration Costs

Sections 1281.97 and 1281.98 of the California Code of Civil Procedure ("CCP") provide that a company or business pursuing arbitration of a consumer dispute under a pre-dispute arbitration agreement is in material breach and default of that agreement—thereby waiving its right to arbitrate—if it fails to timely pay its share of

arbitration fees. These statutes require an arbitration provider to send the parties invoices for fees due upon receipt unless the parties agree otherwise. CCP §§ 1281.97-.98. The fees must be paid within a statutory grace period of 30 days after the due date. *Id*. If the drafting party does not pay its share of the fees within the 30-day grace period, the drafting party is in material breach of the arbitration agreement and waives its right to compel or proceed with the arbitration. *Id*. The consumer may then elect between several options, including withdrawing the claim from arbitration and proceeding in court. *Id*.

To be sure, a district court in the Northern District of California held that CCP § 1281.97 is preempted by the Federal Arbitration Act. That court recognized that "every court considering the issue to date has found that the FAA does not preempt CCP Section 1281.97," but the court disagreed with those prior decisions because: "CCP § 1281.97 violates the equal-treatment principle under 9 U.S.C. § 2 because it makes arbitration provisions unenforceable on arbitration-specific grounds." *Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745, 756-57 (N.D. Cal. 2022).

*Beleya* stretches the "equal-treatment principle" too far and, if accepted by other courts, it would have alarming consequences for consumers in the Ninth Circuit.[3] Indeed, shortly before *Beleya* was decided, the Supreme Court had just scolded the

---

[3] Accepting the holding in *Belaya* would have alarming consequences for consumers generally, but it would not affect the outcome of the motion at bar. As discussed below, even ignoring CCP § 1281.97, Yax Ecommerce LLC clearly waived its right to arbitrate under waiver laws generally applicable to arbitration by failing to pay arbitration fees. These facts are very different from *Belaya*, where the respondents paid their arbitration fees shortly after the 30-day deadline lapsed and before the arbitrator dismissed the case; here, respondents never paid the arbitration fees in the mass arbitration, and the arbitrator dismissed the case.

OPPOSITION TO MOTION TO COMPEL ARBITRATION

Ninth Circuit (and most other circuits) for incorrectly interpreting the FAA to compel them to be very reluctant to find that respondents had waived their right to arbitrate. *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (griping that "[c]ircuit after circuit (with just a couple of holdouts) justified adopting a prejudice requirement [for finding that a respondent had waived the right to arbitrate] based on the 'liberal national policy favoring arbitration.'"). The Court explained that the so-called "policy favoring arbitration"—which is what *Belaya* refers to as the "equal-treatment principle"—is merely to "enforce agreements to arbitrate and to place such agreements on the same footing as other contracts." *Id.* State laws regarding arbitration are only preempted if they are "an obstacle to the accomplishment and execution" of *that* purpose. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).

CCP 1287.97 certainly does not run afoul of the policy to "enforce agreements to arbitrate;" it is intended to *help* enforce agreements to arbitrate by incentivizing parties to pay the arbitration costs necessary to have the arbitration. *Belaya* acknowledges that intention, and even acknowledges that CCP 1287.97 may promote arbitration enforcement "as a practical matter." *Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745, 757 (N.D. Cal. 2022). But, in a move that would likely concern Justice Kagan, *Belaya* interprets *Morgan*—specifically, its holding that "the FAA's policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules"—to mean that the FAA preempts any state arbitration laws that *promote* the arbitration process (i.e., that *promote* the FAA's goals). *Id.* at 757-58. In

summary, because CCP 1287.97 is specifically written to promote the arbitration process, it somehow obstructs the FAA's purpose of promoting the arbitration process. *Id.* at 757 (citing *Morgan* as the authority to support its conclusion that "An arbitration-specific rule incentivizing arbitration by threatening invalidity or unenforceability fairs no better under [the FAA] than a rule undermining arbitration via the same means.")

