Nico Banks (CA SBN:344705)
**BANKS LAW OFFICE**
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

Richard A. Nervig (CA SBN:226449)
**RICHARD A. NERVIG, P.C.**
501 West Broadway, Suite 800
San Diego, CA 92101
Phone: 760-451-2300
Email: richard@nerviglaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HOUGH; *et al.*<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>RYAN CARROLL; *et al.*<br><br>　　　　　　Defendants. | Case No.: 2:24-cv-02886-WLH<br><br>**DECLARATION OF NICO BANKS SUPPORTING PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION** |

**DECLARATION OF NICO BANKS SUPPORTING PLAINTIFFS'
OPPOSITION TO MOTION TO COMPEL ARBITRATION**

I, Nico Banks, have personal knowledge of the matters set forth below and if called to testify, I would do so competently.

1. I am an attorney representing Plaintiffs in this matter.

2. On March 21, 2024, I commenced a consumer mass arbitration on behalf of Plaintiffs Isabel Ramos, Michael Nibarger, and more than thirty other individuals alleging identical claims against Yax Ecommerce LLC, Ryan Carroll, Max K. Day, Max O. Day, and Michael Day. Specifically, Claimants alleged that Respondents had defrauded Plaintiffs in selling them the business opportunity that Wealth Assistants offered.

3. The American Arbitration Association ("AAA") opened the casefile as an arbitration against only Yax Ecommerce LLC. I subsequently notified them that Ryan Carroll, Max K. Day, Max O. Day, and Michael Day were supposed to be respondents in this case per my filings—and Yax Ecommerce LLC subsequently told AAA that it agreed with me that the individual defendants should be respondents in the case—but AAA did not add the individual respondents as parties to the case.

4. In the arbitration mentioned above, AAA stated that Yax Ecommerce LLC failed to pay arbitration fees for more than thirty days after receiving the pertinent invoice. Exhibit 1 is a true and correct copy of an email I received from AAA confirming that I had withdrawn the mass arbitration "pursuant to CCCP 1281.97."

5. On June 4, 2024, AAA communicated to me and Yax Ecommerce LLC that the check Yax Ecommerce sent for the upfront mass-arbitration costs did not clear, and Yax Ecommerce's payment had not otherwise been received. AAA also

stated that it had first notified Yax Ecommerce that the check had bounced on May 23, 2024. As of June 10, 2024, Yax Ecommerce had not sent any response to that email on which I was copied, or otherwise sent me any communication about the missing payment.

6. On June 10, 2024, AAA communicated to me and Yax Ecommerce that Yax Ecommerce still had not made its payment. All remaining Claimants in the mass arbitration withdrew their claims on the same day. No Claimants received a refund of their arbitration fees.

7. Exhibit 2 is a true and correct copy of the American Arbitration Association's mass arbitration fee schedule.

8. The AAA Mass Arbitration Supplementary Rules state that each individual case in a mass arbitration must be "heard and decided individually" even if the cases involve the same underlying issues. Accordingly, in the only AAA consumer mass arbitration that I have litigated past the arbitrator-selection stage (which was not related to Wealth Assistants), the parties were not allowed to agree to have a hearing regarding the issues in common separately from the hearings on the individual cases.

9. In or around November of 2023, an individual named Ben David brought a *pro se* $25,000 arbitration claim against Defendant Yax Ecommerce LLC in October of 2023. His claim was substantively identical to the claims brought by Plaintiffs in this case. The American Arbitration Association determined

that his claim must proceed under the commercial rules, meaning that he would need to split all arbitration costs with Yax Ecommerce LLC. David agreed to have a "desk arbitration," meaning that the arbitrator would decide the case based on papers submitted instead of holding a hearing on the merits of the case. Yax Ecommerce and the assigned arbitrator also agreed to those procedures.

10. I began representing David in the course of the desk arbitration, and I filed an opening brief and a reply brief (which was the last brief scheduled to be filed in the matter) regarding the merits of the case.

11. AAA Commercial Arbitration Rule E-6(d) states that "[t]he arbitrator shall establish the date for either written submissions or a final telephonic or electronic conference. Such date shall operate to close the hearing and the time for the rendering of the award shall commence."

12. After David filed his reply brief, the arbitrator opted to hold a conference in the arbitration.

13. At that conference, the arbitrator announced that he had decided to move the arbitration from the "desk arbitration" rules to the in-person-hearing rules.

14. AAA subsequently sent the parties to the arbitration a letter stating that, because AAA had moved from the desk-arbitration rules to the in-person-hearing rules, the arbitrator's compensation would change such that he would now be compensated at a rate of $500 per hour. The letter also stated that the

parties would have the opportunity to object to the arbitrator's new compensation arrangement, and that AAA would decide those objections.

15. Exhibit 3 is a true and correct copy of a series of emails that I exchanged with AAA about the administration of David's arbitration. All factual statements that I sent in those emails are true to the best of my knowledge.

16. Exhibit 4 is a true and correct copy of the motion to stay arbitration proceedings that Yax Ecommerce LLC filed in David's arbitration.

17. Plaintiffs joined Yax Ecommerce LLC's motion to stay referenced in the paragraph above. Plaintiffs notified the American Arbitration Association that Plaintiffs would join the motion to stay after Jurisdictional Defendants filed the motion to stay. Jurisdictional Defendants did not meet and confer about the matter with Plaintiffs before filing the motion to stay.

18. Transactional records produced by Choice Bank state that defendant Ryan Carroll moved $11,500 between two checking accounts on May 31, 2024, and that defendant Max K. Day transferred $40,000 from his company "MKD Family Private Management Company, LLC" to his company "Dask LLC" on April 25, 2024.

19. Records produced by Live Oak Bank state that defendant Michael Day transferred $200,000 from his personal bank account to the IRS for the benefit of his company WWKB LLC on May 13, 2024.

1  I decare under penalty of perjury under the laws of the State of California that the

2  foregoing is true and correct.

3  Dated: August 2, 2024

                                              /S/ Nico Banks
Nico Banks (CA SBN:344705)
**BANKS LAW OFFICE**
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DECLARATION OF NICO BANKS