Nico Banks (CA SBN:344705)
**BANKS LAW OFFICE**
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

Richard A. Nervig (CA SBN:226449)
**RICHARD A. NERVIG, P.C.**
501 West Broadway, Suite 800
San Diego, CA 92101
Phone: 760-451-2300
Email: richard@nerviglaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HOUGH; *et al.* <br><br> Plaintiffs, <br><br> vs. <br><br> RYAN CARROLL; *et al.* <br><br> Defendants. | Case No.: 2:24-cv-02886-WLH <br><br> **DISCOVERY DOCUMENT** <br><br> **PLAINTIFFS' REPLY SUPPORTING MOTION TO HOLD JP MORGAN CHASE & CO IN CONTEMPT** <br><br> Hearing: August 28, 2024, 10:00 a.m. <br><br> Presiding Judge: Hon. Steve Kim <br><br> Hearing Location: Roybal Federal Building and United States Courthouse, 255 E. Temple Street, Courtroom 540, 5th Floor, Los Angeles, California 90012 <br><br> Trial Date: N/A |

**PLAINTIFFS' REPLY SUPPORTING MOTION TO HOLD JP MORGAN CHASE & CO IN CONTEMPT**

Plaintiffs submit this Reply supporting their motion to hold JP Morgan Chase & Co. ("JPM&C") in contempt.

I.  **JPM&C's Allusions To Misconduct By Plaintiffs' Attorney Are Misleading**

   a. **Plaintiffs Did Not File The Instant Motion Until After JPM&C Confirmed It Had Received And Considered The Court's Order Denying The Motion To Quash**

JPM&C makes several misleading allusions to purported misconduct by Plaintiffs' attorney. First, JPM&C suggests that Plaintiffs deprived JPM&C of an adequate opportunity to respond to the Court's order denying the motion to quash, and Plaintiffs' letter about that order. Specifically, JPM&C alleges:

> while Plaintiffs assert that JPM&C "did not respond" to the July 2, 2024 letter, what Plaintiffs fail to state is that they did not effect service in a manner that would ensure delivery of the letter and July 1, 2024 order in a reasonable time – particularly given the July 4th holiday. Instead, JPM&C did not receive the letter for 10 days. (JPM&C Opp. at 4).

The reality, however, is that Plaintiffs did not file the motion for contempt until they had received correspondence from JPM&C indicating that it had received the July 2, 2024 letter—and the Court's order—and stating it would not respond to the letter or order until Plaintiffs had re-issued the subpoena to different entities. (*See* Banks Declaration supporting Motion, at ¶ 21). Therefore, JPM&C's suggestion that Plaintiffs did not give JPM&C an adequate opportunity to review and respond to the letter is nonsense; Plaintiffs waited to file the instant motion until JPM&C confirmed that it had received and considered the letter and the order.

### b. Plaintiffs Did Not Mislead JPM&C In The Parties' Post-Motion Discussions In Which JPM&C Stated It Would Produce Documents In Response To The Subpoena

In its brief, JPM&C discusses its conversations with the undersigned on July 18 and July 25 (shortly after Plaintiffs filed the motion for contempt). JPM&C initiated those calls to tell Plaintiffs that it planned to produce documents (without Plaintiffs re-issuing the subpoena to different entities), and to discuss what JPM&C would produce in response to the subpoena and when JPM&C would produce it. (Banks Declaration, ¶ 2-3).

