

Nico Banks, Esq.
nico@bankslawoffice.com
Filing on behalf of all Plaintiffs
CA Bar No. 344705
Banks Law Office
712 H St NE,
Unit #8571,
Washington, DC 20002
Tel.: 971-678-0036

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DAVID HOUGH; *et al.*

                  Plaintiffs,

    vs.

RYAN CARROLL; *et al*.

                Defendants.

Case No.: 2:24-cv-02886-WLH

**PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS**

Presiding Judge: Hon. Wesley L. Hsu

Hearing: November 15, 2024, 1:30 pm

Trial Date: N/A

**PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS**

- 1 -

# TABLE OF CONTENTS

**SUMMARY** ...................................................................................... - 4 -

**ARGUMENT** .................................................................................... - 5 -

    A. **The Court Has Specific Personal Jurisdiction Over All Defendants** ........................... - 5 -

        i. **Courts Have Personal Jurisdiction Over Defendants That Perpetrate Intentional Torts Knowing The Impact Will Be Felt In The Forum State** ......................................... - 5 -

        ii. **The Wealth Assistants Entity Defendants And Human Defendants Intentionally Defrauded California Residents** ................................................................................. - 8 -

        iii. **The Court Also Has Personal Jurisdiction Over Alter-Ego Defendants** .......... - 10 -

    B. **Defendants' Motion To Dismiss For Failure To State A Claim Fails** ....................... - 15 -

        i. **A 12(b)(6) Motion Must Be Denied Unless Plaintiffs' Allegations Fail To Plausibly Allege A Cause Of Action** .............................................................................................. - 15 -

        ii. **Jurisdictional Defendants' Motion To Dismiss Plaintiffs' Fraud Claims Is Frivolous** - 16 -

        iii. **Plaintiffs Have Adequately Alleged That Non-Jurisdictional Defendants Participated In The Fraud Conspiracy By Concealing Assets** ...................................... - 18 -

        iv. **Plaintiffs Have Adequately Alleged Their Fraudulent Transfer Claims Against The Alter Ego Defendants** ....................................................................................... - 19 -

        v. **Defendants' Parol-Evidence Argument Is Misplaced** ............................................. - 20 -

    C. **If The Court Is Inclined To Dismiss Any Of Plaintiffs' Claims, Plaintiffs Should First Be Allowed Leave To Amend** .......................................................................................... - 21 -

**CONCLUSION** .......................................................................................... - 21 -

> **Commented [NB1]:** update

1

2

# TABLE OF AUTHORITIES

**Cases**

*Brainerd v. Governors of the Univ. of Alta.*, 873 F.2d 1257, 1260 (9th Cir.1989).. - 8 -
*Calder v. Jones*, 465 U.S. 783, (1984). ........................................................ - 7 -
*Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d
   284, 289 (9th Cir. 1997) ........................................................................ - 8 -
*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993) ................ - 8 -
*Curci Investments, LLC v. Baldwin*, 221 Cal. Rptr. 3d 847, 851 (Ct. App. 2017). - 12 -
*Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) ........................... - 12 -
*Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) ..................... - 7 -
*Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) ............................. - 16 -
*Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir.
   1986) .................................................................................................... - 8 -
*In re 3Com Securities Litigation*, 761 F. Supp. 1411, 1416 (N.D. Cal. 1990)....... - 18 -
*Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 741-42 (9th Cir. 2013)................... - 7 -
*LNS Enters. v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) ............. - 6 -
*Marino v. United States*, 91 F.2d 691, 694 (9th Cir.1937)............................. - 17 -
*Philipson Simon v. Gulsuig*, 154 Cal. App. 4th 347, 363 (2007) ................... - 17 -
*Screen Capital Int'l Corp. v. Library Assset Acquisition Co.*, 510 B.R. 266 (C.D. Cal.
   2015).................................................................................................... - 21 -
*Sheard v. Superior Court*, 40 Cal.App.3d 207, 210, 114 Cal. Rptr. 743 (1974)... - 11 -
*Snowney v. Harrah's Entertainment, Inc.*, 35 Cal.4th 1054, 1061 (Cal. 2005)...... - 7 -
*Sonora Diamond Corp. v. Super. Ct.*, 83 Cal.App.4th 523, 538 (2000) ............ - 11 -
*Swartz v. KPMG LLP*, 476 F.3d 756, 758 (9th Cir. 2007)............................. - 22 -
*Taylor v. S M Lamp Co.*, 190 Cal.App.2d 700, 706 (Cal. Ct. App. 1961) ........... - 19 -
*Thurston v. Fairfield Collectibles of Ga.*, LLC, 53 Cal.App.5th 1231, 1240 (Cal. Ct.
   App. 2020)............................................................................................. - 8 -
*Tiedemann v. Blanckensee*, 72 F.4th 1001, 1011 (9th Cir. 2023) ................... - 22 -
*Wood v. Greenberry Fin. Servs., Inc.*, 907 F. Supp. 2d 1165, 1181 (D. Haw. 2012)....-
   17 -
*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206
   (9th Cir. 2006) ...................................................................................... - 7 -
*Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914, 929 (S.D. Tex. 1998) ....... - 22 -

