Robert E. Barnes
Barnes Law LLP
CA Bar #325919
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
P:(310) 510-6211; F:(310) 510-6225
Robertbarnes#barneslawllp.com

Bradford L. Geyer (PHV pending)
NJ 022751991; PA 62998
Attorney at Law, PHV
Suite 141 Route 130 S.  303
Cinnaminson, NJ 08077
P:(856) 607-5708
Brad@FormerFedsGroup.Com

*Specially Appearing Attorneys for Wholesale Universe
and Bonnie Nichols, Pro Hac Vice*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

DAVID HOUGH; et al

   Plaintiffs,

v.

RYAN CARROLL; et al.

   Defendants.

**Case No.: 2:24-cv-02886-WLH-SK**

Presiding Judge: Hon. Wesley L. Hsu
Hearing Date: January 10, 2024
Hearing Time:  10:30 a.m.
Courtroom 9B
Hearing Location: 350 W, 1st Street, 9th Floor
Los Angeles, California 90012

Trial Date: TBD

========================================================================

**DEFENDANTS' REPLY UPON THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND
INCLUDED MEMORANDUM IN SUPPORT THEREFORE
BY SPECIAL APPEARANCE TO CONTEST JURISDICTION**

Defendants Bonnie Nichols and Wholesale Universe, residents of the State of Texas, have entered their special appearance to contest the *in personam* jurisdiction of the Court

- 1 -

REPLY ON MOTION TO DISMISS ON JURISDICTION

against them in this case, as stated in the now operative Second Amended Complaint, and in support of their motion present the following Memorandum of Law.

While the Plaintiffs are probably not without recourse in bringing a suit in Texas, the Defendants lack information and understanding and are concerned about the effect of confusion as to exactly who the Plaintiffs are and where they are located and their relationship to the transactions alleged. These Defendants stand prepared to document how every dollar received directly or indirectly from the Plaintiffs was used to acquire inventory for the Plaintiffs' Amazon e-commerce stores, including the Defendants' standard and reasonable fees for its services the same or less than charged to other Wholesale Universe clients, and that the inventory arranged was in fact posted to the Plaintiffs' e-commerce stores except where the Plaintiffs refused to cooperate. In fact, to this day one Plaintiff's inventory is still sitting in Wholesale Universe's warehouse taking up space, with Defendants' pleas for the Plaintiff to retrieve the inventory being ignored.

Defendants also imagine that discovery to Wealth Assistants and its family of companies should be able to establish more precisely and more solidly what relationships there might be before proceeding against these Defendants.

Defendants would also, therefore, request the use of limited discovery and factual evidence on the question of *in personam* jurisdiction before entering into a confusion storm of unstructured detail.

## I.  INTRODUCTION OF REPLY

It is important to take note in reply that the circumstances of different defendants can be different and the analyses applied by other defendants do not dictate the result here. "Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*,

(1984) 465 U.S. 783, 788.  The results involving other defendants may echo some of the same general circumstances and of course rely on many of the same precedents for simplicity, consistency, such as the extensive motion to dismiss filed by the Carroll Defendants at ECF Dkt. #40.  However, the analysis of jurisdiction can produce a different result with regard to different defendants.

On November 27, 2024, the Court approved by order leave of court for the Plaintiffs to further amend their Complaint by filing their proposed Second Amended Complaint ("SAC" or "2nd Am. Complaint").  The Defendants here respond to that SAC which was an Exhibit to the Motion filed at ECF Dkt. # 148, deemed filed November 27, 2024, and not to the original Complaint as being superseded.

Also, Defendants in this Reply have to clarify that it is apparently not clear what the Plaintiffs' Opposition means by "inventory capital."  The Plaintiffs are apparently confusing funds provided for the purchase, shipping, quality inspection, and processing of inventory but not yet spent with the resulting inventory already paid for, already shipped, already inspected and packaged for quality, and already processed for placement with Amazon.  Although the Opposition's discussions go far beyond the Second Amended Complaint, Defendants are left with this ambiguity.

## II. SUMMARY OF ARGUMENT AND GOVERNING LAW:  SPECIFIC JURISDICTION OVER DEFENDANTS REQUIRES INTENT TO AVAIL THEMSELVES OF THE FORUM

The claim of *in personam* jurisdiction of California courts over the Defendants lays on the thin line of frequent controversy between a non-resident party who specifically reaches out to a party in any forum (here, California) and a party in the forum who reaches out to the defendant in another state from the forum (here, Texas, if we understand the full range of

allegations).

