**TROUTMAN PEPPER LOCKE LLP**
Michael S. Lowe (SBN 173664)
michael.lowe@troutman.com
350 South Grand Avenue, Suite 3400
Los Angeles, California 90071-2799
Telephone: 213.928.9827

David M. Gettings (admitted *pro hac vice*)
dave.gettings@troutman.com
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: 757.687.7747

Elizabeth Holt Andrews (SBN 263206)
elizabeth.andrews@troutman.com
Three Embarcadero Center, Suite 800
San Francisco, California 94111-4057
Telephone: 415.477.5700

Steven D. Allison (SBN 174491)
steven.allison@troutman.com
Nicholas J. Schuchert (SBN 307249)
nicholas.schuchert@troutman.com
100 Spectrum Center Drive, Suite 1500
Irvine, California 92618-4984
Telephone: 949.622.2700

*Attorneys for Defendant*
Wells Fargo Bank, N.A.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| DAVID HOUGH, et al., | Case No. 2:24-cv-02886-WLH-SK |
| Plaintiffs, | **DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF MOTION & MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES** |
| vs. | |
| RYAN CARROLL, et al., | Hearing Date: March 28, 2025 |
| Defendants. | Time: 1:30 PM |
| | Courtroom: 9B |
| | Judge: The Honorable Wesley L. Hsu |
| | Trial Date: None Set |

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on March 28, 2025, at 1:30 PM, in Courtroom 9B, 9th Floor, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, Defendant Wells Fargo Bank, N.A., will and hereby does move to dismiss the Second Amended Complaint ("SAC") filed by plaintiffs David Hough, Amund Thompson, Isabel Ramos, Anthony Ramos, and Michael Nibarger. The bases for Wells Fargo's motion to dismiss are Federal Rules of Civil Procedure 9(b) and 12(b)(6).

Pursuant to Civil L.R. 7-3 and ¶ G.1.c of this Court's Standing Order for Newly Assigned Civil Cases, this motion is made following the conference of counsel, which took place on January 8, 2025, which is more than seven days prior to the filing of this motion. Undersigned counsel certify that they met and conferred with plaintiffs' counsel regarding the substantive issues described in this motion. Despite good faith efforts on both sides, the parties were unable to fully resolve the dispute or to narrow the scope of contested issues.

Dated: January 17, 2025

TROUTMAN PEPPER LOCKE LLP

/s/ Michael S. Lowe

Michael S. Lowe
David M. Gettings
Steven D. Allison
Elizabeth Holt Andrews
Nicholas J. Schuchert

*Attorneys for Defendant*
Wells Fargo Bank, N.A.

TROUTMAN PEPPER LOCKE LLP
1100 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

-ii-

1

# TABLE OF CONTENTS

2

**Page**

3    I.     INTRODUCTION ....................................................................... 1

4    II.    ALLEGED FACTS ..................................................................... 3

5    III.   LEGAL STANDARDS .............................................................. 7

6         A.   Federal Rule of Civil Procedure 12(b)(6) ........................... 7

7         B.   Federal Rule of Civil Procedure 9(b) .................................. 8

8    IV.   ARGUMENT .............................................................................. 8

9         A.   The SAC's Three Claims Against Wells Fargo Should Be

10             Dismissed Because They Do Not Meet Rule 9(b)'s Heightened
            Pleading Standards ............................................................... 8

11             1.   All Three Claims Allege Fraud Directly or Sound in Fraud ..... 8

12             2.   The SAC Alleges Only Generalities and Lacks a Complete

13                  "Who, What, When, Where, How, Why" Narrative ................. 9

14             3.   The SAC Does Not Meet Rule 9(b) Standards For
                 Pleading Wells Fargo's Mental State ..................................... 11

15         B.   The SAC Fails to State a Viable Claim for Relief Under Rule

16             12(b)(6) ............................................................................... 12

17             1.   The SAC Fails to Plausibly Demonstrate that Wells Fargo
                 Engaged in a Civil Conspiracy to Defraud Plaintiffs and

18                  Conceal Assets ..................................................................... 12

19                  a.   General Principles of Civil Conspiracy........................ 12

20                  b.   The SAC Does Not Plead a "Common Plan or
                     Design" ......................................................................... 13

21                  c.   The SAC Does Not Plead That Wells Fargo

22                      Participated in "the Formation and Operation" of a
                     Conspiracy ................................................................... 14

23                  d.   The SAC Does Not (and Cannot) Allege Wells
                     Fargo Had an Independent Duty to Any Plaintiff ........ 15

24             2.   The SAC Fails to Allege Sufficient Facts to Demonstrate

25                  that Wells Fargo Aided and Abetted Either Fraud or
                 Breach of Fiduciary Duty ..................................................... 15

26                  a.   No Actual Knowledge ................................................. 16

27                  b.   No Substantial Assistance or Encouragement............... 18

28

-iii-

TROUTMAN PEPPER LOCKE LLP
5 PARK PLAZA, SUITE 1500
IRVINE, CALIFORNIA 92614-8584

     c.  No Conscious Decision ................................. 19

   3.  The SAC's Three Claims Against Wells Fargo Are Actually BSA Claims Masquerading as Fraud Claims ........... 20

V.  CONCLUSION ........................................... 22

TROUTMAN PEPPER LOCKE LLP
1000 Spectrum Center Drive, Suite 1500
Irvine, California 92618-4984

Wells Fargo Bank, N.A.'s Motion to Dismiss SAC
Case No. 2:24-cv-02886-WLH-SK

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................... 7

*Balistreri v. Pacifica Police Dep't.,*
    901 F.2d 696 (9th Cir. 1990) ........................................................................ 7

*Barber v. Unitus Cmty. Credit Union,*
    No. 3:22-cv-00134-MO, 2023 WL 34697 (D. Or. Jan. 3, 2023) ..................... 21

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................... 7

*Berg & Berg Enters., LLC v. Sherwood Partners, Inc.,*
    131 Cal. App. 4th 802 (2005).................................................. 13, 15, 16, 17

*Bittner v. U. S.,*
    598 U.S. 85 (2023) ...................................................................................... 21

*Camenisch v. Umpqua Bank,*
    No. 20-cv-05905-RS, 2022 WL 17740285 (N.D. Cal. Dec. 16,
    2022) ............................................................................................... 19, 20

*Casey v. U.S. Bank Nat'l Ass'n,*
    127 Cal. App. 4th 1138 (2005)........................................................ 15, 17, 19

*Chang v. Wells Fargo Bank, N.A.,*
    No. 19-cv-01973-HSG, 2020 WL 1694360 (N.D. Cal. Apr. 7, 2020).............. 21

