Eric A. Puritsky (SBN 239577)
**NEWFIELD PURITSKY LLP**
11111 Santa Monica Blvd., Suite 1070
Los Angeles, CA 90025
Telephone: (310) 857-5297
eric@np-llp.com

Attorneys for Defendant,
Christine Hagar, erroneously named as,
Christine Carroll

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DAVID HOUGH, et al.<br><br>Plaintiff,<br><br>v.<br><br>RYAN CARROLL, et al.,<br><br>Defendants. | Case No.: 2:24-cv-02886-WLH-SK<br>[Assigned to Hon. Wesley L. Hsu, Courtroom 9B]<br><br>**REPLY IN SUPPORT OF CHRISTINE HAGAR'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [ECF NO. 265]**<br><br>Date: April 18, 2025<br>Time: 1:30 p.m.<br>Courtroom: 9B<br><br>Complaint filed: April 9, 2024<br>Trial: Not set |

## I. INTRODUCTION

Plaintiffs oppose Christine Hagar's Motion to Dismiss by cobbling together a litany of meritless arguments in the hope they can convince this Court that the Second Amended Complaint ("SAC") alleges sufficient facts to support their claim of aiding and abetting fraud against Ms. Hagar. But in the end, Plaintiffs' Opposition only highlights the deficiencies in the SAC. First, unable to point to specific facts to support a plausible inference of actual knowledge, Plaintiffs instead contend that because Ms. Hagar was Wealth Assistants' Finance Manager, she "must have known" about the fraud. Case law, however, is clear, that mere suspicions or even knowledge of fraud, without more, is insufficient to support a plausible inference of actual knowledge. Even if it were, Plaintiffs' SAC does not allege that Ms. Hagar made a conscious decision to participate in the fraudulent scheme.

As for substantial assistance, Plaintiffs do not—and cannot—point to specific facts in the SAC that Ms. Hagar substantially participated the fraudulent scheme. Instead, Plaintiffs contend that she substantially participated in the fraudulent scheme because one allegedly fraudulent wire transfer in April 2023 contained "christine ops" in the transfer memorandum. The problem with Plaintiffs' argument is that the SAC does not allege that Ms. Hagar worked for Wealth Assistants at the time of the transfer or that she initiated it. Nor does it allege that she made a conscious decision to knowingly initiate the allegedly fraudulent transfer.

For these reasons, and those set forth below, the Court should dismiss Ms. Hagar from this action.

## II. PLAINTIFFS' SAC IS DEVOID OF FACTS FROM WHICH THIS COURT CAN INFER ACTUAL KNOWLEDGE

Plaintiffs' Opposition misstates the pleading standard for actual knowledge in the Ninth Circuit, wrongly suggesting that specific facts of actual knowledge are not needed as long as the general, non-specific allegation itself is plausible. (Opposition ["Opp."], p. 7). While Rule 9(b) indicates that knowledge may be alleged generally,

Plaintiffs must plead facts from which this Court can draw a reasonable inference that Ms. Hagar is liable for aiding and abetting fraud. See *Allstate Ins. Co. v. Countrywide Fin. Corp.,* 824 F. Supp. 2d 1164, 1188 (C.D. Cal. 2011) ("Actual knowledge, which may be pleaded generally, is still subject to the requirement that claimants state 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008), aff'd 322 F. App'x 489 (9th Cir. 2009) ("nothing in the Federal Rules of Civil Procedure relieves a plaintiff of the obligation to "set forth facts from which an inference of scienter could be drawn"). Here, the SAC fails to allege any specific facts rendering the general allegation of knowledge plausible. Instead, Plaintiffs rely solely on the fact that Ms. Hagar was Wealth Assistants' "Finance Manager" for some unspecified period of time and therefore, "must have known" and "must have noticed [] the fraud." (Opp., pp. 4, 6.) Plaintiffs' argument lacks merit for several reasons.

