1  Nico Banks (CA SBN:344705)
   **BANKS LAW OFFICE**
2  712 H St NE, Unit #8571
3  Washington, DC 20002
   Tel.: 971-678-0036
4  Email: nico@bankslawoffice.com

5
   Richard A. Nervig (CA SBN:226449)
6  **RICHARD A. NERVIG, P.C.**
7  501 West Broadway, Suite 800
   San Diego, CA 92101
8  Phone: 760-451-2300
9  Email: richard@nerviglaw.com

10 *Attorneys for Plaintiffs*

11

12             **UNITED STATES DISTRICT COURT**
13             **CENTRAL DISTRICT OF CALIFORNIA**

14 DAVID HOUGH; *et al.*                )
                                        )  Case No.: 2:24-cv-02886-WLH-SK
15                    Plaintiffs,       )
                                        )  Presiding Judge: Hon. Wesley L. Hsu
16      vs.                             )
                                        )  Hearing Time: January 30, 2026, 1:30
17 MAX K. DAY; *et al.*                 )  p.m
                                        )
18                    Defendants.       )  Hearing Location: First Street
                                        )  Courthouse, 350 W, 1st Street,
19                                      )  Courtroom 9B, 9th Floor, Los Angeles,
                                        )  California 90012
20                                      )  Trial Date: July 21, 2026
21                                      )
                                        )
22 _____     )

23

24 **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR**
   **PRELIMINARY APPROVAL OF CLASS SETTLEMENTS**

25

26

27

28

**MOTION**

Pursuant to Fed R. Civ. P. 23(e), Plaintiffs David Hough, Amund Thompson, Isabel Ramos, Anthony Ramos, and Michael Nibarger (collectively, "Plaintiffs" or "Class Representatives"), through their legal counsel Banks Law Office and Richard A. Nervig P.C. (collectively, "Class Counsel"), move the Court for the following relief:

1.     Preliminary approval of proposed class action settlements (the "Settlements") with all remaining defendants on the terms set forth in the settlement agreements, attached as Exhibits B-E;

2.     Provisional certification of a settlement class (the "Settlement Class") consisting of:

> All individuals who (a) purchased services relating to the setup or management of an online store from Yax Ecommerce LLC, Precision Trading Group, LLC, WA Distribution LLC, Providence Oak Properties, LLC, WA Amazon Sellers LLC, and Yax IP and Management Inc. (collectively, "Wealth Assistants") between June 2021 and November 2023, (b) did not make a profit on their purchase of that business opportunity, and (c) have never been owners, employees, legal representatives, or successors of Wealth Assistants.

3.     The appointment of Stretto as Settlement Administrator in this case;

4.     Approval of the proposed claims process to determine each class member's damages;

5.     Approval of the proposed plan of distribution that contemplates distribution of settlement funds to settlement class members on a *pro rata* basis by the Settlement Administrator;

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS

6.    Approval of the form and method for providing notice of the Settlements to the Settlement Class;

7.    Preliminary approval of Banks Law Office and Richard A. Nervig P.C. as Settlement Class Counsel; and,

8.    Scheduling a hearing at which the Court will consider (a) final approval of the Settlements; (b) certification of the Settlement Class; (c) Settlement Class Counsel's request for reasonable attorneys' fees (not to exceed $55,500) and litigation expenses (not to exceed $10,000); and (d) such other matters as the Court may deem appropriate.

9.    Staying all proceedings in this matter pending the Final Approval Hearing, except for those actions necessary to implement and effectuate the terms of the Settlements and secure their final approval.

This motion is supported by the Declaration of Nico Banks filed herewith, (hereinafter "Banks Decl.").

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................. - 1 -

II.    BACKGROUND ................................................................................ - 2 -

   A.   Class Members' Claims Against Defendants .............................. - 2 -

   B.   Procedural Background ............................................................... - 3 -

   C.   The Settlement Process ............................................................... - 4 -

III.   SUMMARY OF KEY SETTLEMENT TERMS ............................. - 6 -

   A.   The Settlement Class Definition ................................................ - 6 -

   B.   The Settlements' Consideration, Administrative Fees, And Attorneys'
        Fees .............................................................................................. - 6 -

   C.   Release of Claims ........................................................................ - 7 -

   D.   Claim Form .................................................................................. - 8 -

   E.   Notice of Settlement ................................................................... - 9 -

IV.    ARGUMENT ................................................................................... - 10 -

   A.   The Proposed Settlements Warrant Preliminary Approval ............... - 10 -

      1.   Adequacy of Representation ................................................. - 12 -

      2.   Arms-Length Negotiation ..................................................... - 13 -

      3.   Adequacy of Relief. .............................................................. - 14 -

      4.   Equitable Treatment ............................................................. - 19 -

   B.   The Court Should Make a Preliminary Determination that the
        Proposed Settlement Class Satisfies the Standard for Certification
        Under Rule 23............................................................................... - 19 -

      1.   The Rule 23(a) Requirements Are Met................................. - 20 -

      2.   The Requirements of Rule 23(b)(3) Are Met........................ - 23 -

   C.   The Form and Method of Notice Should be Approved. .................. - 26 -

VI.    CONCLUSION ............................................................................... - 28 -

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS

# TABLE OF AUTHORITIES

**Cases**

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666–67 (E.D. Cal. 2008) ........................ - 13 -

*Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) ............................. - 24 -, - 25 -

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013) - 24 -, - 25 -

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) ............................ - 27 -

*Collins v. Cargill Meacollt Sols. Corp.*, 274 F.R.D. 294, 301–02 (E.D. Cal. 2011) - 11 -

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ........................................... - 24 -

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011)- 20 -, - 21 -, - 22 -

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................ - 25 -

*In re Hyundai and Kia Fuel Economy Litig.*, 2019 WL 2376831, *4-5 (9th Cir. June 6, 2019) ........................................................................................................ - 20 -

*In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ......................... - 10 -

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) - 11 -

*In re Zynga Sec. Litig.*, No. 12-CV-04007- JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) ................................................................................................. - 19 -

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) ..................... - 21 -

*Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 990 (9th Cir. 2023) ..................... - 18 -

*Ontiveros v. Zamora*, 303 F.R.D. 356, 367 (E.D. Cal. 2014) .............................. - 26 -

*Parker v. Foster*, No. 05–0748, 2006 WL 2085152, at *1 (E.D. Cal. July 26, 2006) ...- 13 -

*Pecover v. Elec. Arts Inc.*, No. C 08–2820 VRW, 2010 WL 8742757, at *13 (N.D. Cal. Dec. 21, 2010) ....................................................................................... - 21 -

*Rooker v. Gen. Mills Operations, LLC*, No. CV 17-467 PA (PLAX), 2017 WL 10402921, at *3 (C.D. Cal. Aug. 10, 2017) ...................................................................... - 20 -

*Schueneman v. Arena Pharms., Inc.*, 2018 WL 1757512, at *7 (S.D. Cal. Apr. 12, 2018) ............................................................................................................... - 18 -

*Scott v. ZST Digital Networks, Inc.*, 2013 WL 12126744, at *7 (C.D. Cal. Aug. 5, 2013) ............................................................................................................... - 18 -

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) .......... - 13 -, - 14 -

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ........................ - 10 -, - 11 -

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) .................... - 24 -

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ......................... - 24 -

**Statutes**

Fed. R. Civ. P. 23 ..................................................... - 11 -, - 22 -, - 23 -, - 26 -

**Treatises**

4 Newberg on Class Actions § 13:10 (5th ed. 2011) ........................................ - 11 -

# MEMORANDUM IN SUPPORT

## I.    INTRODUCTION

Plaintiffs have reached four separate settlements in this action with all remaining defendants, namely: (1) Defendants Max K. Day; Max O. Day; Michael Day; Jared Day; Precision Trading Group, LLC; and Providence Oak Properties LLC (collectively, the "Day Defendants"); (2) Christine Hagar; (3) Total Apps, Inc. and Reyhan Pasinli (collectively, the "Total Apps Defendants"); and (4) Travis Marker; The Law Office of Travis R. Marker, a Professional Corporation (d.b.a. "Marker Law and Mediation"); and Parlay Law Group, A Professional Corporation (collectively, the "Marker Defendants," and together with the other aforementioned defendants, "Defendants," and together with the other aforementioned parties, the "Parties") that represent a reasonable recovery for the proposed Settlement Class and avoid the costs and risks associated with continued litigation (including the high likelihood that there would be no recovery) following further motion practice and/or trial.

Specifically, the Day Defendants have agreed to pay $125,000; Christine Hagar has agreed to pay $24,500; the Marker Defendants have agreed to pay $57,500; and the Total Apps Defendants have agreed to pay $15,000, for a combined recovery of $222,000.00. If approved, the combined recovery could be used to pay Class Counsel's reasonable attorneys' fees (not to exceed $55,500), class counsel's litigation expenses (not to exceed $10,000), and administrative expenses (not to exceed $28,000, provided certain conditions are satisfied) approved by the Court. The remaining amount of the

settlement fund would be distributed to class members. In return, the Settlement Class will grant Defendants releases of all claims against them.

Plaintiffs respectfully request that the Court provisionally certify the Settlement Class, and schedule a final approval hearing, because all factors for certification are met. In particular, the proposed settlements are the product of mediated arms-length negotiations and were reached after investigation, discovery, and hard-fought litigation. The proposed settlements are fair, reasonable, and a significant recovery based on the risks of establishing liability, certifying a class, and collecting on any judgment.

The Court should approve the proposed Notice and method of notice to class members because the Notice complies with the requirements of Rule 23(c)(2)(B), and the proposed method of notice satisfies the requirements of Rule 23 and due process. The Court should also approve the proposed claims process because it will efficiently and reliably determine the magnitude of each class member's damages without imposing an undue burden on the class members.

## II.     BACKGROUND

### A. Class Members' Claims Against Defendants

Plaintiffs' claims are based on Defendants' alleged participation in Wealth Assistants' alleged fraudulent scheme. Plaintiffs allege that beginning in 2021 and continuing until October of 2023,

> Wealth Assistants advertised that it would provide its clients with
> substantial income by setting up and managing lucrative online Amazon

stores that the clients would own. But Wealth Assistants did not provide the promised services. Instead, it used the fees it collected from Plaintiffs and its other clients for the benefit of Wealth Assistants' owners.

ECF 306 (hereinafter "TAC"), ¶ 9.

