Nico Banks (CA SBN:344705)
**BANKS LAW OFFICE**
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

Richard A. Nervig (CA SBN:226449)
**RICHARD A. NERVIG, P.C.**
501 West Broadway, Suite 800
San Diego, CA 92101
Phone: 760-451-2300
Email: richard@nerviglaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

DAVID HOUGH; *et al.*,

     Plaintiffs,

 vs.

MAX K. DAY; *et al.*

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS AND AWARD OF ATTORNEY FEES AND EXPENSES**

Case No.: 2:24-cv-02886-WLH-SK

Presiding Judge: Hon. Wesley L. Hsu

Hearing Time: June 23, 2026, 2:30 p.m

Hearing Location: First Street Courthouse, 350 W. 1st Street, Courtroom 9B, 9th Floor, Los Angeles, California 90012

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS AND AWARD OF ATTORNEY FEES AND EXPENSES**

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

# TABLE OF CONTENTS

**MOTION**.................................................................................................................... - 4 -

**MEMORANDUM IN SUPPORT** ................................................................................ - 5 -

I.    **INTRODUCTION**............................................................................................. - 5 -

II.   **BACKGROUND** .............................................................................................. - 6 -
   A.  **Class Members' Claims Against Defendants** ............................................. - 6 -
   B.  **Procedural Background**................................................................................ - 7 -
   C.  **The Settlement Process**............................................................................... - 8 -

III.  **SUMMARY OF PRELIMINARILY APPROVED SETTLEMENTS AND NOTICE PROCESS** ........................................................................................ - 9 -

A.   **The Settlement Class Definition** ................................................................. - 9 -
   B.  **The Settlements' Consideration, Administrative Fees, And Attorneys' Fees** ............................................................................................................. - 10 -
   C.  **Release of Claims**...................................................................................... - 10 -
   D.  **Notice of Settlement** ................................................................................. - 11 -

IV.  **ARGUMENT SUPPORTING FINAL APPROVAL OF SETTLEMENT** . - 12 -
   A.  **The Proposed Settlements Warrant Final Approval.** .......................... - 12 -
   B.  **The Positive Reaction Of The Class Cuts In Favor Of Approving The Settlement** .................................................................................................. - 20 -
   C.  **The Conditionally Approved Settlement Class Continues To Satisfy the Standard for Certification Under Rule 23.** ............................................. - 21 -

V.   **ARGUMENT SUPPORTING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS** ...................................................................................... - 22 -
   A.  **Legal Standard Governing Application for Attorneys' Fees**................ - 22 -
   B.  **The Requested Attorney Fees Award Is Reasonable As A Percentage Of The Common Fund** ................................................................................... - 23 -
   C.  **Class Counsel Is Entitled To Reimbursement For Their Reasonable Expenses, Including Amounts To Be Paid To Stretto For Its Administrative Services** ................................................................................................... - 25 -

VI.  **CONCLUSION** ............................................................................................ - 27 -

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

# TABLE OF AUTHORITIES

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666–67 (E.D. Cal. 2008) ................................................. - 14 -

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)............................................................. - 22 -

*Deluca v. Farmers Ins. Exch.*, No. 17-CV-00034-TSH, 2020 WL 5071700, at *7 (N.D. Cal. Aug. 24, 2020) .......................................................................................................................... - 23 -

*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)............................................................. - 25 -

*In re IsoRay, Inc. Sec. Litig.,* 2017 WL 11461073, at *1 (E.D. Wash. Mar. 7, 2017) ................... - 24 -

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)............................ - 25 -

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) ............................... - 24 -

*In re Online DVD-Rental Antitrust Litig.*, 779 F. 3d 934, 955 (9th Cir. 2015)............................... - 24 -

*In re Stable Road Acquisition Corp.,* 2024 WL 3643393, at *15 (C.D. Cal. Apr. 23, 2024).......... - 24 -

*In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ...................................................... - 12 -

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994)................. - 22 -

*In re Zynga Sec. Litig.*, No. 12-CV-04007- JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) ........................................................................................................................................ - 20 -

*Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 990 (9th Cir. 2023) ................................................. - 22 -

*Nat'l Rural Telecomms. Coop. v. DIRECTV*, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004).......... - 20 -

*Scott v. ZST Digital Networks, Inc.*, 2013 WL 12126744, at *7 (C.D. Cal. Aug. 5, 2013)............ - 18 -

*See e.g., Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) ................................................. - 12 -