Respectfully, the argument is not persuasive. As a technical matter, the legal reasoning in *Morgan* is inapplicable to preemption; it holds that *federal courts* cannot invent arbitration favoring rules because that is not authority *affirmatively given* to them by the FAA, but that does not support *Belaya*'s conclusion that the FAA's policy *preempts state statutes* that create pro-arbitration rules (which is clearly not the case; such laws support, not obstruct, the FAA's goals).

Moreover, as a policy matter, *Belaya*'s holding is alarming because it deprives states of the right to have consumer-protection laws that specifically protect consumers from the following all-to-common sequence of events: (1) the consumer tries to bring their claims in court, but the respondent compels the consumer to arbitrate, (2) the consumer tries to vindicate their rights in arbitration, but the respondent continues to delay that effort by not paying arbitration costs in a timely manner, (3) the frustrated consumer heads *back* to court to again attempt to vindicate their rights, and (4) the respondent, once again, successfully compels the consumer back to arbitration. Indeed, those were exactly the facts in *Belaya*. *Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745, 750 (N.D. Cal. 2022). Therefore, this Court should disagree with *Belaya* and instead

side with the vast majority of California courts that have correctly determined that the

FAA does not preempt CCP § 1287.97.

Applying CCP 1287.97 to this case, Yax Ecommerce LLC failed to pay

arbitration costs within the 30 days after receiving the invoice for in its arbitration

against Plaintiffs Isabel Ramos and Michael Nibarger. (Exhibit 1). Therefore, as the

arbitrator already determined, Yax Ecommerce LLC ran afoul of the CCP §§ 1281.97-

98 and thereby waived Jurisdictional Defendants' right to compel arbitration.

### ii. Yax Ecommerce LLC Failed To Participate In And Moved To Stay Arbitration

Moreover, under generally applicable contract law, a party materially breaches

an arbitration agreement and waives their right to compel arbitration by refusing to

participate. *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) ("Dillard's

refused to participate in the arbitration process at all. Under general principles of

California contract law, Dillard's breach of its obligations under the arbitration

agreement deprives it of the right to enforce that agreement."); *Vets Securing Am., Inc.*

*v. Smith*, 632 S.W.3d 272, 281 (Tex. App. 2021) ("Courts have repeatedly found default

when the arbitrating authority terminates arbitration for non-payment of fees or enters

a default due to non-payment."). Courts may not require Plaintiffs to show that they

were prejudiced by the Defendant's failure to participate in the arbitration. *Morgan v.*

*Sundance, Inc.*, 142 S. Ct. 1708, 1712-13 (2022).

Furthermore, when a respondent fails to participate in an arbitration, it does not

just waive its right to arbitrate claims against the claimant in that particular arbitration,

but it also waives a respondent's right to arbitrate claims against similarly situated claimants. *Figueredo-Chavez v. RCI Hospitality Holdings, Inc.*, 574 F. Supp. 3d 1167, 1171-72 (S.D. Fla. 2021) ("Defendants have clearly waived their right to arbitrate as to all Plaintiffs, and any other entertainers who may opt into this litigation, by failing to comply with the AAA's rules and procedures governing fee allocation . . .").

Here, Yax Ecommerce LLC waived its right to compel arbitration against Plaintiffs and similarly situated individuals by failing to participate in arbitrations. In particular, Yax Ecommerce LLC claimed that it paid outstanding arbitration costs immediately after an arbitrator determined that Yax Ecommerce LLC violated CCP §§ 1281.97-98 by failing to timely pay arbitration fees. (Banks Declaration, ¶ 5). However, AAA later reported that the check Yax Ecommerce LLC had purportedly used to pay the arbitration fees did not clear, and AAA asked Yax Ecommerce LLC to make the required payment. (Banks Declaration, ¶ 5-6). Yax Ecommerce LLC did not respond to that request and did not make the payment. (Banks Declaration, ¶ 5-6). The arbitration therefore could not continue, and weeks later, Claimants withdrew their claims. (Banks Declaration, ¶ 6).