More specifically, JPM&C explained to Plaintiffs how it was searching for bank accounts controlled by Jurisdictional Defendants using the information that Plaintiffs supplied to JPM&C. (Banks Declaration, ¶ 4). Plaintiffs, in turn, requested that JPM&C ensure that it produce documents for all accounts that JPM&C had frozen in response to the Court's asset-freeze order, which ordered that assets controlled by Jurisdictional Defendants be frozen. (Banks Declaration, ¶ 5-6). In particular, Plaintiffs were aware that in response to the order, JPM&C had frozen assets held by Defendant Max O. Day's daughter, which implied that JPM&C believed that assets in Max O. Day's daughter's bank account were controlled by Max O. Day (which rendered documents for that bank account responsive to the subpoena). (Banks Declaration, ¶ 5-6). However, at the end of the parties' discussions, JPM&C stated that it could not produce those account documents for Max O. Day's daughter (although it stated that it still planned to produce other

documents responsive to the subpoena). (Banks Declaration, ¶ 6). The decision seems very odd in light of JPM&C's previous determination that Max O. Day's daughter's account was controlled by Max O. Day; Plaintiffs are worried that JPM&C may be refusing to comply with the subpoena because the responsive documents would reveal that JPM&C illegally unfroze Max O. Day's daughter's account.

In its brief, JPM&C falsely implies that Plaintiffs attempted to trick JPM&C into agreeing to comply with the subpoena after Plaintiffs had filed the instant motion but before JPM&C knew about the motion. Specifically, JPM&C alleges:

> [O]n July 18, 2024, NSP contacted attorney Banks again and requested an extension to August 16, 2024. Id., ¶ 9. Plaintiffs filed the instant Motion on July 16, 2024; however, NSP's records do not reflect that Plaintiffs' counsel disclosed the Motion to it when discussing the subpoena on July 18, 2024. See Hull Declaration, ¶ 10. And, at no time did JPM&C or Chase Bank state to Plaintiffs' counsel that documents would not be produced if an appropriate subpoena was received. Instead, as noted, NSP advised that subpoenas would need to be issued to the appropriate entities in order for such production to be made.

(JPM&C Opp. at 10). JPM&C seems to be suggesting that Plaintiffs attempted to conceal the motion for contempt from it during the parties' post-motion discussions, which is false. The undersigned does not recall expressly disclosing the motion for contempt during his very brief discussions with JPM&C on July 18—and JPM&C does not say in its brief or accompanying affidavit whether it was in fact aware of the motion during that call—but the context of the conversation clearly indicated that JPM&C was aware of the motion. (Banks Declaration, ¶ 3). In particular JPM&C had previously told Plaintiffs that it would *not* respond to the

subpoena (even after the Court had denied the motion to quash). (See Motion at 9-10). Now, shortly after Plaintiffs had filed the motion for contempt, JPM&C was changing its position. Because of that context, it seemed clear that JPM&C was offering to produce the documents because it was aware of the motion for contempt and wanted to avoid that contempt. (Banks Declaration, ¶ 3).

Moreover, JPM&C admits that it knew of the motion for contempt prior to the undersigned's July 25 call with JPM&C, and yet JPM&C still complains that Plaintiffs may not have expressly disclosed the motion for contempt on the July 25 call. (Opposition at 4). Ultimately, the complaint that the undersigned did not expressly disclose the motion during the calls seems to be a red herring, not a genuine claim that JPM&C was unaware of the motion for contempt during the parties' discussions about what JPM&C would produce.

More to the point, less than a week before JPM&C filed its brief, another JPM&C attorney emailed the undersigned. (Exhibit A). Contradicting JPM&C's previous July 18 and July 25 correspondence with Plaintiffs, JPM&C stated that it would *not* produce documents or otherwise respond to the subpoena. (*Id.*). Because that attorney did not seem to know of Plaintiffs' motion for contempt or Plaintiffs' previous correspondence with JPM&C, the undersigned responded to that email by attaching the motion for contempt and summarizing the previous correspondence between Plaintiffs and JPM&C. (*Id.*). That email is consistent with the undersigned's

prior efforts to cooperate with JPM&C in good faith and resolve disputes; the undersigned never attempted to conceal the motion from JPM&C.