**Statutes**

Cal. Civ. Code § 1709........................................................................... - 17 -
Cal. Civ. Code § 3439........................................................................... - 20 -
Cal. Code Civ. Proc. § 410.10................................................................ - 6 -
Fed R. Civ. P. Rule 9(b)........................................................................ - 20 -
Fed. R. Civ. P. 12(b)(2)......................................................................... - 6 -
Fed. R. Civ. P. 12(b)(6)......................................................................... - 16 -
Fed. R. Civ. P. 4(k)(1)(a)....................................................................... - 6 -
Fed. R. Civ. P. 9(b)............................................................................... - 5 -

Plaintiffs[1] submit this Opposition to the Original Defendants'[2] (hereinafter, "Defendants") Motion to Dismiss (hereinafter, the "Motion"):

## PRELIMINARY NOTE

The parties have stipulated to continue the hearing regarding this Motion, and the parties understand that this motion will likely be moot once Plaintiffs file their Second Amended Complaint. Because the stipulation was filed shortly before the deadline to file this opposition brief, however, Plaintiffs are filing this opposition brief out of an abundance of caution.

## SUMMARY

Defendants' motion to dismiss for lack of personal jurisdiction fails because Defendants failed to address the numerous allegations in the Amended Complaint connecting Defendants to California. In particular, Plaintiffs allege that the Human Defendants[3] and the Wealth Assistants Entity Defendants[4] intentionally defrauded many California residents—including Plaintiffs—and collected more than $1,000,000 from those residents as part of the fraudulent scheme.

---

[1] This matter has been stayed with respect to Plaintiffs who signed the so-called Texas arbitration clause, as to those Plaintiffs' claims against . Although there is some confusion about which Plaintiffs signed which arbitration clauses, it appears that the Plaintiffs who signed the Texas arbitration clauses are Isabel Ramos, Anthony Ramos, and Amund Thompson.

[2] The Original Defendants are Ryan Carroll; Max K. Day; Max O. Day; Michael Day; Yax Ecommerce LLC; Precision Trading Group, LLC; WA Distribution LLC; Providence Oak Properties, LLC; WA Amazon Seller LLC; MKD Investment Advisor, LLC; MKD Family Beneficiary, LLC; MKD Family Private Management Company, LLC; Max Day Consulting, LLC; Houtex Farm Equity Partners LLC; Business Financial Solutions Advisory LLC; Evo Maxx LLC; Yax IP and Management Inc. d/b/a "Fulfillable"; WWKB LLC; and Dreams To Reality LLC.

[3] The Human Defendants are Ryan Carroll, Max K. Day, Max O. Day, and Michael Day.

[4] The Wealth Assistants Entity Defendants are Yax Ecommerce LLC; Precision Trading Group, LLC; WA Distribution LLC; Providence Oak Properties, LLC; and WA Amazon Seller LLC.

In an earlier order issuing a preliminary injunction, the Court preliminarily found that it likely lacked personal jurisdiction over the Alter Ego Defendants[5] and all of the Wealth Assistants Entity Defendants except Yax Ecommerce LLC. Subsequently, however, Plaintiffs amended their complaint to clarify that the Court has personal jurisdiction over all of the Alter Ego Defendants because they are the Human Defendants' alter egos, and the Court has personal jurisdiction over the Wealth Assistants Entity Defendants because they are Yax Ecommerce LLC's alter egos.

Furthermore, Defendants' motion to dismiss for failure to state a claim fails with respect to all claims because the motion ignores the vast majority of Plaintiffs' factual allegations, which plausibly allege that the Human Defendants and Wealth Assistants defrauded Plaintiffs. The Alter Ego Defendants are also liable by pursuant to the corporate veil piercing doctrine.