One frequent controversy arises from generic national or regional advertising (or publication in the case of alleged defamation) to which a resident of the forum responds in the foreign forum or claims injury. It is widely believed that nation-wide advertising or activity automatically includes every State including the forum of the complaining parties, but that is not actually the law.

Probably the vast majority of questions of the jurisdiction of a forum state over a foreign defendant are not controversial or difficult, at least not after *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) and subsequent precedents fleshing out *Int'l Shoe*.

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. See *International Shoe*, 326 U.S., at 317, 66 S.Ct. 154. **Specific jurisdiction, on the other hand, depends on an "affiliatio[n] between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.** von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L.Rev. 1121, 1136 (1966) (hereinafter von Mehren & Trautman); see Brilmayer et al., A General Look at General Jurisdiction, 66 Texas L.Rev. 721, 782 (1988) (hereinafter Brilmayer). In contrast to general, all-purpose jurisdiction, **specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction."** von Mehren & Trautman 1136.

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) *(emphases added)*.

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). A plaintiff may not simply rest on the "bare allegations of [the] complaint." *Id.*

Personal jurisdiction in federal court is governed by the law of the state in which the

federal court sits. *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citations omitted).

The exercise of personal jurisdiction is constitutionally permissible only if the defendant has sufficient "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, (1945) 326 U.S. 310, 316.

Absent substantial, continuous, and systematic contacts with the forum state creating general jurisdiction, *Perkins v. Benguet Mining Co.*, (1952) 342 U.S. 437, 445–446, a defendant may only be subject to so-called "specific jurisdiction" of a non-resident defendant. *Helicopteros Nacionales de Colombia v. Hall*, (1984) 466 U.S. 408, 414, fn. 8. Specific jurisdiction "depends on the quality and nature of the defendant's forum contacts in relation to the particular cause of action alleged." *HealthMarkets, Inc. v. Superior Court*, 171 Cal. App. 4th 1160, 1167 (2009).

A nonresident defendant is subject to specific jurisdiction only if

> "(1) the defendant purposefully availed itself of the benefits of conducting activities in the forum state;
>
> (2) the controversy arises out of or is related to the defendant's forum contacts; and
>
> (3) the exercise of jurisdiction would be fair and reasonable."

*Id.* (Citing *Burger King Corp. v. Rudzewicz*, (1985) 471 U.S. 462, 472, 475-478).

Specific jurisdiction "depends on the quality and nature of the defendant's forum contacts in relation to the particular cause of action alleged." *HealthMarkets, Inc. v. Superior Court*, 171 Cal. App. 4th 1160, 1167 (2009).

"The purposeful availment inquiry ... focuses on the defendant's intentionality." *HealthMarkets*, 171 Cal. App. 4th at 1168 (citations omitted). "This prong is only

> satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on his contacts with the forum."

*Pavlovich v. Superior Court*, (2002) 29 Cal. 4th 262, 269.  Also,

> "Allegations of conspiracy [also] do not establish as a matter of law that if one conspirator comes within the personal jurisdiction of our courts, then California may exercise jurisdiction over other nonresident defendants who are alleged to be part of that same conspiracy."

*In re Automobile Antitrust*, 135 Cal. App.4th at 113.

    A hypothetical party who was physically in California at the time of an event giving rise to litigation, such as a car accident in California is subject to the forum's jurisdiction.  A party who physically maintains an office or residence or other facility in California is obviously subject to jurisdiction.  A contract signed physically within California, even where a business official flies in and meets at the airport with a California party solely for that purpose and then flies back out again, clearly conveys jurisdiction in California.[1]

    However, probably the majority of controversies over jurisdiction fall on the line between whether a party in the would-be forum reaches out to a foreign party in a non-forum state or whether the foreign party reaches out to the party in the forum State.  Jurisdiction can turn on such small differences.  And because this is a delicate balance it generates most of the controversies.

    The U.S. Supreme Court in *Int'l Shoe* defined the outer limits of when a State may exercise *in personam* jurisdiction over the resident of another State:

---

[1] The U.S. Supreme Court declined to overturn jurisdiction where a non-resident was actually, physically served in person while physically present in California in *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990).  The Justices did not agree on an iron-clad test and left open further analysis where the relationship between the non-resident's physical presence and the substance of the case asserting jurisdiction might be too remote to be reasonable and/or fair.  However, the defendant was in California for (other) business so his presence was not entirely unrelated to the suit.