*Choate v. Cty. of Orange,*
    86 Cal. App. 4th 312 (2000), *as modified on denial of reh'g* (Jan.
    17, 2001) ......................................................................................... 12, 13

*In re Cloudera, Inc.,*
    121 F.4th 1180 (9th Cir. 2024)........................................................ 8, 9, 10

*Davidson v. Kimberly-Clark Corp.,*
    889 F.3d 956 (9th Cir. 2018) ......................................................... 9,10

TROUTMAN PEPPER LOCKE LLP
1000 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

Wells Fargo Bank, N.A.'s Motion to Dismiss SAC
Case No. 2:24-cv-02886-WLH-SK

*Decker v. GlenFed, Inc.*,
   42 F.3d 1541 (9th Cir. 1994) (en banc) ......................................................... 8

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) ....................................................................... 8

*Godecke v. Kinetic Concepts, Inc.*,
   937 F.3d 1201 (9th Cir. 2019) ....................................................................... 7

*Gray v. Ben*,
   No. CV22-03090 DSF(PVCx), 2022 WL 16859609
   (C.D. Cal. Nov. 9, 2022) ............................................................................... 17

*Hobbs v. Wells Fargo Bank, Nat'l Ass'n*,
   No. 21-cv-01700-AJB-JLB, 2022 WL 17972163
   (S.D. Cal. Sept. 14, 2022) ...................................................................... 10, 17

*Hullinger v. Anand*,
   No. CV 15-07185 SJO, 2016 WL 11750270
   (C.D. Cal. July 8, 2016) ......................................................................... 16, 19

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ....................................................................... 10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ....................................................................... 8

*Kenney v. Deloitte, Haskins & Sells*,
   No. C 91-0590 BAC, 1992 WL 551108 (N.D. Cal. Sept. 2, 1992) .................. 11

*Kidron v. Movie Acquisition Corp.*,
   40 Cal. App. 4th 1571, 1582 (1995) ....................................................... 13, 14

*L. Firm of Fox & Fox v. Chase Bank, N.A.*,
   95 Cal. App. 5th 182 (2023) ................................................................... 15, 17

*Miller v. Bank of Am., N.A.*,
   No. 1:21-CV-00337-JLT, 2022 WL 3704093
   (E.D. Cal. Aug. 26, 2022) ............................................................................. 17

*Miller v. Dinardo*,
   No. 2:23-cv-01638-MEMF, 2024 WL 5284957
   (C.D. Cal. June 11, 2024) ............................................................................... 9

TROUTMAN PEPPER LOCKE LLP
1000 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

-vi-

*Nasrawi v. Buck Consultants LLC*,
    231 Cal. App. 4th 328 (2014) ........................................................................ 16

*O'Dell v. Berkshire Bank*,
    No. 5:24-CV-652, 2024 WL 4635262 (S.D.N.Y. Oct. 31, 2024) ..................... 11

*Rainbow Bus. Sols. v. Merch. Servs., Inc.*,
    No. C 10-1993 CW 2013 WL 6734086 (N.D. Cal. Dec. 20, 2013) .................... 4

*S. Shore LLC v. Wells Fargo Bank, N.A.*,
    No. 2:24-cv-00490-RGK-SK, 2024 WL 3513503
    (C.D. Cal. Apr. 25, 2024) ............................................................................. 21

*Schulz v. Neovi Data Corp.*,
    152 Cal. App. 4th 86 (2007) ........................................................................ 16

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) ......................................................................... 8

*Siegal v. Gamble*,
    No. 13-cv-03570-RS, 2016 WL 3648503 (N.D. Cal. July 7, 2016) ................... 9

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ......................................................................... 8

*Su v. Henry Glob. Consulting Grp.*,
    No. 2:20-cv-02235-ODW (PLAx), 2022 WL 19392
    (C.D. Cal. Jan. 3, 2022) ............................................................................... 18

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) (per curiam) ..................................................... 8

*Usher v. City of L.A.*,
    828 F.2d 556 (9th Cir. 1987) ......................................................................... 7

*Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*,
    No. 19-cv-02778-TSH, 2019 WL 3503109 (N.D. Cal. Aug. 1, 2019) ............. 21

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097(9th Cir. 2003) ......................................................................... 9

-vii-

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

1

**Statutes**

2

12 U.S.C. §§ 1829b–1960...........................................................................20

3

31 U.S.C. §§ 5311–5336...........................................................................20

4

**Other Authorities**

5

CACI No. 3610 ...........................................................................................16

6

Fed. R. Civ. P. 8(a)(2)..................................................................................7

7

Fed. R. Civ. P. 9(b) ...........................................................................*passim*

8

Fed. R. Civ. P. 12(b)(6) ..........................................................7, 12, 15, 20

9

10

11

TROUTMAN PEPPER LOCKE LLP
1000 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Wells Fargo Bank, N.A.'s Motion to Dismiss SAC
Case No. 2:24-cv-02886-WLH-SK

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

David Hough, Amund Thompson, Isabel Ramos, Anthony Ramos, and Michael Nibarger ("Plaintiffs") have brought this putative class action seeking to recoup losses from an alleged pyramid scheme conducted by the dozens of individual and non-bank corporate defendants. Plaintiffs sued Wells Fargo Bank, N.A. ("Wells Fargo")—not because it played any active part in defrauding Plaintiffs—but because it provided banking, wire transfer, and payment processing services to some of the alleged bad actors.[1] *See* Second Amended Complaint, ECF No. 173 ("SAC") ¶¶ 32, 33, 211, 214–44. Plaintiffs' reason for suing Wells Fargo is clear. They think Wells Fargo (and other bank defendants) have deep pockets Plaintiffs can use to make themselves whole. But that is not a valid basis to keep Wells Fargo in the lawsuit. Wells Fargo is just a bank that performed banking services for several of the non-bank defendants. If any defendants who banked at Wells Fargo committed fraudulent conduct (Wells Fargo has no idea if that occurred), Wells Fargo is not responsible for that conduct.

Plaintiffs assert the following claims against Wells Fargo: (1) civil conspiracy to defraud Plaintiffs and conceal assets, SAC ¶¶ 280–92; (2) aiding and abetting a fraud, SAC ¶¶ 293–95; and (3) aiding and abetting a breach of fiduciary duty. SAC ¶¶ 301–06. The Court should dismiss these claims for several reasons.

*First*, all three claims against Wells Fargo sound in fraud, yet fail to meet the heightened standards for pleading particularity under Rule 9(b). While malice, intent, knowledge, and other conditions of a party's mind may be alleged generally in

---

[1] Plaintiffs have also sued Bank of America, NA ("Bank of America") and First Citizens Bancshares, Inc. ("First Citizens"). The SAC alleges that Bank of America and First Citizens opened various bank accounts, processed wire transfers, and facilitated payments for the defendants who are the alleged perpetrators of the pyramid scheme. SAC ¶¶ 167–93; 245–54.