      First, in California, "liability for aiding and abetting depends on proof the defendant had *actual knowledge* of the *specific primary wrong* the defendant substantially assisted." *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005) (emphasis added); *Bradshaw v. SLM Corp.*, 652 Fed. Appx. 593, 594 (9th Cir. 2016) (citations omitted) (no claim for aiding and abetting stated where plaintiffs failed to plead sufficient facts to permit a reasonable inference that the purported aider and abettor knew of the "specific wrongful acts of fraud"); *Axonic Capital LLC v. Gateway One Lending*, No. CV 18-5127 PSG (SSx), 2018 U.S. Dist. LEXIS 244609, *52 (C.D. Cal. Dec. 18, 2018)(same). Plaintiffs' allegations do not satisfy this standard, as the SAC does not contain *any* facts demonstrating Ms. Hagar had actual knowledge of any specific wrongful acts. Instead, the SAC summarily claims Ms. Hagar "initiated many fraudulent transfers" and "[knew] Wealth Assistants was operating the fraudulent scheme." (SAC ¶ 264).

Those allegations, however, are "'too generic to satisfy the requirements of actual knowledge of a specific primary violation' under California law." *Bradshaw*, 652 Fed. Appx. at 594 ("General allegations that SLM knew that CCA engaged 'in a criminal and wrongful enterprise' are 'too generic to satisfy the requirements of actual knowledge of a specific primary violation' under California law, nor do conclusory allegations of 'actual knowledge' suffice."). Allegations that Ms. Hagar performed her job duties as the Finance Manager are, likewise, insufficient to support an inference of actual knowledge. The SAC does not allege that Ms. Hagar knowingly initiated fraudulent transfers, knowingly sent fraudulent invoices, or knowingly concealed Wealth Assistants' assets.

Second, Plaintiffs' contention that as the Finance Manager, Ms. Hagar knew or should have known about the fraud is insufficient to pin actual knowledge on her. Under California law, "knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996). Knowledge of suspicious activity is also insufficient to allege a fraud claim. See *Casey*, 127 Cal. App. 4th at 1151 ("alleged knowledge of a fiduciary's suspicious account activities ─ even money laundering ─ without more, does not give rise to tort liability for the banks); *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 n.4 (9th Cir. 2006) (mere allegations that a defendant had a "suspicion of wrongdoing" or knew of "wrongful or illegal conduct . . . d[o] not constitute sufficient pleading" of actual knowledge); *Trabulsi v. Wells Fargo Bank, NA*, No. 17-cv-02088, 2018 U.S. Dist. LEXIS 223698, at *3 (C.D. Cal. Nov. 16, 2018) (rejecting "on notice" allegations to support knowledge element of aiding and abetting claim). Thus, even assuming Ms. Hagar was suspicious of the alleged fraud or even knew about it, that fact without more is insufficient to support a plausible inference that Ms. Hagar had actual knowledge of any of specific wrongful acts.

Finally, "knowledge alone—even specific knowledge—is not enough to state a claim for aiding and abetting." *George v. eBay, Inc.*, 71 Cal.App.5th 620, 641 (2021).

Rather, under California law, aiding and abetting liability requires a defendant to have made "a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1476 (2014); *IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 654 (2018) ("[W]hile aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act."); *Gerard v. Ross*, 204 Cal.App.3d 968, 983 (1988) (an alleged aider and abettor must have "acted with the intent of facilitating the commission of that tort"). Here, the SAC does not allege that Ms. Hagar made a conscious decision to participate in the allegedly fraudulent scheme, and her position as Wealth Assistants' Finance Manager is insufficient to draw a reasonable inference that she knowingly made a conscious decision to participate in the commission of the scheme.

For these reasons, Plaintiffs' aiding and abetting claim as to Ms. Hagar should be dismissed.