Plaintiffs allege that the Defendants substantially participated in Wealth Assistants' fraudulent scheme despite knowing it constituted a fraud. (*Id.* at ¶¶ 171-173). In particular, Plaintiffs allege that (1) the Day Defendants provided management services and sales services to Wealth Assistants, (*id.* at ¶¶ 151-153), (2) Christine Hagar served as Wealth Assistants' Finance Manager, (*id.* at ¶¶ 154-155), and (3) the Marker Defendants and the Total Apps Defendants served as payment processors for Wealth Assistants by helping the company move assets between bank accounts and conceal assets, (*id.* at ¶¶ 91-95; 135-148).

Based on these and other allegations, Plaintiffs asserted a cause of action for aiding and abetting a fraud against all defendants, (*id.* at ¶¶ 167-173), and an additional cause of action for aiding and abetting a breach of fiduciary duty against defendant Christine Hagar. (*Id.* at ¶¶ 174-180).

**B.  Procedural Background**

On April 8, 2024, Plaintiffs filed this putative class action, which asserted claims against some, but not all, of the Defendants. (ECF 1). On May 20, 2024, Plaintiffs filed their First Amended Complaint, which asserted claims against all of the Defendants. (ECF 56).

On July 4, 2024, Defendants Max K. Day, Max O. Day, Michael Day, and

Precision Capital (among other defendants) filed a motion to compel arbitration. (ECF 85). On July 27, 2024, the Court entered an order denying in part the motion to compel arbitration. (ECF 126).

On January 24, 2025, the Court ordered that Max K. Day, Max. O, Day, Michael Day, and Precision Trading Group, LLC, were enjoined from withdrawing, transferring, spending, or otherwise disposing of any assets held by or for their benefit without leave of Court, except that Max K. Day, Max O. Day, and Michael Day could spend what was necessary for ordinary personal or household expenditures, which expenditures may not exceed $9,000.00 per month without leave of the Court and could pay reasonable fees, costs and litigation-related expenses to attorneys and their firms in order to defend themselves in this action and any related actions. (ECF 231).

On June 3, 2025, Plaintiffs filed the operative Third Amended Complaint (ECF 306), which asserted a cause of action for "aiding and abetting a fraud" against all Defendants, and also asserted a cause of action for "aiding and abetting a breach of fiduciary duty" against Defendant Christine Hagar.

Throughout the proceeding, the Parties conducted written discovery. The parties also engaged in motion practice to resolve discovery disputes regarding subpoenas. (e.g., ECF 95).

On August 8, 2025, Max K. Day, Michael Day, and Max O. Day filed a notice stating that they collectively had fewer than $150,000 of collectible assets. (ECF 324).

## C. The Settlement Process

On August 21, 2025, Plaintiffs, Christine Hagar, the Marker Defendants, and the Total Apps Defendants participated in a mediation presided over by mediator Scott Dogulas, who is a skilled and highly regarded mediator with significant experience resolving investment-related disputes (the Day Defendants did not participate in the mediation). (Banks Decl. at ¶ 20). At that mediation, Plaintiffs reached a settlement in principle with the Marker Defendants, who agreed to pay $57,500 to settle the case on class-wide basis, provided that they were able to obtain a loan that would enable them to make that payment (Marker has since obtained that loan). (*Id.* at ¶ 21). Plaintiffs did not reach a settlement in principle with the other defendants on that day. (*Id.* at ¶ 20).

After the mediation, Scott Douglas continued facilitating settlement discussions between Plaintiffs, Christine Hagar, and the Total Apps Defendants. (*Id.* at ¶ 22). In September of 2025, Plaintiffs reached settlements in principle with Christine Hagar, who agreed to pay $24,500 to settle the case on a class-wide basis, and the Total Apps Defendants, who agreed to pay $15,000 to settle the case on a class-wide basis. (*Id.*).

Plaintiffs had separate arms-length settlement negotiations with the Day Defendants. Those negotiations began in June of 2025 and continued until the parties reached a settlement in principle in September of 2025. (*Id.* at ¶ 23). The negotiations consisted of dozens of emails, videoconferences, and phone calls. The primary topic of discussion in those negotiations was the Day Defendants' limited financial means to fund a potential settlement. (*Id.*). The Day Defendants filed with the Court affidavits stating that they collectively had fewer than $150,000 in collectible assets available. (ECF 324).

1   Ultimately, the Day Defendants agreed to pay $125,000 to settle the claims on a class-

2   wide basis. (Banks Decl. at ¶ 23).

3
    The Parties then drafted and signed settlement agreements attached as **Exhibits**
4
5   **B - E** to the Banks Decl.

6   **III.    SUMMARY OF KEY SETTLEMENT TERMS**

7       **A.  The Settlement Class Definition**
8
9   The proposed Settlement Class is identical to the class defined in the TAC,

10  specifically:

11
                All individuals who (a) purchased services relating to the
12              setup or management of an online store from Yax
13              Ecommerce LLC, Precision Trading Group, LLC, WA
                Distribution LLC, Providence Oak Properties, LLC, WA
14              Amazon Sellers LLC, and Yax IP and Management Inc.
15              (collectively, "Wealth Assistants") between June 2021
                and November 2023, (b) did not make a profit on their
16              purchase of that business opportunity, and (c) have never
17              been owners, employees, legal representatives, or
                successors of Wealth Assistants.
18
19
20  (TAC, ¶ 159; Banks Decl. Exh. B at 1; Exh. C at 1; Exh. D at 1; Exh.