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) .......................................................... - 20 -

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ............................................ - 22 -

*Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1049 (9th Cir. 2002) ................................................ - 23 -

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

**MOTION**

Pursuant to the Court's Order granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlements (Dkt. 360, hereinafter "Preliminary Approval Order"), and Federal Rules of Civil Procedure 23(h) and 54(d), Plaintiffs David Hough, Amund Thompson, Isabel Ramos, Anthony Ramos, and Michael Nibarger (collectively, "Plaintiffs" or "Class Representatives"), through their legal counsel Banks Law Office and Richard A. Nervig P.C. (collectively, "Class Counsel") respectfully move the Court for the following relief: (1) granting final approval of the preliminarily approved settlements (hereinafter, the "Settlements"), and (2) approving Plaintiffs' requests for an award of attorneys' fees and reimbursement of expenses. The hearing regarding this motion will occur on June 23, 2026 at 2:30 p.m. at the following address: First Street Courthouse, 350 W. 1st Street, Courtroom 9B, 9th Floor, Los Angeles, California 90012.

This motion is supported by the Declaration of Class Administrator Justin Hughes (hereinafter, "Hughes Decl.") and the Declaration of Class Counsel Nico Banks (hereinafter, "Banks Decl.").

- 4 -
MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

# MEMORANDUM IN SUPPORT

## I.    INTRODUCTION

On March 9, 2026, the Court preliminary approved the class-wide settlements that Plaintiffs reached in this action with all remaining defendants, namely: (1) Defendants Max K. Day; Max O. Day; Michael Day; Jared Day; Precision Trading Group, LLC; and Providence Oak Properties LLC (collectively, the "Day Defendants"); (2) Christine Hagar; (3) Total Apps, Inc.; and Reyhan Pasinli (collectively, the "Total Apps Defendants"); and (4) Travis Marker; The Law Office of Travis R. Marker, a Professional Corporation (d.b.a. "Marker Law and Mediation"); and Parlay Law Group, A Professional Corporation (collectively, the "Marker Defendants," and together with the other aforementioned defendants, "Defendants," and together with the other aforementioned parties, the "Parties"). The Defendants agreed to collectively pay a total of $222,000.00 to settle the claims against them on a class-wide basis.

Nothing has changed since the Court provisionally approved the settlements. Only one objection has been filed, and only one class member has opted out of the settlements. Furthermore, the approved notice procedures were successfully carried out. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the settlements and award Class Counsel the requested attorneys' fees and litigation expenses.

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

## II.    BACKGROUND

### A. Class Members' Claims Against Defendants

Plaintiffs' claims are based on Defendants' alleged knowing participation in Wealth Assistants' alleged fraudulent scheme. Plaintiffs allege that beginning in 2021 and continuing until October of 2023,

> Wealth Assistants advertised that it would provide its clients with substantial income by setting up and managing lucrative online Amazon stores that the clients would own. But Wealth Assistants did not provide the promised services. Instead, it used the fees it collected from Plaintiffs and its other clients for the benefit of Wealth Assistants' owners.

ECF 306 (hereinafter "TAC"), ¶ 9.

Plaintiffs allege that the Defendants substantially participated in Wealth Assistants' fraudulent scheme despite knowing it constituted a fraud. *Id*. at ¶¶ 171-173. In particular, Plaintiffs allege that (1) the Day Defendants provided management services and sales services to Wealth Assistants, *id.* at ¶¶ 151-153, (2) Christine Hagar served as Wealth Assistants' Finance Manager, *id.* at ¶¶ 154-155, and (3) the Marker Defendants and the Total Apps Defendants served as payment processors for Wealth Assistants by helping the company conceal assets, *id.* at ¶¶ 91-95; 135-148.

Based on these and other allegations, Plaintiffs asserted a cause of action for aiding and abetting a fraud against all defendants, *id.* at ¶¶ 167-173, and an additional cause of action for aiding and abetting a breach of fiduciary duty against defendant Christine Hagar. *Id.* at ¶¶ 174-180.

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

## B. Procedural Background

On April 8, 2024, Plaintiffs filed this putative class action, which asserted claims against some, but not all, of the Defendants. (ECF 1). On May 20, 2024, Plaintiffs filed their First Amended Complaint, which asserted claims against all of the Defendants. (ECF 56).