By failing to participate in the arbitration, Jurisdictional Defendants waived their right to compel those Claimants and all similarly situated individuals to arbitrate their claims. *See Figueredo-Chavez v. RCI Hospitality Holdings, Inc.*, 574 F. Supp. 3d 1167, 1171-72 (S.D. Fla. 2021) ("Defendants have clearly waived their right to arbitrate as

OPPOSITION TO MOTION TO COMPEL ARBITRATION

to all Plaintiffs, and any other entertainers who may opt into this litigation, by failing to comply with the AAA's rules and procedures governing fee allocation . . .").

Jurisdictional Defendants have also waived their right to compel arbitration against Plaintiffs and similarly situated individuals by moving to stay arbitration. (Exhibit 4). It is absurd for Jurisdictional Defendants to request that claims be compelled to arbitration while simultaneously requesting that other arbitration be stayed.

## B. Plaintiffs' Arbitration Agreements Are Unconscionable

### i. California Law, Texas Law, And Florida Law Bar Unconscionable Arbitration Agreements

Under California law, "a mandatory arbitration agreement is substantively unconscionable if it requires the payment of unaffordable fees to initiate the process." *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 98 (Cal. Ct. App. 2003). For example, in *Gutierrez*, the plaintiffs showed that to arbitrate their claims, they would have to pay at least $20,800. The court therefore declined to compel the plaintiffs to arbitrate their claims, holding that such arbitration costs "were prohibitive for losses ranging from $44,000 to $130,000." *Parada v. Superior Court (Monex Deposit Co.)*, 176 Cal.App.4th 1554, 1581 (Cal. Ct. App. 2009)

Moreover, "[a]n arbitration clause that is so one-sided as to deprive the weaker party of substantive claims, or the right to punitive damages recovery, is against public policy and unconscionable." *Independent Assn., Mailbox Ctr. Own. V. Sup. Ct.*, 133 Cal.App.4th 396, 412 n.7 (Cal. Ct. App. 2005). Furthermore, although a party

challenging an arbitration agreement may be required to show that the agreement has a degree of procedural unconscionability in addition to showing substantive unconscionability, any contract of adhesion—that is, a standardized contract drafted by the party of superior bargaining strength and presented to the other party on a take-it-or-leave-it basis—is procedurally unconscionable. *McArdle v. AT & T Mobility LLC*, 657 F. Supp. 2d 1140, 1143 (N.D. Cal. 2009).

Although Texas law does not apply for the reasons discussed above, it has similar protections. Under Texas law, arbitration agreements are not valid if "grounds exist at law or in equity for revocation of the agreement," including unconscionability. *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (internal citations and quotation marks omitted). There is no presumption favoring arbitration in assessing whether the parties entered into an enforceable arbitration agreement under Texas law. *Id*.

Like California law, Texas law bars arbitration agreements that would force the claimant to pay excessive arbitration costs because such agreements are unconscionable. As the Texas Supreme Court has explained, arbitration is 'intended as a lower cost, efficient alternative to litigation.'" *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010). "Where these justifications are vanquished by excessive arbitration costs that deter individuals from bringing valid claims, the unconscionability doctrine may protect unfairly disadvantaged consumers." *Id.* at 893.

Moreover, under Texas law, arbitration agreements "are not enforceable when a party is forced to forgo the substantive rights afforded by a statute, as opposed to merely submitting to resolution in an arbitral, rather than a judicial, forum.'" *Id.* at 349 (cleaned up). For example, an arbitration clause that prohibits the award of punitive damages is unconscionable. *Id.* at 361. Arbitration clauses are also unconscionable, and therefore void, if they require an unsuccessful plaintiff to pay the defendant's attorneys' fees. *See Ssfcu v. Sanders*, 264 S.W.3d 292, 300 (Tex. App. 2008).

Finally, Florida law also bars unconscionable arbitration agreements, including arbitration agreements that would force claimant to incur prohibitively expensive arbitration costs. *Stewart Agency v. Robinson*, 855 So. 2d 726, 728 (Fla. Dist. Ct. App. 2003).