## II. JPM&C Is A Proper Recipient Of The Subpoena

### a. Plaintiffs Genuinely Do Not Know Which Subsidiary Technically Custodies JPM&C's Documents

As Plaintiffs stated in their Motion, the reason the subpoena at issue is directed to JPM&C rather than JPM&C's subsidiaries is that Plaintiffs do not know which JPM&C subsidiaries control the documents at issue. (Motion at 8-9). In particular, when JPM&C refused to respond to the subpoena, it told Plaintiffs that one of two subsidiaries—JPMorgan Chase Bank, N.A. or J.P. Morgan Securities—custodies relevant documents at issue. But, as Plaintiffs have repeatedly told JPM&C, at least one other JPM&C subsidiary—specifically, J.P. Morgan Payments—has custody of some of the responsive documents, and Plaintiffs do not know which other subsidiaries may also have responsive documents.

JPM&C has never denied that J.P. Morgan Payments has many of the documents at issue, but its brief ignores that fact. The brief instead repeats JPM&C's unsupported and false assertion that JPMorgan Chase Bank, N.A. and J.P. Morgan Securities LLC are the only proper targets of a subpoena, (Opposition at 9-10), and it again resorts to an *ad hominem* attack by stating that "Plaintiffs' assertion that they do not know which entities to address the subpoenas (Motion at 20) is disingenuous." (Opposition at note 4).

The reality is that Plaintiffs genuinely do not know which JPM&C subsidiaries custody the responsive documents, and JPM&C is unwilling to share that information. It would therefore be unjust to allow JPM&C to play a shell game by forcing Plaintiffs to guess which of its dozens of subsidiaries custody the responsive documents.

### b. JPM&C Controls Its Subsidiaries' Documents

JPM&C states, falsely, that it does not have custody or control over documents responsive to the subpoena, and that Plaintiffs have "failed to even establish by a cursory showing the requirement of possession, custody, and/or control." (Opposition at 1). However, JPM&C has never disputed that (1) J.P. Morgan Chase Bank, N.A.; J.P. Morgan Securities, LLC; and J.P. Morgan Payments Solutions, and other entities are wholly owned and controlled by JPM&C, and (2) those subsidiaries have custody and control of documents responsive to the subpoena. (*See* Opposition at 4-5, not contesting either of those facts). Indeed, as noted above, Plaintiffs had a conversation with JPM&C about specific documents that it has the ability to produce.

The only real disagreement between Plaintiffs and JPM&C is whether a parent company legally has control over (and therefore must produce) documents belonging to its wholly owned and controlled subsidiaries. As Plaintiffs noted in their motion, the caselaw answers that question unequivocally: "'A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls.'" (*See* Motion at 20 (quoting *U.S. v. Int'l Union of Petro. Indus. Wkrs*, 870

F.2d 1450, 1452 (9th Cir. 1989))). Respondent notes that the court in *Int'l Union* denied the motion to compel because the parent company at issue in that case did not have control over the subsidiary at issue, but it is not clear why that matters for the present motion, where there is no dispute that the parent company (JPM&C) has full ownership and control over its subsidiaries at issue (including J.P. Morgan Chase & Co.; J.P. Morgan Securities LLC; and J.P. Morgan Payments).

Respondent also emphasizes that Plaintiffs cite only one case in support of their position that a parent company must produce documents possessed by the company's wholly owned and controlled subsidiaries. (Motion at 6). It should not be necessary to cite more than one case for that black-letter law, but plenty of other cases say the same. *See, e.g.*, *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1158 (D. Or. 2015); *WSOU Invs. v. Salesforce, Inc.*, 3:23-cv-00023-RCJ-CSD, at *12 (D. Nev. June 23, 2023); *Banga v. Ameriprise Auto Home Ins. Agency*, No. 2:18-cv-01072 MCE AC, at *6 (E.D. Cal. Feb. 22, 2021).