## ARGUMENT

A. **The Court Has Specific Personal Jurisdiction Over All Defendants**

    i. **Courts Have Personal Jurisdiction Over Defendants That Perpetrate Intentional Torts Knowing The Impact Will Be Felt In The Forum State**

In adjudicating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction, a court must take as true all uncontroverted allegations in the Amended Complaint and resolve all genuine disputes in the plaintiff's favor. *LNS*

---

[5] The Alter Ego Defendants are MKD Investment Advisor, LLC; MKD Family Beneficiary, LLC; MKD Family Private Management Company, LLC; Max Day Consulting, LLC; HouTex Farm Equity Partners LLC; Business Financial Solutions Advisory, LLC; EvoMaxx, LLC; Dreams to Reality, LLC; and WWKB, LLC.

*Enters. v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022). If both sides submit affidavits, then conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor. *LNS Enters. v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022).

Fed. R. Civ. P. 4(k)(1)(a) provides that a federal court has personal jurisdiction over a party whenever a state court in the state where the federal court is located would have personal jurisdiction over that party. California courts, in turn, may exercise jurisdiction on any basis consistent with the Constitution of California and the United States. Cal. Code Civ. Proc. § 410.10. The exercise of jurisdiction over a nonresident defendant comports with these Constitutions if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate traditional notions of fair play and substantial justice. *Snowney v. Harrah's Entertainment, Inc.*, 35 Cal.4th 1054, 1061 (Cal. 2005).

Courts use the following three-part test to analyze whether a party's "minimum contacts" meet the due process standard for the exercise of specific personal jurisdiction: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws (the "purposeful direction or availment requirement"); (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction

must comport with fair play and substantial justice, *i.e.* it must be reasonable. *Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 741-42 (9th Cir. 2013).

"[T]he purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the 'effects' test" that is derived from *Calder v. Jones*, 465 U.S. 783, (1984). *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). That test has three requirements: the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

Notably, with respect to the third prong ("causing harm…"), some district courts in the Ninth Circuit used to apply a rule that the "*brunt* of the harm which is suffered" from the defendant's conduct must have been suffered in the forum state. *Id*. (emphasis added) (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993)). However, the Ninth Circuit expressly rejected that test and held that "[i]f a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Id.* at 1207. For example, online sales to California residents totaling $325,000 easily satisfy that "jurisdictionally sufficient amount of harm" requirement, even if the non-resident defendant sells nationwide and has no additional contact with California. *Thurston v. Fairfield Collectibles of Ga.*, LLC, 53 Cal.App.5th 1231, 1240 (Cal. Ct. App. 2020).

"[P]urposeful availment is satisfied even by a defendant 'whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state.'" *Dole*, 303 F.3d at 1111 (quoting *Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir. 1986)); *Brainerd v. Governors of the Univ. of Alta.*, 873 F.2d 1257, 1260 (9th Cir.1989) (noting that it is easier for a plaintiff to meet the purposeful direction or availment requirement in a case involving an intentional tort than in a case involving negligence because in intentional-tort cases the "acts are performed for the very purpose of having their consequences felt in the forum state."); *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997) (finding personal jurisdiction over defendant Feltner where plaintiff Columbia alleged that Feltner, the owner of television stations in the southeast that continued to broadcast Columbia-licensed shows after failing to pay that company royalties; the fact that Feltner *knew* the impact of his willful violation would be felt in California was "sufficient to satisfy the 'purposeful availment' requirement.").

   ii. **The Wealth Assistants Entity Defendants And Human Defendants Intentionally Defrauded California Residents**

  In this case, Plaintiffs allege that the Wealth Assistants Entity Defendants[6] intentionally defrauded many California residents and collected more than $1,000,000 from those residents as part of the fraudulent scheme. (ECF 56 at ¶ 3). Because

---

[6] The Wealth Assistants Entity Defendants are Yax Ecommerce LLC; Precision Trading Group, LLC; WA Distribution LLC; Providence Oak Properties, LLC; WA Amazon Seller LLC; and Yax IP and Management Inc. (ECF 56, p. 3).

- 8 -

1  Defendants have not submitted any evidence to the contrary, the Wealth Assistants

2  Entity Defendants are subject to the Court's personal jurisdiction. *See LNS Enters.*, 22

3  F.4th at 858 (holding that a court must take as true all uncontroverted allegations in the

4  complaint).