<u>First</u>, there must be a decision by legislation of the State asserting jurisdiction to authorize "long arm jurisdiction." "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [defendants]." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing FED.R.CIV.P. 4(k)(1)(A)).

After the clarifications of jurisdiction, apparently all States have moved to authorize and exercise jurisdiction up to the outer limits allowed by *Int'l Shoe* and progeny.

A California court may exercise personal jurisdiction over a nonresident defendant to the extent allowed under the state and federal Constitutions. See CODE CIV. PROC., § 410.10. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under California state law and federal due process are the same. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted); *Accord Daimler*, 571 U.S. at 125.

<u>Second</u>, the terms, reach, and application of "long arm jurisdiction" is subject to the limitations of the U.S. Constitution as defined by the U.S. Supreme Court in *Int'l Shoe*, etc.

<u>Third</u>, the primary limitation, practically in most disputes, is that under due process the defendant over whom "***specific jurisdiction***" by the forum is asserted must meet the tests of "' 'traditional...'" "notions of fair play and substantial justice' ' (*Int'l Shoe* quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

"Opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, nn. 8, 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011).

<u>Fourth</u>, "long arm jurisdiction" does indeed require as a component of asserting jurisdiction over a non-resident party in another State that the defendant has caused an effect within the forum State (here, California) whether tortious, contractual, physical injury, defamation, or other loss.

<u>Fifth</u>, however, an effect within the forum State while certainly required is not sufficient. The effect must be more than inadvertent, caused by some knowing intention.

Unfortunately, the precedents do not offer us crystal-clear, perfectly objective tests but they do give us some concepts that must be followed. The somewhat unique phrases of whether an out-of-state defendant has "purposely availed" itself / himself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" has replaced the more familiar *mens rea* terms like knowing, intentional, willful, etc. This discussion became more complex with the "stream of commerce" analysis.

> Since *International Shoe*, this Court's decisions have elaborated primarily on circumstances that warrant the exercise of specific jurisdiction, particularly in cases involving "single or occasional acts" occurring or having their impact within the forum State. As a rule in these cases, this Court has inquired whether there was "some act by which the defendant purposefully avail [ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). See, e.g., *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (Oklahoma court may not exercise personal jurisdiction "over a nonresident automobile retailer and its wholesale distributor in a products-liability action, when the defendants' only connection with Oklahoma is the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma"); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474–475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (franchisor headquartered in Florida ay maintain breach-of-contract action in Florida against Michigan franchisees, where agreement contemplated on-going interactions between franchisees and franchisor's headquarters); *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 105, 107 S.Ct. 1026, 94 L.Ed.2d

92 (1987) (Taiwanese tire manufacturer settled product liability action brought in California and sought indemnification there from Japanese valve assembly manufacturer; Japanese company's "mere awareness ... that the components it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce" held insufficient to permit California court's adjudication of Taiwanese company's cross-complaint); id., at 109, 107 S.Ct. 1026 (opinion of O'Connor, J.); id., at 116–117, 107 S.Ct. 1026 (Brennan, J., concurring in part and concurring in judgment). * * *

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 925, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) *(emphases added)*.

### III. ARGUMENT: APPLICATION TO CASE AT BAR

Here in this case under the Second Amended Complaint, there are broad allegations against the Defendants and an asserted partnership with a group of companies identified generally as Quantum. However, on closer examination these allegations are conclusory and lacking in factual detail. Perhaps *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) have been celebrated with too much enthusiasm by defense attorneys, but those interpretive precedents do require at least some factual specificity.

The SAC also contains some self-contradiction within its four corners, undermining or walking back the reach of some of its sweeping allegations.

Basically, when read as a whole, carefully, the SAC alleges that a group of affiliated companies led by Wealth Assistants residing in Texas, incorporated in Wyoming, and operating out of Florida by its lead executive and apparently the chief offender in this scenario, contracted with Wholesale Universe, a Texas company, and Bonnie Nichols, a citizen of Texas.

The Plaintiffs allege an astonishing and far-flung fraud in its extent of components and the total amount of money allegedly missing. It is certainly baffling where all the money

alleged could have gone to, even allowing for profligate spending on some Lamborghinis. The Defendants expect in some forum to provide what records and information they may have, while also seeking to preserve their legal positions from being trampled.