TROUTMAN PEPPER LOCKE LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CALIFORNIA 92614-8584

- 1 -

pleading fraud claims, the SAC has only the most speculative of allegations about the state of mind of Wells Fargo and its employees. Moreover, Plaintiffs come nowhere near alleging that Wells Fargo knew of the alleged pyramid scheme, let alone agreed with the defendants who allegedly carried out the fraudulent scheme or actively participated in it. Measured against Rule 9(b)'s heightened pleading standards, Plaintiffs' allegations fail to plausibly allege that Wells Fargo engaged in civil conspiracy or aided and abetted fraud or a breach of fiduciary duty.

*Second*, the SAC alleges, at most, that Wells Fargo allowed the defendants responsible for the scheme to maintain deposit accounts, utilize banking services such as wire transfers, and facilitate payments through applications such as Zelle. Ample case law establishes that providing banking services to a customer engaged in allegedly fraudulent activity, without additional facts that would indicate actual complicity in the fraud itself, is not sufficient to state a claim for conspiracy, or to incur aiding-and-abetting liability. If it were, it would put banks in the untenable position of being exposed to potential liability for the alleged acts of their customers.

*Third*, Plaintiffs' theory that the federal Bank Secrecy Act ("BSA") and federal Know Your Customer regulations put Wells Fargo on notice of red flags of suspicious behavior—and that this makes Wells Fargo responsible for Plaintiffs' alleged losses—is not a cognizable theory. The BSA and related Know Your Customer and anti-money laundering regulations carry no private right of action, and there is well-established precedent in the Ninth Circuit indicating that BSA claims masquerading as other types of claims cannot survive the pleading stage.

*Finally*, not only should the Court dismiss the claims against Wells Fargo, the dismissal should be *with prejudice*. Giving Plaintiffs leave to amend will not cure the SAC's defects. There are no facts Plaintiffs can allege establishing Wells Fargo's requisite knowledge or complicity in the fraudulent scheme—there was none. This is not a case where Plaintiffs know of facts they can truthfully assert to cure their

- 2 -

TROUTMAN PEPPER LOCKE LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CALIFORNIA 92614-8584

pleading defects. Indeed, Plaintiffs have already taken some discovery of multiple parties, including Wells Fargo, and still cannot state a plausible claim.

## II.    ALLEGED FACTS[2]

Plaintiffs claim they were victims of a pyramid scheme, which was perpetrated by a collection of individuals and corporate entities whom Plaintiffs have grouped together as defendants and assigned various monikers. The SAC uses nomenclature such as the "Human Defendants," "Wealth Assistants," "Alter Ego Defendants," and "Quantum-Wholesale Partnership Defendants," among others, to describe the alleged perpetrators of the scheme. SAC ¶¶ 3–8, 39–71. For the sake of simplicity, Wells Fargo will refer collectively to all the individual and non-bank defendants involved in the alleged fraudulent scheme as the "Defendants."[3] In short, Plaintiffs allege they were induced to send money to Defendants in exchange for promises that Defendants would set up and manage online Amazon stores that Plaintiffs would own, who would then split the profits with Defendants. SAC ¶¶ 14–26. According to Plaintiffs, however, Defendants either never set up these stores at all, or managed them poorly, and the promised profits never materialized. SAC ¶¶ 21–22.

As referenced above, Wells Fargo appears to be named in the lawsuit because of its role as a bank to several of Defendants. Despite the voluminous 306 paragraph SAC, the factual allegations specific to Wells Fargo are relatively sparse. Plaintiffs start with the allegation, which they make "upon information and belief," that Defendant Total Apps, Inc. ("Total Apps"), was "a registered independent sales organization" of Wells Fargo and "acted as Wells Fargo's agent" when it orchestrated

TROUTMAN PEPPER LOCKE LLP
1001 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

---

[2] Wells Fargo does not concede the truth of the SAC's allegations asserted against it.

[3] "Defendants" means all defendants except Wells Fargo and the other bank defendants (Bank of America and First Citizens).

Wells Fargo Bank, N.A.'s Motion to Dismiss SAC
Case No. 2:24-cv-02886-WLH-SK

the fraudulent scheme.[4] *See* SAC ¶ 32. Total Apps, according to Plaintiffs, "help[ed] [] set up merchant bank accounts, recruit[ed] other merchants to use their bank accounts in furtherance of [Defendants'] Payment Processing Strategy, and serv[ed] as the 'gateway' for transactions involving the various merchant accounts controlled by Defendants." SAC ¶ 31. Other than mentioning the independent sales organization relationship, which terminated well before the time period of the alleged fraudulent scheme,[5] the SAC does not explain why any alleged conduct by Total Apps would be attributable to Wells Fargo or how "vicarious liability" could possibly flow to Wells Fargo from its relationship with an *independent* sales organization. And the SAC certainly does not contain any *factual* allegations demonstrating that Total Apps was performing work as Wells Fargo's *agent*.

Besides claiming—without factual or any legal support—that Wells Fargo is somehow liable for alleged conduct of an independent sales organization (with whom

---

[4] "Independent Sales Organization" is an industry term, which one district court has described as follows: "[c]redit and debit card transactions are processed through financial networks, called interchanges, run by entities like Visa and Mastercard. Banks, as members of these interchanges, can sell card processing services directly to merchants, or indirectly through companies and individuals known as Independent Sales Organizations and Merchant Service Providers (ISOs/MSPs). . . . These ISOs/MSPs must be licensed and registered with both Visa and Mastercard, as well as with a bank or a bank-approved processing entity, called a processor." *Rainbow Bus. Sols. v. Merch. Servs., Inc.*, No. C 10-1993 CW 2013 WL 6734086, at *1 (N.D. Cal. Dec. 20, 2013).

[5] Although not alleged in the SAC, Total Apps ceased being a registered independent sales organization associated with Wells Fargo in 2018, and Plaintiffs fail to allege any facts to support the existence of an independent sales organization relationship between Wells Fargo and Total Apps during the time period of the alleged fraud. Moreover, Plaintiffs appear to recognize that they have no actual evidence that Wells Fargo had any relationship with Total Apps during the time period of the alleged fraud, as Plaintiffs not only allege the existence of the relationship "upon information and belief" but the very next paragraph of the complaint starts with "[e]ven if Total Apps were [sic] not associated with Wells Fargo . . ." SAC ¶ 32.

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

- 4 -

1    it was not even in business), the only conduct on Wells Fargo's part alleged in the

2    SAC is banking services provided to some Defendants.

3        According to the SAC, several Defendants banked at Wells Fargo, and the bank

4    "knowingly operated" these accounts. SAC ¶ 33. The SAC identifies thirteen

5    accounts that Wells Fargo allegedly "custodied" for these Defendants. SAC ¶ 218.