### III. PLAINTIFFS' SAC CONTAINS NO FACTS ALLEGING MS. HAGAR SUBSTANTIALLY PARTICIPATED IN THE FRAUD

Plaintiffs do not dispute—and thereby, concede—that the element of substantial assistance must be plead with specificity and that allegations on information and belief are insufficient. Nor do they dispute that the allegations about Ms. Hagar as pled do not show the "who, what, where, when or how" of Ms. Hagar substantially assisted in the commission of the fraudulent scheme, as required by Rule 9(a). Unable to point to specific facts in the SAC, Plaintiffs instead make two meritless arguments.

First, Plaintiffs attempt to deflect attention away from the fact that the SAC pleads zero facts of Ms. Hagar's significant participation by claiming that the element of substantial assistance is not crucial, as long as actual knowledge is alleged. Not so.

Case law is clear that actual knowledge and substantial assistance are separate and distinct elements. *Casey*, 127 Cal.App.4th at 1145.

Plaintiffs' reliance on *Casey* to suggest otherwise in unavailing. Contrary to what Plaintiffs suggest, *Casey* does not hold, or even state in dicta, that the element of substantial assistance is somehow less important than actual knowledge. Rather, in discussing the element of substantial assistance, *Casey* stated that "ordinary business transactions" can satisfy the element if the defendant had actual knowledge the transactions were in furtherance of fraud. *Casey*, 127 Cal.App.4th at 1145. If anything, *Casey* provides further support for Ms. Hagar's motion to dismiss because as set forth above, the SAC is devoid of any facts showing that Ms. Hagar performed certain tasks as Wealth Assistants' Finance Manager with actual knowledge that those tasks were in furtherance of the fraudulent scheme.

Second, Plaintiffs contend that the SAC contains specific facts of Ms. Hagar's significant participation because it alleges that a fraudulent wire transfer in April 2023 contained "christine ops" in the transfer memorandum. (Opp., p. 10.). The problem with Plaintiffs' argument is that the SAC does not contain this allegation. Indeed, nowhere in the SAC do Plaintiffs allege that Ms. Hagar was employed by Wealth Assistants at the time of the April 2023 transfer or that she was involved in it. Nor do they allege that she knew the transfer was fraudulent or that she made a conscious decision to participate in the transfer, knowing it was fraudulent. As such, the Court should disregard this argument in its entirety.

In short, Plaintiffs' complaint fails to allege a single fact demonstrating Ms. Hagar's "*significant* and *active*, as well as a knowing participation in the wrong." *Impac Funding Corp. v. Endresen*, No. SACV 15-588-JLS (JCGx), 2015 U.S. Dist. LEXIS 200540, *6 (C.D. Cal. Dec. 16, 2015) (internal quotations and citations omitted). The fact that Ms. Hagar was employed by Wealth Assistants as its Finance Manager and carried out certain job duties is not enough to plead aiding and abetting fraud. As such, Plaintiffs' aid and abetting claim as to Ms. Hagar fails.

## IV. CONCLUSION

Plaintiffs' attempt to plead aiding and abetting fraud against Ms. Hagar through conclusory allegations falls far short of the federal pleading standards for fraud. The SAC fails to plead specific facts demonstrating Ms. Hagar had actual knowledge of Wealth Assistants' alleged fraudulent scheme, made a conscious decision to participate in it, or provided substantial assistance in its commission. The Court should, therefore, grant Ms. Hagar's motion, and dismiss her from this action.

DATED: April 4, 2025                    NEWFIELD PURITSKY LLP

                                        By:   /s/ Eric A. Puritsky
                                              Eric A. Puritsky
                                        Attorneys for Defendant,
                                        Christine Hagar, erroneously named,
                                        Christine Carroll

## CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2

The undersigned, counsel of record for Defendant Christine Hagar, erroneously named as Christine Carroll, certifies that this brief contains 1,950 words, which complies with the word limit of L.R. 11-6.1 and ¶ G.4 of this Court's Standing Order For Newly Assigned Civil Cases.

DATED: April 4, 2025                      /s/ Eric A. Puritsky
                                          Eric A. Puritsky