21  E at 1).

22
        **B. The Settlements' Consideration, Administrative Fees, And**
23          **Attorneys' Fees**
24
25  The total amount to be paid by the Defendants to the Settlement Class is

26  $222,000. Of that total, the Day Defendants will contribute $125,000 (Banks Decl.

27  Exh. B at ¶ 5(a)); Hagar will contribute $24,500 (Banks Decl. Exh. C at ¶ 5(a)); the

28

Total Apps Defendants will contribute $15,000 (Banks Decl. Exh. D at ¶ 6(a)); and the Marker Defendants will contribute $57,500 (Banks Decl. Exh. E at ¶ 5(a)). The consideration may be used to pay any attorneys' fees (which will not exceed $55,500), litigation costs (which will not exceed $10,000), and administrator costs (which will not exceed $28,000, so long as the number of class members does not exceed 775,000 and the number of claim forms submitted does not exceed 155,000) approved by the Court. (Banks Decl. Exh. B at ¶ 5(a); Exh. C at ¶ 5(a); Exh. D at ¶ 6(a); Exh. E at ¶ 5(a)). The amount of the settlement consideration remaining after attorneys' fees, litigation costs, and administrator costs will be distributed to the class on a *pro rata* basis described in more detail below. (*Id.*).

### C. Release of Claims

Once the Settlements are effective, the Settlement Class Members who have not timely and validly excluded themselves from the Settlement Class, and any person or entity claiming by, for, on behalf of, or through them, will provide a broad release of all claims, known and unknown, against Released Parties, meaning the Defendants, and certain individuals and entities related to or affiliated with them. (Banks Decl. Exh. B, ¶ 9; Exh. C, ¶ 8; Exh. D, ¶ 9, Exh. E, ¶ 8).

The Released Claims include any and all claims the Class Members ever had against the Released Parties, including unknown and unsuspected claims, related in any way to the conduct alleged in this Litigation or the factual predicate of this Litigation. (*Id.*).

### D. Claim Form

There is no reliable information available to the parties about how much money each class member spent on the business opportunity they purchased from Wealth Assistants, or how much each class member received from that business opportunity. As a result, the parties agree that administering a class-wide settlement will require administering a claims process.

The proposed claim form is attached as **Exhibit G** to the Banks Declaration. It instructs class members about how to provide proper proof of their claim. More specifically, the claim form requires class members to provide to the Settlement Administrator proof of any payments they made to Wealth Assistants or its affiliates in connection with the business opportunity the class members purchased from Wealth Assistants (namely, the upfront "onboarding" payment to purchase the online Amazon store from Wealth Assistants, and any subsequent "inventory" payments sent to Wealth Assistants). The form explains that proof of payments could take the form of bank account statements, credit card statements, wire transfer confirmations, or other similar documentation.

Next, the form directs the class members to state, under penalty of perjury, how much money they received in connection with the business opportunity purchased from Wealth Assistants. The form instructs class members that "money received in connection with the business opportunity purchased from Wealth Assistants" includes (1) any payments that the class member received from Wealth Assistants or its affiliates, including

complete or partial refund payments, and (2) any revenue the class member received from the sale of inventory in the ecommerce store purchased from Wealth Assistants.

Class members will be able to complete the claim form, and provide the required proof of payment to Wealth Assistants, by mailing those items to the Settlement Administrator or by submitting them through an online portal that will be built by the Settlement Administrator. The proposed class notice (discussed below) directs class members to that online portal.

The class member's "damages" will be deemed to be the total payments they made to Wealth Assistants less the money they received in connection with the business opportunity they purchased from Wealth Assistants. Settlement funds would be distributed to class members *pro rata* to the class members' damages. (Banks Decl. Exh. B, ¶ 3(c); Exh. C, ¶ 3(c); Exh. D, ¶ 4(c); Exh. E, ¶ 3(c)).

### E. Notice of Settlement

Within thirty (30) calendar days of the Court's order preliminarily approving the Settlements, Settlement Class Counsel, through the Settlement Administrator, shall provide notice to Settlement Class Members by emailing and mailing (via a postcard) a link to the notice of proposed settlements attached as **Exhibit A** to all potential Settlement Class Members at the email addresses and mailing addresses available in the Day Defendants' records (which Day Defendants will provide to Plaintiffs within twenty one days of executing the Settlement Agreement) or which otherwise may be identified through further reasonable effort. The notice will be available on a website

published by the Settlement Administrator. (Banks Decl. Exh. B, ¶ 3; Exh. C, ¶ 3; Exh. D, ¶ 4, Exh. E, ¶ 3).

For economy and efficiency, and to minimize the potential for confusion by Settlement Class Members, the approval, notice, and distribution process for the pending settlements should be coordinated in a single proceeding. The parties request that a single notice to the Class address all settlements and that a single hearing be scheduled to address final approval of the settlements. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("The court supports consolidation, as multiple notices to members of the class would likely confuse the class and cause plaintiffs to incur unnecessary expenses.").