On July 4, 2024, Defendants Max K. Day, Max O. Day, Michael Day, and Precision Capital (among other defendants) filed a motion to compel arbitration. (ECF 85). On July 27, 2024, the Court entered an order denying in part the motion to compel arbitration. (ECF 126).

On January 24, 2025, the Court ordered that Max K. Day, Max. O, Day, Michael Day, and Precision Trading Group, LLC, were enjoined from withdrawing, transferring, spending, or otherwise disposing of any assets held by or for their benefit without leave of Court, except that Max K. Day, Max O. Day, and Michael Day could spend what is necessary for ordinary personal or household expenditures, which expenditures may not exceed $9,000.00 per month without leave of the Court and could pay reasonable fees, costs and litigation-related expenses to attorneys and their firms in order to defend themselves in this action and any related actions. (ECF 231).

On June 3, 2025, Plaintiffs filed the operative Third Amended Complaint (ECF 306), which asserted a cause of action for "aiding and abetting a fraud" against all Defendants, and also asserted a cause of action for "aiding and abetting a breach of fiduciary duty" against Defendant Christine Hagar.

Throughout the proceeding, the Parties conducted written discovery. The parties also engaged in motion practice to resolve discovery disputes regarding subpoenas. (e.g., ECF 95).

On August 8, 2025, Max K. Day, Michael Day, and Max O. Day filed a notice stating that they collectively had fewer than $150,000 of collectible assets. (ECF 324).

## C. The Settlement Process

On August 21, 2025, Plaintiffs, Christine Hagar, the Marker Defendants, and the Total Apps Defendants participated in a mediation presided over by mediator Scott Dogulas, who is a skilled and highly regarded mediator with significant experience resolving investment-related disputes (the Day Defendants did not participate in the mediation). (Banks Decl. at ¶ 3). At that mediation, Plaintiffs reached a settlement in principle with the Marker Defendants, who agreed to pay $57,500 to settle the case on a class-wide basis, provided that they were able to obtain a loan that would enable them to make that payment (Marker has since obtained that loan). (Banks Decl. at ¶ 18). Plaintiffs did not reach a settlement in principle with the other defendants on that day. (Banks Decl. at ¶ 18).

After the mediation, Scott Douglas continued facilitating settlement discussions between Plaintiffs, Christine Hagar, and the Total Apps Defendants. (Banks Decl. at ¶ 19). In September of 2025, Plaintiffs reached settlements in principle with Christine Hagar, who agreed to pay $24,500 to settle the case on a class-wide basis, and the Total Apps Defendants, which agreed to pay $15,000 to settle the case on a class-wide basis.

(Banks Decl. at ¶ 19).

Plaintiffs had separate arms-length settlement negotiations with the Day Defendants. Those negotiations began in June of 2025 and continued until the parties reached a settlement in principle in September of 2025. (Banks Decl. at ¶ 20). The negotiations consisted of dozens of emails, videoconferences, and phone calls. The primary topic of discussion in those negotiations was the Day Defendants' ability to pay a settlement. (Banks Decl. at ¶ 20). The Day Defendants filed with the Court affidavits stating that they collectively had fewer than $150,000 in collectible assets available. (ECF 324). Ultimately, the Day Defendants agreed to pay $125,000 to settle the claims on a class-wide basis. (Banks Decl. at ¶ 20).

The Parties then drafted and signed settlement agreements attached as **Exhibits B - E** to the Banks Decl. On March 9, 2026, the Court preliminarily approved those proposed settlement agreements. (*See generally*, Preliminary Approval Order).

### III. SUMMARY OF PRELIMINARILY APPROVED SETTLEMENTS AND NOTICE PROCESS

#### A. The Settlement Class Definition

In the Preliminary Approval Order, the Court conditionally certified the following class for settlement purposes only:

> All individuals who (a) purchased services relating to the setup or management of an online store from Yax Ecommerce LLC, Precision Trading Group, LLC, WA Distribution LLC, Providence Oak Properties, LLC, WA Amazon Sellers LLC, and Yax IP and Management Inc. (collectively, "Wealth Assistants") between June 2021

- 9 -

and November 2023, (b) did not make a profit on their purchase of that business opportunity, and (c) have never been owners, employees, legal representatives, or successors of Wealth Assistants.

(Preliminary Approval Order at 14).