### ii.    Plaintiffs' Arbitration Agreements Are Unconscionable

Whether California, Texas, or Florida law applies, Plaintiffs' arbitration clauses are unconscionable. In particular, enforcing the arbitration clauses would prevent Plaintiffs from vindicating their claims against Jurisdictional Defendants because it would be prohibitively expensive. As described above, even if all individuals similarly situated to Plaintiffs were able to organize themselves to file mass arbitrations against Jurisdictional Defendants, in AAA[4] the filing costs alone for those mass arbitrations would be more than $500,000. Moreover, because AAA does not have a procedure to

---

[4] All Plaintiffs' arbitration agreements state that arbitration claims must be filed with AAA, except that Plaintiff David Hough's arbitration agreement does not specify any arbitration forum.

OPPOSITION TO MOTION TO COMPEL ARBITRATION

adjudicate claims on a class wide basis, bringing claims against all Jurisdictional Defendants would require thousands of hearings and tens of thousands of attorney hours. Because Jurisdictional Defendants claim to have minimal collectible assets, the costs of pursuing claims in arbitration against Jurisdictional Defendants would far outweigh the likely recovery.

Furthermore, all Plaintiffs' arbitration clauses except Plaintiff David Hough's impermissibly prohibit the arbitrator from awarding punitive damages by stating "[t]he arbitrator will have no authority to award punitive or other damages not measured by the prevailing party's actual damages, except as may be required by statute." (Opposition to Motion to Intervene at Exhibit C, p. 6). *See In re Poly-America*, 262 S.W.3d at 361.

Plaintiff David Hough's arbitration clauses does not yet apply because it states that the arbitration does not begin until "15 days after the last day for discovery." Moreover, Hough's agreement is unconscionable because it purports to force a plaintiff who is unsuccessful in a court action to bear the defendant's attorney's fees, costs, and arbitration fees (specifically, it states "any party bringing an action in federal, or state court in contravention of this arbitration provision, shall bear the entire expenses and fees of the other party, including, but not limited to, attorney's fees, costs, and expenses of arbitration fees.").

Aside from the substantive unconscionability discussed above, all of the agreements also contain a significant degree of procedural unconscionability because

- 20 -

they are contracts of adhesion that stayed consistent from consumer to consumer; Plaintiffs had no bargaining power with respect to the terms of the arbitration agreements. (Ramos Declaration, ¶ 4).

## CONCLUSION

For the reasons described above, Plaintiffs respectfully request that the Court deny Jurisdictional Defendants' Motion to Compel Arbitration in its entirety.


Dated: August 2, 2024

_____/S/ Nico Banks_____
Nico Banks (CA SBN:344705)
**BANKS LAW OFFICE**
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

Richard A. Nervig (CA SBN:226449)
**RICHARD A. NERVIG, P.C.**
501 West Broadway, Suite 800
San Diego, CA 92101
Phone: 760-451-2300
Email: richard@nerviglaw.com

***Attorneys for Plaintiffs***

## WORD COUNT COMPLIANCE CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains fewer than 7,000 words, which complies with the word limit of L.R. 11-6.1

/s/Nico Banks
Nico Banks
Dated: August 2, 2024

## CERTIFICATE OF SERVICE

On August 2, 2024, I served this motion and accompanying papers via first-class mail to the parties listed below with addresses below their names, and  via email to the parties with email addresses below their names:

JARED DAY;
19710 Chara Ct,
Cypress, TX 77433

CHRISTINE CARROLL;
11298 Snow View Ct,
Yucaipa, CA 92399

MATTHEW CROUCH;
Via email to his attorney Levi Y. Silver at lsilver@swsslaw.com

REYHAN PASINLI & TOTAL-APPS, INC.
Via email to their attorney Geoffrey Brethen at gbrethen@wattslawyers.com

TROY MARCHAND & QUANTUM ECOMMERCE
Via email to their attorney Marc Reich at mgr@reichradcliffe.com

BONNIE NICHOLS & WHOLESALE UNIVERSE;
Via email to their attorney Brad Geyer at bradford.geyer@formerfedsgroup.com

I declare under penalty of perjury under the laws of the State of California that the foregoing statements in this Certificate of Service are true and correct.

/s/Nico Banks
Nico Banks

Dated: August 2, 2024

OPPOSITION TO MOTION TO COMPEL ARBITRATION