Furthermore, Respondent's citations are inapposite. Both of the cases it cites are about discovery in foreign countries; neither case suggests that parent companies need not produce documents held by their *domestic* subsidiaries. (*See* Motion at 5-6) (citing *Stream Sicav v. Wang*, 2014 U.S. Dist. LEXIS 81098, at *10-11 (S.D.N.Y. June 12, 2014) and *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH) (HBP), 2009 U.S. Dist. LEXIS 131833, 2009 WL 8588405, at *3 (S.D.N.Y. July 10, 2009).

### III. Contempt Is The Correct Remedy For JPM&C's Refusal To Object Or Produce Documents

Fed. R. Civ. P. 45(g) states that a court "may hold in contempt a person who, having been served, fails without excuse to obey the subpoena or an order related to it." However, "[n]o contempt is available where a subpoenaed person has timely objected to a document subpoena" because when such objections are made, the proponent of the subpoena should file a motion to compel instead of a motion for contempt. (Opp. at n. 3, citing *Broussard v. Lemons*, 186 F.R.D. 396, 397 (W.D. La. 1999)).

In this case, JPM&C contends that it properly objected to the document subpoena, which would mean that the Court would not have authority to impose sanctions. More specifically, JPM&C asserts that it properly objected to the subpoena by sending Plaintiffs letters stating that JPM&C would *not* respond to the subpoena because the subpoena was issued to the wrong entity. (Opposition at n. 1 (stating that JPM&C told Plaintiffs that "response would not be made" to the subpoena).

The reality is that JPM&C's statement that it would not respond to the subpoena does not constitute "objections" to the subpoena. To the contrary, objections are themselves a response to a subpoena. *Lofton v. Verizon Wireless VAW LLC*, 308 F.R.D. 276, 290 (N.D. Cal. 2015) (explaining that one form of a response to a subpoena is an objection to a subpoena). Therefore, a person's statement that they will not respond to a subpoena is tantamount to a statement that the person will

not object to the subpoena. Moreover, JPM&C's letters did not resemble objections or ever use the word "objections."

If, however, the Court finds that JPM&C has objected to the subpoena, then Plaintiffs respectfully request that the Court interpret Plaintiffs' motion as a motion to compel JPM&C to produce documents rather than a motion to hold JPM&C in contempt. *See Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983) (A motion's "nomenclature is not controlling.").

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court hold JPM&C in contempt for failing to respond to the subpoena at issue.

Dated: August 14, 2024

        /S/ Nico Banks
Nico Banks (CA SBN:344705)
**BANKS LAW OFFICE**
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

Richard A. Nervig (CA SBN:226449)
**RICHARD A. NERVIG, P.C.**
501 West Broadway, Suite 800
San Diego, CA 92101
Phone: 760-451-2300
Email: richard@nerviglaw.com

*Attorneys for Plaintiffs*

## WORD COUNT COMPLIANCE CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains fewer than 7,000 words, which complies with the word limit of L.R. 11-6.1

/s/Nico Banks
Nico Banks
Dated: August 14, 2024

## CERTIFICATE OF SERVICE

I will serve this motion and accompanying papers via overnight mail to the parties listed below with addresses below their names, and via email to the parties with email addresses below their names:

MATTHEW CROUCH;
Via email to his attorney Levi Y. Silver at lsilver@swsslaw.com

REYHAN PASINLI & TOTAL-APPS, INC.
Via email to their attorney Geoffrey Brethen at gbrethen@wattslawyers.com

TROY MARCHAND & QUANTUM ECOMMERCE
Via email to their attorney Marc Reich at mgr@reichradcliffe.com

BONNIE NICHOLS & WHOLESALE UNIVERSE;
Via email to their attorney Brad Geyer at bradford.geyer@formerfedsgroup.com

J.P. MORGAN CHASE BANK, N.A.
c/o John Sorich and Mariel Gerlt-Ferraro
john.sorich@piblaw.com
mariel.gerlt-ferraro@piblaw.com

I declare under penalty of perjury under the laws of the State of California that the foregoing statements in this Certificate of Service are true and correct.

/s/Nico Banks
Nico Banks
Dated: August 14, 2024