5

6        Defendants implicitly take the position that Wealth Assistants' operations were

7  only attributable to Yax Ecommerce LLC and not the other Wealth Assistants Entity

8  Defendants. (ECF 93, ¶ 20). However, Defendants do not explain that position, and it

9  is contradicted by Plaintiffs' allegations (ECF 56, ¶ 36-41), contradicted by the

10  evidence in the record (ECF 9 (hereinafter, "Motion for TRO") ),[7] and not supported

11  by any affirmative evidence.[8]

12

13        Moreover, Plaintiffs' uncontradicted allegations show that Ryan Carroll, Max K.

14  Day, Max O. Day,[9] and Michael Day all directed Wealth Assistants' fraudulent conduct

15  aimed at intentionally defrauding Plaintiffs. (ECF 56, ¶ 4, stating that the Human

16

17  Defendants were "intentionally defrauding dozens of California residents out of more

18

19

20

21  _____

22  [7] The evidence shows that "Precision Trading Group, LLC" did business as "Wealth Assistants LLC," "WA
Distribution, LLC," "WA Amazon Seller, LLC," which shows the interchangeability of those four entities. (Motion for
TRO at Ex. A, Ex. 2). The evidence also shows that Yax IP and Management is an alter ego of Wealth Assistants

23  because (1) it has the same law firm of record (Mac Leckrone) as many of the Defendant entities; (2) it also has the
same registered agent ("Cogency Global Inc.") as many of the defendant entities; (3) its name's prefix ("Yax") matches

24  the prefix of "Yax Ecommerce"; and (4) a press release indicates that "Max Day" is the "CEO of Fulfillable." (Motion
for TRO at Ex. A, Ex. 6, 16).

25  [8] Even if Wealth Assistants' operations were not directly attributable to all of the Wealth Assistants entities, the entities
would still be subject to the Court's personal jurisdiction because Plaintiffs allege that they are Wealth Assistants' alter

26  egos (ECF 56, ¶¶ 36-41), and that they participated in the conspiracy by helping the other Defendants conceal assets
(*Id.*). The law regarding personal jurisdiction for alter egos and conspiracy participants is discussed in the sections that

27  follow.
[9] Max O. Day has resubmitted an affidavit in which he asserts that he was merely an independent contractor of Wealth

28  Assistants and not a central figure in the conspiracy. However, the Court has already found that affidavit was not
credible. (ECF 49 at p. 5).

than $1,000,000").[10] The Court has already found that Plaintiffs set forth evidence sufficient to subject Ryan Carroll, Max K. Day, Max O. Day, and Michael Day to the Court's personal jurisdiction at the preliminary injunction stage because those Defendants orchestrated the conspiracy to defraud California residents. (ECF 49 at 4-5). Because Defendants have submitted no additional evidence, there would be no justification for disrupting that finding.

Plaintiffs also allege that the Human Defendants' scheme to fraudulently transfer and conceal the stolen money was centered in California because the people responsible for transferring and concealing the money—Christine Carroll, Rey Passinli, and Total Apps—were all residing in and doing business in California. (ECF 56 at ¶ 5). There should be no doubt that the Court has personal jurisdiction over the Human Defendants on the grounds that they directed acts in California to help themselves steal more than $1,000,000 of California residents' money.

**iii.    The Court Also Has Personal Jurisdiction Over Alter-Ego Defendants**

A person's alter ego is subject to personal jurisdiction wherever the person is subject to personal jurisdiction. *See Sheard v. Superior Court*, 40 Cal.App.3d 207, 210, 114 Cal. Rptr. 743 (1974). Whether a person has an "alter ego" is determined by applying the corporate-veil-piercing doctrine. "A corporate identity may be

---

[10] Many more uncontradicted allegations support the finding that Ryan Carroll, Max K. Day, Max O. Day, and Michael Day orchestrated the conspiracy that intentionally defrauded California residents. For example, those four individuals were the sole members of the limited liability companies that perpetrated that fraud. (ECF 56, ¶¶ 36-41). Moreover, each of those individuals performed important substantive work to orchestrate that fraud, and subsequently fraudulently transfer the assets to themselves and conceal those assets. (ECF 56, ¶¶ 166-169).

PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS

disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege

justifies holding the [owner] of a corporation liable for the acts of the corporation."

*Sonora Diamond Corp. v. Super. Ct.*, 83 Cal.App.4th 523, 538 (2000). Although there

is a presumption against disregarding a corporate identity, that presumption may be

overcome by showing that (1) there is such unity of interest that the separate

personalities render one corporation the mere instrumentality of the other, and (2)

failure to disregard their separate entities would result in fraud or injustice. *Doe v.*

*Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

   Similar to the "veil piercing" doctrine, the doctrine of "reverse veil piercing"

allows a human debtor's creditor to collect on the debt from the debtor's corporation.