Nevertheless, the SAC read in its entirety carefully indicates that – while disputed – (1) these Defendants became involved with Wealth Assistants only late in the progress of this wide-ranging scheme, (2) became involved specifically when Wealth Assistants (and its family of companies) was in over its head, (3) Wealth Assistants contracted with these Defendants to obtain inventory for Wealth Assistants' "clients" (the plaintiffs, however characterized), (4) Wealth Assistants paid money to these Defendants to obtain inventory for its "clients" Amazon stores, and (5) which money originated from the "clients" having paid Wealth Assistants for inventory.

Thus the SAC tells us that Texas-based Wholesale Universe and its leader Bonnie Nichols were contacted and contracted by Texas, Wyoming, and Florida based Wealth Assistants and was sub-contracted to provide inventory at WA's direction when paid by WA, not by the plaintiffs. Indeed, there is no allegation (as it did not happen) that Bonnie Nichols or Wholesale Universe ever shipped anything anywhere but to Amazon, which is their business model. Not only were these Defendants sub-contractors to Texas-based and Wyoming-incorporated Wealth Assistants but they interacted with Amazon, not the Plaintiffs.

The SAC alleges that Wholesale Universe did not, in fact, obtain the inventory for these WA "clients" but WA hid the clients' money paid to WA within Wholesale Universe. This is disputed. Defendants dispute whether the allegations are fact-specific enough under *Twombly* and *Iqbal*.

These Defendants are prejudiced in being able to examine what the clients' complaints

are by dealing in most cases with WA, not directly with the clients. Having been directed by WA to obtain inventory, sometimes as bulk orders, sometimes with the client identified, the Defendants are not able to trace the transactions and the inventory. Normally upon Wholesale Universe arranging and receiving the inventory, inspecting it for quality and condition (as has been very necessary from time to time), the Defendants would obtain directions and/or log-in information to move the inventory to Amazon's warehouses and register the inventory as ready for sale in Amazon's sophisticated computer system.

However, these Defendants' involvement occurred at about the same time as WA's collapse. Defendants dispute that the Plaintiffs actually know whether or not they have lost money, because they relied upon WA to navigate Amazon's complex, capable, but user-unfriendly computer system. We do not know whether profits have been earned and are sitting at Amazon, if the Plaintiff's store was "almost" complete but never activated, if profits were earned at the Amazon stores but diverted by WA or others, if the inventory was received at Amazon, not received, or what happened.

Nevertheless, in the main, the SAC alleges a relationship between the Plaintiffs and Wealth Assistants, not with these Defendants.

Concededly, the SAC does allege in ¶28, that Wholesale Universe "helped it [WA] to carry out its fraudulent scheme." But there are no facts alleged anywhere in the SAC that support any involvement of Wholesale Universe in any fraudulent scheme.

Also in ¶28, the SAC alleges that Wholesale Universe "helped Wealth Assistants conceal its assets from Defendants" with no factual allegations to support this conclusion of law. The claim of "accepting fraudulent transfers" does not demystify this allegation.

Similarly in ¶5, the SAC alleges that Wholesale Universe was in a conspiracy that

included "intentionally defrauding dozens of California residents."

The SAC alleges at length that these Defendants contacted WA clients and offered to work with them directly after WA suspending operations and/or collapsing entirely. The SAC alleges that some of the Plaintiffs as WA's former clients did begin to work directly with these Defendants and in effect become these Defendant's clients.

However, it is far from clear who these clients are or where they are based except in a couple of cases.

And again, there is no factual allegation clarifying in what way, how, or by what means Wholesale Universe is alleged to have defrauded anyone. When it comes to the standards of *in personam* jurisdiction we are left with little to work with.

## IV. ARGUMENT: NATIONWIDE ACTIVITIES NOT DIRECTED AT CALIFORNIA SPECIFICALLY

In SAC ¶ 5, the allegation is that Quantum and Wholesale "conspired with the Wealth Assistants Entity Defendants and others to defraud individuals **_across the country_**. Carrying out that conspiracy included – foreseeably – intentionally defrauding dozens of California residents out of more than $1,000,000."

Therefore, the SAC alleges that California residents were only coincidentally affected, not targeted as Californians. The SAC fails the jurisdictional test.[2]

See also SAC ¶ 8 (Wholesale Universe sent emails to many abandoned clients of WA, some of which were in California – see ¶ 139), and ¶ 139 email "to many of Wealth Assistants' clients" not just those in California.