6    Additionally, in January 2023, Wells Fargo accepted a cashier's check for deposit

7    from Bank of America for more than $3.7 million dollars, which was deposited into

8    one of the subject accounts. SAC ¶ 227. The SAC alleges that the accounts at Wells

9    Fargo were used to send wire transfers from Defendants' clients and that "[m]any of

10    the confirmations for those wire transfers stated that the purpose of the payment was

11    to purchase an Amazon store from [Defendants]." SAC ¶ 230. In paragraph 233 of

12    the SAC, Plaintiffs copy images from bank statements showing numerous wire

13    transfers from one of the subject accounts, and paragraph 234 states that the account

14    activity "strongly exhibited most of the red flags that banks are required to search for

15    and review" pursuant to BSA obligations.[6] SAC ¶¶ 233–34.

16        The SAC further describes "Know Your Customer Obligations" under federal

17    law and obligations that Wells Fargo had under the BSA, which Plaintiffs suggest

18    charged Wells Fargo with knowledge of the alleged fraudulent conduct of its

19    customers. The obligations are detailed in paragraphs 153 to 166 of the SAC. *See*

20    SAC ¶ 153 (describing "Know Your Customer Obligations" which require banks to

21

22    ────────────────────────

23    [6] The SAC also alleges that in September 2004, nearly twenty years before the alleged

24    pyramid scheme, Wells Fargo loaned $500,000 to a company called "Today's

25    Destiny" belonging to Defendant Max K. Day. *Id.* Plaintiffs baldly allege that Today's

      Destiny had engaged in fraud and later filed for bankruptcy, and that  Wells Fargo

      filed a proof of claim in the bankruptcy and "sought to recover the loan" in the

26    company's bankruptcy case. *Id.* According to Plaintiffs, the filing of a proof of claim

27    in the Today's Destiny bankruptcy case back in 2004 allegedly gave Wells Fargo

      "first-hand knowledge that Max K. Day was a high-risk client." *Id.*

28

Wells Fargo Bank, N.A.'s Motion to Dismiss SAC
Case No. 2:24-cv-02886-WLH-SK

TROUTMAN PEPPER LOCKE LLP
1000 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

"maintain procedures" that allow them to "know[s] the true identity of each customer"); SAC ¶¶ 154–56 (detailing BSA requirements relating to developing programs to protect against anti-money laundering and providing means for banks to identify "unusual or suspicious transactions for each customer"); SAC ¶¶ 157–59 (discussing the obligation of banks to obtain information about who controls the account, create client profiles, and establish "[c]ustomer due diligence programs" to keep tabs on "high risk" customer accounts); SAC ¶¶ 160–63 (describing bank controls including a BSA compliance officer, various resources available to banks to engage in sound BSA practices, and training available to bankers to ask customer questions designed to detect money laundering when processing wire transfers); SAC ¶¶ 165–66 (describing deposit account "red flags" triggering heightened review).

The SAC suggests that BSA awareness of unusual activity in Defendants' accounts "caused Wells Fargo to know that the accounts were fraudulently concealing assets from [Defendants'] creditors." SAC ¶ 235. The SAC also asserts that Wells Fargo was rejecting payments, red-flagging transactions, and even freezing or closing accounts that appeared suspicious. *E.g.* SAC ¶ 220 (noting all thirteen accounts listed in the SAC had been "closed by Wells Fargo"); SAC ¶ 228 (alleging Wells Fargo "increased additional due diligence" after receiving a large cashier's check for an account); SAC ¶ 235 (asserting that Wells Fargo "did manually review activity" after noting red flags and rejected a deposit of around $6000 that had been sent to a Wealth Assistants bank account).[7]

Finally, the SAC asserts that in 2023, other banks notified Wells Fargo that various wire transfers should be recalled because customers reported "a scam" and

---

[7] Despite Plaintiffs reciting in the SAC specific actions that Wells Fargo took with respect to Defendants' accounts in compliance with BSA, Plaintiffs not only maintain that Wells Fargo conspired with Defendants to defraud Plaintiffs, but that these BSA-prompted loss mitigation efforts somehow result in the imposition of civil liability.

TROUTMAN PEPPER LOCKE LLP
1000 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

Wells Fargo "did not deny" a scam. SAC ¶ 239. Plaintiffs allege that Wells Fargo "failed to reverse the wire transfers and still failed to stop operating the bank accounts that were being used to further [Defendants'] fraudulent activity" even though Wells Fargo's own customers notified the bank of fraudulent activity. SAC ¶¶ 242–43.

Based on these conclusory allegations, Plaintiffs allege that Wells Fargo knowingly participated in the fraudulent scheme and aided and abetted Defendants in committing fraud and breach of fiduciary duty.

## III.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(6)

Dismissal is proper where the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal may be based on either "'the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In short, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also* Fed. R. Civ. P. 8(a)(2). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6).

When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). A court need not "accept as true allegations that are merely conclusory, unwarranted

TROUTMAN PEPPER LOCKE LLP
1000 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

- 7 -

1  deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*,
2  266 F.3d 979, 988 (9th Cir. 2001).

3      **B.**    **Federal Rule of Civil Procedure 9(b)**

4         Claims sounding in fraud or mistake must also meet the heightened pleading
5  requirements of Rule 9(b), which requires that a plaintiff alleging fraud "must state
6  with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see*
7  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy this
8  heightened standard, the allegations must be "specific enough to give defendants
9  notice of the particular misconduct which is alleged to constitute the fraud charged so
10 that they can defend against the charge and not just deny that they have done anything
11 wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims
12 sounding in fraud must allege "an account of the 'time, place, and specific content of
13 the false representations as well as the identities of the parties to the
14 misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per
15 curiam) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).
16 The plaintiff must set forth what is false or misleading about a statement, and why it
17 is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

18 **IV.**   **ARGUMENT**

19     **A.**    **The SAC's Three Claims Against Wells Fargo Should Be**
20            **Dismissed Because They Do Not Meet Rule 9(b)'s Heightened**
21            **Pleading Standards**

22       **1.**    **All Three Claims Allege Fraud Directly or Sound in Fraud**

23     "[W]here, as here, a plaintiff chooses to 'allege a unified course of fraudulent
24 conduct and rely entirely on that course of conduct as the basis of a claim,' then the
25 claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that
26 claim as a whole must satisfy the particularity requirement of Rule 9(b)."" *In re*

27
28

Wells Fargo Bank, N.A.'s Motion to Dismiss SAC
Case No. 2:24-cv-02886-WLH-SK

TROUTMAN PEPPER LOCKE LLP
1800 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

*Cloudera, Inc.*, 121 F.4th 1180, 1186 (9th Cir. 2024) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)).