## IV. ARGUMENT

### A. The Proposed Settlements Warrant Preliminary Approval.

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or settlement of class action claims. "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

Approval of a settlement is a multi-step process, beginning with (i) preliminary approval, which then allows (ii) notice to be given to the class and objections to be filed, after which there is (iii) a motion for final approval and fairness hearing. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval is thus not a dispositive assessment of the fairness of the proposed settlement, but rather determines

whether it falls within the "range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted); *see also Collins v. Cargill Meacollt Sols. Corp.*, 274 F.R.D. 294, 301–02 (E.D. Cal. 2011).

The Court's primary objective at this stage is to establish whether to direct notice of the proposed settlements to the class, invite the class's reaction, and schedule a final fairness hearing. 4 Newberg on Class Actions § 13:10 (5th ed. 2011). Preliminary approval establishes an "initial presumption" of fairness such that notice may be given to the class. *Tableware*, 484 F. Supp. 2d at 1079.

To preliminarily approve a class action settlement, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). *See e.g., Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). Specifically, the Court must examine the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23 (e)(2).

As discussed below, in this case, all four factors cut in favor of granting

- 11 -

preliminary approval.

### 1.    Adequacy of Representation

Class counsel have adequately represented the class. Upon filing the initial complaint, class counsel filed a motion for a temporary restraining order that aimed to prevent Defendants Max K. Day, Max O. Day, and Michael Day—among other defendants—from transferring assets in order to dodge creditors. (ECF 9). The motion was supported by over twenty affidavits from Wealth Assistants' former clients, among other evidence, and the Court granted the motion in part. (*Id.*). That initial relief helped position the class members to recover some assets from the Day Defendants.

Class counsel also successfully opposed a motion by the Day Defendants to compel several of the plaintiffs to arbitrate their dispute. (ECF 85). As discussed in the opposition brief (ECF 109), if the motion had been granted in its entirety, it would have rendered relief for class members impracticable.

Class counsel also engaged in extensive party discovery, third-party discovery, and motion practice regarding discovery (e.g., ECF 95), and filed three detailed amended complaints. (ECF 56, 173, 306).

The class representatives have also adequately represented the class. They provided necessary documentation to class counsel, participated in extensive teleconferences with class counsel, attended the mediation, and actively participated in settlement discussions. (Banks Decl., ¶ 14). Accordingly, this factor weighs in favor or preliminary approval.

### 2.    Arms-Length Negotiation

The proposed Settlements arise out of "serious, informed, arm's-length, non-collusive negotiations" between counsel for the parties. *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016). Plaintiffs' negotiations with the Total Apps Defendants, the Marker Defendants, and Hagar occurred before a private mediator experienced in investment-related matters, and the negotiations continued for several weeks after the mediation occurred. (Banks Decl. ¶¶ 20-22.); *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666–67 (E.D. Cal. 2008) (noting the parties' enlistment of "a prominent mediator with a specialty in [the subject of the litigation] to assist the negotiation of their settlement agreement" as an indicator of non-collusiveness) (*citing Parker v. Foster*, No. 05–0748, 2006 WL 2085152, at *1 (E.D. Cal. July 26, 2006)). Plaintiffs' negotiations with the Day Defendants occurred over many months, over dozens of videoconferences, telephone conferences, and emails. (Banks Decl. ¶ 23.). All negotiations were adversarial but professional.

Prior to mediation, Plaintiffs engaged in extensive investigation and discovery, which included interviewing Plaintiffs and dozens of other class members, reviewing and analyzing tens of thousands of pages of Defendants' records, and conducting legal research regarding application of law. (Banks Decl. ¶ 16).

Because the agreement was the product of "serious, informed, non-collusive negotiations," this factor weighs in favor of preliminary approval. *See Spann*, 314 F.R.D. at 319.

### 3.    Adequacy of Relief.

### i.    Risks of Trial and Appeal

When evaluating the adequacy of relief in a proposed class settlement, courts first consider the costs and risks of trial or appeal. Here, the Settlements provide the benefit of $222,000 without further risk to the Settlement Class, and the most important risk avoided by this settlement is the risk—indeed, the very high likelihood—that the class members will recover nothing if litigation continues because Defendants Hagar and Total Apps will likely succeed in their pending motions to dismiss, and the very limited pool of collectible assets available from the remaining defendants (the Day Defendants and the Marker Defendants) will soon be exhausted by litigation.

Indeed, months ago, Defendants Max K. Day, Max O. Day, Michael Day, Precision Trading Group LLC, and Providence Oak Properties LLC filed a notice—supported by affidavits—stating that they (along with certain other defendants) collectively had less than $150,000 of collectible assets available. (ECF 324). The other Day Defendant, Jared Day, later provided Class Counsel with a personal financial statement showing that he had fewer than $30,000 of assets. (Banks Decl. ¶ 18). The few collectible assets that the Day Defendants had available will soon be exhausted by continued litigation, so any judgment that Plaintiffs could ultimately obtain against the Day Defendants would very likely be worthless. Accordingly, the $125,000 settlement from the Day Defendants is likely more than the class would obtain by continuing to litigate against the Day Defendants.