**B. The Settlements' Consideration, Administrative Fees, And Attorneys' Fees**

The total amount to be paid by the Defendants to the Settlement Class is $222,000. Of that total, the Day Defendants will contribute $125,000 (Banks Decl. Exh. B at ¶ 5(a)); Hagar will contribute $24,500 (Banks Decl. Exh. C at ¶ 5(a)); the Total Apps Defendants will contribute $15,000 (Banks Decl. Exh. D at ¶ 6(a)); and the Marker Defendants will contribute $57,500 (Banks Decl. Exh. E at ¶ 5(a)). The consideration may be used to pay any attorneys' fees, litigation costs, and administrator costs. (Banks Decl. Exh. B at ¶ 5(a); Exh. C at ¶ 5(a); Exh. D at ¶ 6(a); Exh. E at ¶ 5(a)). The amount of the settlement consideration remaining after attorneys' fees, litigation costs, and administrator costs will be distributed to the class *pro rata* to the class members' damages. (*Id.*). Each class member's "damages" are determined via the Claim Form approved in the Court's Preliminary Approval Order, and calculated as the total payments they made to Wealth Assistants less the money they received in connection with the business opportunity they purchased from Wealth Assistants. (*Id.*).

**C.  Release of Claims**

Once the settlements are effective, the Settlement Class Members who have not timely and validly excluded themselves from the Settlement Class, and any person or

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

entity claiming by, for, on behalf of, or through them, will provide a broad release of all claims, known and unknown, against Released Parties, meaning the Defendants, and certain individuals and entities related to or affiliated with the Day Defendants or Total Apps Defendants.  (Banks Decl. Exh. B, ¶ 9; Exh. C, ¶ 8; Exh. D, ¶ 9, Exh. E, ¶ 8).

The Released Claims include any and all claims the Class Members ever had against the Released Parties, including unknown and unsuspected claims, related in any way to the conduct alleged in this Litigation or the factual predicate of this Litigation. (*Id.*).

## D. Notice of Settlement and Claims Process

In accordance with the notice and claims process described in the settlement agreements and approved by the Court, on April 8, 2026, the Settlement Administrator provided notice to Settlement Class Members by emailing and mailing (via a postcard) a link to the website containing the notice of proposed settlements, as well as the approved claim form, to all potential Settlement Class Members at the email addresses and mailing addresses available in the Day Defendants' records (which Day Defendants provided to Class Counsel). (Hughes Declaration, ¶ 12). The approved process described in the settlements also provided that Plaintiffs would file their motion for final approval no later than 90 days after entry of the Preliminary Approval Order. (Banks Decl. Exh. B, ¶ 4(c); Exh. C, ¶ 4(c); Exh. D, ¶ 5(c), Exh. E, ¶ 4(c)). Pursuant to the Preliminary Approval Order, the motion for attorneys' fees would need to be filed no later than the motion for final approval. (Preliminary Approval Order at 15).

## IV. ARGUMENT SUPPORTING FINAL APPROVAL OF SETTLEMENT

### A. The Proposed Settlements Warrant Final Approval.

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or settlement of class action claims. "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

To approve a class action settlement, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). *See e.g., Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). Specifically, the Court must examine the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Court previously determined that all four factors favored preliminary approval. (Preliminary Approval Order at 11). Nothing has changed since the Preliminary Approval Order, and accordingly, all four factors favor granting final

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

approval of the settlement.

### 1.    Adequacy of Representation

The Court previously found that "Settlement Class Counsel all satisfy the requirements of Rule 23(g) and will fairly and adequately represent the interests of the Settlement Class." (Preliminary Approval Order at 10). Upon filing the initial complaint, class counsel filed a motion for a temporary restraining order that aimed to prevent Defendants Max K. Day, Max O. Day, and Michael Day—among other defendants—from transferring assets in order to dodge creditors. (ECF 9). The motion was supported by over twenty affidavits from Wealth Assistants' former clients, among other evidence, and the Court granted the motion in part. (*Id.*). That initial relief helped position the class members to recover some assets from the Day Defendants.

Class counsel also successfully opposed a motion by the Day Defendants to compel several of the plaintiffs to arbitrate their dispute. (ECF 85). As discussed in the opposition brief (ECF 109), if the motion had been granted in its entirety, it would have rendered relief for class members impracticable.

Class counsel also engaged in extensive party discovery, third-party discovery, and motion practice regarding discovery (e.g., ECF 95), and filed three detailed amended complaints. (ECF 56, 173, 306).