"Reverse veil piercing is similar to traditional veil piercing in that when the ends of

justice so require, a court will disregard the separation between an individual and a

business entity." *Curci Investments, LLC v. Baldwin*, 221 Cal. Rptr. 3d 847, 851 (Ct.

App. 2017). "But, the two serve unique purposes and are used in different contexts.

Rather than seeking to hold an individual responsible for the acts of an entity, reverse

veil piercing seeks to satisfy the debt of an individual through the assets of an entity of

which the individual is an insider." *Id.* Although reverse veil piercing is different from

veil piercing, courts consider the same factors in deciding whether to apply the

doctrine: (1) whether the debtor and the corporation have a unity of interest, and (2)

whether declining to pierce the corporate veil would yield an inequitable result. *Id.* For

PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS

example, when the debtor is the sole owner of a corporation and uses it as his or her bank account, the debtor's creditor may be able to reverse-pierce the corporate veil. *Id.*

Here, Plaintiffs have plausibly alleged that the Alter Ego Defendants[11] are the human Defendants' alter egos. In particular, Plaintiffs have plausibly alleged that the Alter Ego Defendants were undercapitalized, had no distinct operations, and failed to follow corporate formalities such as maintaining their own by-laws or accurate books and records. (ECF 56 at ¶¶ 42-54). Because Defendants have not contradicted those allegations with any evidence, the allegations alone are sufficient to overcome the motion to dismiss. *LNS Enters.*, 22 F.4th at 858 (holding that a court must take as true all uncontroverted allegations in the complaint).

Although presenting evidence is not necessary at this stage, Plaintiffs note that they have also provided uncontradicted evidence that Alter Ego Defendants accepted funds on behalf of "Wealth Assistants" and the human Defendants and had no operations distinct from Wealth Assistants. (*See* Plaintiffs' Motion for Temporary Restraining Order at 10-14). In particular:

- **HouTex Farm Equity Partners LLC (Max K. Day's alter ego)**
  - HouTex is a cricket farm according to its website. According to its corporate registration, it is managed by Max K. Day and has its corporate headquarters listed as Max K. Day's home.[12]

---

[11] As noted above, the Alter Ego Defendants are MKD Investment Advisor, LLC; MKD Family Beneficiary, LLC; MKD Family Private Management Company, LLC; Max Day Consulting, LLC; HouTex Farm Equity Partners LLC; Business Financial Solutions Advisory, LLC; EvoMaxx, LLC; Dreams to Reality, LLC; and WWKB, LLC.
[12] Motion for TRO Exh. A, Ex. 10.

PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS

However, its phone line on its website does not seem to accept calls.[13] Because there is no evidence that it has real operations, it is likely engaged in money laundering rather than cricket farming.

- **MKD Investment Adviser (Max K. Day's alter ego)**;
    - o MKD Investment Adviser appears to be Max K. Day's alter ego not only because of its name but also because MKD Investment Adviser is the registered owner of Max K. Day's home.[14]

- **MKD Family Beneficiary (Max K. Day's alter ego)**;
    - o MKD Family Beneficiary appears to be Max K. Day's alter ego not just because of the initials at the beginning of the corporate name, but also because it has the same registered address as MKD Investment Adviser.[15]

- **MKD Family Private Management Company (Max K. Day's alter ego)**;
    - o MKD Family Beneficiary appears to be Max K. Day's alter ego not just because of the initials at the beginning of the corporate name, but also because it has the same registered address as MKD Investment Adviser.[16]

---

[13] Motion for TRO Exh. A, Ex. 12, 17.
[14] Motion for TRO Exh. A, A, Ex. 14.
[15] Motion for TRO Exh. A, Ex. 26.
[16] Motion for TRO Exh A, Ex. 13.

- **Max Day Consulting (Max K. Day's alter ego)**

  o Max Day Consulting appears to be Max K. Day's alter ego not only because of its name but also because its address is also Precision Trading Group, LLC's address.[17]

- **Business Financial Solutions Advisory LLC (Max K. Day's alter ego)**

  o Business Financial Solutions Advisory LLC appears to be Max K. Day's alter ego because it is managed by Max K. Day  and has the same corporate address as Max K. Day's home address.[18]

- **Evo Maxx LLC (Max K. Day's alter ego)**

  o Max Day is the manager of this corporation. The attorney of record is Feras Mousilli, who is the principal of the law firm that is the attorney of record on many of the entity defendants' corporate registrations. The address is the same as WA Amazon Seller LLC's address.[19]