---

[2] Wholesale Universe has never shipped product to California or knowingly done business with California residents or California companies. It continues to hold $5,000 in inventory for Defendant Nibarger who was advised by counsel not to accept it. The enclosed partial email chain documents. https://acrobat.adobe.com/id/urn:aaid:sc:US:9d22ae70-2c92-44a2-bf25-c9dd36fb2e66

A generic marketing or communications effort not specifically targeting California which happens to reach some California contacts is insufficient to confer personal jurisdiction. Wholesale Universe did not purposefully avail itself of California with any expectation of being hauled into court in California.

As is well-trodden territory of news reports, books, magazines allegedly defamatory, or national products – where general, nation-wide actions just happen to include the forum state, a non-resident defendant that marketed its services throughout the United States not uniquely to California does not satisfy *International Shoe* and the limits of personal jurisdiction. *Goehring v. Superior Court*, (1998) 62 Cal. App. 4th 894, 907 (finding no purposeful availment based solely on the defendants' execution of [a limited number of] "sales, security and escrow agreements" with a forum resident); *Doe v. Unocal Corp.*, (9th Cir. 2001) 248 F.3d 915, 924 (finding no purposeful availment based solely on the defendant's contractual relations with a forum resident); *McGlinchy v. Shell Chemical Co.*, (9th Cir. 1988) 845 F.2d 802, 816.

For example, nationwide circulation of a book and broadcast of interviews are insufficient to confer personal jurisdiction. See *Buckley v. New York Times Co.*, 338 F.2d 470, 474 (5th Cir. 1964) (holding "mere circulation" of national newspaper and "sporadic news gathering by reporters on special assignment" in the forum do not satisfy due process); *Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004) ("[U]nder *Calder*, the mere fact that allegedly libelous statements appeared in a publication sold to Florida residents is not sufficient to give a defendant fair warning that he may be hauled into court here.")

V. ARGUMENT: CLASS ACTION RESIDENCY

Of course, the SAC does allege a class action of Plaintiffs. The nature of a class action

lawsuit is that every Plaintiff is not named specifically nor many times even known.

Really, there are at least two sub-classes: (a) those who allegedly dealt only with Wealth Assistants and (b) those who allegedly subsequently worked directly with Wholesale Universe. But this only weakens the claim for jurisdiction.

While the Opposition contains considerable additional narrative -- which is decisively rejected by these Defendants as completely false – it becomes even less clear who if anyone (a) these Defendants actually ever interacted with (b) how they interacted, or (c) where the Plaintiffs of residence reside.[3] [4]

I. CONCLUSION

Defendants Bonnie Nichols and Wholesale Universe hereby ask the Court to dismiss the case against them in this Court for lack of personal jurisdiction of California over them.

Dated: December 30, 2024            **RESPECTFULLY SUBMITTED,**

**/s/ Robert Barnes**
Robert E. Barnes
Barnes Law LLP
CA Bar #325919
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
P:(310) 510-6211; F:(310) 510-6225
Robertbarnes#barneslawllp.com

---

[3] The most serious new allegation, not found in the SAC, is that allegedly Wholesale Universe told Thompson that it would purchase $45,000 worth of inventory for $20,000. Thompson then alleges that the $20,000 of inventory was not worth $45,000. This if it were in a complaint would not satisfy the plausibility tests of *Twombly* and *Iqbal*, particularly without more detail to explain why anyone would ever promise this or anyone would believe it.

[4] Similarly, Plaintiff Michael Nibarger claims to have been told that Wholesale Universe had $5,000 of Nibarger's "inventory capital" paid for by (through) Wealth Assistants, and that he demanded that it be returned. He did not seem to understand that the inventory had already been purchased and it was – and still is to this day -- sitting at Wholesale Universe's warehouse. When asked to provide directions on where to send the inventory, Nibarger did not respond except at what point to say that Nico Banks told him not to talk to the Defendants.

*/s/ Bradford L. Geyer*
Bradford L. Geyer, Esq. (PHV Pending)
FormerFedsGroup.Com LLC
141 "I" Route 130 S, 303
Cinnaminson, NJ 08077
T: 856-607-5708
bradford.geyer@formerfedsgroup.com

*Attorneys For Defendants Wholesale Universe and Bonnie Nichols*

## WORD COUNT COMPLIANCE CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains fewer than 4,241 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 30, 2024        */s/ Bradford L. Geyer*
                              Bradford L. Geyer, Esq.

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing document, and any attachments, will be served to counsel of record, in accordance with the governing rules of procedure regarding service in this court on this December 30, 2024, via email.

   */s/ Bradford L. Geyer*
Bradford L. Geyer, Esq.