Here, each of the SAC's claims against Wells Fargo is subject to a Rule 9(b) analysis. Civil conspiracy to commit fraud and aiding/abetting fraud (Counts One and Two, respectively) directly incorporate fraud. And under *Cloudera* and its predecessors, Count Three, which alleges aiding and abetting a breach of fiduciary duty, "sounds in fraud," because it arises from an alleged "unified course of fraudulent conduct" and is not attributable to any separate conduct on Wells Fargo's part. *See, e.g.*, *Miller v. Dinardo*, No. 2:23-cv-01638-MEMF, 2024 WL 5284957, at *10–11 (C.D. Cal. June 11, 2024) (holding that claim for aiding and abetting breach of fiduciary duty sounded in fraud because defendant allegedly helped fraudster find additional funding and negotiated on fraudster's behalf); *Siegal v. Gamble*, No. 13-cv-03570-RS, 2016 WL 3648503, at *3 (N.D. Cal. July 7, 2016) (holding that claim for aiding and abetting breach of fiduciary duty sounded in fraud because the "gravamen of the complaint is that the defendant's acts constituted actual or constructive fraud even when the plaintiffs label their claims differently" (internal quotation marks omitted)).

Therefore, this Court should subject all three of the SAC's claims against Wells Fargo to Rule 9(b) scrutiny.

## 2. The SAC Alleges Only Generalities and Lacks a Complete "Who, What, When, Where, How, Why" Narrative

"To properly plead fraud with particularity under Rule 9(b), 'a pleading must identify the who, what, when, where, and how of the misconduct charged.'" *Cloudera*, 121 F.4th at 1187 (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). "In other words, it must provide 'an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Id.* (quoting *Swartz*, 476 F.3d at 764).

TROUTMAN PEPPER LOCKE LLP
1000 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

- 9 -

1    In addition to who, what, when, where, and how, the Ninth Circuit's recent
2    *Cloudera* opinion makes clear that there is also a "why" component. "Most
3    importantly, the complaint must explain 'what is false or misleading about the
4    purportedly fraudulent statement, *and why it is false*.'" *Id.* (quoting *Davidson*,
5    889 F.3d at 964) (emphasis added). "And to do so, it cannot rely on hindsight; rather,
6    it must explain 'why the statements were false or misleading at the time they were
7    made.'" *Id.* (quoting *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir.
8    2012)).

9    Here, the SAC is particularly lacking on the "how" and "why" pieces with
10   respect to Wells Fargo. Plaintiffs allege generally that Wells Fargo provided banking
11   services to those Defendants who were defrauding Plaintiffs. They do not explain,
12   however, what was false or misleading about any of the conduct they attribute to
13   Wells Fargo specifically. Neither in its alleged capacity as a depositary bank, nor in
14   its purported relationship with Total Apps, nor in its supposed role in processing Zelle
15   and other payment applications pursuant to which Plaintiffs made payment to
16   Defendants, do Plaintiffs allege that *Wells Fargo* actually misled them.

17   Collectively, in terms of conduct, all that Plaintiffs allege is that Wells Fargo
18   provided banking services to some Defendants. Yet Wells Fargo's alleged conduct in
19   allowing a given Defendant to maintain one or more bank accounts would not be
20   "false or misleading" to Plaintiffs. Wells Fargo's alleged conduct in serving as the
21   sponsoring bank for various payment processors through whom Plaintiffs sent money
22   to one or more Defendants is an even more attenuated connection to Plaintiffs and,
23   again, there is no explanation in the SAC how or why routine service in processing
24   credit card payments would have *misled Plaintiffs*. Finally, most attenuated of all,
25   Wells Fargo's alleged business relationship with Total Apps, whom Plaintiffs allege
26   is an *independent* sales organization registered with Wells Fargo, contains no
27   indication of how or why anything about that relationship was false or misleading to

28

- 10 -

Wells Fargo Bank, N.A.'s Motion to Dismiss SAC
Case No. 2:24-cv-02886-WLH-SK

TROUTMAN PEPPER LOCKE LLP
5 PARK PLAZA, SUITE 1500
IRVINE, CALIFORNIA 92614-8594

Plaintiffs (and contains no facts to support the bald allegation that Wells Fargo was in any relationship with Total Apps during the period of the alleged fraud).

In short, the SAC's three fraud-related claims against Wells Fargo fail to identify the who, what, when, where, and how, and why as to Wells Fargo. Plaintiffs have not pled sufficient detail to survive a Rule 9(b) challenge.

### 3. The SAC Does Not Meet Rule 9(b) Standards For Pleading Wells Fargo's Mental State

The three claims also fail under Rule 9(b) for another, independent reason. Rule 9(b) states that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." However, "while Rule 9(b) does not require particularity in pleading mental state, *the complaint still must afford a basis for believing that plaintiffs could prove scienter*." *Kenney v. Deloitte, Haskins & Sells*, No. C 91-0590 BAC, 1992 WL 551108, at *7 (N.D. Cal. Sept. 2, 1992) (internal quotation marks omitted, emphasis added); *see also O'Dell v. Berkshire Bank*, No. 5:24-CV-652, 2024 WL 4635262, at *3–4 (S.D.N.Y. Oct. 31, 2024) (dismissing claim against bank for aiding and abetting fraud under Rule 9(b), because "the fact that [the fraudster] engaged in fraudulent activity does not, by itself, amount to [the bank] possessing knowledge of the fraud" and "a bank employee's provision of services, its opening accounts and approving transfers, or a bank's failure to investigate red flags do not constitute substantial assistance").

The SAC does not afford that basis. It alleges only the most speculative of allegations with regard to Wells Fargo's knowledge of the alleged fraud. Plaintiffs go to great lengths to list allegations purporting to detail Wells Fargo's various loss mitigation efforts on the disputed accounts, *see, e.g.*, SAC ¶¶ 220, 228, 235, perhaps on the theory that this helps Plaintiffs meet Rule 9(b) because they believe it demonstrates Wells Fargo knew about the fraud. However, that is an unrealistic basis for proving scienter. Moreover, if anything, these BSA loss mitigation efforts would

TROUTMAN PEPPER LOCKE LLP
1009 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

- 11 -

1   show that Wells Fargo was *not* a participant in any fraud with Defendants, as these

2   actions would be inconsistent with a conspiracy or a knowing effort to help perpetrate

3   a fraud against Defendants. Regardless, if a plaintiff could overcome the high bar of

4   Rule 9(b) simply by pointing to a bank's BSA loss mitigation efforts as a basis for

5   believing that the plaintiff could prove scienter on the part of the bank, this would

6   create a perverse disincentive for banks; *i.e.,* any BSA loss mitigation efforts they take

7   could lead to a fraud claim by third parties. This is certainly not the law.