Similarly, the Marker Defendants agreed to settle the claims against them for $57,500, which is reasonable under the circumstances. At the mediation, the Marker Defendants provided Class Counsel with an affidavit stating that the Marker Defendants collectively had fewer than $20,000 in assets and an income of approximately $2,000 per month. (*Id.* at ¶ 19). The parties then reached an agreement in principle for the Marker Defendants to settle the case for $57,500, provided that the agreement would only become effective if the Marker Defendants successfully obtained a loan that enabled them to pay the settlement amount. (*Id.* at ¶ 21). The Marker Defendants successfully obtained that loan. (*Id.* at ¶ 21). Because the Marker Defendants have so few collectible assets, the $57,500 settlement is more than the class could expect to obtain by continuing to litigate their claims against the Marker Defendants.

Furthermore, Defendant Christine Hagar agreed to settle the claims against her for $24,500, which is reasonable under the circumstances. Christine Hagar provided Class Counsel with an affidavit showing that she had less than $10,000 of liquid assets available. (*Id.* at ¶ 17). If Hagar did not prevail in her forthcoming motion to dismiss, she would likely spend those assets on attorneys' fees and litigation expenses in the course of the remainder of this proceeding (including remaining discovery, class certification, dispositive motions, and trial). Furthermore, Hagar would have a high likelihood of prevailing on her forthcoming motion to dismiss. The Court previously dismissed without prejudice Plaintiffs' Second Amended Complaint against Hagar

(ECF 295), and although Plaintiffs' TAC alleges additional details about Hagar's preparation of Wealth Assistants' financial records, it does not allege that Hagar participated in making fraudulent statements to Plaintiffs or in Wealth Assistants' operations. (TAC, ¶ 154). Accordingly, the $24,500 settlement from Hagar is likely more than the class would obtain by continuing to litigate against her.

Similarly, Total Apps Defendants will very likely succeed in their pending motion to dismiss (ECF 342) if the settlement, in which Total Apps agreed to pay $15,000, is not approved. While Plaintiffs believed they would succeed in their claims against the Total Apps Defendants when the Third Amended Complaint was filed, the Court's recent order dismissing Bank of America with prejudice (ECF 344) provided a very strong indication that Total Apps Defendants would also succeed in their motion to dismiss. Like Bank of America, the Total Apps Defendants are "payment processing defendants" that allegedly learned of Wealth Assistants' fraud in the course of processing payments for Wealth Assistants. The Court found that it was implausible that Bank of America learned of Wealth Assistants' fraud in the course of processing payments (ECF 344), and it is very likely that the Court would make the same finding with respect to the Total Apps Defendants when ruling on the Total Apps Defendants' pending motion to dismiss.

For the reasons discussed above, for all four settlements, the consideration the plaintiffs will receive is very likely more than those plaintiffs would receive if they continued litigating against each respective defendant.

### ii.  Method of Distribution

The proposed method of distribution is for the proposed Settlement Administrator to distribute the net settlement proceeds (i.e., all amounts after deduction for Court-approved fees, expenses, and a potential service award) by using the Claims Process described above. In particular, to receive a portion of the settlement fund, class members will be required to fill out the claims form, which requires them to state the amount they paid to Wealth Assistants and the amount they received in connection with the business opportunity they purchased from Wealth Assistants. Class Members will also be required to provide proof of the amount they paid to Wealth Assistants, which proof could take the form of a wire transfer confirmation or a bank account statement, for example. Class members will need to submit the claim form and accompanying proof to the Settlement Administrator no later than 45 days after the Notice is issued.

Each class member's damages will be deemed to be the amount they paid to Wealth Assistants less the amount they received in connection with the business opportunity they purchased from Wealth Assistants. The settlement funds will be distributed to all class members who adequately fill out the claim form and provide proof of payment to Wealth Assistants, and the amount paid to each class member will be *pro rata* to their damages.

This is a reasonable and rational way for apportioning recovery across investors. "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'" *Scott v. ZST Digital Networks, Inc.*, 2013

WL 12126744, at *7 (C.D. Cal. Aug. 5, 2013) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004)). Settlement Class Members who have not submitted a timely and valid Request for Exclusion – and who have submitted the required claim form and proof of their payments to Wealth Assistants – will receive their court-approved share of the remaining Settlement Fund, after deductions of any notice and settlement administration costs and payment of any fees or litigation costs ordered by the Court.

Because this distribution method has a reasonable and rational basis (and treats all Settlement Class Members fairly and equally), the proposed method of distribution should be granted preliminary approval. *See Schueneman v. Arena Pharms., Inc.*, 2018 WL 1757512, at *7 (S.D. Cal. Apr. 12, 2018).

### iii.    Proposed Award of Attorneys' Fees

In evaluating the adequacy of relief, courts also consider the proposed award of attorneys' fees, including timing of payment. The Ninth Circuit allows two ways to determine attorneys' fees awards in class actions: (1) the "lodestar" method and (2) the "percentage-of-recovery" method. *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 990 (9th Cir. 2023). "The typical benchmark for the percentage-of-recovery approach is 25%, but a court can—as in the lodestar method—adjust that benchmark up or down." *Id.* at 990.

Here, Plaintiffs have not yet made a motion for attorneys' fees, but Plaintiffs have stated that they will not apply for an award of attorneys' fees of more than

$55,500, which is 25 percent of the total settlement fund. As Plaintiffs' forthcoming motion for attorneys' fees will show, the requested fees will be a small fraction of the fees that would be calculated under the "lodestar" method. Thus, the reasonableness of the forthcoming request for attorneys' fees cuts in favor of granting preliminary approval of the settlement.