The Class Representatives have also adequately represented the class. They provided necessary documentation to Class Counsel, participated in extensive teleconferences with Class Counsel, attended the mediation, and actively participated

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

in settlement discussions. (Banks Decl., ¶ 11). Accordingly, this factor weighs in favor or final approval.

### 2. Arms-Length Negotiation

The Court previously found: "That the settlement was secured through hard-fought, arm's-length negotiations also weighs in favor of preliminary approval." (Preliminary Approval Order at 13). That factor now weighs in favor of final approval. Specifically, Plaintiffs' negotiations with the Total Apps Defendants, the Marker Defendants, and Hagar occurred before a private mediator experienced in investment-related matters, and the negotiations continued for several weeks after the mediation occurred. (Banks Decl. ¶ 17.); *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666–67 (E.D. Cal. 2008) (noting the parties' enlistment of "a prominent mediator with a specialty in [the subject of the litigation] to assist the negotiation of their settlement agreement" as an indicator of non-collusiveness) (*citing Parker v. Foster*, No. 05–0748, 2006 WL 2085152, at *1 (E.D.Cal. July 26, 2006)). Plaintiffs' negotiations with the Day Defendants occurred over many months, over dozens of videoconferences, telephone conferences, and emails. (Banks Decl. ¶ 20). All negotiations were adversarial but professional.

Prior to mediation, Plaintiffs engaged in extensive investigation and discovery, which included interviewing Plaintiffs and dozens of other class members, reviewing and analyzing tens of thousands of pages of Defendants' records, and conducting legal research regarding application of law. (Banks Declaration, ¶ 13).

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

Because the agreement was the product of arms-length this factor weighs in favor of final approval.

### 3.      Adequacy of Relief

#### i.      Risks of Trial and Appeal

The Court previously found: "The proposed relief of *pro rata* monetary payments to class members is adequate in light of the costs, risks and delay of trial and appeal." (Preliminary Approval Order at 11). That factor now weighs in favor of final approval of the proposed settlements.

When evaluating the adequacy of relief in a proposed class settlement, courts first consider the costs and risks of trial or appeal. Here, the Settlements provide the benefit of $222,000 without further risk to the Settlement Class, and the most important risk avoided by this settlement is the risk—indeed, the very high likelihood—that the class members will recover nothing if litigation continues because Defendants Hagar and Total Apps will likely succeed in their pending motions to dismiss, and the very limited pool of collectible assets available from the remaining defendants (the Day Defendants and the Marker Defendants) will soon be exhausted by litigation.

Indeed, months ago, Defendants Max K. Day, Max O. Day, Michael Day, Precision Trading Group LLC, and Providence Oak Properties LLC filed a notice—supported by affidavits—stating that they (along with certain other defendants) collectively had less than $150,000 of collectible assets available. (ECF 324). The other Day Defendant, Jared Day, later provided Class Counsel with a personal financial

statement showing that he had less than $30,000 of collectible assets available. (Banks Decl. ¶ 15). The few collectible assets that the Day Defendants had available would soon be exhausted by continued litigation, so any judgment that Plaintiffs could ultimately obtain against the Day Defendants would very likely be worthless. Accordingly, the $125,000 settlement from the Day Defendants is likely more than the class would obtain by continuing to litigate against the Day Defendants.

Similarly, the Marker Defendants agreed to settle the claims against them for $57,500, which is reasonable under the circumstances. At the mediation, the Marker Defendants provided Class Counsel with an affidavit stating that the Marker Defendants collectively had fewer than $20,000 in assets and an income of approximately $2,000 per month. (Banks Decl. ¶ 16). The parties then reached an agreement in principle for the Marker Defendants to settle the case for $57,500, provided that the agreement would only become effective if the Marker Defendants successfully obtained a loan that enabled them to pay the settlement amount. (Banks Decl. ¶ 16). The Marker Defendants successfully obtained that loan. (Banks Decl. ¶ 16). Because the Marker Defendants have so few collectible assets, the $57,500 settlement is more than the class could expect to obtain by continuing to litigate their claims against the Marker Defendants.