- **WWKB LLC (Michael Day's alter ego)**

  o WWKB is owned by Defendant Michael Day, and WWKB is an owner of Wealth Assistants.[20] Plaintiffs allege that WWKB

---

[17] Motion for TRO Exh. A, Ex. 11.
[18] Motion for TRO Exh. A, Ex. 8.
[19] Motion for TRO Exh. A, Ex. 9.
[20] *Wealth Assistants v. Thread Bank*, No. 4:24-cv-00040, ECF 13 (S.D. Tex. 2024).

served no purpose other than helping Michael Day conceal the
proceeds of the fraudulent scheme. (ECF 56, ¶¶ 50-54).

- **Dreams to Reality LLC (Ryan Carroll's alter ego)**
  - Dreams to Reality LLC was an owner of Wealth Assistants and
    was owned by Ryan Carroll. Plaintiffs allege that it served no
    purpose other than helping Ryan Carroll conceal the proceeds of
    the fraudulent scheme. (ECF 56, ¶¶ 49, 51-54).

It would be unjust to allow Defendants to continue to abuse corporate privileges
by hiding assets in their alter egos, which may deprive Plaintiffs of any opportunity to
obtain meaningful final relief. In this situation, it is appropriate to disregard any
distinction between the Human Defendants and the fictitious corporations they have
formed. *See Sheard*, 40 Cal.App.3d at 210.

B. **Defendants' Motion To Dismiss For Failure To State A Claim Fails**

   i. **A 12(b)(6) Motion Must Be Denied Unless Plaintiffs' Allegations
      Fail To Plausibly Allege A Cause Of Action**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a
claim, is only granted if the complaint fails to allege enough facts to state a claim to
relief that is plausible on its face. *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir.
2011). A claim has facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged. *Id.* Although the plausibility standard asks for more than a sheer

possibility that a defendant has acted unlawfully, it is not akin to a probability requirement. *Id*.

Furthermore, although a court may ignore conclusory allegations of law and unwarranted inferences, a court must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party. *Id.*

### ii. Jurisdictional Defendants' Motion To Dismiss Plaintiffs' Fraud Claims Is Frivolous

Plaintiffs have brought a cause of action against Defendants for conspiring to defraud Plaintiffs and conceal their assets. To show the existence of a conspiracy, Plaintiffs must show the existence of "'an agreement . . . No formal agreement between the parties is essential to the formation of the conspiracy, for the agreement may be shown if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose.'" *Wood v. Greenberry Fin. Servs., Inc.*, 907 F. Supp. 2d 1165, 1181 (D. Haw. 2012) (quoting *Marino v. United States*, 91 F.2d 691, 694 (9th Cir.1937)).

Moreover, common law fraud consists of five elements: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage. Cal. Civ. Code § 1709; *see Philipson Simon v. Gulsuig*, 154 Cal. App. 4th 347, 363 (2007). "Statements relating to predictions or forecasts of future activity may be material misrepresentations if the prediction did not have a reasonable factual basis." *In re 3Com Securities Litigation*, 761 F. Supp. 1411, 1416 (N.D. Cal. 1990).

Defendants' motion to dismiss Plaintiffs' fraud-conspiracy claims (Motion at ¶ 40-48) is almost identical to a section in their Opposition to a Preliminary Injunction. (ECF 13 at 12-16). With respect to the Jurisdictional Defendants,[21] the Court has already rejected Defendants' arguments, finding that Plaintiffs not only have properly alleged those claims but have established a likelihood of success on their merits. (ECF 49).[22]

To briefly recap the already rejected arguments, Defendants argued that Plaintiffs' claims related to fraud must be dismissed because Plaintiffs "fail to identify a single misrepresentation of material fact." (Motion at ¶ 40). That is not true. Plaintiffs have alleged that the Jurisdictional Defendants made false statements about the profitability of stores and sent fraudulent invoices to Plaintiffs, for example. (ECF 56 at ¶ 14). Moreover, Plaintiffs allege with particularity the fraudulent statements made to them regarding the profitability of Wealth Assistants' stores, identifying who made the statement, when they made it, and by what means they were made. (ECF 56 at ¶¶ 80-100). Perhaps most importantly, Defendants omitted to tell Plaintiffs that the business opportunities Defendants were selling were a fraudulent scheme; the Amazon stores Defendants were selling Plaintiffs had no reasonable expectations of profits and, in many cases, did not exist. Those misrepresentations and omissions are more than

---

[21] Jurisdictional Defendants are Yax Ecommerce LLC, and each of the human Defendants.
[22] Plaintiffs incorporate by reference the pertinent section of their Reply to Defendants' Opposition to the Preliminary Injunction. (ECF 37 at 14-15).

sufficient to sustain Plaintiffs' causes of action for fraud against Wealth Assistants. *See In re 3Com*, 761 F. Supp. at 1416.