8       Because the SAC provides no "basis for believing" that Plaintiffs could ever

9   prove scienter, the SAC's three claims against Wells Fargo cannot proceed.

10  **B.      The SAC Fails to State a Viable Claim for Relief Under Rule**

11          **12(b)(6)**

12      Even if this Court were to conclude that the SAC satisfies Rule 9(b), none of

13  the claims against Wells Fargo can withstand scrutiny under Rule 12(b)(6).

14      **1.      The SAC Fails to Plausibly Demonstrate that Wells Fargo**

15              **Engaged in a Civil Conspiracy to Defraud Plaintiffs and**

16              **Conceal Assets**

17      First, the SAC does not state a viable claim for civil conspiracy against Wells

18  Fargo (Count One).

19              **a.      General Principles of Civil Conspiracy**

20      Civil conspiracy "provides a remedial measure for affixing liability to all

21  persons who have agreed to a common design to commit a wrong. Because civil

22  conspiracy is so easy to allege, plaintiffs have a weighty burden to prove it." *Choate*

23  *v. Cty. of Orange*, 86 Cal. App. 4th 312, 333 (2000), *as modified on denial of reh'g*

24  (Jan. 17, 2001).

25      Plaintiffs wishing to prove a claim of civil conspiracy "must show that each

26  member of the conspiracy acted in concert and came to a mutual understanding to

27  accomplish a common and unlawful plan, and that one or more of them committed an

28                                          - 12 -

TROUTMAN PEPPER LOCKE LLP
1000 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

overt act to further it. It is not enough that the conspiring officers knew of an intended wrongful act, they must agree—expressly or tacitly—to achieve it. Unless there is such a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy." *Id.* (internal citations and quotation marks omitted); *see also Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995) ("As is well established, civil conspiracy is not an independent tort. Rather, civil conspiracy is a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." (internal quotation marks omitted)). Civil conspiracy, however, differs from the concept of aiding and abetting because it has an "overlaid requirement of an independent duty." *Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 n.10 (2005).

With respect to civil conspiracy *to defraud*, which is the specific type of civil conspiracy that Plaintiffs allege in the SAC, the case law lists three elements: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron*, 40 Cal. App. 4th at 1581.

### b.    The SAC Does Not Plead a "Common Plan or Design"

Here, the SAC offers no meaningful factual allegations that support the notion that Wells Fargo "shared with [Defendants] a common plan or design in . . . perpetration" of the underlying fraud, including its asset concealment components. *Kidron*, 40 Cal. App. 4th at 1582. The SAC's allegations, taken as true, show a sophisticated operation involving multiple people and corporate entities utilizing multiple financial institutions and payment processors to move money around. Defendants apparently knew some rudimentary techniques for manipulating banks and payment processors for their own purposes. Even taking all of that as true, it does not show that Wells Fargo either "agreed to a common plan" or "shared a common

- 13 -

TROUTMAN PEPPER LOCKE LLP
1000 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

plan or design in its perpetration" with the alleged fraudsters. *Kidron*, 40 Cal. App. 4th at 1581–82. There are no allegations in the SAC demonstrating that Wells Fargo— as a large national bank—reached any common plan with Defendants to defraud Plaintiffs in connection with online Amazon stores. This outlandish claim is completely untethered from the actual facts of the case.

Without this "common plan or design in its perpetration," the civil conspiracy claim fails as a matter of law because the SAC has no allegations of any actual agreement to commit the underlying tort of fraud.

### c. The SAC Does Not Plead That Wells Fargo Participated in "the Formation and Operation" of a Conspiracy

Nor are there any factual allegations that, taken as true, show Wells Fargo's participation in "the formation and operation of the conspiracy," which is the first element of the tort as stated in *Kidron*. There are no facts alleged in the SAC that reflect a conscious decision by Wells Fargo to assist, aid, or abet Defendants in their alleged fraudulent scheme. At most, Plaintiffs make the conclusory assertion that Wells Fargo had knowledge that Defendants were engaged in a fraudulent scheme and were connected to it, largely through its alleged relationship with Total Apps and through "custody" of Defendants' accounts—in other words, purely passive involvement arising out of the deposit accounts maintained at the bank, *i.e.,* standard banking services. This is not a case where Plaintiffs have alleged that a Wells Fargo insider ignored red flags or actively used bank resources to further the fraud. In fact, Plaintiffs have alleged the opposite. The SAC concedes that Wells Fargo was actively following up on red flags, closing certain accounts, denying transactions, and so forth—certainly not the actions of a conspirator with a "common plan or design" to help Defendants perpetrate their fraud. And such concrete factual allegations of

TROUTMAN PEPPER LOCKE LLP
1001 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

- 14 -

actions Wells Fargo took to prevent fraud stand in stark contrast to the conclusory allegations that Wells Fargo was somehow a knowing participant.

### d.    The SAC Does Not (and Cannot) Allege Wells Fargo Had an Independent Duty to Any Plaintiff

Moreover, as *Berg & Berg* makes clear, liability for civil conspiracy cannot occur without an independent duty. 131 Cal. App. 4th at 823 n.10. The SAC alleges no such duty here flowing from Wells Fargo to any of the Plaintiffs. There is none. "Under California law, a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder.'" *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1149 (2005); *see also L. Firm of Fox & Fox v. Chase Bank, N.A.*, 95 Cal. App. 5th 182, 202 (2023) (explaining that, aside from a narrow exception involving acceptance of checks bearing obvious signs of fraud on their face, "courts have refrained from imposing on banks a duty to third parties to monitor bank account transactions for suspicious activity").

For all of these reasons, the Court should dismiss the civil conspiracy claim with prejudice, as there is no realistic scenario that a fourth bite at the apple would enable Plaintiffs to allege a plausible civil conspiracy claim against Wells Fargo.

### 2.    The SAC Fails to Allege Sufficient Facts to Demonstrate that Wells Fargo Aided and Abetted Either Fraud or Breach of Fiduciary Duty

Plaintiffs' other two claims against Wells Fargo are based on aiding-and-abetting theories—aiding and abetting fraud (Count 2) and aiding and abetting breach of fiduciary duty (Count 3). Neither states a viable claim. The Court should dismiss both claims pursuant to Rule 12(b)(6).