### iv.    23(e)(3) Agreements

In evaluating the adequacy of relief, courts also consider "any agreement required to be identified under Rule 23(e)(3)." Other than the settlement agreements between Plaintiffs and the Defendants, there are no other agreements in this case required to be identified under Rule 23(e)(3). (Banks Decl. at ¶ 24).

### 4.    Equitable Treatment

The fourth factor to consider is whether the Settlements grant preferential treatment to Settlement Class Representatives or segments of the Settlement Class. The Settlements do not. The method of distribution is designed to compensate all Settlement Class Members on a *pro rata* basis pursuant to the proposed plan of distribution. The Settlement Class Representatives will not be favored or treated differently under that plan. Furthermore, the Class Representatives have not requested any service awards. Thus, this plan has a reasonable and rational basis and weighs in favor of approval. *See In re Zynga Sec. Litig.*, No. 12-CV-04007- JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015).

### B.    The Court Should Make a Preliminary Determination that the Proposed Settlement Class Satisfies the Standard for Certification

**Under Rule 23.**

To certify the proposed Settlement Class, the Settlement Class Representatives must satisfy all four of the requirements of Rule 23(a) and at least one basis for certification under Rule 23(b). *In re Hyundai and Kia Fuel Economy Litig.*, 2019 WL 2376831, *4-5 (9th Cir. June 6, 2019) (en banc). In this case, Plaintiffs seek certification pursuant to Rule 23(b)(3).

**1. The Rule 23(a) Requirements Are Met.**

**a. The Settlement Class Is So Numerous that Joinder Is Impracticable.**

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). "This numerosity is presumed where the plaintiff class contains forty or more members." *Rooker v. Gen. Mills Operations, LLC*, No. CV 17-467 PA (PLAX), 2017 WL 10402921, at *3 (C.D. Cal. Aug. 10, 2017). Here, Plaintiffs alleged that more than 600 individuals fall within the class definition, firmly satisfying the numerosity requirement. (TAC, ¶ 9).

**b. Numerous Common Issues Exist.**

Under Rule 23(a)(2), Plaintiffs must establish that there are "questions of law or fact common to the class." The requirements of Rule 23(a)(2) have "been construed permissively." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Accordingly, commonality is "a low hurdle easily surmounted." *Pecover v. Elec. Arts Inc.*, No. C 08–2820 VRW, 2010 WL 8742757, at *13 (N.D. Cal. Dec. 21, 2010)

(citation omitted). "All questions of fact and law need not be common to satisfy the rule." *Ellis*, 657 F.3d at 981 (internal quotation marks and citation omitted). Rather, commonality requires the existence of even a single common contention that is capable of class-wide resolution. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *WalMart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). However, the common contention or contentions necessary to establish commonality must be "apt to drive the resolution of the litigation." *Id.* (citation omitted).

Here, the Complaint identifies numerous common issues of fact and law, each of which are amenable to class-wide proof, including, without limitation, the following:

- whether Wealth Assistants included in its marketing materials statements that were not true, or omitted to state material facts about that business opportunity necessary to make statements made not misleading;

- whether those misstatements or omissions were material;

- whether Defendants knew that those statements were not true;

- whether those misrepresentations and omissions—such as the representation that the business opportunities Wealth Assistants was offering were profitable—were necessarily relied upon by any individual who purchased the business opportunity Wealth Assistants was offering;

(TAC, ¶ 161). The determination of these common issues would resolve the allegations for the entire Class "in one stroke." *See Jimenez*, 765 F.3d at 1165. As such, the commonality requirement is satisfied.

### c. The Settlement Class Representatives' Claims Are Typical of Those of Other Settlement Class Members.

The third requirement is that the "claims … of the representative parties are typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992)). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis*, 657 F.3d at 984 (internal quotation marks and citation omitted).

Here, Plaintiffs' claims arise from the same events or course of conduct that give rise to claims of other Settlement Class Members, and the claims asserted are based on the same legal theories. Specifically, Plaintiffs allege that all Settlement Class Members purchased a business opportunity fraudulently sold by Wealth Assistants, and that the Defendants participated and aided in that fraudulent scheme. Further, the Settlement Class Representatives' claims are not subject to any unique defenses that could make them atypical of a Settlement Class Member. (Banks Decl. ¶ 13). Therefore, the Settlement Class Representatives' claims are typical.

### d. The Settlement Class Representatives and Their Counsel Adequately Represent the Interests of the Settlement Class.

The final requirement of Rule 23(a) is that the representative plaintiffs will fairly

and adequately represent the interests of the Class. The relevant inquiries are "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020).

As to the first, Plaintiffs and Settlement Class Counsel have no known conflicts with other class members. (Banks Decl. ¶ 13). As to the second, Plaintiffs and Settlement Class Counsel have demonstrated vigorous prosecution, as described in the "adequacy of relief" section of this brief above. Therefore, the Settlement Class Representatives and their Counsel adequately represent the interests of the Settlement Class.

### 2. The Requirements of Rule 23(b)(3) Are Met.

A class may be certified under Rule 23(b)(3) when: (a) "questions of law or fact common to the class members predominate over any questions affecting only individual members"; and (b) the class action mechanism is "superior" to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied in this case.