Furthermore, Defendant Christine Hagar agreed to settle the claims against her for $24,500, which is reasonable under the circumstances. Christine Hagar provided Class Counsel with an affidavit showing that she had fewer than $10,000 of liquid

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

assets available. (Banks Decl. ¶14). If Hagar did not prevail in her forthcoming motion to dismiss, she would likely spend those assets on attorneys' fees and litigation expenses in the course of the remainder of this proceeding (including remaining discovery, class certification, dispositive motions, and trial). Furthermore, Hagar would have a high likelihood of prevailing on a motion to dismiss. The Court previously dismissed without prejudice Plaintiffs' Second Amended Complaint against Hagar (ECF 295), and although Plaintiffs' TAC alleges additional details about Hagar's preparation of Wealth Assistants' financial records, it does not allege that Hagar participated in making fraudulent statements to Plaintiffs or in Wealth Assistants' operations. (TAC, ¶ 154). Accordingly, the $24,500 settlement from Hagar is likely more than the class would obtain by continuing to litigate against her.

Similarly, Total Apps Defendants would very likely succeed in their motion to dismiss (ECF 342) if the settlement, in which Total Apps agreed to pay $15,000, were not approved. While Plaintiffs believed they would succeed in their claims against the Total Apps Defendants when the Third Amended Complaint was filed, the Court's order dismissing Bank of America with prejudice (ECF 344) provided a very strong indication that Total Apps Defendants would also succeed in their motion to dismiss. Like Bank of America, the Total Apps Defendants are "payment processing defendants" that allegedly learned of Wealth Assistants' fraud in the course of processing payments for Wealth Assistants. The Court found that it was implausible that Bank of America learned of Wealth Assistants' fraud in the course of processing

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

payments (ECF 344), and it is very likely that the Court would make the same finding with respect to the Total Apps Defendants when ruling on the Total Apps Defendants' pending motion to dismiss.

For the reasons discussed above, for all four settlements, the consideration the plaintiffs will receive is very likely more than those plaintiffs would receive if they continued litigating against each respective defendant.

### ii.    Method of Distribution

The court previously found that the proposed method of distribution "constitutes an effective and standard method of distributing relief in consumer fraud actions, particularly where the Class Members require individualized supporting documentation." (Preliminary Approval Order, at 12). The effectiveness of the proposed method of distributing relief also weighs in favor of granting final approval. Fed. R. Civ. P. 23(e)(2)(C)(ii). As described above, Settlement Class Members were required to submit a valid claim form to be eligible to receive monetary relief under the settlements. Claims could be submitted online through the Settlement Website or by mail. (Hughes Decl., ¶ 11). The Settlement Administrator is now processing all timely and valid claims, and verifying documentation where required. (Hughes Decl., ¶ 11). The Settlement Administrator will then issue payments via mailed checks in accordance with the distribution plan described in the settlement agreements. (Hughes Decl., ¶ 11).

"When formulated by competent and experienced class counsel, an allocation

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

plan need have only a 'reasonable, rational basis.'" *Scott v. ZST Digital Networks, Inc.*, 2013 WL 12126744, at *7 (C.D. Cal. Aug. 5, 2013) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004)). Settlement Class Members who have not submitted a timely and valid Request for Exclusion – and who have submitted the required claim form and proof of their payments to Wealth Assistants – will receive their court-approved share of the remaining Settlement Fund, after deductions of any notice and settlement administration costs and payment of any fees or litigation costs ordered by the Court.

In summary, as the Court previously found, the proposed method of distribution is an effective and standard method for distributing settlement funds in consumer class actions. That remains true, and accordingly, the effectiveness of the proposed method of distributing relief weighs in favor of granting final approval of the settlements.

### iii.    Proposed Award of Attorneys' Fees

In evaluating the adequacy of relief, courts also consider the proposed award of attorneys' fees, including timing of payment. Here, as discussed in more detail below, Plaintiffs are applying for an award of attorneys' fees of $55,500, which is 25 percent of the total settlement fund, and the reasonableness of that request for attorneys' fees cuts in favor of granting final approval of the settlement. (*See* Preliminary Approval Order, at 10).

### iv.    23(e)(3) Agreements

In evaluating the adequacy of relief, courts also consider "any agreement

required to be identified under Rule 23(e)(3)." Other than the settlement agreements between Plaintiffs and the Defendants, there are no other agreements in this case required to be identified under Rule 23(e)(3). (Banks Decl. ¶ 21).

### 4.    Equitable Treatment

The fourth factor to consider is whether the settlements grant preferential treatment to Settlement Class Representatives or segments of the Settlement Class. The Court previously found that "The proposed Settlement Agreement also comports with the requirement that a settlement treat class members equitably relative to each other." (ECF 360 at 13).   That remains true. The method of distribution is designed to compensate all Settlement Class Members on a *pro rata* basis pursuant to the proposed plan of distribution. The Settlement Class Representatives will not be favored or treated differently under that plan. *See In re Zynga Sec. Litig.*, No. 12-CV-04007- JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015).