### iii.    Plaintiffs Have Adequately Alleged That Non-Jurisdictional Defendants Participated In The Fraud Conspiracy By Concealing Assets

When a person has engaged in a fraud conspiracy, helping that person conceal their assets constitutes participation in the conspiracy. *Taylor v. S M Lamp Co.*, 190 Cal.App.2d 700, 706 (Cal. Ct. App. 1961) ("a debtor and those who conspire with him to conceal his assets for the purpose of defrauding creditors are guilty of committing a tort and each is liable in damages.").

In the Motion, Defendants define the term "Additional Defendants" as all Defendants other than the Jurisdictional Defendants.[23] Defendants assert that "the allegations with respect to the 'Additional Defendants' consist solely of the fact that one Defendant Max K. Day, bears some relationship to the other entities (whether it be by virtue of some level of ownership, management, a simple shared address for service of process, or even just similarly sounding initials)." (Motion at ¶ 38). That is false. Plaintiffs have adequately alleged causes of action against all "Additional Defendants," including by alleging that they have participated in the Jurisdictional Defendants' conspiracy by helping them conceal assets; indeed, Plaintiffs allege that the Additional Defendants had no purpose *but* to conceal assets. (ECF 56 at ¶¶ 39, 54, 167(f)).

---

[23] Specifically, the Additional Defendants are the Alter Ego Defendants and all of the Wealth Assistants Entity Defendants except Yax Ecommerce LLC.

PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS

Moreover, as discussed above, the Alter Ego Defendants are alter egos of the Human Defendants, and the Wealth Assistants Entity Defendants are each others' alter egos. Accordingly, even if those Defendants did not directly participate in the conspiracy, they would still be liable because they are alter-egos of those who did participate in the conspiracy.

### iv. Plaintiffs Have Adequately Alleged Their Fraudulent Transfer Claims Against The Alter Ego Defendants

Plaintiffs' third cause of action is that the Alter Ego Defendants received fraudulently transferred assets. To succeed in an *actual* fraudulent transfer claim, a plaintiff must show: (1) he or she had a right to payment from a debtor who transferred money to the defendant, and (2) the debtor transferred property with the intent to hinder, delay or defraud plaintiff. Cal. Civ. Code § 3439.04 (hereinafter, "CUFTA").

However, a plaintiff can also bring a *constructive* fraudulent transfer claim under CUFTA. A Plaintiff can succeed on a constructive fraudulent claim, without showing any fraudulent intent, by showing that: (1) he or she had a right to payment from a debtor who transferred money to the defendant, (2) the debtor did not receive a reasonably equivalent value in exchange for the transfer or obligation, and (3) the debtor reasonably should have believed that she was insolvent. *Id.*; *Screen Capital Int'l Corp. v. Library Assset Acquisition Co.*, 510 B.R. 266, 273-74 (C.D. Cal. 2015).

As Defendants note, under Fed R. Civ. P. 9(b), claims sounding in fraud must allege "with particularity the circumstances constituting the fraud or mistake." However, Rule 9(b)'s heightened pleading standards are not generally applied to claims

- 19 -

of *constructively* fraudulent transfers because, despite the name of those claims, they do not sound in fraud because they do not require proof of intent. *Screen Capital*, 510 B.R. at 274.

Here, Plaintiffs have adequately alleged each of the elements of a constructive fraudulent transfer claim.[24] (ECF 56 at p. 53-54). In particular, Plaintiffs alleged non-conclusory facts from which one could plausibly infer that the Alter Ego Defendants[25] received constructively fraudulent transfers from the Wealth Assistants Entity Defendants and the human Defendants. For example, Plaintiffs have alleged that the Alter Ego Defendants had no purpose other than to help Wealth Assistants and the human Defendants conceal assets, they had no operations, and they did not follow corporate formalities such as maintaining their own by-laws or accurate books and records. (ECF 56, ¶¶ 51-54, 166(d-g), 167(f), 168(d), 169)).