First, "to establish liability for aiding and abetting a fraud, a plaintiff must prove that the defendant (1) had actual knowledge of the underlying tort committed by the primary tortfeasor; (2) provided substantial assistance or encouragement to the

Wells Fargo Bank, N.A.'s Motion to Dismiss SAC
Case No. 2:24-cv-02886-WLH-SK

TROUTMAN PEPPER LOCKE LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CALIFORNIA 92614-8501

tortfeasor; and (3) 'reach[ed] a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act.'" *Hullinger v. Anand*, No. CV 15-07185 SJO (PJWx), 2016 WL 11750270, at *8 (C.D. Cal. July 8, 2016) (quoting *Berg & Berg*, 131 Cal. App. 4th at 823 n.10). The three *Berg & Berg* factors described in *Hullinger* extend to all kinds of aiding and abetting liability, so they are useful in analyzing both of the SAC's aiding and abetting claims against Wells Fargo. *See Berg & Berg*, 131 Cal. App. 4th at 823 n.10 (describing factors used to assess "civil liability for aiding and abetting the commission of a tort").

Second, the elements of a claim for aiding and abetting breach of fiduciary duty are: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff. *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014). Many cases, as well as the form jury instructions for this tort, also indicate a complaint must allege a fifth element: that the aider and abettor had the specific intent to facilitate the wrongful conduct. CACI No. 3610, at 633; *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 95 (2007).

These two torts have several elements in common: actual knowledge; substantial assistance or encouragement; and "a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Berg & Berg*, 131 Cal. App. 4th at 823 n.10. The SAC does not plausibly plead any of these elements.

### a.    No Actual Knowledge

First, as explained *supra* in Section IV.A.3, the SAC offers only speculation with regard to Wells Fargo's actual knowledge of the alleged fraud. Plaintiffs allege that Wells Fargo acted on various red flags on accounts and transactions associated with the Human Defendants and Wealth Assistants, *see, e.g.*, SAC ¶¶ 220, 228, 235.

- 16 -

TROUTMAN PEPPER LOCKE LLP
5 PARK PLAZA, SUITE 1500
IRVINE, CALIFORNIA 92614-8594

While this may demonstrate Wells Fargo's suspicion of questionable conduct, each instance of red flagging is inevitably coupled, even in the SAC, with steps that Wells Fargo proactively took to address those red flags. Taking steps to address those red flags hardly rises to the level of actual knowledge of fraudulent conduct. And to the extent Plaintiffs are contending that Wells Fargo's red flagging of some account activity, both before and during the perpetration of the alleged scheme, should have prompted Wells Fargo to take additional steps to proactively investigate other individual accounts and/or transactions, the case law is clear that Wells Fargo had no duty "to third parties to monitor bank account transactions for suspicious activity." *L. Firm of Fox & Fox v. Chase Bank, N.A.*, 95 Cal. App. 5th at 202; *see also Casey*, 127 Cal. App. 4th at 1149 (holding that "under California law, a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder" and rejecting claim for aiding and abetting breach of fiduciary duty when plaintiff alleged "the banks knew *something* fishy was going on").[8]

Moreover, Wells Fargo's actions based on *individual* red flags does not mean Wells Fargo knew or should have known about the *entire* fraudulent scheme, which allegedly had many tentacles outside of Wells Fargo. Plaintiffs do not even allege such knowledge. The required knowledge for aiding and abetting liability is "actual knowledge *of the underlying tort committed by the primary tortfeasor*." *Berg & Berg*, 131 Cal. App. 4th at 823 n.10. Wells Fargo's awareness of individual account activity does not translate into actual knowledge of an overall plan to defraud Plaintiffs. The

---

[8] The case law is also clear that a financial institution's knowledge of merely suspicious transactions cannot be equated to actual knowledge of an underlying scheme. *Gray v. Ben*, No. CV22-03090 DSF(PVCx), 2022 WL 16859609, at *5, 8 (C.D. Cal. Nov. 9, 2022); *Hobbs v. Wells Fargo Bank, Nat'l Ass'n*, No. 21-cv-01700-AJB-JLB, 2022 WL 17972163, at *3 (S.D. Cal. Sept. 14, 2022); *Miller v. Bank of Am., N.A.*, No. 1:21-CV-00337-JLT, 2022 WL 3704093, at *8 (E.D. Cal. Aug. 26, 2022) (dismissing claim for failure to plead bank's actual knowledge of alleged scam).

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

- 17 -

SAC contains no allegations that Wells Fargo actually knew what Defendants were doing. Instead, the SAC alleges that Wells Fargo banked several Defendants and engaged in loss mitigation efforts with respect to a handful of individual pieces of the overall series of challenged transactions.

### b.   No Substantial Assistance or Encouragement

Second, Wells Fargo's routine, administrative banking services as described in the SAC do not rise to the level of "substantial assistance or encouragement" that would be required for aiding and abetting liability. This element is closely tied to the actual knowledge element. As this Court has previously held: "Ordinary business transactions can satisfy the substantial assistance element if performed with the specific knowledge that those transactions were assisting in the commission of a specific tort." *Su v. Henry Glob. Consulting Grp.*, No. 2:20-cv-02235-ODW PLAx, 2022 WL 19392, at *3 (C.D. Cal. Jan. 3, 2022) (citing *Casey*, 127 Cal. App. 4th at 1145).

In *Su*, the defendant was alleged to have aided and abetted a scheme to defraud non-American individuals wishing to become lawful permanent residents through the EB-5 visa program, which allows immigrants to obtain residency by investing a certain amount of capital in a U.S. business. The moneymaking part of the scheme involved substantial "finder's fees" that the plaintiffs claimed were not disclosed to them in advance. The defendant's only role, however, was to prepare immigration application templates. The Court held that merely preparing EB-5 application templates was an "administrative duty" and had little or nothing to do with the non-disclosure of the finders' fees, absent some "specific knowledge" by the defendant that he was part of a larger fraudulent scheme. *Id.* Since there was no allegation that he had that knowledge when he was performing his administrative duties, the Court dismissed an aiding and abetting claim against him. *Id.* Similarly, here, without some indication that Wells Fargo had specific knowledge of Defendants' scheme, routine

- 18 -

TROUTMAN PEPPER LOCKE LLP
1999 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

banking services such as following a customer's orders to move money between accounts cannot rise to the level of "substantial assistance or encouragement."

### c. No Conscious Decision

Third, the SAC contains no allegation that Wells Fargo made "'a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act.'" *Hullinger*, 2016 WL 11750270, at \*8 (quoting *Berg & Berg*, 131 Cal. App. 4th at 823 n.10). This absence of a conscious decision prevents Wells Fargo from incurring liability for aiding and abetting either fraud or breach of fiduciary duty. As one district court has commented, the purpose of California law's "conscious decision" element is "[t]o preserve basic banking practices." *Camenisch v. Umpqua Bank*, No. 20-cv-05905-RS, 2022 WL 17740285, at \*7 (N.D. Cal. Dec. 16, 2022). The *Camenisch* Court drew from *Casey*: "'[T]he present banking system operates under rules requiring banking transactions to be processed quickly and automatically and imposing strict deadlines for the payment or timely dishonor of checks. Under this system a bank cannot be expected to track transactions in fiduciary accounts or to intervene in suspicious activities.'" *Id.* (quoting *Casey*, 127 Cal. App. 4th at 1151).