### a. Common Questions of Fact or Law Predominate.

"The predominance inquiry . . . asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (citation omitted), abrogated on other grounds by

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). "The focus is on the relationship between the common and individual issues." *Id*. (internal quotation marks and citation omitted). To ensure that the class action is more efficient than individual actions, Rule 23(b)(3) requires that common issues predominate over issues that are particular to individual class members. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud.").

Rule 23(b)(3) requires only a showing that questions common to the class predominate, and a plaintiff seeking class certification is not required to prove the answers to such questions. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013). Moreover, predominance does not require a plaintiff to show a complete absence of individual issues. Rather, the predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation- defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks and citation omitted).

To prevail on the claims against Defendants at trial, the Settlement Class Representatives would need to prove that: (1) Wealth Assistants constituted a fraudulent scheme because it made untrue statements of material facts or omitted to state material facts about the business opportunity it offered; and (2) Defendants substantially participated in that fraudulent scheme despite knowing that it constituted

a fraud. The Settlement Class Representatives would likely rely on the same evidence when establishing each of the foregoing at trial, and thus, common issues predominate over individual issues. As in *Amgen*, the proposed Settlement Class is "entirely cohesive: It will prevail or fail in unison. In no event will the individual circumstances of particular class members bear on the inquiry." *Amgen*, 568 U.S. at 460.

### b. The Class Action Mechanism is Superior to Any Other Method of Adjudication.

Rule 23(b)(3) also requires that the Court determine whether a class action is superior to other methods of adjudication. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

A class action is the superior method for resolving the claims at issue in this action. But for a class action, class members would be forced to file over six hundred individual claims that "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs[,]" thereby demonstrating the superiority of a class action. *Hanlon*, 150 F.3d at 1023. Further, because the claims are being certified for purposes of settlement, the Court need not consider any purported issues with respect to the manageability of this case as a class action. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems …

for the proposal is that there be no trial.").

For these reasons, the proposed Settlement Class meets the requirements of Rule 23(a) and 23(b)(3), and the Court should grant provisional certification for purposes of effecting the proposed Settlements.

### C. The Form and Method of Notice Should be Approved.

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a court approving a class action settlement "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "Although that notice must be 'reasonably certain to inform the absent members of the plaintiff class,' actual notice is not required." *Ontiveros v. Zamora*, 303 F.R.D. 356, 367 (E.D. Cal. 2014) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)).

Here, the form and method of notice proposed by the Settlement Class Representatives are appropriate because the form of the Notice complies with the requirements of Rule 23(c)(2)(B)(i)-(vii); and the method of notice complies with Rule 23(c)(2)(B) and due process requirements by providing the "best notice that is practicable under the circumstances."

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

and to come forward and be heard." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

Here, the content of the proposed Notice complies with the specific requirements of Rule 23(c)(2)(B) because it clearly and concisely states in plain, easily understood language: (i) the nature of the action (Banks Decl., Exh. A at 3-4); (ii) the class definition (Banks Decl., Exh. A at 1); (iii) the claims, issues, and defenses (Banks Decl., Exh. A at 3-4), (iv) that a Settlement Class Member may enter an appearance through an attorney (Banks Decl., Exh. A at 7); (v) Settlement Class Members' right to exclude themselves from the class (Banks Decl., Exh. A at 6); (vi) the time and manner for requesting exclusion (Banks Decl., Exh. A at 6); and (vii) the binding effect of a class judgment on all Settlement Class Members who do not request exclusion. (Banks Decl., Exh. A at 5), *see also Churchill Vill.*, 361 F.3d at 575 ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'").

Likewise, the proposed method for providing notice to Settlement Class Members constitutes the best practicable notice under the circumstances. Plaintiffs propose to email the Notice to all potential Settlement Class Members for whom email contact information is available, and also to send a postcard containing a link to the Notice to all members for whom an address is available. Consistent therewith, the Settlement Administrator will publish the Notice on the Settlement Website. The Court

should approve both the proposed form and method of notice because they both comply with the requirements of Rule 23 and due process and represent the best practicable notice under the circumstances.

## VI. CONCLUSION

Counsel for the Parties reached settlements following extensive discussions and arm's-length negotiations. The Court is asked to grant preliminary approval of the proposed Settlements so that notice of the terms of the Settlements may be sent to the Settlement Class, and to schedule a hearing to consider: i) final approval of the pending Settlements; ii) certification of the Settlement Class; iii) Settlement Class Counsel's request for fees and expenses; iv) entry of the Final Judgment and Order; and v) other matters as the Court may deem appropriate.

Dated: December 19, 2025

/s/Nico Banks
Nico Banks (CA SBN:344705)
**BANKS LAW OFFICE**
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

-    *and*    -

Richard A. Nervig (CA SBN:226449)
**RICHARD A. NERVIG, P.C.**
501 West Broadway, Suite 800
San Diego, CA 92101
Phone: 760-451-2300
Email: richard@nerviglaw.com

*Attorneys for Plaintiffs*

## WORD COUNT COMPLIANCE CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains fewer than 7,000 words, which complies with the word limit of L.R. 11-6.1

/s/Nico Banks
Nico Banks
Dated: December 19, 2025