### B. The Positive Reaction Of The Class Cuts In Favor Of Approving The Settlement

In determining whether to grant final approval of a class action settlement, courts evaluate the reaction of the class after it has received notice. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement . . . are favorable to . . . class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV*, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004).

Here, the absence of a large number of objections raises the strong presumption that the terms of the proposed settlements are favorable to class members. Indeed, only one member of the class has objected and only one member of the class has requested exclusion from the settlement. (Hughes Decl., ¶ 9).

The only objection to the settlements was filed *pro se* on May 21, 2026 by Curtis Zeilenga. (ECF 363). The objection fails to establish that the objector is a member of the class or otherwise has standing, and it does not identify the portion or portions of the settlements objected to.[1] More importantly, the objection's claims—including that the Court has failed to consider the class members' experiences, or only ruled in favor of the "loudest or more expensive" parties— are unsupported by any evidence, and are simply untrue. Accordingly, the objection does not establish any deficiencies with the settlement. The vast majority of the class has not objected and has not opted out of the settlement, which shows that the class has reacted to the settlements positively.

### C. The Conditionally Approved Settlement Class Continues To Satisfy the Standard for Certification Under Rule 23.

In its Preliminary Approval Order, the Court conditionally certified the settlement class. (Preliminary Approval Order at 9). The Court found that all four of the requirements of Rule 23(a) and at least one basis for certification under Rule 23(b) were met.

---

[1] *See* Preliminary Approval Order at 15 ("Any objections must state whether it applies only to the objector, to a specific subset of the class or to the entire class, and also state with specificity the grounds for the objection pursuant to Fed. R. Civ. P. 23(e)(5)(A)).

(Preliminary Approval Order at 6-9). Because nothing material has changed since the Court conditionally certified the class, the analysis remains the same. The settlement class continues to satisfy the requirements of Rule 23(a).

## V.    ARGUMENT SUPPORTING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

### A. Legal Standard Governing Application for Attorneys' Fees

It has long been recognized that a person who maintains a suit that results in the creation of a fund in which others have a common interest may obtain fees from that common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). The Ninth Circuit has remarked that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees"). This principle, sometimes referred to as the "common fund doctrine," prevents the unjust enrichment of class members who benefit from a lawsuit without paying for it. *Boeing*, 444 U.S. at 478.

If approved, the settlements will result in a $222,000 Settlement Fund for the benefit of the Class. Class Counsel are seeking a fee of 25% of the Settlement Fund, or

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

$55,000, for the work they performed to help bring about the Settlement.

### B. The Requested Attorney Fees Award Is Reasonable As A Percentage Of The Common Fund

The Ninth Circuit allows two ways to determine attorneys' fees awards in class actions: (1) the "lodestar" method and (2) the "percentage-of-recovery" method. *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 990 (9th Cir. 2023). "The typical benchmark for the percentage-of-recovery approach is 25%, but a court can—as in the lodestar method—adjust that benchmark up or down." *Id.* at 990. Although 25% is the benchmark for a reasonable fee award, "in most common fund cases, the award exceeds that benchmark." *Deluca v. Farmers Ins. Exch.*, No. 17-CV-00034-TSH, 2020 WL 5071700, at *7 (N.D. Cal. Aug. 24, 2020).

The Ninth Circuit has identified the following factors that courts may consider when assessing requests for attorneys' fees calculated pursuant to a "percentage-of-recovery" method: (1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; and (6) whether the case was handled on a contingency basis. *Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1049 (9th Cir. 2002).

Here, those factors counsel in favor of awarding attorneys' fees of at least 25 percent of the common fund. As described above, prosecuting the case was highly risky

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

for Class Counsel—who prosecuted the case on a contingency fee basis—because of collectability issues, and because succeeding on the merits required proving that Defendants had actual knowledge of the fraud. (TAC, ¶¶ 167-180). Furthermore, like most investment-fraud matters, this case was complex; it involved many different defendants and required complicated financial analysis. (*See id.*). Moreover, as described in more detail above, Class Counsel experienced many burdens while litigating the case, including a motion to compel arbitration, motions to compel the production of documents, and motions to halt the alleged concealment of assets. Despite significant obstacles, Class Counsel negotiated the settlements at issue, which will provide a $222,000 common fund for the benefit of the class members. That fund was the best possible outcome under the difficult circumstances at the time of settlements (namely, defendants who were likely uncollectible or appeared likely to prevail on a motion to dismiss). (*See* Banks Decl., ¶¶ 9-16).