### v.    Defendants' Parol-Evidence Argument Is Misplaced

The Jurisdictional Defendants argue that evidence of Jurisdictional Defendants' misrepresentations outside the written contract are prohibited by the parol evidence rule. (Motion at ¶ 51). That argument merits no discussion because it is simply not true; the parol evidence rule does not prohibit parties from introducing evidence of

---

[24] Defendants assert that Plaintiffs did not adequately allege fraudulent transfer claims. But Plaintiffs do, in fact, allege that "the non-Recipient Defendants transferred assets to the Recipient Defendants when the non-Recipient Defendants knew that they were insolvent." (ECF 56 at p. 53-54).

[25] The "Alter Ego Defendants" are MKD Investment Advisor, LLC; MKD Family Beneficiary, LLC; MKD Family Private Management Company, LLC; Max Day Consulting, LLC; Houtex Farm Equity Partners LLC; Business Financial Solutions Advisory LLC; Evo Maxx LLC; WWKB LLC; and Dreams To Reality LLC.

PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS

misrepresentations to prove a fraud or unfair competition claim. *Young v. Nationwide
Life Ins. Co.*, 2 F. Supp. 2d 914, 929 (S.D. Tex. 1998) ("because Plaintiffs here allege
fraud, the parol evidence rule does not apply.").

    C. **If The Court Is Inclined To Dismiss Any Of Plaintiffs' Claims, Plaintiffs
       Should First Be Allowed Leave To Amend**

    If the Court were inclined to find that it does not have personal jurisdiction over
any Defendants, or that Plaintiffs have failed to adequately plead any of their claims,
Plaintiffs would respectfully request leave to amend to address any deficiencies in the
pleadings. *Swartz v. KPMG LLP*, 476 F.3d 756, 758 (9th Cir. 2007) ("although the
original complaint failed to allege sufficient jurisdictional facts, Swartz should have
been given an opportunity to cure this defect through amendment."); *Tiedemann v.
Blanckensee*, 72 F.4th 1001, 1011 (9th Cir. 2023) (holding that before dismissing a
claim for failure to state a claim, "[l]eave to amend should be granted if it appears at
all possible that the plaintiff can correct the defect.") (internal quotations omitted).

**CONCLUSION**

    For the reasons discussed above, Plaintiffs respectfully request that the Court
deny Defendants' motion to dismiss in its entirety. If the Court is inclined to grant any
part of Defendants' Motion, Plaintiffs respectfully request leave to amend.

Dated: October 25, 2024

                  /s/Nico Banks
                  Nico Banks, Esq.
                  Banks Law Office
                  Bar No. 344705
                  Tel.: 971-678-0036

nico@bankslawoffice.com
712 H St NE,
Unit #8571,
Washington, DC 20002

PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS

**WORD COUNT COMPLIANCE CERTIFICATION**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains fewer than 7,000 words, which complies with the word limit of L.R. 11-6.1

/s/Nico Banks
Nico Banks
Dated: October 25, 2024

**CERTIFICATE OF SERVICE**

On October 25, 2024, I served this brief and accompanying papers via first-class mail to the parties listed below with addresses below their names, and via email to the parties with email addresses below their names:

JARED DAY;
19710 Chara Ct,
Cypress, TX 77433

MATTHEW CROUCH;
9566 Greiner Rd,
Clarence, NY 14031

CHRISTINE CARROLL;
11298 Snow View Ct,
Yucaipa, CA 92399

TRAVIS MARKER; THE LAW OFFICE OF TRAVIS R. MARKER, A
PROFESSIONAL CORPORATION (D.B.A. "MARKER LAW AND
MEDIATION"); & PARLAY LAW GROUP A PROFESSIONAL
CORPORATION
333 2nd St.
Suite 16,
Ogden, UT 84404

REYHAN PASINLI & TOTAL-APPS, INC.
26800 Aliso Viejo Pkwy
Ste 130,
Aliso Viejo, Ca 92656

TROY MARCHAND & QUANTUM ECOMMERCE
Via email to their attorney Marc Reich at mgr@reichradcliffe.com

- 23 -

PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS

BONNIE NICHOLS & WHOLESALE UNIVERSE;
Via email to their attorney Brad Geyer at bradford.geyer@formerfedsgroup.com

WELLS FARGO N.A.
Via email to its attorney Anthony Le at ALe@mcguirewoods.com

I declare under penalty of perjury under the laws of the State of California that the
foregoing statements in this Certificate of Service are true and correct.

/s/Nico Banks
Nico Banks
Dated: October 25, 2024

PLAINTIFFS' OPPOSITION TO ORIGINAL DEFENDANTS' MOTION TO DISMISS