The facts of *Camenisch* draw a useful contrast with this case. That case was about a Ponzi scheme, in furtherance of which a bank employee did not merely "perform[ ] ordinary banking transactions at the customer's request," *id.* at \*8, but actually "went well outside the bounds of ordinary banking transactions," *id.*, by, for example, spending "a great deal of time monitoring [the fraudster's] accounts for overdrafts and helping to cover the shortfalls" caused by the Ponzi pyramid, even on her days off. *Id.* at \*5. She also admitted at her deposition that "she knew both that the clearing accounts contained new investor money and that [the fraudster] was using that new investor money to cover shortfalls in other accounts." *Id.* Because the employee was a private banker to the fraudster, she had significant financial

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

1  incentives to help keep the scheme going, because there was evidence that her

2  "performance reviews, commissions, bonuses, and even continued employment"

3  depended on maintaining the fraudster's activities. *Id.* Based on these details, the

4  Court allowed an aiding-and-abetting claim against the bank to go forward. *Id.* at *8.

5      In contrast, the SAC in this case contains absolutely no details of this nature,

6  nor can Plaintiffs truthfully allege any. The SAC contains every indication that in its

7  dealings with Defendants, Wells Fargo and its employees were performing only

8  ordinary banking functions at the request of deposit customers. There are no alleged

9  incentives to do otherwise, and no allegations of conscious decisions to keep

10  Defendants' alleged fraudulent scheme going, and when red flags arose, they were

11  addressed consistent with the BSA.

12      With all of these elements missing—actual knowledge, substantial assistance

13  or encouragement, and conscious decision to participate in tortious activity for the

14  purpose of assisting another in performing a wrongful act—the SAC cannot state a

15  viable claim against Wells Fargo on either of its aiding and abetting theories. The

16  Court should dismiss both aiding and abetting claims based on Rule 12(b)(6).

### 3. The SAC's Three Claims Against Wells Fargo Are Actually BSA Claims Masquerading as Fraud Claims

19      Finally, the Court should reject Plaintiffs' theory that alleged BSA red flags

20  should have prompted Wells Fargo to take additional action to protect Plaintiffs. This

21  is a BSA claim disguised as claims sounding in fraud.

22      The BSA, codified at 12 U.S.C. §§ 1829b–1960 and 31 U.S.C. §§ 5311–5336,

23  is an anti-money laundering statute that imposes reporting obligations on financial

24  institutions to assist the government in detecting and preventing financial crimes. The

25  United States Supreme Court recently commented, "the BSA's 'purpose' is 'to

26  require' certain 'reports' or 'records' that may assist the government in everything

27  from criminal and tax to intelligence and counterintelligence investigations." *Bittner*

28

- 20 -

TROUTMAN PEPPER LOCKE LLP
1009 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

1    *v. United States*, 598 U.S. 85, 98 (2023) (quoting 31 U.S.C. § 5311). In a word, "the

2    relevant legal duty the BSA establishes is the duty to file certain reports." *Id.* at 99.

3        As this Court has recently observed, "'courts are unanimous in holding that

4    there is no private right of action under the BSA or Patriot Act.'" *S. Shore LLC v.*

5    *Wells Fargo Bank, N.A.*, No. 2:24-cv-00490-RGK-SK, 2024 WL 3513503, at *2

6    (C.D. Cal. Apr. 25, 2024) (quoting *Venture Gen. Agency, LLC v. Wells Fargo Bank,*

7    *N.A.*, No. 19-cv-02778-TSH, 2019 WL 3503109, at *7 (N.D. Cal. Aug. 1, 2019),

8    which collects cases nationwide). "Nor is there a private right of action under the

9    BSA's implementing regulations." *Id.* (citing *Barber v. Unitus Cmty. Credit Union*,

10    No. 3:22-cv-00134-MO, 2023 WL 34697, at *2 (D. Or. Jan. 3, 2023)).

11        "Any obligation of a bank to investigate and prevent money laundering is owed

12    to the government, not to individuals." *Id.* (citing *S & S Worldwide, Inc. v. Wells*

13    *Fargo Bank*, 509 F. Supp. 3d 1154, 1164 (N.D. Cal. 2020)). Plaintiffs cannot use

14    fraud or breach of fiduciary claims (or any other type of claim) to disguise what is

15    really an argument that Wells Fargo had a duty to investigate and/or prevent the fraud

16    to which they claim to have fallen victim. District courts in the Ninth Circuit routinely

17    reject claims masquerading as some kind of common law tort, but whose gravamen

18    is a BSA violation. *See, e.g.*, *Chang v. Wells Fargo Bank, N.A.*, No. 19-cv-01973-

19    HSG, 2020 WL 1694360, at *3–4 (N.D. Cal. Apr. 7, 2020) (rejecting negligence claim

20    that invoked the BSA); *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, No.

21    19-cv-02778-TSH, 2019 WL 3503109, at *7 (N.D. Cal. Oct. 16, 2019) (same).

22        Here, while the SAC's three claims against Wells Fargo are couched in terms

23    of fraud and fiduciary duty, the gravamen of the allegations are supposed violations

24    of the BSA. As in *Chang* and *Venture General Agency*, the Court should reject

25    Plaintiffs' attempt to state a BSA claim under the guise of fraud.

26

27

28

TROUTMAN PEPPER LOCKE LLP
1009 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984

- 21 -

# V.    CONCLUSION

For the reasons stated above, the Court should dismiss the SAC's claims against Wells Fargo with prejudice.


Dated: January 17, 2025                    TROUTMAN PEPPER LOCKE LLP


                                           */s/ Michael S. Lowe*
                                           Michael S. Lowe
                                           David M. Gettings
                                           Steven D. Allison
                                           Elizabeth Holt Andrews
                                           Nicholas J. Schuchert

                                           *Attorneys for Defendant*
                                           Wells Fargo Bank, N.A.




TROUTMAN PEPPER LOCKE LLP
1000 SPECTRUM CENTER DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92618-4984


## CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)

The undersigned, counsel of record for Defendant Wells Fargo Bank, N.A., certifies that this brief contains 6,988 words, which complies with the word limit of L.R. 11-6.1.


Dated:  January 17, 2025                   */s/ Michael S. Lowe*
                                           Michael S. Lowe


- 22 -