Courts may also cross-check fees requested under a percentage-of-recovery analysis against class counsel's lodestar calculation. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F. 3d 934, 955 (9th Cir. 2015). "Cases involving similar investment fraud generally involve lodestar multipliers of greater than one…" *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (finding a multiplier of 1.33 reasonable and noting that in securities cases, "courts have approved multipliers ranging between 1 and 4"); *In re Stable Road Acquisition Corp.,* 2024 WL 3643393, at *15 (C.D. Cal. Apr. 23, 2024) ("A multiplier of 1.76 is well within the range of multipliers

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

commonly awarded in securities class actions and other complex litigation." (collecting cases)); *In re IsoRay, Inc. Sec. Litig.,* 2017 WL 11461073, at *1 (E.D. Wash. Mar. 7, 2017) (finding multipliers of 1.48 or 1.77 to be reasonable for securities cases).

Here, as reflected in the Declaration of Class Counsel filed in support of this motion, Class Counsel expended over 600 hours investigating, litigating, and working to resolve this matter over a period of more than two years, representing a lodestar value of $243,920. (Banks Decl., ¶ 23). Plaintiffs are now requesting a percentage recovery that, if approved, would result in a fee award of $55,000 or a lodestar multiplier of approximately 0.225, which is far less than the ranges generally awarded in investment fraud cases. Accordingly, Plaintiffs respectfully submit that this lodestar cross-check further supports the attorneys' fees award requested herein.

## C. Class Counsel Is Entitled To Reimbursement For Their Reasonable Expenses, Including Amounts To Be Paid To Stretto For Its Administrative Services

Counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client'") (citation omitted). The appropriate analysis to apply in deciding which expenses are compensable in a common fund case is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *In re Media Vision Tech. Sec. Litig*., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (stating that "[r]easonable costs and expenses

incurred by an attorney who creates or preserves a common fund are reimbursed proportionally by those class members who benefit by the settlement").

Here, Class Counsel incurred expenses of $10,476.44 in the course of litigating this matter. (Banks Decl., ¶ 25). These expenses covered mediation fees ($5,800), non-refunded filing fees for the mass arbitration that was dismissed so that the claimants could instead pursue their claims in the present class action ($3,125), and travel expenses ($1,551.44). (*Id.*) Class Counsel aver that these expenses were reasonable and of the type typically billed by attorneys to paying clients in the marketplace. (*Id.*) Class Counsel requests $10,000 of these expenses to be paid out of the settlement funds. Class Counsel will be personally responsible for any remaining expenses.

Furthermore, the settlement administrator anticipates that administration costs will total approximately $35,000. (Hughes Declaration, ¶ 12). At the outset of the administration, before the amount of Settlement Class Members and claims were definitely known, the administrator anticipated that administration costs would amount to approximately $28,000 based on assumed amounts of 775 Settlement Class Members and 155 claims. (Hughes Declaration, ¶ 12). The amount of Settlement Class Members ultimately ended up being approximately 880, and the settlement administrator has received over 290 claims.  (Hughes Declaration, ¶ 12). As such, Stretto anticipates that administration costs will total $35,000. (Hughes Declaration, ¶ 12). Accordingly, Class Counsel requests that the Court approve up to $35,000 to be paid in settlement administration expenses out of the settlement funds.

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

## VI.  CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court grant final approval of the preliminarily approved Settlements, and grant Plaintiffs' request for an award of attorneys' fees and expenses.

Dated: May 28, 2026

/s/Nico Banks
Nico Banks (CA SBN:344705)
**BANKS LAW OFFICE**
712 H St NE, Unit #8571
Washington, DC 20002
Tel.: 971-678-0036
Email: nico@bankslawoffice.com

-    *and*    -

Richard A. Nervig (CA SBN:226449)
**RICHARD A. NERVIG, P.C.**
501 West Broadway, Suite 800
San Diego, CA 92101
Phone: 760-451-2300
Email: richard@nerviglaw.com

*Attorneys for Plaintiffs*

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS

## WORD COUNT COMPLIANCE CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,414 words, which complies with the word limit of L.R. 11-6.1

/s/Nico Banks
Nico Banks
Dated: May 28, 2026

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENTS